# EXHIBIT I

1  Laurence D. King (SBN 206423)
   Lking@kaplanfox.com
2  Linda M. Fong (SBN 124232)
   lfong@kaplanfox.com
3  KAPLAN FOX & KILSHEIMER LLP
   350 Sansome Street, Suite 400
4  San Francisco, CA 94104
   Telephone: 415-772-4700
5  Facsimile: 415-772-4707

6  Joel B. Strauss
   jstrauss@kaplfox.com
7  Jeffrey P. Campisi
   jcampisi@kaplanfox.com
8  KAPLAN FOX & KILSHEIMER LLP
   850 Third Avenue, 14th Floor
9  New York, NY 10022
   Telephone: 212-687-1980
10 Facsimile: 212-687-7714

11 Karen Hanson Riebel
   khriebel@locklaw.com
12 LOCKRIDGE GRINDAL & NAUEN P.L.L.P
   100 Washington Ave. S., Suite 2200
13 Minneapolis, MN 55401
   Telephone: 612-339-6900
14 Facsimile: 612-339-0981

15 Attorneys for Plaintiff

16                UNITED STATES DISTRICT COURT

17              NORTHERN DISTRICT OF CALIFORNIA

18 _____  Case No.:   CV 08    0118

19 EDWARD FEITEL, on behalf of himself and    **CLASS ACTION COMPLAINT**
   all others similarly situated,
20
21                            Plaintiff,       **JURY TRIAL DEMANDED**

22         vs.

23 VERIFONE HOLDINGS, INC., DOUGLAS G.
   BERGERON, and BARRY ZWARENSTEIN,
24
25                            Defendants.
26 _____

27

28

   CLASS ACTION COMPLAINT

ORIGINAL
FILED

JAN 7 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Edward Feitel ("Plaintiff"), by his attorneys, on behalf of himself and all others similarly situated, alleges the following based upon the investigation of plaintiff's counsel, except as to allegations specifically pertaining to plaintiff, which are based on personal knowledge. The investigation of counsel included, among other things, a review of VeriFone Holdings, Inc. ("VeriFone" or the "Company") public filings with the United States Securities and Exchange Commission ("SEC"), press releases issued by the Company, public conference calls, media and news reports about the Company, and other publicly available data, including, but not limited to, publicly available trading data relating to the price and trading volume of Verifone securities.

## I.    INTRODUCTION

1.    This action is a securities fraud action brought under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder by the SEC by plaintiff on behalf of a class of all persons and entities who purchased the securities of VeriFone between March 1, 2007 and November 30, 2007, inclusive (the "Class Period") to recover damages caused to the Class by defendants' violations of the securities laws.

2.    Defendant VeriFone is a Delaware corporation with its principal place of business located at 2099 Gateway Place, Suite 600, San Jose, California. VeriFone describes itself as "the global leader in secure electronic payment technologies."

3.    On December 3, 2007 before the opening of trading, defendants issued a press release over *Business Wire* stating that the Company had concluded that its financial statements for the first three quarters of fiscal year 2007 would be restated and should no longer be relied upon, as follows:

**VeriFone Announces Anticipated Restatement of 2007 Quarterly Financial Statements**

Also Announces Preliminary Fourth Quarter 2007 Revenue Results and Delays Announcement of Fourth Quarter 2007 Financial Results

SAN JOSE, Calif.—(BUSINESS WIRE)—Dec. 3, 2007—VeriFone Holdings, Inc. (NYSE:PAY) today announced that following a review by and on the recommendation of management, it has concluded that its unaudited interim consolidated financial statements for the three months ended January 31, 2007, the

1

CLASS ACTION COMPLAINT

three and six months ended April 30, 2007, and the three and nine months ended July 31, 2007, should no longer be relied upon, principally due to errors in accounting related to the valuation of in-transit inventory and allocation of manufacturing and distribution overhead to inventory, each of which affects VeriFone's reported costs of net revenues. The restatements are anticipated to correct errors that overstated previously reported inventories in material amounts as of January 31, 2007, April 30, 2007, and July 31, 2007, and understated cost of net revenues in material amounts for the three month periods ended January 31, 2007, April 30, 2007, and July 31, 2007. **Accordingly, investors are cautioned not to rely on VeriFone's historical financial statements and earnings press releases and similar communications for the periods ended January 31, 2007, April 30, 2007, and July 31, 2007.**

Based on its review to date, management currently anticipates that the restatement will result in reductions to previously reported inventories of approximately $7.7 million, $16.5 million and $30.2 million as of January 31, 2007, April 30, 2007, and July 31, 2007, respectively, and reductions to previously reported pre tax income of approximately $8.9 million, $7.0 million and $13.8 million for the three month periods ended January 31, 2007, April 30, 2007, and July 31, 2007, respectively. VeriFone is currently evaluating the anticipated effect of the restatement on after-tax income for those periods.

(Emphasis added).

