COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
CHRISTOPHER P. SEEFER (201197)
100 Pine Street, Suite 2600
San Francisco, CA 94111
Telephone: 415/288-4545
415/288-4534 (fax)
chriss@csgrr.com
– and –
RAMZI ABADOU (222567)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
ramzia@csgrr.com

[Proposed] Lead Counsel for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOEL EICHENHOLTZ, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>VERIFONE HOLDINGS INC., et al.,<br><br>Defendants. | No. CV-07-06140-MHP<br><br>CLASS ACTION<br><br>MEMORANDUM OF LAW IN SUPPORT OF NATIONAL ELEVATOR INDUSTRY PENSION FUND'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND FOR APPROVAL OF ITS SELECTION OF LEAD COUNSEL<br><br>DATE: March 17, 2008<br>TIME: 2:00 p.m.<br>COURTROOM: 15<br>Honorable Marilyn Hall Patel |

## TABLE OF CONTENTS

**Page**

I. PRELIMINARY STATEMENT ....................1

II. FACTUAL BACKGROUND ....................2

III. ARGUMENT ....................4

A. The National Elevator Fund Is the "Most Adequate Plaintiff" ....................4

1. The PSLRA's Lead Plaintiff Provisions ....................4

2. The National Elevator Fund Satisfies the "Lead Plaintiff" Requirements of the Exchange Act ....................5

a. The National Elevator Fund Has Timely Filed Its Motion ....................5

b. The National Elevator Fund Has the Largest Financial Interest in the Relief Sought by the Class ....................5

c. The National Elevator Fund Satisfies Rule 23 ....................5

3. The National Elevator Fund's Selection of Lead Counsel Should be Approved ....................6

IV. CONCLUSION ....................7

# I. PRELIMINARY STATEMENT

Presently pending before the Court are nine putative securities class actions (the "Related Actions") brought on behalf of all those who purchased or otherwise acquired VeriFone Holdings Inc. ("VeriFone" or the "Company") securities between August 31, 2006 and December 3, 2007, inclusive (the "Class Period"). The Related Actions allege violations of §§10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA") (15 U.S.C. §78(j)(b) and 78(t)) and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

The National Elevator Industry Pension Fund ("National Elevator Fund") now moves the Court for an order: (i) appoint it as Lead Plaintiff; and (ii) approving its selection of Coughlin Stoia Geller Rudman & Robbins LLP ("Coughlin Stoia") as lead counsel.[1] 15 U.S.C. §78u-4(a)(3)(B). This motion is made on the grounds that, to its knowledge, the National Elevator Fund is the "most adequate plaintiff" as defined by the PSLRA. *See generally In re Cavanaugh*, 306 F.3d 726 (9th Cir. 2002). The National Elevator Fund suffered losses exceeding $2 million during the Class Period and it otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. *See Richardson v. TVIA, Inc.*, 2007 U.S. Dist. LEXIS 28406, at *7-*8 (N.D. Cal. 2007); Abadou Decl., Ex. B.[2] Finally, the National Elevator Fund has selected counsel with the experience necessary to vigorously and efficiently prosecute this litigation on behalf of the class. *See* Abadou Decl., Ex. D.

---

[1] Prior to selecting a lead plaintiff, the Court must first decide whether to consolidate the Related Actions. *See* 15 U.S.C. §78u-4(a)(3)(B)(ii); *Ruland v. Infosonics Corp.*, 2006 U.S. Dist. LEXIS 79144, at *4 (S.D. Cal. 2006). Here, the Related Actions should be consolidated pursuant to Fed. R. Civ. P. 42(a) because they each involve similar issues of law and fact. *See id*. On January 18, 2008, the parties filed a Stipulation and [Proposed] Order Consolidating Related Cases which the National Elevator Fund joins. *See* Case No. CV-07-06140-MHP, Docket #9.

[2] References to the "Abadou Decl." are to the exhibits attached to the accompanying Declaration of Ramzi Abadou in Support of National Elevator Industry Pension Fund's Motion for Appointment as Lead Plaintiff and for Approval of Its Selection of Lead Counsel dated February 4, 2008 and submitted concurrently herewith.

