# EXHIBIT A

ORIGINAL
FILED

DEC 1 1 2007

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1  SCOTT + SCOTT LLP
   Arthur L. Shingler III (CA Bar No. 181719)
2  600 B Street, Suite 1500
   San Diego, CA 92101
3  Tel.: 619/233-4565
   Fax: 619/233-0508
4  Email: ashingler@scott-scott.com

5  SCOTT + SCOTT, LLP
   David R. Scott
6  108 Norwich Avenue
   P.O. Box 192
7  Colchester, CT 06415
   Tel.: 860/537-5537
8  Fax.: 860/-537-4432
   Email: drscott@scott-scott.com

9

10  *Counsel for Plaintiff*

E-FILING

ADR

PVT

11        **UNITED STATES DISTRICT COURT**
          **NORTHERN DISTRICT OF CALIFORNIA**

12
    CHARLES R. KING, derivatively on          : Civil Action No.
13  behalf of VERIFONE HOLDINGS,             :
    INC.,                                     :
14                                            :  C07  07439  PVT
                             Plaintiff,       :
15                                            :
    v.                                        :  **VERIFIED DERIVATIVE COMPLAINT FOR**
16                                            :  **BREACH OF FIDUCIARY DUTY**
    DOUGLAS G. BERGERON, JAMES C.            :
17  CASTLE, LESLIE G. DENEND, ALEX           :
    W. (PETE) HART, ROBERT B.                :
18  HENSKE, EITAN RAFF, CHARLES R.           :
    RINEHART, COLLIN E. ROCHE,               :
19  CRAIG A. BONDY, AND BARRY                :
    ZWARENSTEIN,                             :
20                                            :
                             Defendants.      :
21                                            :
    and                                       :
22                                            :
    VERIFONE HOLDINGS, INC.,                 :
23                                            :
                    Nominal Defendant.        :
24  _____:

25

26

27

28

BY FAX

Plaintiff alleges upon personal knowledge as to Plaintiff and Plaintiff's own acts, and as to all other matters, upon information and belief based upon, *inter alia*, the investigation made by and through Plaintiff's attorneys, including a review of the public filings of VeriFone Holdings, Inc. ("VeriFone" or the "Company") including, without limitation, Forms 10-K and 10-Q, annual reports, proxy statements, press releases, published reports and news articles, as follows:

## INTRODUCTION AND OVERVIEW

1.    This is a stockholder's derivative action brought on behalf of VeriFone by one of its shareholders against its entire board of directors and/or several of the Corporation's top officers for intentional, reckless and/or negligent breaches of fiduciary duties of loyalty, care, diligence and candor, waste of corporate assets and gross mismanagement, arising out of their allowing VeriFone to make material misrepresentations and misleading statements which the Company knew, deliberately disregarded and/or negligently disregarded were false and materially misleading at the time of such publication, and/or omitted to reveal material information necessary to make the Company's' statements, in light of such material omissions, not materially false and misleading at that time.

2.    Prior to and continuing between August 31, 2006, and November 30, 2007 (the "Relevant Period"), Defendants allowed or acquiesced in the issuance of a series of false and materially misleading statements and omissions which: (i) deceived the investing public regarding VeriFone's business operations, management and the intrinsic value of VeriFone common stock; (ii) made it appear that VeriFone had adopted a Company-wide system of internal controls and procedures to ensure that VeriFone's accounting and financial statements accurately reflected the true financial condition of the Company at all times during the Relevant Period; (iii) enabled the Company to artificially inflate the price of VeriFone shares; and (iv) enabled VeriFone insiders to sell millions of dollars of their privately held VeriFone shares while in possession of material adverse non-public information about the Company.

3.    The Company's false and misleading statements caused VeriFone's shares to trade at artificially inflated prices, reaching a Relevant Period high of over $50.00 per share.

**VERIFIED DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY**                    - 1 -

4.      In fact, unbeknownst to investors, the truth about VeriFone was that the Company's prior financial results had been overstated, as were the Company's results of operations and foreseeable business prospects.

5.      On December 3, 2007, investors were shocked by a Company a press release that revealed that VeriFone's previously reported financial statements and reports could no longer be relied upon and that the Company financial results for at least the previous three quarters would be restated.

6.      The revelations that the Company had materially misrepresented its financial and operational condition, its controls and procedures, as well as its results of operations revealed on December 3, 2007, decimated shares of VeriFone.  On that day, shares of the Company plummeted over 45.8% in the single trading day – falling over $22.00 per share to close at $26.03 on very high trading volume of over 49 million shares traded.

7.      As a result of Defendants' illegal conduct, VeriFone has been significantly and materially damaged.  First, the false statements and material omissions issued by the Company that artificially inflated the price of VeriFone's common stock have resulted in VeriFone suffering significant losses, as well as being named a defendant in securities fraud class action lawsuits.  These class action lawsuits, filed in federal district court in California, seek substantial damages and will cost the Company millions to defend and likely millions more to settle or satisfy any judgment against it.  Moreover, these revelations of violations of the securities laws have badly damaged VeriFone's corporate image and goodwill.  For at least the foreseeable future, VeriFone will suffer from what is known as the "liar's discount," a term applied to the stocks of companies who have been implicated in illegal behavior and have misled securities analysts and the investing public, such that, for example, VeriFone's ability to raise equity capital on favorable terms in the future will be impaired.

8.      The Defendants and Management of VeriFone are antagonistic to this lawsuit and making demand on the Board of Directors would be futile.  The majority of VeriFone's Board have extremely close alliances and related transactions with and allegiances to the Defendants that made these material misrepresentations and omissions regarding the Company's financials.

**VERIFIED DERIVATIVE COMPLAINT FORBREACH OF FIDUCIARY DUTY**                    - 2 -

**JURISDICTION AND VENUE**

9.    (a)    This Court has jurisdiction over all claims asserted herein under 28 U.S.C. § 1332, as complete diversity exists between plaintiff and each defendant and the amount in controversy exceeds the jurisdictional minimum of this Court.

(b)    Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391 because VeriFone maintains its headquarters within this District, and because many of the acts complained of herein occurred in this District; and

(c)    Several of the defendants named in this shareholders' derivative action are residents of or have conducted business relating to VeriFone's affairs in this Judicial District.

10.    Plaintiff brings this action on behalf of VeriFone pursuant to Rule 23.1 of the Federal Rules of Civil Procedure based on principles of state law which prohibit breach of the federal securities laws by officers and directors of public corporations and breach of the fiduciary duty of corporate candor by corporate fiduciaries.  This action is not a collusive one designed to confer jurisdiction on a court of the United States which it would not otherwise have.

**THE PARTIES**

11.    Plaintiff Charles R. King, resident of Port Saint Lucie, Florida, is, and at all times relevant to the allegations raised herein was, an owner of shares of VeriFone stock. Plaintiff brings this action derivatively in the right of and for the benefit of VeriFone and its shareholders. Plaintiff will fairly and adequately represent the interests of VeriFone and its shareholders in enforcing the rights of the Company.

12.    Nominal Defendant VeriFone is a Delaware corporation with its principal executive offices located at 2099 Gateway Place, Suite 600, San Jose, California. VeriFone describes itself as "the global leader in secure electronic payment technologies."  VeriFone's customers include financial institutions, payment processors, petroleum companies, retailers, government organizations, and healthcare companies, as well as independent sales organizations in North America, Europe, the Middle East, Africa, Asia/Pacific and Latin America.

13.    Defendant Douglas G. Bergeron ("Bergeron") is and at all times relevant to the allegations raised herein was Chairman and Chief Executive Officer ("CEO") of the Company since

**VERIFIED DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY**                    - 3 -

1  July 2001. During the Relevant Period, defendant Bergeron signed the Company's SEC filings.

2  According to the Company's 2007 Proxy statement, as of December 31, 2006, defendant Bergeron

3  owned or controlled 3,412,483 shares of VeriFone stocks, representing 4.2% of the Company's

4  outstanding shares of common stock. In addition to his dominance and control over VeriFone as a

5  result of his board membership and position as CEO of the Company, defendant Bergeron also has

6  longstanding personal and professional entanglements and relationships with other board members,

7  which have prevented them and is preventing him from acting independently to fulfill fiduciary

8  duties owed to VeriFone and its shareholders.

9      14.    Defendant James C. Castle ("Castle") is and at all times relevant to the allegations

10  raised herein was a director of the Company since January 2005. According to the Company's 2007

11  Proxy Statement, as of December 31, 2006, defendant Castle owned or controlled 19,500 shares of

12  VeriFone stock.  In addition to his dominance and control over VeriFone as a result of his

13  chairmanship over the Board of Directors, defendant Castle also has longstanding personal and

14  professional entanglements and relationships with other board members, which have prevented them

15  and is preventing him from acting independently to fulfill fiduciary duties owed to VeriFone and its

16  shareholders.

17      15.    Defendant Leslie G. Denend ("Denend") is and at all times relevant to the allegations

18  raised herein was a director of the Company since 2005.  According to the Company's 2007 Proxy

19  Statement, as of December 31, 2006, defendant Denend owned or controlled 15,000 shares of

20  VeriFone stock. In addition to his dominance and control over VeriFone as a result of his Board

21  membership, defendant Denend also has longstanding personal and professional entanglements and

22  relationships with other board members, which have prevented them and is preventing her from

23  acting independently to fulfill fiduciary duties owed to VeriFone and its shareholders.

24      16.    Defendant Alex W. (Pete) Hart ("Hart") is and at all times relevant to the allegations

25  raised herein was a director of the Company since 1997. According to the Company's 2007 Proxy

26  Statement, as of December 31, 2006, defendant Hart owned or controlled 1,000 shares of VeriFone

27  stock. In addition to his dominance and control over VeriFone as a result of his Board membership,

28  defendant Hart also has longstanding personal and professional entanglements and relationships with

**VERIFIED DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY**                - 4 -

1   other board members, which have prevented them and is preventing him from acting independently
2   to fulfill fiduciary duties owed to VeriFone and its shareholders.

3         17.     Defendant Robert B. Henske ("Henske") is and at all times relevant to the allegations
4   raised herein was a director of the Company since 2005. According to the Company's 2007 Proxy
5   Statement, as of December 31, 2006, defendant Henske owned or controlled 15,000 shares of
6   VeriFone stock. In addition to his dominance and control over VeriFone as a result of his Board
7   membership, defendant Henske also has longstanding personal and professional entanglements and
8   relationships with other board members, which have prevented them and is preventing him from
9   acting independently to fulfill fiduciary duties owed to VeriFone and its shareholders.

10        18.     Defendant Eitan Raff ("Raff") is and at all times relevant to the allegations raised
11   herein was a director of the Company since 2007. In addition to his dominance and control over
12   VeriFone as a result of his Board membership, defendant Raff also has longstanding personal and
13   professional entanglements and relationships with other board members, which have prevented them
14   and is preventing him from acting independently to fulfill fiduciary duties owed to VeriFone and its
15   shareholders.

16        19.     Defendant Charles R. Rinehart ("Rinehart") is and at all times relevant to the
17   allegations raised herein was a director of the Company since 2006.. In addition to his dominance
18   and control over VeriFone as a result of his Board membership, defendant Rinehart also has
19   longstanding personal and professional entanglements and relationships with other board members,
20   which have prevented them and is preventing him from acting independently to fulfill fiduciary
21   duties owed to VeriFone and its shareholders.

22        20.     Defendant Collin E. Roche ("Roche") is and at all times relevant to the allegations
23   raised herein was a director of the Company since 2002 and is a principal of GTCR Golder Rauner,
24   L.L.C. ("GTCR"), which owns 20% of VeriFone's outstanding shares of common stock. According
25   to the Company's 2007 Proxy Statement, as of December 31, 2006, defendant Roche, together with
26   defendant Craig A. Bondy and three funds controlled by GTCR, owned or controlled 16,458,911
27   shares of VeriFone stock. In addition to his dominance and control over VeriFone as a result of his
28   Board membership, defendant Roche also has longstanding personal and professional entanglements

1  and relationships with other board members, which have prevented them and is preventing him from

2  acting independently to fulfill fiduciary duties owed to VeriFone and its shareholders.