4.      Even more disconcerting to investors was VeriFone's statement that the improper accounting was not limited to its accounting for inventory. The Company stated that the estimated restatement includes "corrections of other unrelated errors detected in the course of VeriFone's review to date. . . ." In addition, Verifone stated that:

**there can be no assurances that VeriFone or its independent registered public accounting firm will not find additional accounting errors requiring further adjustments in those or earlier periods.**

(Emphasis added).

5.      Following the publication of this release, VeriFone shares declined from a closing price on November 30, 2007 of $48.03 per share to close at $26.03 per share on December 3, 2007 (the next trading day), a decline of $22 per share or approximately 45% on heavier than usual volume. Wedbush Morgan analyst Gil Luria called VeriFone's announcement "pretty severe," noting that VeriFone made no assurances that the Company, or its outside accountants, would not

2

CLASS ACTION COMPLAINT

find more mistakes in its financial reporting. An analyst at J.P. Morgan Securities also commented, "The restatement calls into question VeriFone's gross margins, which up until now have been positive fuel for the stock."

## II.   JURISDICTION AND VENUE

6.      The claims asserted arise under Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder. Jurisdiction is conferred by Section 27 of the Exchange Act. Venue is proper pursuant to Section 27 of Exchange Act as defendant VeriFone and/or the Individual Defendants conduct business in and the wrongful conduct took place in this District.

## III.   THE PARTIES

7.      Plaintiff purchased VeriFone common stock as detailed in the Certification of Named Plaintiff attached hereto and was damaged thereby.

8.      Defendant VeriFone is a Delaware corporation with its principal place of business located at 2099 Gateway Place, Suite 600, San Jose, California.

9.      Defendant Douglas G. Bergeron ("Bergeron") was, during the Class Period, Chairman and Chief Executive Officer of the Company. During the Class Period, defendant Bergeron signed the Company's SEC filings and sold approximately 1,028,822 VeriFone shares at artificially inflated prices for proceeds of approximately $41.5 million.

10.     Defendant Barry Zwarenstein ("Zwarenstein") was, during the Class Period, Executive Vice President and Chief Financial Officer of the Company. During the Class Period, defendant Zwarenstein signed the Company's SEC filings and sold 118,585 VeriFone shares at artificially inflated prices for proceeds of approximately $4.6 million.

11.     The individuals named as defendants in ¶¶9-10 are referred to herein as the "Individual Defendants." The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of VeriFone's quarterly reports, press releases and presentations to securities analysts, money and portfolio managers and other institutional investors, *i.e.*, the market. Each defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to or shortly after their issuance and

CLASS ACTION COMPLAINT

1  had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of

2  their positions and access to material non-public information available to them but not to the

3  public, each of these defendants knew that the adverse facts specified herein had not been disclosed

4  to and were being concealed from the public and that the positive representations which were being

5  made were then materially false and misleading.

## IV.    CLASS ACTION ALLEGATIONS

7        12.    Plaintiff brings this action as a class action pursuant to Federal Rules of Civil

8  Procedure 23(a) and 23(b)(3) on behalf of a class of all persons and entities who purchased the

9  publicly traded securities of VeriFone between March 1, 2007 and November 30, 2007, inclusive

10  (the "Class").

11       13.    The members of the Class are so numerous that joinder of all members is

12  impracticable.  While the exact number of Class members is unknown to plaintiff at the present

13  time and can only be ascertained through appropriate discovery, plaintiff believes that there are

14  hundreds of members of the Class located throughout the United States.  As of August 24, 2007,

15  VeriFone had over 83 million shares of common stock outstanding, which were actively traded on

16  the NYSE, an efficient market.

17       14.    Plaintiff's claims are typical of the claims of the members of the Class.  Plaintiff and

18  all members of the Class have sustained damages because of defendants' unlawful activities

19  alleged herein.  Plaintiff has retained counsel competent and experienced in class and securities

20  litigation and intends to pursue this action vigorously.  The interests of the Class will be fairly and

21  adequately protected by plaintiff.  Plaintiff has no interests which are contrary to or in conflict with

22  those of the Class that plaintiff seeks to represent.

23       15.    A class action is superior to all other available methods for the fair and efficient

24  adjudication of this controversy.  Plaintiff knows of no difficulty to be encountered in the

25  management of this action that would preclude its maintenance as a class action.

4

CLASS ACTION COMPLAINT

16. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether the federal securities laws were violated by defendants' acts and omissions as alleged herein;

(b) whether defendants misstated and/or omitted to state material facts in their public statements and filings with the SEC;

(c) whether defendants participated directly or indirectly in the course of conduct complained of herein; and

(d) whether the members of the Class have sustained damages and the proper measure of such damages.