## II. FACTUAL BACKGROUND

VeriFone engages in the design, marketing and service of transaction automation systems that enable electronic payments between consumers, merchants and financial institutions. On August 31, 2006, VeriFone issued a press release announcing its financial results for the third quarter of 2006, the period ending July 31, 2006. The Company reported earnings per share of $0.37. Defendant Bergeron commented on the results stating in pertinent part as follows:

> "VeriFone has successfully completed its first quarter since our transformative acquisition of Lipman. I am delighted both with the progress that we have made in integrating Lipman's business into VeriFone and in generating another very strong quarter financially and operationally" . . . .
>
> "VeriFone's newly configured worldwide sales force is serving customers through a fully integrated distribution channel and supply chain. At the same time we have been reducing inventory and generating considerable operating cash flow" . . . .
>
> "Based on these results, we are increasing our second quarter internal expectations for net income, as adjusted, per share to be in the range of $0.36 to $0.37. We remain very confident of our prospects for fiscal 2007."

On May 29, 2007, VeriFone issued a press release announcing its financial results for the second quarter of 2007, the period ending April 30, 2007. The Company reported earnings per share of $0.39. Defendant Bergeron commented on the results stating in pertinent part as follows:

> "I am pleased to report on another very successful quarter for VeriFone as we once again achieved record profitability . . . . During the quarter, our record margins drove our robust EPS growth, and also resulted in strong cash flow . . . . We were especially pleased with our continuing success of our wireless products and were delighted with the resurgence of our North American business which grew sequentially 8 percent from the previous quarter."
>
> "Based on these results and the $4 million of revenue which has been recognized in the third quarter, we are increasing our third quarter internal expectations for net revenue to $225-$227 million and increasing our guidance for net income, as adjusted, per share to a range of $0.39-$0.40. We remain confident of our prospects for the remainder of fiscal 2007."

On June 19, 2007, VeriFone issued a press release announcing that it had priced $275 million principal amount of 1.375% Senior Convertible Notes due 2012. On September 6, 2007, VeriFone issued a press release announcing its financial results for the third quarter of 2007, the period ending July 31, 2007. For the quarter, the Company reported earnings per share of $0.42. Defendant Bergeron commented on the results stating in pertinent part as follows:

> "I am extremely pleased to report on another outstanding quarter as we once again achieved exceptional financial results . . . . During the quarter, we achieved record revenues and record gross and operating margins, all which led to strong EPS growth . . . . Our North American business continued to surge, growing 9% sequentially. Our compelling portfolio of wireless solutions and our strength in emerging markets were also significant factors driving our success this quarter."
>
> "We are increasing our internal expectations for the fourth quarter and now expect to repeat these record third quarter results. Our guidance for the fourth quarter, therefore, is for net revenue of $231-$233 million and net income, as adjusted, per share of $0.41-$0.42. As a result, we are also increasing our full year fiscal year 2007 expectations for net income, as adjusted per share to $1.59 to $1.60 per share. As well, given the out-performance in profitability that we have consistently enjoyed since the closing of the Lipman acquisition last November, we are now taking this opportunity to update our long term financial model. We are reaffirming our revenue growth rate projection in the 10%-15% range and we are increasing our margin expectations as reflected in the table below."

The statements referenced above were each materially false and misleading when issued because they misrepresented and failed to disclose the following material adverse facts: (i) the Company was materially overstating its financial results by failing to properly value its inventory and it was materially understating its cost of net revenues; (ii) the Company was not following its publicly stated accounting policies; and (iii) as a result of the foregoing, the Company's financial statements were not prepared in accordance with Generally Accepted Accounting Principles ("GAAP") and therefore were materially false and misleading.

Then, on December 3, 2007, prior to the opening of the market, VeriFone issued a press release announcing that "it has concluded that its unaudited interim consolidated financial statements for the three months ended January 31, 2007, the three and six months ended April 30, 2007 and the three and nine months ended July 31, 2007 should no longer be relied upon, principally due to errors in accounting related to the valuation of in-transit inventory and allocation of manufacturing and distribution overhead to inventory, each of which affects VeriFone's reported costs of net revenues." The Company further reported that it had materially overstated inventories and materially understated cost of net revenues for interim periods in 2007. The press release detailed the amounts of the overstatement stating in pertinent part as follows:

> Based on its review to date, management currently anticipates that the restatement will result in reductions to previously reported inventories of approximately $7.7 million, $16.5 million and $30.2 million as of January 31, 2007, April 30, 2007 and July 31, 2007, respectively, and reductions to previously reported pre tax income of approximately $8.9 million, $7.0 million and $13.8 million for the

> three month periods ended January 31, 2007, April 30, 2007 and July 31, 2007, respectively. VeriFone is currently evaluating the anticipated effect of the restatement on after-tax income for those periods.