3      21.    Defendant Craig A. Bondy ("Bondy") was a director of the Company since 2002 until

4  October 2007.  While he was a VeriFone director, Bondy was a principal of GTCR Golder Rauner,

5  L.L.C. ("GTCR"), which owns 20% of VeriFone's outstanding shares of common stock.  According

6  to the Company's 2007 Proxy Statement, as of December 31, 2006, defendant Bondy, together with

7  defendant Roche and three funds controlled by GTCR, owned or controlled 16,458,911 shares of

8  VeriFone stock.

9      22.    Defendant Barry Zwarenstein ("Zwarenstein") is and at all times relevant to the

10 allegations raised herein was Chief Financial Officer and Principal Accounting Officer of the

11 Company.  During the Relevant Period, defendant Zwarenstein signed and certified the Company's

12 SEC Filings, including but not limited to VeriFone's Form(s) 10-Q and its fiscal 2006 Form 10-K.

13 According to the Company's 2007 Proxy Statement, as of December 31, 2006, defendant

14 Zwarenstein owned or controlled 165,187 shares of VeriFone stock.

15     23.    Defendants Bergeron, Castle, Denend, Hart, Henske, Raff, Rinehart and Roche

16 represent the Company's current Board members and are collectively referred to hereinafter as the

17 "Director Defendants."  Defendants Bergeron, Castle, Denend, Hart, Henske, Raff, Rinehart, Roche,

18 Bondy and Zwarenstein represent are collectively referred to hereinafter as the "Defendants."

19                    **DIRECTOR DEFENDANTS' DUTIES**

20     24.    By reason of their positions as directors, officers, and/or fiduciaries of the Company

21 and because of their ability to control the business and corporate affairs of the Company, the

22 Director Defendants owed the Company and its shareholders fiduciary obligations of trust, loyalty,

23 good faith and due care, and were and are required to use their utmost ability to control and manage

24 the Company in a fair, just, honest and equitable manner.  The Director Defendants were and are

25 required to act in furtherance of the best interests of the Company and its shareholders so as to

26 benefit all shareholders equally and not in furtherance of their personal interest or benefit.

27     25.    Each director and/or officer of the Company owes to it and its shareholders the

28 fiduciary duty to exercise good faith and diligence in the administration of the affairs of the

**VERIFIED DERIVATIVE COMPLAINT FORBREACH OF FIDUCIARY DUTY**                    - 6 -

1  Company and in the use and preservation of its property and assets, as well as the highest obligations

2  of fair dealing. In addition, as officers and/or directors of a publicly held company, the Director

3  Defendants had a duty to promptly disseminate accurate and truthful information with regard to the

4  Company's revenue, margins, operations, performance, management, projections and forecasts so

5  that the market price of the Company's stock would be based on truthful and accurate information.

6      26.     The Director Defendants, because of their positions of control and authority as

7  directors and/or officers of the Company, were able to and did, directly and/or indirectly, exercise

8  control over the wrongful acts complained of herein, as well as the contents of the various public

9  statements issued by the Company. Because of their advisory, executive, managerial and directorial

10  positions with the Company, each of the Defendants had access to adverse non-public information

11  about the financial condition, operations, and improper representations of the Company.

12      27.     At all times relevant hereto, each of the Director Defendants was the agent of each of

13  the other Defendants and of the Company, and was at all times acting within the course and scope of

14  such agency.

15      28.     To discharge their duties, the directors and officers of the Company were required to

16  exercise reasonable and prudent supervision over the management, policies, practices and controls of

17  the financial affairs of the Company. By virtue of such duties, the directors and officers of the

18  Company were required to, among other things:

19      •   ensure that the Company complied with its legal obligations and requirements,

20          including acting only within the scope of its legal authority and disseminating

21          truthful and accurate statements to the SEC and the investing public;

22      •   conduct the affairs of the Company in an efficient, business-like manner so as to

23          make it possible to provide the highest quality performance of its business, to avoid

24          wasting the Company's assets, and to maximize the value of the Company's stock;

25      •   properly and accurately guide investors and analysts as to the true financial condition

26          of the Company at any given time, including making accurate statements about the

27          Company's financial results and prospects, and ensuring that the Company

28          maintained an adequate system of financial controls such that the Company's

**VERIFIED DERIVATIVE COMPLAINT FORBREACH OF FIDUCIARY DUTY**                - 7 -

1    financial reporting would be true and accurate at all times;

2    • remain informed as to how the Company conducted its operations, and, upon receipt

3       of notice or information of imprudent or unsound conditions or practices, make

4       reasonable inquiry in connection therewith, and take steps to correct such conditions

5       or practices and make such disclosures as necessary to comply with federal and state

6       securities laws; and

7    • ensure that the Company was operated in a diligent, honest and prudent manner in

8       compliance with all applicable federal, state and local laws, rules and regulations.

9    29.    Each Director Defendant, by virtue of his position as a director and/or officer, owed

10   to the Company and to its shareholders the fiduciary duties of loyalty, good faith and the exercise of

11   due care and diligence in the management and administration of the affairs of the Company, as well

12   as in the use and preservation of its property and assets. The conduct of the Director Defendants

13   complained of herein involves a knowing and culpable violation of their obligations as directors and

14   officers of the Company, the absence of good faith on their part, and a reckless disregard for their

15   duties to the Company and its shareholders that Director Defendants were aware or should have been

16   aware posed a risk of serious injury to the Company. The conduct of the Director Defendants who

17   were also officers and/or directors of the Company during the Relevant Period have been ratified by

18   the remaining Director Defendants who collectively comprised all of the Company's Board during

19   the Relevant Period.

20   30.    Director Defendants breached their duties of loyalty and good faith by allowing

21   Defendants to cause, or by themselves causing, the Company to misrepresent its financial results and

22   future prospects, as detailed herein infra, and by failing to prevent any Defendant(s) from taking

23   such illegal actions.

24   **CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION**

25   31.    In committing the wrongful acts alleged herein, Defendants have pursued, or joined in

26   the pursuit of, a common course of conduct, and have acted in concert with and conspired with one

27   another in furtherance of their common plan or design. In addition to the wrongful conduct herein

28

**VERIFIED DERIVATIVE COMPLAINT FORBREACH OF FIDUCIARY DUTY**                    - 8 -

1  alleged as giving rise to primary liability, Defendants further aided and abetted and/or assisted each

2  other in breaching their respective duties.

3        32.     During all times relevant hereto, Defendants collectively and individually initiated a

4  course of conduct that was designed to and did: (i) deceive the investing public regarding VeriFone's

5  business operations, management and the intrinsic value of VeriFone common stock; (ii) make it

6  appear that VeriFone had adopted a Company-wide system of internal controls and procedures to

7  ensure that VeriFone's accounting and financial statements accurately reflected the true financial

8  condition of the Company at all times during the Relevant Period; (iii) enable the Company to

9  artificially inflate the price of VeriFone shares; and (iv) enable VeriFone insiders to sell millions of

10  dollars of their privately held VeriFone shares while in possession of material adverse non-public

11  information about the Company.  In furtherance of this plan, conspiracy and course of conduct,

12  Defendants collectively and individually took the actions set forth herein.

13        33.     Defendants engaged in a conspiracy, common enterprise and/or common course of

14  conduct during the Relevant Period. During this time, Defendants caused the Company to conceal

15  the true fact that the Company was misrepresenting its financial well-being and future business

16  prospects.

17        34.     The purpose and effect of Defendants' conspiracy, common enterprise, and/or

18  common course of conduct was, among other things, to disguise Defendants' violations of federal

19  securities law, breaches of fiduciary duty, waste of corporate assets and unjust enrichment; and to

20  conceal adverse information concerning the Company's operations, financial condition and future

21  business prospects.

22        35.     Defendants accomplished their conspiracy, common enterprise and/or common

23  course of conduct by causing the Company to purposefully, recklessly or negligently release

24  improper statements.  Because the actions described herein occurred under the authority of the

25  Board, each of the Director Defendants was a direct, necessary and substantial participant in the

26  conspiracy, common enterprise and/or common course of conduct complained of herein.

27        36.     Each of the Defendants aided and abetted and rendered substantial assistance in the

28  wrongs complained of herein.  In taking such actions to substantially assist the commission of the

**VERIFIED DERIVATIVE COMPLAINT FORBREACH OF FIDUCIARY DUTY**      - 9 -

1  wrongdoing complained of herein, each Defendant acted with knowledge of the primary

2  wrongdoing, substantially assisted the accomplishment of that wrongdoing, and was aware of his

3  overall contribution to and furtherance of the wrongdoing.

4      37.    As members of the Board of Directors of VeriFone, the directors named herein as

5  Defendants were themselves directly responsible for authorizing or permitting the authorization of,

6  or failing to monitor, the practices which resulted in the misappropriation of confidential corporate

7  information and violation of the federal securities laws as alleged herein.  Each of them had

8  knowledge of and actively participated in and approved of the wrongdoings alleged or abdicated his

9  responsibilities with respect to these wrongdoings.  The alleged acts of wrongdoing subjected

10  VeriFone to unreasonable risks of loss.

11      38.    By reason of their membership on the VeriFone Board of Directors and positions as

12  executive officers of the Company, the Defendants were each controlling persons of VeriFone and

13  had the power and influence to cause, and did cause, the Company to engage in and/or permit the

14  conduct complained of herein.

15                **SUBSTANTIVE ALLEGATIONS**

16              **Materially False and Misleading**
             **Statements Made During the Relevant Period**
17
         39.    On August 31, 2006, the inception of the Relevant Period, Defendants allowed the
18
   Company to publish a release announcing purported strong results for the fiscal third quarter of
19
   2006, the period ended July 31, 2006.  This release stated, in part, the following:
20

21        **VeriFone Reports Third Quarter Fiscal 2006 Results; Record Third Quarter**
          **Revenues of $148 Million; EBITDA Margins, as Adjusted, Increased to 22.6%**
22        **for the Quarter; Third Quarter GAAP Net Income Increased 156%**

23        VeriFone Holdings, Inc. (NYSE: PAY), a leading global provider of technology that
          enables electronic payment transactions, today announced financial results for the
24        three months ended July 31, 2006.

25        Net revenues for the three months ended July 31, 2006, were $147.6 million, an
          increase of 17% over net revenues of $125.7 million for the comparable period of
26        fiscal 2005. The increase was driven by a 19% increase in net revenues from
          VeriFone's North America business and a 16% increase in net revenues in
27        VeriFone's International business.

28

**VERIFIED DERIVATIVE COMPLAINT FORBREACH OF FIDUCIARY DUTY**          - 10 -

Gross margins, under generally accepted accounting principles (GAAP), for the three months ended July 31, 2006, were 45.0%, compared to 40.7% for the three months ended July 31, 2005. Gross margins, excluding non-cash amortization of purchased intangibles and stock-based compensation expense, expanded for the seventh consecutive quarter and reached 45.9% compared to 42.0% for the three months ended July 31, 2005.

Net income for the three months ended July 31, 2006, was $16.8 million, or $0.24 per diluted share, compared to $6.5 million, or $0.10 per diluted share, for the comparable period of fiscal 2005. Net income, as adjusted, which excludes non-cash amortization of purchased intangibles and debt issuance costs, as well as non-crib stock-based compensation expense, for the three months ended July 31, 2006, was $19.7 million, or $0.28 per diluted share, compared to $13.1 million, or $0.20 per diluted share, for the comparable period of fiscal 2005.