## V. FALSE AND MISLEADING STATEMENTS

17. On March 1, 2007, the inception of the Class Period, VeriFone published a release on *Business Wire* in which it announced its financial results for the first fiscal quarter ended January 31, 2007. The press release stated, in part, the following:

### VeriFone Reports First Quarter Fiscal 2007 Results

Revenues of $217 million Grew 61% due to Lipman Acquisition and Strong International Performance

Record EBITDA, as adjusted, margins of 25.7%

EPS, as adjusted, increases 54% to 37 cents

SAN JOSE, Calif.—(BUSINESS WIRE)—March 1, 2007—VeriFone Holdings, Inc. (NYSE:PAY), the global leader in secure electronic payment solutions, today announced financial results for the three months ended January 31, 2007. The Company's first quarter results reflect the November 1, 2006, acquisition of Lipman and, because of the integration of Lipman's products and distribution channels as well as the lack of comparable quarter ends of VeriFone and Lipman, are compared to preacquisition results of prior fiscal periods.

Net revenues, for the three months ended January 31, 2007, were $216.6 million, 61% higher than the net revenues of $134.6 million for the comparable period of

5

2006. The record revenues were driven by the Lipman acquisition and a strong performance internationally.

Gross margins, excluding non-cash acquisition related charges and stock-based compensation expense, were 47.1%, for the three months ended January 31, 2007, compared to 45.6% for the comparable period of 2006. GAAP gross margins for the three months ended January 31, 2007, were 37.6%, compared to 44.3% for the three months ended January 31, 2006, as a result of increased amortization of purchased technology assets and the step-up in inventory.

EBITDA, as adjusted, margins for the three months ended January 31, 2007, expanded for the tenth consecutive quarter and reached a record level of 25.7%, compared to the 21.0% recorded in the three months ended January 31, 2007.

GAAP EPS for the three months ended January 31, 2007, was a loss of ($0.01) per diluted share, compared to $0.20 per diluted share, for the comparable period of fiscal 2006, due to acquisition related charges and a higher GAAP tax rate. Net income, as adjusted, which excludes non-cash acquisition related charges and debt issuance costs, as well as non-cash stock-based compensation expense, for the three months ended January 31, 2007, increased 54% to $0.37 per diluted share, compared to $0.24 per diluted share, for the three months ended January 31, 2006.

18.     On March 12, 2007, defendants also filed with the SEC the Company's financial results for the quarter ended January 31, 2007 pursuant to Form 10-QA, signed by defendants Bergeron and Zwarenstein ("1Q07 Form 10-QA"). The 1Q07 Form 10-QA contained many of the same materially false and misleading statements defendants had made previously relating to the financial and operational performance of the Company, including a representation on the Company's balance sheet that its inventories as of January 31, 2007 were $130,815,000. In addition, the 1Q07 Form 10-QA stated, in part, the following:

*Unaudited Interim Financial Information*

The accompanying consolidated balance sheet as of January 31, 2007 and the consolidated statements of operations and cash flows for the three months ended January 31, 2007 and 2006 are unaudited. These unaudited interim condensed consolidated financial statements have been prepared in accordance with U.S. generally accepted accounting principles for interim financial information and Form 10-Q and Article 10 of Regulation S-X. In the opinion of the Company's management, the unaudited interim condensed consolidated financial statements have been prepared on the same basis as the annual consolidated financial statements and include all adjustments of a normal recurring nature necessary for the fair presentation of the Company's financial position as of January 31, 2007

6

CLASS ACTION COMPLAINT

and its results of operations and cash flows for the three months ended January 31, 2007 and 2006.

*    *    *

### Inventories

Inventories are stated at the lower of standard cost or market. Standard costs approximate the first-in, first-out ("FIFO") method. The Company regularly monitors inventory quantities on hand and records write-downs for excess and obsolete inventories based primarily on the Company's estimated forecast of product demand and production requirements. Such write-downs establish a new cost-basis of accounting for the related inventory. Actual inventory losses may differ from management's estimates.

*    *    *

ITEM 4.  CONTROLS AND PROCEDURES

(a) Evaluation of disclosure controls and procedures.

With the participation of our Chief Executive Officer and Chief Financial Officer, management has carried out an evaluation of the effectiveness of our disclosure controls and procedures (as defined in Rule 13a-15(e) and 15d-15(f) under the Securities Exchange Act of 1934). Based upon that evaluation, our Chief Executive Officer and Chief Financial Officer concluded that our disclosure controls and procedures were effective as of the end of the period covered by this report.

(b) Changes in internal control over financial reporting.

No change in our internal control over financial reporting (as defined in Rule 13a-15(f) under the Securities and Exchange Act of 1934) occurred during the third quarter of our fiscal year ended January 31, 2007 that has materially affected, or is reasonably likely to affect, our internal control over financial reporting.

19.    The 1Q07 Form 10-QA also contained certifications submitted pursuant to Section 906 of the Sarbanes-Oxley Act of 2002, signed by defendants Bergeron and Zwarenstein, respectively, which certified the veracity of the Company's financial statements, as follows:

2.    Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the

7

CLASS ACTION COMPLAINT

statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

      3.    Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report.