In response to this announcement, the price of VeriFone stock plummeted, falling from $48.03 per share on November 30, 2007 to as low as $23.67 per share in intra-day trading on December 3, 2007, on extremely heavy trading volume.

## III. ARGUMENT

### A. The National Elevator Fund Is the "Most Adequate Plaintiff"

#### 1. The PSLRA's Lead Plaintiff Provisions

The PSLRA governs the appointment of a lead plaintiff in "each private action arising under the [Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(1) and (a)(3)(B)(i). First, the plaintiff who files the initial action must publish a notice to the class, within 20 days of filing the action, informing class members of their right to file a motion for appointment as lead plaintiff. 15 U.S.C. §78u-4(a)(3)(A)(i). Here, the first notice regarding the pendency of these actions was published on *Business Wire*, a national, business-oriented newswire service, on December 4, 2007. *See* Abadou Decl., Ex. A. Within 60 days after publication of the notice, any "person or group of persons" who are members of the proposed class may apply to the court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action. 15 U.S.C. §§78u-4(a)(3)(A) and (B).

Second, the PSLRA provides that, within 90 days after publication of the notice, the court shall consider any motion made by a class member and shall appoint as lead plaintiff the member or members of the class that the court determines to be most capable of adequately representing the interests of class members. 15 U.S.C. §78u-4(a)(3)(B). In determining the "most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this [Act] is the person or group of persons that
>
> > (aa) has either filed the complaint or made a motion in response to a notice . . .;
> >
> > (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii).

**2. The National Elevator Fund Satisfies the "Lead Plaintiff" Requirements of the Exchange Act**

**a. The National Elevator Fund Has Timely Filed Its Motion**

The National Elevator Fund has timely filed its motion, within 60 days of publication of notice on December 4, 2007, and has also duly signed and filed a certification evidencing, among other things, its willingness to serve as a representative party on behalf of the class. *See* Abadou Decl., Ex. C. Accordingly, the National Elevator Fund has satisfied the individual requirements of 15 U.S.C. §78u-4(a)(3)(B) and is entitled to have its application for appointment as lead plaintiff considered by the Court.

**b. The National Elevator Fund Has the Largest Financial Interest in the Relief Sought by the Class**

During the Class Period, the National Elevator Fund purchased over 242,000 shares of VeriFone stock and suffered losses exceeding $2 million in connection therewith. *See* Abadou Decl., Ex. C. To its knowledge, this represents the largest financial interest in the relief sought by the class. *See Cavanaugh*, 306 F.3d at 732.

**c. The National Elevator Fund Satisfies Rule 23**

In addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I). Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Of the four prerequisites to class certification, only two – typicality and adequacy – directly address the personal characteristics of the class representative. *See Richardson*, 2007 U.S. Dist. LEXIS 28406, at *15. Consequently, in deciding a motion to serve as lead plaintiff, the Court

should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the Lead Plaintiff moves for class certification. *See id*.

Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical of those of the class. Typicality exists where the plaintiffs' claims arise from the same series of events and are based on the same legal theories as the claims of all the class members. *See Richardson*, 2007 U.S. Dist. LEXIS 285406, at *16. Here, the National Elevator Fund satisfies this requirement because, just like all other class members, it: (1) purchased VeriFone shares during the Class Period; (2) purchased VeriFone shares in reliance upon the allegedly materially false and misleading statements issued by defendants; and (3) suffered damages thereby. *See id*. Thus, the National Elevator Fund's claims are typical of those of other class members since its claims and the claims of other class members arise out of the same course of events.