40.    The August 31, 2006 release also quoted defendant Bergeron, in part, as follows:

"We are once again extremely pleased with the consistency of our quarterly results, demonstrated by our tenth consecutive quarter with double digit revenue growth and our eighth consecutive quarter of expanded EBITDA as adjusted margins, which reached a record level of 22.6% in the quarter," said Douglas G. Bergeron, Chairman and Chief Executive Officer. "We are expecting to close the acquisition of Lipman Electronic Engineering Ltd., by November 1, 2006, and remain confident that we will receive clearance by the United States Department of Justice very shortly. We remain on track to deliver another year of outstanding results and we remain confident in our long-term model, which calls for annual revenue growth of 10 to 15% and annual adjusted net income per share growth of 20% or more."

"Based on our confidence with our near term and long term outlook, we are raising our FY06 year end guidance to $1.07 to $1.08 of adjusted net income per share. We are also raising our FY07 guidance to $1.40 to $1.42 of adjusted net income per share, assuming a November 1, 2006, completion of the Lipman acquisition," continued Bergeron.

41.    On the same day as the, August 31, 2006 release, the Company hosted a conference call for shareholders and analysts during which VeriFone's CFO, defendant Zwarenstein, also provided purported forward guidance for the fourth quarter of 2006 and for full year 2007, stating, in part, as follows:

Our Guidance for the fourth quarter is for revenue of between $150 and $152 million. Net income, as adjusted, are between $19.4 and $20.1 million, and GAAP net income of between $16 and $16.7 million. With an estimated 69.2 million fully diluted shares outstanding, we are expecting EPS on a net income adjusted basis of between $0.28 and $0.29 and on a GAAP basis of between $0.23 and $0.24.

Based on this, we are increasing our guidance for the full 2006 year. Revenue in the range of $574 to $576 million and EPS on a net income as adjusted basis of between $1.07 and $1.08, and on a GAAP basis, of between $0.89 and $0.90. Concerning our current expectations for fiscal 2007 earnings, we are reaffirming our previously stated long-term business model, which calls for organic growth in per share net income as adjusted earnings of around 20%.

VERIFIED DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY                    - 11 -

Based upon our improved 2006 results, our expectations for 2007 adjusted earnings are now in the range of $1.28 to $1.30 excluding the impact of the acquisition. Incremental to this, we are also reaffirming our previous statement made on April 10 [inaudible] where we announced the Lipman offer. That is, we expect to enjoy the benefit of full-year accretion from the acquisition of Lipman of approximately $0.12 per share.

Taking into account both the anticipated organic growth and the accretion from the Lipman acquisition, we are currently anticipating EPS, on a net income as adjusted basis, in the range of $1.40 to $1.42 per share for the fiscal 2007 year starting on November 1, 2006.

42.    On or about September 1, 2006, Defendants allowed VeriFone to file the Company's 3Q06 Form 10-Q for the fiscal quarter ending July 31, 2006 with the SEC. In addition to making substantially similar statements concerning the Company's operations and financial condition as had been published previously, the Company's 3Q06 Form 10-Q also contained representations which attested to the purported effectiveness and sufficiency of the Company's controls and procedures, including as follows:

ITEM 4.        CONTROLS AND PROCEDURES

(a)    Evaluation of disclosure controls and procedures.

With the participation of our Chief Executive Officer and Chief Financial Officer, management has carried out an evaluation of the effectiveness of our disclosure controls and procedures (as defined in Rule 13a-15(e) under the Securities Exchange Act of 1934). Based upon that evaluation, our Chief Executive Officer and Chief Financial Officer concluded that our disclosure controls and procedures were effective as of the end of the period covered by this report.

(b)    Changes in internal control over financial reporting.

During the third quarter of our fiscal year ending October 31, 2006, we implemented the following changes to internal control over financial reporting (as defined in Rule 13a-15(f) under the Securities Exchange Act of 1934):
- enhanced the secondary review for certain sales orders to ensure proper accounting;

- issued additional formal accounting policies and enhanced processes surrounding the recording of certain transactions for the purposes of enhancing internal controls.

These actions represent management's continued emphasis to adopt internal control related to developing business needs and to enhance the internal control environment as management continues to prepare for reporting on our internal control over financial reporting, as required by Section 404 of the Sarbanes-Oxley Act of 2002.

**VERIFIED DERIVATIVE COMPLAINT FORBREACH OF FIDUCIARY DUTY**                    - 12 -

43.    Following the publication of these purported strong financial results shares of VeriFone continued to trade at artificially inflated prices.

44.    Unbeknownst to shareholders, however, the statements contained in VeriFone's August 31, 2006 release and those statements contained in the Company's 3Q06 Form 10-Q, referenced above, were each materially false and misleading when made, and were known or should have been known by Director Defendants to be false or were recklessly disregarded as such thereby, for the following reasons, among others:

A.    At all times during the Relevant Period, it was not true that the Company's purported success was the result of its integration of acquisitions or competent management when, in fact, throughout the Relevant Period, Defendants allowed the Company to overstate its results by manipulating VeriFone's accounting for revenues and income, and failing to report other material information about the Company;

B.    At all times during the Relevant Period, unbeknownst to investors, the Company had materially overstated its profitability by failing to properly account for the Company's results of operations and by artificially inflating the Company's financial results;

C.    Throughout the Relevant Period, it was also not true that VeriFone contained adequate systems of internal operational or financial controls such that VeriFone's reported financial statements were true, accurate, or reliable;

D.    As a result of the foregoing, throughout the Relevant Period it also was not true that the Company's financial statements and reports were prepared in accordance with GAAP and SEC rules; and

E.    As a result of the aforementioned adverse conditions, throughout the Relevant Period, the Company lacked any reasonable basis to claim that VeriFone was operating according to plan, or that VeriFone could achieve and/or endorsed by Defendants.

**VERIFIED DERIVATIVE COMPLAINT FORBREACH OF FIDUCIARY DUTY**                    - 13 -

45.    On December 7, 2006, Defendants allowed the Company to publish a release announcing purported strong results for the fourth quarter and full year fiscal 2006, the period ended October 31, 2006. This release stated, in part, the following:

**Fourth-Quarter Revenues Increased 20% to $157 Million**
**EBITDA, as Adjusted, Margins Increased to 24.2% for the Quarter**
**Fourth Quarter Net Income, as Adjusted, Increased 50% to $22.3 Million**

SAN JOSE, Calif.--(BUSINESS WIRE) VeriFone Holdings, Inc. (NYSE: PAY), the global leader in secure electronic payment solutions, today announced financial results for the three months and fiscal year ended October 31, 2006.

Net revenues for the three months ended October 31, 2006, were $156.6 million, an increase of 20% over net revenues of $130.5 million for the comparable period of 2005. The increase was driven by a 30% increase in net revenues from VeriFone's International business and a 14% increase in net revenues from VeriFone's North America business.

Gross margins, under generally accepted accounting principles (GAAP), for the three months ended October 31, 2006, were 46.0%, compared to 42.7% for the three months ended October 31, 2005. Gross margins, excluding non-cash amortization of purchased intangibles and stock-based compensation expense, expanded for the eighth consecutive quarter and reached 47.1% for the three months ended October 31, 2006, compared to 44.0% for the comparable period of 2005.

Net income for the three months ended October 31, 2006, was $13.9 million, or $0.20 per diluted share, compared to $12.1 million, or $0.18 per diluted share, for the comparable period of fiscal 2005. GAAP net income was impacted in the quarter by the $4.1 million after-tax write off of debt issuance costs, attributable to the refinancing of outstanding debt in connection with the Lipman acquisition. Net income, as adjusted, which excludes non-cash amortization of purchased intangibles In issuance costs, as well as non-cash stock-based compensation expense, for the three months ended October 31, 2006, was $22.3 million, or $0.32 per diluted share, compared to $14.9 million, or $0.22 per diluted share, for the comparable period of fiscal 2005.

* * *

Net revenues for the fiscal year ended October 31, 2006, were $581.0 million, an increase of 20% over the $485.4 million recorded for fiscal 2005.

Net income for the fiscal year ended October 31, 2006, was $59.5 million, compared to $33.2 million for fiscal 2005. Net income, as adjusted, for the fiscal year ended October 31, 2006, was $76.4 million, compared to $49.7 million, for fiscal 2005.

EBITDA, as adjusted, for the fiscal year ended October 31, 2006, was $130.4 million, an increase of 51% over the $86.4 million recorded for fiscal 2005. EBITDA, as adjusted, margins for the fiscal year ended October 31, 2006, were 22.4%, compared to 17.8% for the comparable period of 2005.

46.    The December 7, 2006 release also quoted defendant Bergeron, in part, as follows:

VERIFIED DERIVATIVE COMPLAINT FORBREACH OF FIDUCIARY DUTY                    - 14 -

"VeriFone has completed another outstanding quarter and achieved record revenue and earnings for fiscal year 2006. This year was highlighted by our transformative acquisition of Lipman which combined the two strongest financial performers in the industry to create the world leader in payment technology," said Douglas G. Bergeron, Chairman and Chief Executive Officer.

"We enter our new financial year poised to capitalize on our numerous competitive advantages and our very wide range of product offerings," continued Bergeron. "The integration of Lipman into VeriFone has been completed ahead of schedule and we have created a single-branded, unified company with tremendous scale advantages. Already, we are enjoying several supply chain efficiencies and earnings accretion."

"As a result, we have increased our internal expectations for fiscal Q1 2007 net earnings per share, as adjusted, to be in the range of $0.33 to $0.34. We remain very confident of our prospects in fiscal 2007."

47.    Also on December 7, 2006, the Company hosted a conference call for shareholders and analysts during which defendant Zwarenstein also provided purported forward guidance, stating, in part, as follows:

In the guidance I am about to provide, please note that it assumes combined integration expenses and Oracle 11i expenses in the first quarter of $1.3 million. Our guidance for the first quarter is for revenue of between $212 million and $215 million, excluding the non-cash GAAP charge of between $4 million and $5 million for the deferred revenue adjustment. Net income as adjusted is expected to be between $27.5 million and $28.5 million and GAAP net income to be between $1.9 million and $2.9 million. With the estimated 83.3 million fully diluted shares outstanding, including the 13.5 million shares that were issued as part of the Lipman transaction, we are expecting earnings per share on a net income as adjusted basis of between $0.33 and $0.34 and on a GAAP basis of between $0.02 and $0.03.

When questioned by analyst Greg Smith as to why the Company had not reiterated FY 2007 forward guidance as they had done previously, the following exchange occurred:

GREG SMITH: Great. And then, I guess, for Barry, you originally had provided FY 2007 guidance and now you are providing guidance for just the first quarter, how should we think about the prior full-year EPS range you provided?

BARRY ZWARENSTEIN: Thank you for asking that because it could be confusing to some investors. It has been the Company's policy since the IPO to provide next quarter guidance only. As a result -- and a long-term guidance roadmap that we could grow EPS as adjusted on a 20% or better basis without acquisitions, without transformative acquisitions like Lipman. Because of all of that, we broke our own self-imposed rule if you will and then did the math for you when we were at $1.08 for a year, $1.07 multiplied times 1.2 and out of the $0.12. We weren't intending to give full-year guidance; we were showing you what our long-term model would steer you to. We are now continuing to resort to our time-proven practices of providing quarterly guidance and frankly, it is up to you to make your best judgment on long-term full-year guidance.

**VERIFIED DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY**                    - 15 -

48.     On or about December 18, 2006, Defendants allowed the Company to file with the SEC the Company's FY2006 Form 10-K for the fiscal year ended October 31, 2006.  In addition to making substantially similar statements concerning the Company operations, finances, controls and procedures, and its GAAP and SEC accounting role compliance as had been published previously, the FY2006 Form 10-K also reported statements concerning the Company's purported Revenue Recognition Policies, stating, in part, as follows:

**Revenue Recognition**

Net revenues from System Solutions are recognized upon shipment, delivery, or customer acceptance of the product as required pursuant to the customer arrangement. Net revenues from services such as customer support are initially deferred and then recognized on a straight-line basis over the term of the contract. Net revenues from services such as installations, equipment repairs, refurbishment arrangements, training and consulting are recognized as the services are rendered. For arrangements with multiple elements, we allocate net revenues to each element using the residual method based on objective and reliable evidence of the fair value of the undelivered element. We defer the portion of the arrangement fee equal to the objective evidence of fair value of the undelivered elements until they are delivered.