      4.    The registrant's other certifying officer(s) and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) for the registrant and have:

      (a) Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

      (b) Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

      (c) Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting . . . .

      20.    On May 29, 2007, VeriFone published a press release on *Business Wire* in which it announced its financial results for the second fiscal quarter ended April 30, 2007.  This press release stated, in part, the following:

**VeriFone Reports Second Quarter Fiscal 2007 Results**

Revenues of $217 Million Grew 53% Due to Lipman Acquisition and Resurgent North American Growth

Record EBITDA, as Adjusted, Margins of 26.3%

EPS, as Adjusted, Increases 50% to 39 cents

CLASS ACTION COMPLAINT

SAN JOSE, Calif.—(BUSINESS WIRE)—May 29, 2007—VeriFone Holdings, Inc. (NYSE:PAY), the global leader in secure electronic payment solutions, today announced financial results for the three months ended April 30, 2007.

Net revenues, for the three months ended April 30, 2007, were $217.2 million, 53% higher than the net revenues of $142.2 million for the comparable period of 2006. VeriFone's International business increased 97% and VeriFone's North America business increased 19%. The significant increase in sales was driven largely by the acquisition of Lipman, which closed November 1, 2006.

\* \* \*

Gross margins, excluding non-cash acquisition related charges and stock-based compensation expense, expanded to a record 48.1%, for the three months ended April 30, 2007, compared to 45.7% for the comparable period of 2006. GAAP gross margins for the three months ended April 30, 2007, were 41.5%, compared to 44.6% for the three months ended April 30, 2006, as a result of increased amortization of purchased technology assets, the step-up in inventory and stock-based compensation.

\* \* \*

EBITDA, as adjusted, margins for the three months ended April 30, 2007, expanded for the eleventh consecutive quarter and reached a record level of 26.3%, compared to the 21.6% recorded in the three months ended April 30, 2006.

GAAP EPS for the three months ended April 30, 2007 was $0.06 per diluted share, compared to $0.22 per diluted share, for the comparable period of fiscal 2006, due to acquisition related non-cash charges, higher stock-based compensation expense primarily related to the Lipman acquisition and to a significantly higher GAAP tax rate driven by an increase in the valuation allowance related to Lipman. Net income, as adjusted, which excludes non-cash acquisition related charges and debt issuance costs, as well as non-cash stock-based compensation expense and Lipman integration costs, for the three months ended April 30, 2007, increased 50% to $0.39 per diluted share, compared to $0.26 per diluted share, for the three months ended April 30, 2006.

21.    On May 31, 2007, defendants filed with the SEC the Company's financial results for the quarter ended April 30, 2007 pursuant to Form 10-Q, signed by defendants Bergeron and Zwarenstein ("2Q07 Form 10-Q"). The 2Q07 Form 10-Q contained many of the same materially false and misleading statements as defendants had made previously relating to the financial and operational performance of the Company, including a representation on the Company's balance

9

CLASS ACTION COMPLAINT

sheet that it maintained $125,390,000 in inventories as of April 30, 2007. The 2Q07 Form 10-Q contained certifications by defendants Bergeron and Zwarenstein respectively, each of which was virtually identical to those filed in the previous quarter and reproduced above. In addition, the 2Q07 Form 10-Q stated, in part, the following:

> *Unaudited Interim Financial Information*
>
> The accompanying consolidated balance sheet as of April 30, 2007 and the consolidated statements of operations for the three and six months ended April 30, 2007 and 2006 and consolidated statements of cash flows for the six months ended April 30, 2007 and 2006 are unaudited. These unaudited interim condensed consolidated financial statements have been prepared in accordance with U.S. generally accepted accounting principles for interim financial information and Form 10-Q and Article 10 of Regulation S-X. In the opinion of the Company's management, the unaudited interim condensed consolidated financial statements have been prepared on the same basis as the annual consolidated financial statements and include all adjustments of a normal recurring nature necessary for the fair presentation of the Company's financial position as of April 30, 2007 and its results of operations for the three and six months ended April 30, 2007 and 2006, and cash flows for the six months ended April 30, 2007 and 2006.
>
> \*        \*        \*
>
> *Inventories*
>
> Inventories are stated at the lower of standard cost or market. Standard costs approximate the first-in, first-out ("FIFO") method. The Company regularly monitors inventory quantities on hand and records write-downs for excess and obsolete inventories based primarily on the Company's estimated forecast of product demand and production requirements. Such write-downs establish a new cost-basis of accounting for the related inventory. Actual inventory losses may differ from management estimates.
>
> \*        \*        \*
>
> ITEM 4.   CONTROLS AND PROCEDURES
>
> (a) Evaluation of disclosure controls and procedures.
>
> With the participation of our Chief Executive Officer and Chief Financial Officer, management has carried out an evaluation of the effectiveness of our disclosure controls and procedures (as defined in Rule 13a-15(e) and 15d-15(f)

10

under the Securities Exchange Act of 1934). Based upon that evaluation, our Chief Executive Officer and Chief Financial Officer concluded that our disclosure controls and procedures were effective as of the end of the period covered by this report.