Under Rule 23(a)(4), a representative party must also "fairly and adequately protect the interests of the class." The standard for adequacy of representation under Rule 23(a)(4) is met by: (1) the absence of potential conflict between the named plaintiffs and the class members; and (2) the class representatives' choice of counsel who is qualified, experienced and able to vigorously conduct the proposed litigation. *See Richardson*, 2007 U.S. Dist. LEXIS 28406, at *16. Here, the National Elevator Fund is an adequate representative. As evidenced by its injuries, the National Elevator Fund's interests is clearly aligned with the members of the class who also suffered damages due to defendants' wrongdoing and there is no evidence of any antagonism between the National Elevator Fund's interest and those of the other members of the class.

### 3. The National Elevator Fund's Selection of Lead Counsel Should be Approved

The PSLRA vests authority in the lead plaintiff to select and retain counsel to represent the class, subject to court approval. *See* 15 U.S.C. §78u-4(a)(3)(B)(v). The Court should not disturb lead plaintiff's choice of counsel unless necessary to "protect the interests of the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(aa); *see Cavanaugh*, 306 F.3d at 733 n.11. The National Elevator Fund has selected Coughlin Stoia as lead counsel for the class.

Coughlin Stoia is a 180-lawyer law firm that is actively engaged in complex litigation, emphasizing securities, consumer, and antitrust class actions. *See Cortese v. Radian Group Inc.*, No. 07-3375, slip op at 14 (E.D. Pa. Jan. 30, 2008) ("'The firm is comprised of probably the most prominent securities class action attorneys in the country.'"). Abadou Decl., Ex. E. Coughlin Stoia possesses extensive experience litigating securities class actions and has successfully prosecuted numerous securities fraud class actions on behalf of injured investors. *See In re Cardinal Health, Inc. Sec. Litig.*, 226 F.R.D. 298, 307 (S.D. Ohio 2005) ("the Court finds that [Coughlin Stoia] will represent deftly the class's interests"). Coughlin Stoia's securities department includes numerous trial attorneys and many former federal and state prosecutors, and utilizes an extensive group of in-house experts to aid in the prosecution of complex securities issues. *See* Abadou Decl., Ex. D.

Thus, the Court may be assured that in the event this motion is granted, the members of the class will receive the highest caliber of legal representation available from Coughlin Stoia. *See In re Impac Mortgage Sec. Litig.*, 2006 U.S. Dist. LEXIS 40607, at *36 (C.D. Cal. 2006) ("There is no real dispute among the movants regarding [Firm's] qualifications to prosecute this action.); *Teamsters Local 617 Pension & Welfare Funds v. Apollo Group*, 2007 U.S. Dist. LEXIS 67354 (D. Ariz. 2007) ("A careful review of the resume[] for [the Firm] persuades the court that [it] possesses the requisite degree of experience and qualifications to adequately represent the interests of the putative class.").

## IV. CONCLUSION

For all the foregoing reasons, the National Elevator Fund respectfully requests that the Court: (i) appoint the National Elevator Fund as Lead Plaintiff; (ii) approval the National Elevator Fund's selection of Lead Counsel; and (iii) grant such other relief as the court may deem just and proper.

DATED: February 4, 2008

Respectfully submitted,

COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
RAMZI ABADOU

s/ Ramzi Abadou
RAMZI ABADOU

655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
CHRISTOPHER P. SEEFER
100 Pine Street, Suite 2600
San Francisco, CA 94111
Telephone: 415/288-4545
415/288-4534 (fax)

[Proposed] Lead Counsel for Plaintiffs

S:\CasesSD\Verifone 07\BRF00048902-LP.doc

CERTIFICATE OF SERVICE

I hereby certify that on February 4, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I further certify that I caused this document to be forwarded to the following designated Internet site at: http://securities.csgrr.com/.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on February 4, 2008.

s/ Ramzi Abadou
RAMZI ABADOU

COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
655 West Broadway, Suite 1900
San Diego, CA 92101-3301
Telephone: 619/231-1058
619/231-7423 (fax)

E-mail: ramzia@csgrr.com

# Mailing Information for a Case 3:07-cv-06140-MHP

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Brendan P. Cullen**
  cullenb@sullcrom.com
- **Daniel C. Girard**
  girardgibbs@girardgibbs.com,cma@girardgibbs.com
- **Jonathan Krasne Levine**
  jkl@girardgibbs.com,mav@girardgibbs.com
- **Aaron M. Sheanin**
  ams@girardgibbs.com,AMV@girardgibbs.com
- **Michael Howard Steinberg**
  steinbergm@sullcrom.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)