While the majority of our sales transactions contain standard business terms and conditions, there are some transactions that contain non-standard business terms and conditions. As a result, significant contract interpretation is sometimes required to determine the appropriate accounting including: (1) whether an arrangement exists and what is included in the arrangement; (2) how the arrangement consideration should be allocated among the deliverables if there are multiple deliverables; (3) when to recognize net revenues on the deliverables; (4) whether undelivered elements are essential to the functionality of delivered elements; and (5) whether we have fair value for the undelivered element. In addition; our revenue recognition policy requires an assessment as to whether collectibility is probable, which inherently requires us to evaluate the creditworthiness of our customers. Changes in judgments on these assumptions and estimates could materially impact the timing of revenue recognition.

49.     Following the publication of these purported strong financial results shares of VeriFone continued to trade at artificially inflated prices.

50.     The statements made by Defendants and contained in the Company's December 7, 2006 release and in the Company's FY2006 Form 10-K were materially false and misleading when made, and were know or should have been known by Director Defendants to be false at that time or were recklessly disregarded as such thereby for the reasons stated herein in ¶ 42(A)-(E), *supra*.

**VERIFIED DERIVATIVE COMPLAINT FORBREACH OF FIDUCIARY DUTY**

- 16 -

51.    On March 1, 2007, Defendants allowed VeriFone to publish a release on *Business Wire* in which it announced its financial results for the first fiscal quarter ended January 31, 2007. The press release stated, in part, the following:

### VeriFone Reports First Quarter Fiscal 2007 Results

Revenues of $217 million Grew 61 % due to Lipman Acquisition and Strong International Performance

Record EBITDA, as adjusted, margins of 25.7%

EPS, as adjusted, increases 54% to 37 cents

SAN JOSE, Calif.--(BUSINESS WIRE)--March 1, 2007--VeriFone Holdings, Inc. (NYSE: PAY), the global leader in secure electronic payment solutions, today announced financial results for the three months ended January 31, 2007. The Company's first quarter results reflect the November 1, 2006, acquisition of Lipman and, because of the integration of Lipman's products and distribution channels as well as the lack of comparable quarter ends of VeriFone and Lipman, are compared to preacquisition results of prior fiscal periods.

Net revenues, for the three months ended January 31, 2007, were $216.6 million, 61% higher than the net revenues of $134.6 million for the comparable period of 2006. The record revenues were driven by the Lipman acquisition and a strong performance internationally.

Gross margins, excluding non-cash acquisition related charges and stock-based compensation expense, were 47.1%, for the three months ended January 31, 2007, compared to 45.6% for the comparable period of 2006. GAAP gross margins for the three months ended January 31, 2007, were 37.6%, compared to 44.3% for the three months ended January 31, 2006, as a result of increased amortization of purchased technology assets and the step-up in inventory.

EBITDA, as adjusted, margins for the three months ended January 31, 2007, expanded for the tenth consecutive quarter and reached a record level of 25.7%, compared to the 21.0% recorded in the three months ended January 31, 2006.

GAAP EPS for the three months ended January 31, 2007, was a loss of ($0.01) per diluted share, compared to $0.20 per diluted share, for the comparable period of fiscal 2006, due to acquisition related charges and a higher GAAP tax rate. Net income, as adjusted, which excludes non-cash acquisition related charges and debt issuance costs, as well as non-cash stock-based compensation expense, for the three months ended January 31, 2007, increased 54% to $0.37 per diluted share, compared to $0.24 per diluted share, for the three months ended January 31, 2006.

52.    On March 12, 2007, Defendants also caused the Company to file with the SEC the Company's financial results for the quarter ended January 31, 2007 pursuant to Form 10-QA ("1Q07 Form 10-QA"). The 1Q07 Form 10-QA contained many of the same materially false and misleading statements the Company had made previously relating to the financial and operational performance of the Company. In addition, the 1Q07 Form 10-QA stated, in part, the following:

**Unaudited Interim Financial Information**

The accompanying consolidated balance sheet as of January 31, 2007 and the consolidated statements of operations and cash flows for the three months ended January 31, 2007 and 2006 are unaudited. These unaudited interim condensed consolidated financial statements have been prepared in accordance with U.S. generally accepted accounting principles for interim financial information and Form 10-Q and Article 10 of Regulation S -X. In the opinion of the Company's management, the unaudited interim condensed consolidated financial statements have been prepared on the same basis as the annual consolidated financial statements and include all adjustments of a normal recurring nature necessary for the fair presentation of the Company's financial position as of January 31, 2007 and its results of operations and cash flows for the three months ended January 31, 2007 and 2006.

* * *

**Inventories**

Inventories are stated at the lower of standard cost or market. Standard costs approximate the first-in, first-out ("FIFO") method. The Company regularly monitors inventory quantities on hand and records write-downs for excess and obsolete inventories based primarily on the Company's estimated forecast of product demand and production requirements. Such write-downs establish a new cost-basis of accounting for the related inventory. Actual inventory losses may differ from management's estimates.

* * *

**Segment Information**

The Company is primarily structured in a geographic manner. The Company's Chief Executive Officer has been identified as the Chief Operating Decision Maker ("CODM") as defined by SFAS No. 131, *"Disclosures About Segments of an Enterprise and Related Information"*. The CODM reviews consolidated financial information on revenues and gross profit percentage for System Solutions and Services. The CODM also reviews operating expenses, certain of which are allocated to the Company's two segments described below.

The Company operates in two business segments: 1) North America and 2) International. The Company defines North America as the United States and Canada, and International as the countries in which it makes sales outside the United States and Canada.

VERIFIED DERIVATIVE COMPLAINT FORBREACH OF FIDUCIARY DUTY                    - 18 -

Net revenues and operating income of each business segment reflect net revenues generated within the segment, standard cost of System Solutions net revenues, actual cost of Services net revenues and expenses that directly benefit only that segment. Corporate revenues and operating income reflect amortization of intangible assets, stock-based compensation, in-process research and development expense, and amortization of the step-up in the fair value of inventories, equipment and improvements and deferred revenue resulting from acquisitions. Corporate income also reflects the difference between the actual and standard cost of System Solutions net revenues and shared operating costs that benefit both segments, predominately research and development expenses and centralized supply chain management.

53.     The 1Q07 Form 10-QA also contained a certification submitted pursuant to Section 906 of The Sarbanes-Oxley Act Of 2002, signed by defendants Bergeron and Zwarenstein, which certified the veracity of the Company's financial statements, as follows:

2.     Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3.     Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report.

54.     On May 29, 2007, the Defendants allowed VeriFone to publish a release on *Business Wire* in which it announced its financial results for the second fiscal quarter ended April 30, 2007.  This press release stated, in part, the following:

**VeriFone Reports Second Quarter Fiscal 2007 Results**

Revenues of $217 Million Grew 53% Due to Lipman Acquisition and Resurgent North American Growth

Record EBITDA, as Adjusted, Margins of 26.3%

EPS, as Adjusted, Increases 50% to 39 Cents

SAN JOSE, Calif--(BUSINESS WIRE)--May 29, 2007--VeriFone Holdings, Inc. (NYSE: PAY), the global leader in secure electronic payment solutions, today announced financial results for the three months ended April 30, 2007.

Net revenues, for the three months ended April 30, 2007, were $217.2 million, 53% higher than the net revenues of $142.2 million for the comparable period of 2006. VeriFone's International business increased 97% and VeriFone's North America business increased 19%. The significant increase in sales was driven largely by the acquisition of Lipman, which closed November 1, 2006.

VERIFIED DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY

- 19 -

\* \* \*

Gross margins, excluding non-cash acquisition related charges and stock-based compensation expense, expanded to a record 48.1%, for the three months ended April 30, 2007, compared to 45.7% for the comparable period of 2006. GAAP gross margins for the three months ended April 30, 2007, were 41.5%, compared to 44.6% for the three months ended April 30, 2006, as a result of increased amortization of purchased technology assets, the step-up in inventory and stock-based compensation.

\* \* \*

EBITDA, as adjusted, margins for the three months ended April 30, 2007, expanded for the eleventh consecutive quarter and reached a record level of 26.3%, compared to the 21.6% recorded in the three months ended April 30, 2006.

GAAP EPS for the three months ended April 30, 2007, was $0.06 per diluted share, compared to $0.22 per diluted share, for the comparable period of fiscal 2006, due to acquisition related non-cash charges, higher stock-based compensation expense primarily related to the Lipman acquisition and to a significantly higher GAAP tax rate driven by an increase in the valuation allowance related to Lipman. Net income, as adjusted, which excludes non-cash acquisition related charges and debt issuance costs, as well as non-cash stock-based compensation expense and Lipman integration costs, for the three months ended April 30, 2007, increased 50% to $0.39 per diluted share, compared to $0.26 per diluted share, for the three months ended April 30, 2006.

55.    On May 31, 2007, Defendants allowed the Company to file with the SEC its financial results for the quarter ended April 30, 2007 pursuant to Form 10-Q ("2Q07 Form 10-Q"). The 2Q07 Form 10-Q contained many of the same materially false and misleading statements as the Company had made previously relating to the financial and operational performance of the Company. The 2Q07 Form 10-Q contained certifications by defendant Bergeron and the CFO Zwarenstein respectively, each of which was virtually identical to those filed in the previous quarter and reproduced above. In addition, the 2Q07 Form 10-Q stated, in part, the following:

### Unaudited Interim Financial Information

The accompanying consolidated balance sheet as of April 30, 2007 and the consolidated statements of operations for the three and six months ended April 30, 2007 and 2006 and consolidated statements of cash flows for the six months ended April 30, 2007 and 2006 are unaudited. These unaudited interim condensed consolidated financial statements have been prepared in accordance with U.S. generally accepted accounting principles for interim financial information and Form 10-Q and Article 10 of Regulation S-X. In the opinion of the Company's management, the unaudited interim condensed consolidated financial statements have been prepared on the same basis as the annual consolidated financial statements and include all adjustments of a normal recurring nature necessary for

VERIFIED DERIVATIVE COMPLAINT FORBREACH OF FIDUCIARY DUTY

- 20 -

the fair presentation of the Company's financial position as of April 30, 2007 and its results of operations for the three and six months ended April 30, 2007 and 2006, and cash flows for the six months ended April 30, 2007 and 2006.

* * *

### Inventories

Inventories are stated at the lower of standard cost or market. Standard costs approximate the first-in, first-out ("FIFO") method. The Company regularly monitors inventory quantities on hand and records write-downs for excess and obsolete inventories based primarily on the Company's estimated forecast of product demand and production requirements. Such write-downs establish a new cost-basis of accounting for the related inventory. Actual inventory losses may differ from management's estimates.

* * *

### Segment Information

The Company is primarily structured in a geographic manner. The Company's Chief Executive Officer has been identified as the Chief Operating Decision Maker ("CODM") as defined by SFAS No. 131, "Disclosures About Segments of an Enterprise and Related Information". The CODM reviews consolidated financial information on revenues and gross profit percentage for System Solutions and Services. The CODM also reviews operating expenses, certain of which are allocated to the Company's two segments described below.

The Company operates in two business segments: 1) North America and 2) International. The Company defines North America as the United States and Canada, and International as the countries in which it makes sales outside the United States and Canada.

Net revenues and operating income of each business segment reflect net revenues generated within the segment, standard cost of System Solutions net revenues, actual cost of Services net revenues and expenses that directly benefit only that segment. Corporate revenues and operating income reflect amortization of intangible assets, stock-based compensation, in-process research and development expense, and amortization of the step-up in the fair value of inventories, equipment and improvements and deferred revenue resulting from acquisitions. Corporate income also reflects the difference between the actual and standard cost of System Solutions net revenues and shared operating costs that benefit both segments, predominately research and development expenses and centralized supply chain management.