(b) Changes in internal control over financial reporting.

No change in our internal control over financial reporting (as defined in Rule 13a-15(f) under the Securities and Exchange Act of 1934) occurred during the third quarter of our fiscal year ended April 30, 2007 that has materially affected, or is reasonably likely to affect, our internal control over financial reporting.

22.     On September 6, 2007, VeriFone published a press release on *Business Wire* which announced its financial results for the third fiscal quarter ended July 31, 2007. This press release stated, in part, the following:

**VeriFone Reports Third Quarter Fiscal 2007 Results**

Record Revenues of $232 million

Record EBITDA, as adjusted, margins of 27.3%

Record EPS, as adjusted, of 42 cents, grew 50%

Record Operating Cash Flow of $43 million

SAN JOSE, Calif.—(BUSINESS WIRE)—Sept. 6, 2007—VeriFone Holdings, Inc. (NYSE:PAY), the global leader in secure electronic payment solutions, today announced financial results for the three months ended July 31, 2007.

Net revenues for the three months ended July 31, 2007, were $231.9 million, 57% higher than the net revenues of $147.6 million for the comparable period of 2006. Net revenues from VeriFone's International business increased 106% while net revenues from VeriFone's North America business increased 22%. The significant increase in net revenues was driven largely by the acquisition of Lipman Electronic Engineering Ltd., which closed November 1, 2006.

Gross margins, excluding non-cash acquisition related charges and stock-based compensation expense, expanded to a record 48.2%, for the three months ended July 31, 2007, compared to 45.9% for the comparable period of 2006. GAAP gross margins for the three months ended July 31, 2007, declined to 44.0% from 45.0% for the three months ended July 31, 2006, primarily as a result of increased amortization of purchased technology assets.

11

CLASS ACTION COMPLAINT

GAAP operating expenses for the three months ended July 31, 2007 were $65.5 million compared to $38.0 million for the comparable period of 2006. This increase was primarily due to the Lipman acquisition and related integration expenses.

EBITDA, as adjusted, margins for the three months ended July 31, 2007, expanded for the twelfth consecutive quarter and reached a record level of 27.3%, compared to the 22.6% recorded in the three months ended July 31, 2006.

GAAP EPS for the three months ended July 31, 2007, was $0.16 per diluted share, compared to $0.24 per diluted share, for the comparable period of fiscal 2006. This decline resulted from acquisition related non-cash charges, higher stock-based compensation expense and a higher GAAP tax rate driven by an increase in the valuation allowance related to the Lipman acquisition. Net income, as adjusted, which excludes non-cash acquisition related charges and debt issuance costs, as well as non-cash stock-based compensation expense and Lipman integration costs, for the three months ended July 31, 2007, increased 50% to $0.42 per diluted share, compared to $0.28 per diluted share, for the comparable period in 2006.

23.     On September 7, 2007, defendants filed with the SEC the Company's financial results for the quarter ended July 31, 2007 pursuant to Form 10-Q, signed by defendants Bergeron and Zwarenstein ("3Q07 Form 10-Q"). The 3Q07 Form 10-Q contained many of the same materially false and misleading statements as defendants had made previously relating to the financial and operational performance of the Company, including a representation on the Company's balance sheet that it maintained $145,398,000 in inventories as of July 31, 2007. The 3Q07 Form 10-Q also contained certifications signed by defendants Bergeron and Zwarenstein which were virtually identical to those filed in the previous quarters and reproduced above. In addition, the 3Q07 Form 10-Q stated, in pertinent part, as follows:

*Unaudited Interim Financial Information*

The accompanying consolidated balance sheet as of July 31, 2007, the condensed consolidated statements of operations for the three and nine months ended July 31, 2007 and 2006, and condensed consolidated statements of cash flows for the nine months ended July 31, 2007 and 2006 are unaudited. These unaudited interim condensed consolidated financial statements have been prepared in accordance with U.S. generally accepted accounting principles for interim financial information and Form 10-Q and Article 10 of Regulation S-X. In the opinion of the Company's management, the unaudited interim condensed

12

CLASS ACTION COMPLAINT

consolidated financial statements have been prepared on the same basis as the annual consolidated financial statements and include all adjustments of a normal recurring nature necessary for the fair presentation of the Company's financial position as of July 31, 2007 and its results of operations for the three and nine months ended July 31, 2007 and 2006, and cash flows for the nine months ended July 31, 2007 and 2006.

*      *      *

*Inventories*

Inventories are stated at the lower of standard cost or market. Standard costs approximate the first-in, first-out ("FIFO") method. The Company regularly monitors inventory quantities on hand and records write-downs for excess and obsolete inventories based primarily on the Company's estimated forecast of product demand and production requirements. Such write-downs establish a new cost-basis of accounting for the related inventory. Actual inventory losses may differ from management estimates.