1    56.    On September 6, 2007, Defendants allowed VeriFone to publish a release on

2    *Business Wire* which announced its financial results for the third fiscal quarter ended July 31,

3    2007. This press release stated, in part, the following:

### VeriFone Reports Third Quarter Fiscal 2007 Results

Record Revenues of $232 million
Record EBITDA, as adjusted, margins of 27.3%
Record EPS, as adjusted, of 42 cents, grew 50%
Record Operating Cash Flow of $43 million

SAN JOSE, Calif.--(BUSINESS WIRE)--Sept. 6, 2007--VeriFone Holdings, Inc. (NYSE: PAY), the global leader in secure electronic payment solutions, today announced financial results for the three months ended July 31, 2007.

Net revenues, for the three months ended July 31, 2007, were $231.9 million, 57% higher than the net revenues of $147.6 million for the comparable period of 2006. Net revenues from VeriFone's International business increased 106% while net revenues from VeriFone's North America business increased 22%. The significant increase in net revenues was driven largely by the acquisition of Lipman Electronic Engineering Ltd., which closed November 1, 2006.

Gross margins, excluding non-cash acquisition related charges and stock-based compensation expense, expanded to a record 48.2%, for the three months ended July 31, 2007, compared to 45.9% for the comparable period of 2006. GAAP gross margins for the three months ended July 31, 2007, declined to 44.0% from 45.0% for the three months ended July 31, 2006, primarily as a result of increased amortization of purchased technology assets.

GAAP operating expenses for the three months ended July 31, 2007 were $65.5 million compared to $38.0 million for the comparable period of 2006. This increase was primarily due to the Lipman acquisition and related integration expenses.

EBITDA, as adjusted, margins for the three months ended July 31, 2007, expanded for the twelfth consecutive quarter and reached a record level of 27.3%, compared to the 22.6% recorded in the three months ended July 31, 2006.

GAAP EPS for the three months ended July 31, 2007, was $0.16 per diluted share, compared to $0.24 per diluted share, for the comparable period of fiscal 2006. This decline resulted from acquisition related non-cash charges, higher stock-based compensation expense and a higher GAAP tax rate driven by an increase in the valuation allowance related to the Lipman acquisition. Net income, as adjusted, which excludes non-cash acquisition related charges and debt issuance costs, as well as non-cash stock-based compensation expense and Lipman integration costs, for the three months ended July 31, 2007, increased 50% to $0.42 per diluted share, compared to $0.28 per diluted share, for the comparable period in 2006.

57.     On September 7, 2007, Defendants allowed VeriFone to file with the SEC the Company's financial results for the quarter ended July 31, 2007 pursuant to Form 10-Q ("3Q07 Form 10-Q"). The 3Q07 Form 10-Q contained many of the same materially false and misleading statements as the Company had made previously relating to the financial and operational performance of the Company.  The 3Q07 Form 10-Q also contained certifications signed by defendant Bergeron and the CFO Zwarenstein which were virtually identical to those filed in the previous quarters and reproduced above.  In addition, the 3Q07 Form 10-Q stated, in pertinent part, as follows:

### Unaudited Interim Financial Information

The accompanying condensed consolidated balance sheet as of July 31, 2007, the condensed consolidated statements of operations for the three and nine months ended July 31, 2007 and 2006, and the condensed consolidated statements of cash flows for the nine months ended July 31, 2007 and 2006 are unaudited. These unaudited interim condensed consolidated financial statements have been prepared in accordance with U.S. generally accepted accounting principles for interim financial information and Form 10-Q and Article 10 of Regulation S-X. In the opinion of the Company's management, the unaudited interim condensed consolidated financial statements have been prepared on the same basis as the annual consolidated financial statements and include all adjustments of a normal recurring nature necessary for the fair presentation of the Company's financial position as of July 31, 2007 and its results of operations for the three and nine months ended July 31, 2007 and 2006, and cash flows for the nine months ended July 31, 2007 and 2006.
* * *

### Inventories

Inventories are stated at the lower of standard cost or market. Standard costs approximate the first-in, first-out ("FIFO") method. The Company regularly monitors inventory quantities on hand and records write-downs for excess and obsolete inventories based primarily on the Company's estimated forecast of product demand and production requirements. Such write-downs establish a new cost-basis of accounting for the related inventory. Actual inventory losses may differ from management's estimates.
* * *

VERIFIED DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY

- 23 -

*Segment Information*

The Company is primarily structured in a geographic manner. The Company's Chief Executive Officer has been identified as the Chief Operating Decision Maker ("CODM") as defined by SFAS No. 131, *Disclosures About Segments of an Enterprise and Related Information.* The CODM reviews consolidated financial information on revenues and gross profit percentage for System Solutions and Services. The CORM also reviews operating expenses, certain of which are allocated to the Company's two segments described below.

The Company operates in two business segments: 1) North America and 2) International. The Company defines North America as the United States and Canada, and International as the countries in which it makes sales outside the United States and Canada.

Net revenues and operating income of each business segment reflect net revenues generated within the segment, standard cost of System Solutions net revenues, actual cost of Services net revenues and expenses that directly benefit only that segment. Corporate revenues and operating income reflect amortization of intangible assets, stock-based compensation, in-process research and development expense, and amortization of the step-up in the fair value of inventories, equipment and improvements and deferred revenue resulting from acquisitions. Corporate income also reflects the difference between the actual and standard cost of System Solutions net revenues and shared operating costs that benefit both segments, predominately research and development expenses and centralized supply chain management.

58.    The statements set forth above were each materially false and misleading when made, and were known or should have been known by the Director Defendants to be false or were deliberately disregarded as such thereby. At all times during the Relevant Period, Defendants allowed the Company to manipulate VeriFone's revenue and earnings reporting, in violation of GAAP, by allowing the Company to improperly value in-transit inventory and allocating manufacturing and distribution overhead to inventory. In doing so, the Company materially overstated VeriFone's inventories and understated VeriFone's cost of net revenues. At all times during the Relevant Period VeriFone's financial results were inaccurate and inherently unreliable.

**VERIFIED DERIVATIVE COMPLAINT FORBREACH OF FIDUCIARY DUTY**                    - 24 -

1

## THE TRUE FINANCIAL AND OPERATIONAL
## CONDITION OF VERIFONE IS DISCLOSED

2

3    59.    On December 3, 2007, Defendants were forced to have the Company issue a release

4    stating that the Company had concluded that its financial statements for the first three quarters of

5    fiscal year 2007 would be restated and should no longer be relied upon, as follows:

6    **VeriFone Announces Anticipated Restatement of 2007**
     **Quarterly Financial Statements**

7

8    Also Announces Preliminary Fourth Quarter 2007 Revenue Results and
     Delays Announcement of Fourth Quarter 2007 Financial Results

9    SAN JOSE, Calif.--(BUSINESS WIRE)--Dec. 3, 2007--VeriFone Holdings, Inc.

10   (NYSE:PAY) today announced that following a review by and on the
     recommendation of management, it has concluded that its unaudited interim

11   consolidated financial statements for the three months ended January 31, 2007, the
     three and six months ended April 30, 2007, and the three and nine months ended

12   July 31, 2007, should no longer be relied upon, principally due to errors in
     accounting related to the valuation of in-transit inventory and allocation of

13   manufacturing and distribution overhead to inventory, each of which affects
     VeriFone's reported costs of net revenues. The restatements are anticipated to

14   correct errors that overstated previously reported inventories in material amounts as
     of January 31, 2007, April 30, 2007, and July 31, 2007, and understated cost of net

15   revenues in material amounts for the three month periods ended January 31, 2007,
     April 30, 2007, and July 31, 2007. Accordingly, investors are cautioned not to rely

16   on VeriFone's historical financial statements and earnings press releases and
     similar communications for the periods ended January 31, 2007, April 30, 2007,

17   and July 31, 2007.

18   Based on its review to date, management currently anticipates that the restatement
     will result in reductions to previously reported inventories of approximately $7.7

19   million, $16.5 million and $30.2 million as of January 31, 2007, April 30, 2007,
     and July 31, 2007, respectively, and reductions to previously reported pre tax

20   income of approximately $8.9 million, $7.0 million and $13.8 million for the three
     month periods ended January 31, 2007, April 30, 2007, and July 31, 2007,

21   respectively. VeriFone is currently evaluating the anticipated effect of the
     restatement on after-tax income for those periods.

22   These estimates include corrections of other unrelated errors detected in the course
     of VeriFone's review to date, are based on currently available information and are

23   subject to change during the course of the company's restatement process. While
     VeriFone is not currently aware of other accounting errors requiring adjustment to

24   any prior period financial statements, there can be no assurances that VeriFone or
     its independent registered public accounting firm will not find additional

25   accounting errors requiring further adjustments in those or earlier periods.

26                                    *  *  *

27

28

VERIFIED DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY                          - 25 -

VeriFone concluded that a restatement of its interim unaudited financial statements is required as a result of an internal review of in-transit inventory balances conducted in preparation for VeriFone's fiscal 2007 audit. In reaching the conclusion to restate its financial results, VeriFone's management and the Audit Committee discussed the matters described in this press release with VeriFone's independent registered public accounting firm.

Upon completion of its assessment of these errors, VeriFone intends to file amended Quarterly Reports on Form 10-Q for the periods described above that will restate the previously issued financial statements included therein. VeriFone currently estimates that it will file these amended quarterly reports, together with its Annual Report on Form 10-K for the fiscal year ended October 31, 2007, in January 2008. However, VeriFone cannot be certain how much time will ultimately be required for it to complete the restatement process.

60.     Following the publication of this release, which indicated that VeriFone had overstated previously reported inventories and understated cost of net revenues in material amounts, shares of VeriFone plummeted, falling over 45% in the single trading day – or $22 per share – to close at $26.03, on huge trading volume of over 49 million shares or nearly 35 times its average trading volume. Wedbush Morgan analyst Gil Luria called VeriFone's announcement "pretty severe," noting that VeriFone made no assurances that the Company, or its outside accountants, would not find more mistakes in its financial reporting. Tien-tsin Huang, an analyst at JPMorgan Securities also commented, "The restatement calls into question VeriFone's gross margins, which up until now have been positive fuel for the stock."

61.     The market for VeriFone's securities was open, well-developed and efficient at all relevant times. As a result of these materially false and misleading statements and failures to disclose, VeriFone common stock traded at artificially inflated prices during the Relevant Period.

62.     During the Relevant Period, Defendants allowed the Company to materially mislead the investing public, thereby inflating the price of VeriFone common stock by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make the Company's statements, as set forth herein, not false and misleading. Said statements and omissions were

**VERIFIED DERIVATIVE COMPLAINT FORBREACH OF FIDUCIARY DUTY**                - 26 -

materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

## VIOLATIONS OF GAAP AND SEC REPORTING RULES

63.    During the Relevant Period, Director Defendants did not have the proper internal controls in place, and thereby allowed the Company to materially mislead the investing public, inflating the price of the Company's securities, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make VeriFone's statements, as set forth herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its financial performance, accounting, reporting, and financial condition in violation of the federal securities laws and GAAP.

64.    GAAP consists of those principles recognized by the accounting profession as the conventions, rules, and procedures necessary to define accepted accounting practice at the particular time. Regulation S-X, to which the Company is subject as a registrant under the Exchange Act, 17 C.F.R. 210.4-01(a)(1), provides that financial statements filed with the SEC which are not prepared in compliance with GAAP, are presumed to be misleading and inaccurate. SEC Rule 13a-13 requires issuers to file quarterly reports.

65.    SEC Rule 12b-20 requires that periodic reports contain such further information as is necessary to make the required statements, in light of the circumstances under which they are made, not misleading.