*      *      *

ITEM 4.   CONTROLS AND PROCEDURES

(a) Evaluation of disclosure controls and procedures.

With the participation of our Chief Executive Officer and Chief Financial Officer, management has carried out an evaluation of the effectiveness of our disclosure controls and procedures (as defined in Rule 13a-15(e) and 15d-15(f) under the Securities Exchange Act of 1934). Based upon that evaluation, our Chief Executive Officer and Chief Financial Officer concluded that our disclosure controls and procedures were effective as of the end of the period covered by this report.

(b) Changes in internal control over financial reporting.

No change in our internal control over financial reporting (as defined in Rule 13a-15(f) under the Securities and Exchange Act of 1934) occurred during the third quarter of our fiscal year ended July 31, 2007 that has materially affected, or is reasonably likely to affect, our internal control over financial reporting.

24.     The statements set forth above were each materially false and misleading when made, and were made by defendants knowingly or with deliberate reckless disregard for the truth. At all times during the Class Period, defendants had materially overstated VeriFone's inventory

13

CLASS ACTION COMPLAINT

1    and earnings reporting, in violation of GAAP, by improperly valuing in-transit inventory and

2    allocating manufacturing and distribution overhead to inventory. In doing so, defendants

3    materially overstated VeriFone's inventories and understated VeriFone's cost of net revenues. At

4    all times during the Class Period, VeriFone's financial results were materially inaccurate and

5    inherently unreliable.

**VI.    THE TRUTH BEGINS TO EMERGE**

7    25.    As alleged above, before the market opened on December 3, 2007, defendants

8    issued a release over *Business Wire* stating that the Company had concluded that its financial

9    statements for the first three quarters of fiscal year 2007 were materially overstated would be

10   restated and should no longer be relied upon.

11   26.    On December 3, 2007, VeriFone shares declined from a closing price on November

12   30, 2007 of $48.03 per share to close at $26.03 per share on December 3, 2007, a decline of $22

13   per share or approximately 45% on heavier than usual volume.

**VII.    VERIFONE'S FALSE FINANCIAL STATEMENTS**

15   27.    VeriFone has admitted that it will restate the Company's audited financial

16   statements for the fiscal quarters ended January 31, April 30 and July 31, 2007. At all relevant

17   times during the Class Period, defendants falsely represented that VeriFone's financial statements

18   were prepared in accordance with GAAP. GAAP are those principles recognized by the

19   accounting profession as the conventions, rules, and procedures necessary to define accepted

20   accounting practice at a particular time. Regulation S-X [17 C.F.R. §210.4-01(a)(1)] states that

21   financial statements filed with the SEC that are not prepared in conformity with GAAP are

22   presumed to be misleading and inaccurate, despite footnote or other disclosure. Regulation S-X

23   requires that interim financial statements must also comply with GAAP, with the exception that

24   interim financial statements need not include disclosure which would be duplicative of disclosures

25   accompanying annual financial statements. 17 C.F.R. §210.10-01(a).

26   28.    The representations by defendants that VeriFone's financial statements were

27   prepared in accordance with GAAP were materially false and misleading because the defendants

28

14

CLASS ACTION COMPLAINT

1   engaged in fraudulent accounting practices which materially overstated previously reported

2   inventories and earnings during the Class Period.

3         29.    At the time VeriFone reported its financial results for the periods ended January 31,

4   April 30 and July 31, 2007 defendants knew and/or acted with deliberate reckless disregard for the

5   truth that VeriFone's accounting was improper, in direct contravention of GAAP, and could have

6   served no purpose other than to overstate VeriFone's reported inventories and earnings.

7         30.    The fact that VeriFone will restate its financial statements is an admission that the

8   financial statements as originally issued were false and that the misstatement of net earnings was

9   material. Furthermore, by acknowledging a need to restate its financial statements, defendants

10   admit that the facts and circumstances giving rise to the errors contained in the originally issued

11   financial statements were known or should have been known to them at the time the statements

12   were publicly disseminated.