66.    In addition, Item 303 of Regulation S-K requires that, for interim periods, the Management Division and Analysis Section ("MD&A") must include, among other things, a discussion of any material changes in the registrant's results of operations with respect to the most recent fiscal year-to-date period for which an income statement is provided. Instructions to Item 303

require that the this discussion identify any significant elements of registrant's income or loss from continuing operations that are not necessarily representative of the registrant's ongoing business. Item 303(a)(2)(ii) to Regulation S-K requires the following discussion in the MD&A of a company's publicly filed reports with the SEC:

> Describe any known trends or uncertainties that have had or that the registrant reasonably expects will have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations. If the registrant knows of events that will cause a material change in the relationship between costs and revenues (such as known future increases in costs of labor or materials or price increases or inventory adjustments), the change in relationship shall be disclosed.

Paragraph 3 of the Instructions to Item 303 states in relevant part:

> The discussion and analysis shall focus specifically on material events and uncertainties known to management that would cause reported financial information not to be necessarily indicative of future operating results or of fixture financial condition. Thus would include descriptions and amounts of (A) matters that would have an impact on future operations and have not had an impact in the past...

67.     The GAAP requirement for recognition of an adequate provision for foreseeable costs and an associated allowance applies to interim financial statements as required by Accounting Principles Board Opinion No. 28. Paragraph 17 of this authoritative pronouncement states that:

> The amounts of certain costs and expenses are frequently subjected to year-end adjustments even though they can be reasonably approximated at interim dates. To the extent possible such adjustments should be estimated and the estimated costs and expenses assigned to interim periods so that the interim periods bear a reasonable portion of the anticipated annual amount.

68.     The Company's financial statements contained in the fiscal 2006 Form 10-K and/or the quarterly reports filed with the SEC on Forms 10-Q for the quarterly periods throughout the Relevant Period were presented in a manner that violated the principle of fair financial reporting and the following GAAP, among others:

A.     The principle that financial reporting should provide information that is useful to present and potential investors and creditors and other users in making rational investment, credit and similar decisions (FASB Statement of Concepts No. 1).

VERIFIED DERIVATIVE COMPLAINT FORBREACH OF FIDUCIARY DUTY                    - 28 -

B.    The principle that financial reporting should provide information about an enterprise's financial performance during a period (FASB Statement of Concepts No. 1).

C.    The principle that financial reporting should be reliable in that it represents what it purports to represent (FASB Statement of Concepts No. 2).

D.    The principle of completeness, which means that nothing material is left out of the information that may be necessary to ensure that it validly represents underlying events and Statement of Concepts No. 2).

E.    The principle that conservatism be used as a prudent reaction to uncertainty to try to ensure that uncertainties and risks inherent in business situations are adequately considered (FASB Statement of Concepts No. 2).

F.    The principle that contingencies and other uncertainties that affect the fairness of presentation of financial data at an interim date shall be disclosed in interim reports in the same manner required for annual reports (APB Opinion No. 28).

G.    The principle that disclosures of contingencies shall be repeated in interim and annual reports until the contingencies have been removed, resolved, or have become immaterial (APB Opinion No. 28).

H.    The principle that management should provide commentary relating to the effects of significant events upon the interim financial results (APB Opinion No. 28).

69.    In addition, during the Relevant Period, Director Defendants allowed the Company to violate SEC disclosure rules in that:

A.    The Company failed to disclose the existence of known trends, events or uncertainties that they reasonably expected would have a material, unfavorable impact on net revenues or income or that were reasonably likely to result in the Company's liquidity decreasing in a material way, in violation of Item 303 of Regulation S-K under the federal

**VERIFIED DERIVATIVE COMPLAINT FORBREACH OF FIDUCIARY DUTY**                              - 29 -

securities laws (17 C.F.R. 229.303), and that failure to disclose the information rendered the statements that were made during the Relevant Period materially false and misleading; and

   B.  The Company failed to file financial statements with the SEC that conformed to the requirements of GAAP, such financial statements were presumptively misleading and inaccurate pursuant to Regulation S-X, 17 C.F.R. § 210.4-01(a)(1).

70.  Defendants were required have the Company disclose the existence of the material facts described herein and to appropriately recognize and report assets, revenues, and expenses in conformity with GAAP in the Company's financial statements. The Company failed to make such disclosures and failed to account for and to report its financial statements in conformity with GAAP. Director Defendants should have known, or were reckless in not knowing, the facts which indicated that the fiscal 2006 Form 10-K and all of the Company's interim financial statements, press releases, public statements, and filings with the SEC, which were disseminated to the investing public during the Relevant Period, were materially false and misleading for the reasons set forth herein. Had the true financial position and results of operations of the Company been disclosed during the Relevant Period, the Company's common stock would have traded at prices well below that which it did.

## INSIDER SELLING

71.  Defendants Bergeron, Castle, Roche, Bondy and Zwarenstein (collectively, "Insider Selling Defendants") took advantage of this undisclosed information to sell their personally held stock for considerably more than they were worth. Therefore, while in possession of undisclosed material adverse information, Defendant Zwarenstein sold the following shares of the Company's stock during the Relevant Period:

### Barry Zwarenstein

| Transaction Date | Shares Sold | Avg. Share Price | Proceeds |
|---|---|---|---|
| 8/31/2006 | 4,000 | $23.00 | $92,000 |
| 9/29/2006 | 4,000 | $28.75 | $115,000 |

VERIFIED DERIVATIVE COMPLAINT FORBREACH OF FIDUCIARY DUTY    - 30 -

| | | | |
|---|---|---|---|
| 10/31/2006 | 4,000 | $29.00 | $116,000 |
| 11/30/2006 | 4,000 | $33.25 | $133,000 |
| 12/12/2006 | 4,000 | $37.25 | $149,000 |
| 1/9/2007 | 4,000 | $35.50 | $142,000 |
| 3/15/2007 | 12,600 | $35.87 | $452,000 |
| 3/15/2007 | 5,400 | $36.11 | $195,000 |
| 4/10/2007 | 12,215 | $37.99 | $464,000 |
| 4/10/2007 | 5,785 | $37.68 | $218,000 |
| 5/8/2007 | 8,200 | $37.32 | $306,000 |
| 5/8/2007 | 9,700 | $37.73 | $366,000 |
| 6/12/2007 | 6,300 | $33.02 | $208,000 |
| 6/12/2007 | 11,700 | $32.65 | $382,000 |
| 7/10/2007 | 8,200 | $36.22 | $297,000 |
| 7/10/2007 | 9,800 | $36.53 | $358,000 |
| 8/14/2007 | 9,700 | $37.11 | $360,000 |
| 8/14/2007 | 8,300 | $36.51 | $303,000 |
| 9/11/2007 | 9,000 | $39.44 | $355,000 |
| 9/11/2007 | 9,000 | $39.89 | $359,000 |
| 9/12/2007 | 3,574 | $39.73 | $142,000 |
| 9/24/2007 | 222 | $38.64 | $8,578 |
| 10/9/2007 | 3,700 | $45.41 | $168,000 |
| 10/9/2007 | 4,700 | $44.89 | $211,000 |
| 10/9/2007 | 5,100 | $44.31 | $226,000 |
| 10/9/2007 | 4,400 | $44.55 | $196,000 |
| 10/9/2007 | 100 | $45.01 | $4,501 |
| 11/13/2007 | 8,778 | $43.97 | $386,000 |
| 11/13/2007 | 9,222 | $45.11 | $416,000 |
| **TOTAL SHARES SOLD:** | **189,696** | **TOTAL PROCEEDS:** | **$7,128,079** |

72. Sales by Defendants Bergeron, Castle, Roche and Bondy are detailed in ¶¶ 76(g) – (i). below.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

73. Plaintiff hereby incorporates ¶¶ 1-72 above.

74. Plaintiff brings this action derivatively in the right of and for the benefit of VeriFone to redress injuries suffered and to be suffered by VeriFone as a direct result of the violations of law, breaches of fiduciary duty, corporate mismanagement, abuse of control, as well as the aiding and abetting thereof, by the Director Defendants. VeriFone is named as a nominal defendant solely in a derivative capacity. This is not a collusive action to confer jurisdiction on this Court which it would not otherwise have.

VERIFIED DERIVATIVE COMPLAINT FORBREACH OF FIDUCIARY DUTY                    - 31 -

75.    Plaintiff will adequately and fairly represent the interests of VeriFone and its shareholders in enforcing and prosecuting their rights.

76.    The VeriFone Board cannot exercise independent objective judgment in deciding whether to bring this action or whether to vigorously prosecute this action detailed herein. Therefore, Plaintiff's demand on the present Board of Directors of VeriFone to institute this action should be excused since such demand would be a futile and useless act. For the following reasons and those detailed elsewhere in this Complaint, Plaintiff has not made a pre-filing demand on the VeriFone Board to initiate this action:

(a)    The entire VeriFone Board of Directors participated in or approved many of the acts and omissions or were on notice of and/or recklessly disregarded the wrongs complained of herein;

(b)    The acts complained of herein constitute violations of fiduciary duties owed to VeriFone's Board of Directors and these acts are incapable of ratification;

(c)    The directors of VeriFone cannot be relied upon to reach a truly independent decision as to whether to commence the demanded actions against themselves and the officers, employees or consultants responsible for the misconduct alleged in this Complaint, in that, *inter alia*, the Board of Directors is dominated by defendants who were personally and directly involved in the misconduct alleged and/or who each approved the actions complained of, and to whose directives and views the Board has consistently acceded and will continue to accede. This domination of the Board of Directors by certain defendants has impaired the Board's ability to validly exercise its business judgment and rendered it incapable of reaching an independent decision as to whether to accept plaintiff's demands;

(d)    In order to bring this action for breaching their fiduciary duties, the members of the VeriFone Board of Directors would have been required to sue themselves and/or their fellow directors and allies in the top ranks of the Corporation, who are their good friends and with whom they have entangling financial alliances, interests and dependencies, which they would not do. Therefore, the Director Defendants would not be able to vigorously prosecute any such action and

VERIFIED DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY                    - 32 -

1  cannot in good faith exercise independent business judgment to determine whether to bring this

2  action against themselves and one another;

3         (e)    The members of the VeriFone Board of Directors, including each of the

4  Director Defendants herein, receive payments, benefits, stock options and other emoluments by

5  virtue of their membership on the Board and their control of VeriFone. They have thus benefited

6  from the wrongdoing herein alleged and have engaged in such conduct to preserve their positions of

7  control and the perquisites thereof, and are incapable of exercising independent objective judgment

8  in deciding whether to bring this action.