13         31.    Due to these accounting improprieties, the Company presented its financial results

14   and statements in a manner which violated GAAP, including the following fundamental accounting

15   principles:

16             a.    The principle that interim financial reporting should be based upon the same

17                   accounting principles and practices used to prepare annual financial

18                   statements was violated (APB No. 28, ¶10);

19             b.    The principle that financial reporting should provide information that is

20                   useful to present and potential investors and creditors and other users in

21                   making rational investment, credit and similar decisions was violated (FASB

22                   Statement of Concepts No. 1, ¶34);

23             c.    The principle that financial reporting should provide information about the

24                   economic resources of an enterprise, the claims to those resources, and

25                   effects of transactions, events and circumstances that change resources and

26                   claims to those resources was violated (FASB Statement of Concepts No. 1,

27                   ¶40);

28

15

CLASS ACTION COMPLAINT

d.      The principle that financial reporting should provide information about an enterprise's financial performance during a period was violated. Investors and creditors often use information about the past to help in assessing the prospects of an enterprise. Thus, although investment and credit decisions reflect investors' expectations about future enterprise performance, those expectations are commonly based at least partly on evaluations of past enterprise performance (FASB Statement of Concepts No. 1, ¶42);

e.      The principle that financial reporting should be reliable in that it represents what it purports to represent was violated. That information should be reliable as well as relevant is a notion that is central to accounting (FASB Statement of Concepts No. 2, ¶¶58-59);

f.      The principle of completeness, which means that nothing is left out of the information that may be necessary to insure that it validly represents underlying events and conditions was violated (FASB Statement of Concepts No. 2, ¶79); and

g.      The principle that conservatism be used as a prudent reaction to uncertainty to try to ensure that uncertainties and risks inherent in business situations are adequately considered was violated. (FASB Statement of Concepts No. ¶¶2, 95, 97).

32.     Further, the undisclosed adverse information concealed by defendants during the Class Period is the type of information which, because of SEC regulations, regulations of the national stock exchanges and customary business practice, is expected by investors and securities analysts to be disclosed and is known by corporate officials and their legal and financial advisors to be the type of information which is expected to be and must be disclosed.

## VIII.   ADDITIONAL SCIENTER ALLEGATIONS

33.     As alleged herein, defendants acted with scienter in that defendants knew or acted with deliberate reckless disregard for the truth that the public documents and statements issued or

16

disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violators of the federal securities laws. As set forth elsewhere herein in detail, defendants, by virtue of their receipt of information reflecting the true facts regarding VeriFone, their control over, and/or receipt and/or modification of VeriFone's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning VeriFone, participated in the fraudulent scheme alleged herein.

34. Defendants knew or disregarded the falsity and misleading nature of the information which they caused to be disseminated to the investing public. The ongoing fraudulent scheme described in this complaint could not have been perpetrated over the substantial period of time, as has occurred, and to the extent that has occurred, without the knowledge and complicity of the personnel at the highest level of the Company, including the Individual Defendants.

35. Defendants had the motive and opportunity to perpetrate the fraudulent scheme and course of business described herein because the Individual Defendants were the most senior officers of VeriFone, issued statements and press releases on behalf of VeriFone and had the opportunity to commit the fraud alleged herein.

36. Furthermore, during the Class Period defendant Bergeron sold 1,028,822 VeriFone shares at artificially inflated prices for proceeds of approximately $41.5 million and defendant Zwarenstein sold 118,585 VeriFone shares at artificially inflated prices for proceeds of approximately $4.6 million.

## IX.    LOSS CAUSATION/ECONOMIC LOSS

37. During the Class Period, as detailed herein, defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated VeriFone's stock price and operated as a fraud or deceit on Class Period purchasers of VeriFone's securities by misrepresenting the Company's operating condition and future business prospects. Defendants

17

achieved this by making positive statements about VeriFone's business and financial results while they knew or recklessly disregarded that the Company's inventories were materially overstated. Later, however, when defendants' prior misrepresentations were disclosed and became apparent to the market, the price of VeriFone securities fell precipitously as the prior artificial inflation came out of VeriFone's stock price. As a result of their purchases of VeriFone securities during the Class Period, plaintiff and other members of the Class suffered economic loss, *i.e.*, damages under the federal securities laws.

38.     As a direct result of defendants' admissions and the public revelations regarding the truth about the condition of VeriFone's business and the negative adverse factors that had been impacting VeriFone's business during the Class Period, the price of VeriFone's stock declined precipitously.

39.     The decline in VeriFone's stock price at the end of the Class Period was a direct result of the nature and extent of defendants' fraud finally being revealed to investors and the market. The timing and magnitude of VeriFone's stock price declines negate any inference that the loss suffered by plaintiff and other Class members was caused by changed market conditions, macroeconomic or industry factors, or Company-specific facts unrelated to the defendants' fraudulent conduct.

## X.     FRAUD-ON-THE-MARKET DOCTRINE

40.     At all relevant times, the market for VeriFone's securities was an efficient market for the following reasons, among others:

(a)     The Company's common stock met the requirements for public listing and was listed and actively traded on the NYSE, a highly efficient market;

(b)     As a regulated issuer, the Company filed periodic public reports with the SEC;

(c)     The Company was covered regularly by securities analysts; and

(d)     The Company regularly issued press releases which were carried by national news wires. Each of these releases was publicly available and entered the public marketplace.

18

CLASS ACTION COMPLAINT

41.     As a result, the market for the Company's securities promptly digested current information with respect to VeriFone from all publicly available sources and reflected such information in the price of the Company's securities. Under these circumstances, all purchasers of the Company's securities during the Class Period suffered similar injury through their purchase of the securities of VeriFone at artificially inflated prices and a presumption of reliance applies.