9         (f)    Defendant Bergeron could not comply with the fiduciary duties to

10  independently consider a pre-suit demand to bring the claims alleged herein because is employed by

11  VeriFone as its CEO and Chairman. Therefore, under applicable NASDAQ listing standards and

12  SEC rules, Bergeron is not considered independent.

13         (g)    In addition, throughout the Relevant Period, Defendant Bergeron is and at all

14  relevant times was independence-impaired because his sale of VeriFone stock at artificially inflated

15  prices. When Bergeron made his open market sales of VeriFone stock, the price of the stock was

16  artificially inflated because of material misrepresentations and omissions of fact made by the

17  Company regarding VeriFone's financial well-being and business prospects. Defendant Bergeron

18  made the following sales of VeriFone stock during the Relevant Period:

19

| Transaction Date | Shares Sold | Avg. Share Price | Proceeds |
| --- | --- | --- | --- |
| 9/5/2006 | 114,400 | $28.05 | $3,209,000 |
| 9/5/2006 | 5,400 | $28.52 | $154,000 |
| 10/2/2006 | 17,200 | $28.08 | $483,000 |
| 10/2/2006 | 11,100 | $28.29 | $314,000 |
| 11/1/2006 | 19,700 | $29.39 | $579,000 |
| 11/1/2006 | 19,000 | $29.58 | $562,000 |
| 11/1/2006 | 28,900 | $29.79 | $861,000 |
| 11/1/2006 | 57,400 | $30.12 | $1,729,000 |
| 12/1/2006 | 50,500 | $33.33 | $1,683,000 |
| 12/1/2006 | 17,500 | $33.54 | $587,000 |
| 12/4/2006 | 61,100 | $34.16 | $2,087,000 |
| 12/4/2006 | 20,900 | $34.45 | $720,000 |
| 12/11/2006 | 26,900 | $35.65 | $959,000 |
| 12/11/2006 | 21,300 | $35.82 | $763,000 |
| 12/11/2006 | 28,800 | $35.94 | $1,035,000 |

**VERIFIED DERIVATIVE COMPLAINT FORBREACH OF FIDUCIARY DUTY**          - 33 -

| | | | |
|---|---|---|---|
| 12/11/2006 | 10,600 | $36.13 | $383,000 |
| 12/11/2006 | 12,300 | $36.42 | $448,000 |
| 12/13/2006 | 27,200 | $36.43 | $991,000 |
| 12/13/2006 | 37,800 | $36.56 | $1,382,000 |
| 12/13/2006 | 18,840 | $36.73 | $692,000 |
| 12/13/2006 | 12,500 | $36.96 | $462,000 |
| 12/13/2006 | 3,700 | $37.30 | $138,000 |
| 12/29/2006 | 1,005,398 | $35.40 | $35,591,089 |
| 1/10/2007 | 200,000 | $35.43 | $7,085,000 |
| 3/15/2007 | 110,687 | $35.88 | $3,971,000 |
| 3/15/2007 | 69,613 | $36.01 | $2,507,000 |
| 3/15/2007 | 19,700 | $36.19 | $713,000 |
| 3/22/2007 | 3,575 | $37.48 | $134,000 |
| 4/11/2007 | 24,000 | $37.67 | $904,000 |
| 5/10/2007 | 47,600 | $37.88 | $1,803,000 |
| 5/10/2007 | 28,164 | $38.03 | $1,071,000 |
| 5/10/2007 | 21,671 | $38.21 | $828,000 |
| 5/14/2007 | 88,100 | $37.89 | $3,338,000 |
| 6/12/2007 | 40,100 | $32.54 | $1,305,000 |
| 6/12/2007 | 63,800 | $32.76 | $2,090,000 |
| 6/12/2007 | 46,100 | $32.99 | $1,521,000 |
| 6/22/2007 | 894 | $36.91 | $33,000 |
| 7/12/2007 | 43,300 | $36.40 | $1,576,000 |
| 7/12/2007 | 71,450 | $36.54 | $2,611,000 |
| 7/12/2007 | 47,950 | $36.73 | $1,761,000 |
| 7/12/2007 | 37,300 | $36.92 | $1,377,000 |
| 8/10/2007 | 83,700 | $39.10 | $3,273,000 |
| 9/10/2007 | 82,500 | $39.01 | $3,218.325 |
| 9/10/2007 | 86,300 | $38.83 | $3,351,000 |
| 9/10/2007 | 31,200 | $39.29 | $1,226,000 |
| 9/24/2007 | 893 | $39.19 | $35,000 |
| 10/10/2007 | 43,200 | $45.30 | $1,957,000 |
| 10/10/2007 | 69,800 | $45.62 | $3,184,000 |
| 10/10/2007 | 69,700 | $45.88 | $3,198,000 |
| 10/10/2007 | 17,300 | $46.02 | $796,146 |
| 11/14/2007 | 41,398 | $45.09 | $1,867,000 |
| 11/14/2007 | 47,197 | $44.81 | $2,115,000 |
| 11/14/2007 | 28,682 | $45.35 | $1,301,000 |
| 11/14/2007 | 4,925 | $45.88 | $226,000 |
| 11/14/2007 | 18,293 | $45.64 | $835,000 |
| 11/19/2007 | 14,405 | $44.84 | $646,000 |
| 11/26/2007 | 4,100 | $46.43 | $190,363 |
| 11/26/2007 | 6,800 | $45.88 | $312,000 |
| 11/26/2007 | 12,500 | $45.36 | $567,000 |
| 11/26/2007 | 19,900 | $44.77 | $891,000 |

**TOTAL SHARES SOLD:** 3,275,235     **TOTAL PROCEEDS** $119,628,923

**VERIFIED DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY**

- 34 -

1        Defendant Bergeron received approximately $119,628,923 for his shares. On

2  December 3, 2007, the first day of trading after public disclosure of the truth, VeriFone's stock

3  closed at $26.03 per share. This values the 3,275,235 shares defendant Bergeron sold at

4  $85,254,367.05. Bergeron has thus benefited from the wrongdoing herein alleged; therefore, he

5  would have been unable to comply with his fiduciary duties to disinterestedly consider pre-suit

6  demand of the allegations contained here.

7        (h)    Defendant Castle is and at all relevant times was independence-impaired

8  because his sale of VeriFone stock during the Relevant Period at artificially inflated prices. When

9  Castle made his open market sales of VeriFone stock, the price of the stock was artificially inflated

10  because of material misrepresentations and omissions of fact made by the Company regarding

11  VeriFone's financial well-being and business prospects. Defendant Castle made the following sales

12  of VeriFone stock during the Relevant Period:

| Transaction Date | Shares Sold | Avg. Share Price | Proceeds |
|---|---|---|---|
| 12/13/2006 | 500 | $36.60 | $18,300 |
| 9/14/2007 | 4,500 | $39.20 | $176,000 |
| **TOTAL SHARES SOLD:** | **5,000** | **TOTAL PROCEEDS:** | **$194,300** |

18     Defendant Castle received approximately $194,300 for his shares. On December 3, 2007, the

19  first day of trading after public disclosure of the truth, VeriFone's stock closed at $26.06 per share.

20  This values the 5,000 shares defendant Castle sold at $130,150. Defendant Castle has thus benefited

21  from the wrongdoing herein alleged; therefore, he would have been unable to comply with his

22  fiduciary duties to disinterestedly consider pre-suit demand of the allegations contained here.

23        (i)    Defendant Roche is and at all relevant times was independence-impaired

24  because of his, defendant Bondy and his company's (GTCR Golder Rauner, L.L.C.) sale of

25  VeriFone stock during the Relevant Period at artificially inflated prices. When Roche, a principal at

26  GTCR which owns 20% of VeriFone's outstanding shares of common stock, defendant Bondy, also

27  a principal at GTCR while a director with the Company, and the three funds controlled by GTCR

28  made open market sales of VeriFone stock, the price of the stock was artificially inflated because of

material misrepresentations and omissions of fact made by the Company regarding VeriFone's financial well-being and business prospects. Roche, Bondy and GTCR made the following sales of VeriFone stock during the Relevant Period:

| Transaction Date | Shares Sold | Avg. Share Price | Proceeds |
|---|---|---|---|
| 12/19/2006 | 3,000,000 | $35.78 | $107,340,000 |
| 12/19/2006 | 3,000,000 | $35.78 | $107,340,000[1] |
| 12/19/2006 | 25,387 | $35.78 | $911,000[2] |
| 12/19/2006 | 2,773,042 | $35.78 | $99,219,000[3] |
| 12/19/2006 | 201,571 | $35.78 | $7,212,000[4] |
| 6/25/2007 | 3,500,000 | $35.37 | $123,795,000 |
| 6/25/2007 | 3,500,000 | $35.37 | $123,795,000[5] |
| 6/25/2007 | 29,619 | $35.37 | $1,048,000[6] |
| 6/25/2007 | 3,235,216 | $35.37 | $114,430,000[7] |
| 6/25/2007 | 235,165 | $35.37 | $8,318,000[8] |
| 9/13/2007 | 3,300,000 | $38.61 | $127,413,000 |
| 9/13//2007 | 3,300,000 | $38.61 | $127,413,000[9] |
| 9/13//2007 | 27,926 | $38.61 | $1,078,000[10] |
| 9/13//2007 | 3,050,346 | $38.61 | $117,774,000[11] |
| 9/13/2007 | 221,728 | $38.61 | $8,561,000[12] |

| **TOTAL SHARES SOLD:** | **29,400,000** | **TOTAL PROCEEDS:** | **$1,075,647,000** |
|---|---|---|---|

[1] Sold by defendant Bondy.

[2] Sold by GTCR Co-Invest, L.P. c/o GTCR Golder Rauner LLC.

[3] Sold by GTCR Fund VII, L.P. c/o GTCR Golder Rauner LLC.

[4] Sold by GTCR Capital Partners L.P. c/o GTCR Golder Rauner LLC.

[5] Sold by defendant Bondy.

[6] Sold by GTCR Co-Invest, L.P. c/o GTCR Golder Rauner LLC.

[7] Sold by GTCR Fund VII, L.P. c/o GTCR Golder Rauner LLC.

[8] Sold by GTCR Capital Partners L.P. c/o GTCR Golder Rauner LLC.

[9] Sold by defendant Bondy.

[10] Sold by GTCR Co-Invest, L.P. c/o GTCR Golder Rauner LLC.

[11] Sold by GTCR Fund VII, L.P. c/o GTCR Golder Rauner LLC.

[12] Sold by GTCR Capital Partners L.P. c/o GTCR Golder Rauner LLC.

**VERIFIED DERIVATIVE COMPLAINT FORBREACH OF FIDUCIARY DUTY**                    - 36 -

1

2      Roche, Bondy and GTCR received approximately $1,075,647,000 for their shares. On

3   December 3, 2007, the first day of trading after public disclosure of the truth, VeriFone's stock

4   closed at $26.03 per share. This values the 29,400,000 shares Roche, Bondy and GTCR sold

5
    collectively at $765,282,000. Roche, Bondy and GTCR have thus benefited from the wrongdoing
6
7   herein alleged; therefore, he would have been unable to comply with his fiduciary duties to

8   disinterestedly consider pre-suit demand of the allegations contained here.

9           (j)     Additionally, during the period from November 1, 2003 to March 1, 2005, the

10  Company paid approximately $1.8 million to Driver Alliant Insurance Services, Inc., of which

11  Driver Alliant retained approximately $71,000 as service fees for insurance brokerage services and
12
    the remainder of which remitted to insurers as insurance premiums. Since November 1, 2003, the
13
14  Company has also paid approximately $91,000 to Horn Murdock Cole for consulting services.

15  Additionally prior to August 2006, Driver Alliant received customary commissions from various

16  companies in their capacity as the Company's health insurance broker. Both Driver Alliant and

17  Horn Murdock Cole are controlled by GTCR Colder Rauner, LLC, an affiliate of GTCR Fund VII,

18  L.P. one of our significant stockholders. In entering these transactions, the Company has stated it
19
    did not seek proposals from third parties for their services. For the years ended October 31, 2005,
20
21  2004 and 2003, the Company recorded $125,000, $250,000 and $250,000, respectively, of

22  management fees payable to GTCR Golder Rauner, LLC, an affiliate of GTCR Fund VII, L.P.

23  Because Roche is a principal for GTCR, and GTCR and its affiliates have significantly benefited

24  from transactions it has entered into with VeriFone, Roche is and at all relevant times was

25  independence-impaired, making him unable to comply with his fiduciary duties to disinterestedly
26
    consider pre-suit demand of the allegations contained here.
27

28

**VERIFIED DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY**                          - 37 -

(k)     The members of VeriFone's Audit Committee were charged with assisting the Board of Directors in fulfilling its oversight responsibility relating to, among other things:

- the integrity of VeriFone's financial statements;
- VeriFone's compliance with legal and regulatory requirements;
- VeriFone's independent registered public accounting firm's qualifications and independence;
- the performance VeriFone's internal audit function and independent registered public accounting firm; and
- the retention of VeriFone's independent registered public accounting firm.