## XI.   NO SAFE HARBOR

42.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint as they all constituted representations of historical fact. Even if any were forward looking, many of the specific statements pleaded herein were not identified as "forward-looking statements" when made. Further, to the extent any were forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of VeriFone who knew that those statements were false when made.

### FIRST CLAIM FOR RELIEF

#### For Violation of Section 10(b) of the Exchange Act

#### and Rule 10b-5 Promulgated Thereunder Against All Defendants

43.     Plaintiff incorporates ¶¶ 1-41 by reference.

44.     During the Class Period, defendants disseminated or approved the false statements specified above, which they knew or acted with deliberate reckless disregard for the truth that they were materially false and misleading in that they contained material misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

19

CLASS ACTION COMPLAINT

45.     Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 in that they:

(a)     Employed devices, schemes and artifices to defraud;

(b)     Made untrue statements of material facts or omitted to state material facts necessary in order to make statements made, in light of the circumstances under which they were made not misleading; or

(c)     Engaged in acts, practices, and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of VeriFone securities during the Class Period.

46.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for VeriFone's common stock, which inflation was dissipated when the price of Verifone stock declined upon defendants' revelation that Verifone's financial statements for the first three quarters of 2007 were materially overstated and are unreliable. Plaintiff and the Class would not have purchased VeriFone common stock at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by defendants' misleading statements.

47.     As a direct and proximate result of these defendants' wrongful conduct, plaintiff and the other members of the Class suffered damages in connection with their purchases of VeriFone common stock during the Class Period.

## SECOND CLAIM FOR RELIEF

### For Violation of Section 20(a) of the Exchange Act

### Against the Individual Defendants

48.     Plaintiff incorporates ¶¶1-41 by reference.

49.     The Individual Defendants acted as controlling persons of VeriFone within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, participation in and/or awareness of the Company's operations and/or intimate knowledge of the statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and

20

control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which plaintiff contends are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

50.    In particular, the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, are presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

51.    As set forth above, VeriFone and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their positions each as a controlling person, the Individual Defendants are also liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of VeriFone's and the Individual Defendants' wrongful conduct, plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment as follows: declaring this action to be a proper class action; awarding damages, including interest; awarding reasonable costs, including attorneys' fees; and such equitable/injunctive relief as the Court may deem proper.

//

//

//

//

//

//

//

21

**JURY DEMAND**

Plaintiff demands a trial by jury.

DATED: January 7, 2008

KAPLAN FOX & KILSHEIMER LLP

By: _____

Laurence D. King (SBN 206423)
lking@kaplanfox.com
Linda M. Fong (SBN 124232)
lfong@kaplanfox.com
KAPLAN FOX & KILSHEIMER LLP
350 Sansome Street, Suite 400
San Francisco, CA 94104
Telephone: 415-772-4700
Facsimile:  415-772-4707

Joel B. Strauss
jstrauss@kaplfox.com
Jeffrey P. Campisi
jcampisi@kaplanfox.com
KAPLAN FOX & KILSHEIMER LLP
850 Third Avenue, 14th Floor
New York, NY 10022
Telephone:  212-687-1980
Facsimile:  212-687-7714

Karen Hanson Riebel
khriebel@locklaw.com
LOCKRIDGE GRINDAL & NAUEN P.L.L.P
100 Washington Ave. S., Suite 2200
Minneapolis, MN 55401
Telephone: 612-339-6900
Facsimile: 612-339-0981

Attorneys for Plaintiff

22

CLASS ACTION COMPLAINT

## PLAINTIFF CERTIFICATION

I, _Edward W. Feita_ , hereby state:

1.    I have reviewed a Complaint against VeriFone Holdings, Inc., and certain of its officers and directors, and authorized the filing of the same or a similar complaint on my behalf.

2.    I did not purchase any VeriFone Holdings, Inc. securities at the direction of counsel or in order to participate in this private action.

3.    I am willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4.    The following includes all of my transactions in VeriFone Holdings, Inc. securities during the Class Period (March 1, 2007 through November 30, 2007) as defined in the Complaint:

| TRANSACTION (PURCHASE, SALE, EXCHANGE, CALL, PUT, ETC.) | TRADE DATE | PRICE | QUANTITY |
|---|---|---|---|
| Buy | 5/11/2007 | $35.51 | 50 |

5.    I have filed the following civil actions as a representative party on behalf of a class under the federal securities laws during the last three years.

6.    I will not accept any payment for serving as a representative party on behalf of a class except to receive my pro rata share of any recovery, or as ordered or approved by the Court, including the award to a representative party of reasonable costs and expenses including lost wages relating to the representation of the class.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this _28_ day of _December_ , 2007.

_____
(signature)
_Edward W. Feita_
(print name)
_USA_
(county of residence)