The members of VeriFone's Audit Committee were defendants Henske (Chairman), Castle, Denend and Rinehart.  By virtue of the fact that each member of the Audit Committee was charged with overseeing and ensuring VeriFone's accounting and reporting practices ensured that all statements made to investors regarding the Company's finances would be accurate and complete and it was not, defendants Henske, Castle, Denend and Rinehart are personally implicated by the allegations contained herein and they would have been unable to comply with their fiduciary duties to disinterestedly consider pre-suit demand of the allegations contained here.

(l)     Defendant Henske could not comply with the fiduciary duties to independently consider a pre-suit demand to bring the claims alleged herein because he is and at all relevant times was the Audit Committee's financial expert within the meaning of SEC regulations. As the Audit Committee's financial expert, the Company determined that Henske demonstrated the following qualifications: (i) an understanding of GAAP; (ii) ability to apply GAAP to accounting for estimates, accruals and reserves; (iii) experience preparing, auditing, analyzing or evaluating financial statements that present a breadth and level of complexity of accounting issues that are generally comparable to the issues to be raised by the Company's financial statements, or experience actively supervising persons engaged in these activities; (iv) understanding of internal control over financial reporting and (v) understanding of Audit Committee functions.  Henske is also currently CFO and Senior Vice President of Finance and Administration of Intuit Inc.  Prior to this current position, Henske was CFO of Synopsys Inc. Henske was also CFO at American Savings Bank.  He

VERIFIED DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY          - 38 -

1  received his M.B.A. in finance and strategic planning from the Wharton School at the University of
2  Pennsylvania.  Despite his education and previous professional experience as a CFO for multiple
3  public companies, Henske caused VeriFone's to report financial statements and reports that could no
4  longer be relied upon and that required the results for at least the previous three quarters to be
5  restated.  Thus, Henske, as the Company's financial expert, is personally implicated by the
6  allegations contained herein and he would have been unable to comply with his fiduciary duties to
7  disinterestedly consider pre-suit demand of the allegations contained here.

8        (m)    The members of VeriFone's Corporate Governance and Nominating
9  Committee were charged with, among other things, developing and recommending to the Board a set
10  of corporate governance principles. The members of the committee during the Relevant Period were
11  defendants Castle (Chairman) and Hart.  By virtue of the fact that each member of the Corporate
12  Governance and Nominating Committee was charged with overseeing the Company's governance,
13  which has failed and led to the allegations against the Company, defendants Castle and Hart are
14  personally implicated by the allegations contained herein and they would have been unable to
15  comply with their fiduciary duties to disinterestedly consider pre-suit demand of the allegations
16  contained here.

17        (n)    Defendant Raff could not comply with the fiduciary duties to independently
18  consider a pre-suit demand to bring the claims alleged herein because Bank Leumi, the bank of
19  which defendant Raff is Chairman, has entered into a significant, suspect related transaction with
20  VeriFone. On October 31, 2006, in connection with the merger of VeriFone and Lipman Electronic
21  Engineering Ltd., Bank Leumi USA, subsidiary of Israel's Bank Leumi Group, entered into a Credit
22  Agreement with VeriFone, the "Borrower," which consists of a 6-year $40 million secured revolving
23  credit facility and a 7-year $500 million secured Term B Loan. According to the Credit Agreement,
24  Bank Leumi is a co-documentation agent for the lenders.  As an agent for the lenders to the
25  agreement, Bank Leumi and its Chariman, defendant Raff, have a financial interest in the financial
26  performance of the Company; thereby making Raff unable comply with their fiduciary duties to
27  disinterestedly consider pre-suit demand of the allegations contained here.

28

**VERIFIED DERIVATIVE COMPLAINT FORBREACH OF FIDUCIARY DUTY**                    - 39 -

1      (o)      Defendant Denend could not comply with the fiduciary duties to

2  independently consider a pre-suit demand to bring the claims alleged herein because of his

3  relationship with interested director, Bergeron, due to the professional relationship Denend had with

4  defendant Bergeron's wife, Sandra Bergeron.  Defendant Denend was President of Network

5  Associates from December 1997 through 1998.  Prior to and continuing through that time, Sandra

6  Bergeron held several executive positions at Network Associates, including Executive Vice

7  President of Corporate Development and Strategic Research.  Accordingly, neither defendant

8  Denend nor defendant Bergeron could independently consider a pre-suit demand based on the

9  ongoing professional and personal ties they share.

## FIRST CAUSE OF ACTION

### For Intentional Breach of Fiduciary Duties
#### *Against All Defendants*

13      77.      Plaintiff incorporates by reference each of the foregoing allegations.

14      78.      The Defendants are fiduciaries of VeriFone and of all of its public shareholders and

15  owe to them the duty to conduct the business of the Company loyally, faithfully, carefully, diligently

16  and prudently.  This cause of action is asserted based upon the Director Defendants' acts in violation

17  of state law, which acts constitute breach of fiduciary duty and waste of the Company's corporate

18  assets.

19      79.      The Director Defendants, in their roles as executives and/or directors of the

20  Company, participated in the acts of mismanagement alleged herein, or acted in reckless disregard of

21  the facts known to them, and failed to exercise due care to prevent the violation of the federal

22  securities laws.  The Defendants became aware, or should have become aware through reasonable

23  inquiry, of the facts alleged herein including, among others, that contrary to public statements by

24  certain Company officials, Defendants had purposely or recklessly failed to properly account for

25  increased competition and seasonal slowing, which led to slower sales in North America, and

26  increased regulatory issues in China and Japan, which hampered its ability to obtain product

27  approvals and offer certain products for sale in these market, but Defendants did nothing to correct

28  these false statements and omissions and thereby breached their duty of care, loyalty, accountability

**VERIFIED DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY**                    - 40 -

1    and disclosure to the shareholders of the Company by failing to act as an ordinary prudent person

2    would have acted in a like position.

3        80.    The Defendants have been responsible for the gross mismanagement of VeriFone.

4    The Defendants abdicated their corporate responsibilities by mismanaging the Company in at least

5    the following ways:

6              (a)    They caused VeriFone to violate the federal securities laws;

7              (b)    They concealed from the Company's shareholders and the investing public the

8    true nature and extent of the problems the Corporation was suffering; and

9              (c)    They subjected VeriFone to adverse publicity, greatly increased its costs to

10   raise capital, and impaired its earnings.

11       81.    As a result of Defendants' wrongful conduct and wrongful action, including the

12   failure to maintain a system of internal controls adequate to insure the Company's compliance with

13   the federal securities laws and to prevent illegal insider selling by Company officials, VeriFone has

14   suffered considerable damage to and drastic diminution in value of its assets.

15       82.    All Defendants, singly and in concert, engaged in the aforesaid conduct in intentional

16   breach and/or reckless disregard of their fiduciary duties to the Company.

17       83.    The VeriFone Director Defendants conspired to abuse, and did abuse, the control

18   vested in them by virtue of their high-level positions in the Company.

19       84.    By reason of the foregoing, the Defendants have breached their fiduciary obligations

20   to VeriFone and its shareholders.

21       85.    VeriFone and its shareholders have been injured by reason of the Defendants'

22   intentional breach and/or reckless disregard of their fiduciary duties to the Company.  Plaintiff, as a

23   shareholder and representative of VeriFone, seeks damages and other relief for the Company as

24   hereinafter set forth.

25

26

27

28

**VERIFIED DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY**                    - 41 -

## SECOND CAUSE OF ACTION

### For Negligent Breach of Fiduciary Duties
### *Against All Defendants*

86.    Except to the extent they allege intentional or reckless misconduct by any defendant, plaintiff incorporates by reference each of the foregoing allegations.

87.    The Defendants engaged in the aforesaid conduct without exercising the reasonable and ordinary care owed to the Company by directors, officers, managing agents and employees of the Company.

88.    VeriFone and its shareholders have been injured by reason of the Defendants' negligent breaches of their fiduciary duties.  Plaintiff, as a shareholder and representative of VeriFone, seeks damages and other relief for the Company as hereinafter set forth.

## THIRD CAUSE OF ACTION

### Breach of Fiduciary Duties for Insider Selling and Misappropriation of Information
### *Against the Insider Selling Defendants*

89.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

90.    At the time of the stock sales set forth herein, the Insider Selling Defendants knew the information described above, and sold the Company common stock on the basis of such information.

91.    The information described above was proprietary non-public information concerning the Company's financial condition and future business prospects.  It was a proprietary asset belonging to the Company, which the Insider Selling Defendants used for their own benefit when they sold the Company common stock.

92.    At the time of their stock sales, the Insider Selling Defendants knew that the Company's revenues were materially overstated. The Insider Selling Defendants' sales of Company common stock while in possession and control of this material adverse non-public information was a breach of their fiduciary duties of loyalty and good faith.

93.    Since the use of the Company's proprietary information for their own gain constitutes a breach of the Insider Selling Defendants' fiduciary duties, the Company is entitled to the imposition of a constructive trust on any profits the Insider Selling Defendants obtained thereby.

VERIFIED DERIVATIVE COMPLAINT FORBREACH OF FIDUCIARY DUTY                    - 42 -

## FOURTH CAUSE OF ACTION

### Derivative Claim For Waste Of Corporate Assets
### *Against All Defendants*

94.    Except to the extent they allege intentional or reckless misconduct by any defendant, plaintiff incorporates by reference each of the foregoing allegations.

95.    As a direct result of wrongdoing alleged herein, Defendants have unreasonably and unnecessarily caused VeriFone to expend hundreds of millions of dollars of corporate assets and have subjected the Company to additional liability in untold millions of dollars, to the extreme detriment of the Company.

96.    As a direct and proximate result of these Defendants' waste of corporate assets as alleged herein, VeriFone has sustained damages.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff demands judgment on behalf of VeriFone as follows:

A.    Against each Defendant for restitution and/or damages in favor of plaintiff, on behalf of VeriFone and its public shareholders, and awarding punitive and exemplary damages as appropriate, plus pre-judgment interest, molded in a fashion to ensure Defendants do not participate therein or benefit thereby;

B.    Extraordinary equitable and/or injunctive relief as permitted by law, equity and state statutory provisions sued hereunder, including attaching, impounding, imposing a constructive trust on or otherwise restricting the proceeds of defendants' trading activities or their other assets so as to assure that plaintiff on behalf of VeriFone has an effective remedy;

C.    Directing VeriFone to take all necessary actions to reform and improve its corporate governance and internal control procedures to comply with Sarbanes-Oxley Act of 2002, as well as all other legal and fiduciary principles as necessary, and to protect the Company and its shareholders from the damaging events described herein;

D.    Awarding plaintiff the costs and disbursements of this action, including reasonable attorneys', accountants', and experts' fees, costs and expenses; and

E.    Granting such other and further relief as this Court may deem just and proper.

VERIFIED DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY                - 43 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: December 14, 2007

Respectfully Submitted

Arthur L. Shingler III (CA Bar No. 181719)
SCOTT + SCOTT LLP
600 B Street, Suite 1500
San Diego CA 92101
(619) 233-4565
(619) 233-0508
Email:ashingler@scott-scott.com

SCOTT + SCOTT, LLP
David R. Scott
108 Norwich Avenue
P.O. Box 192
Colchester, CT 06415
Tel.: 860/537-5537
Fax.: 860/-537-4432
Email: drscott@scott-scott.com

Counsel for Plaintiff

VERIFIED DERIVATIVE COMPLAINT FORBREACH OF FIDUCIARY DUTY

- 44 -

## VERIFICATION

I, CHARLES R. KING, hereby declare and verify that I have reviewed the foregoing Verified Derivative Complaint for Breach of Fiduciary Duty, Gross Mismanagement, and the Misappropriation and Waste of Corporate Assets, and I believe the matters therein are true and correct to the best of my knowledge, information and belief. I have authorized its filing and declare penalty of perjury that the foregoing is true and correct.

Executed this _13_ day of December, 2007, at _Port St Lucie_  FL 34986-3233

                                (City)       (State)

                       _Charles R. King_
                           Charles R. King