1  COUGHLIN STOIA GELLER
      RUDMAN & ROBBINS LLP
2  CHRISTOPHER P. SEEFER (201197)
   100 Pine Street, Suite 2600
3  San Francisco, CA  94111
   Telephone:  415/288-4545
4  415/288-4534 (fax)
   chriss@csgrr.com
5        – and –
   RAMZI ABADOU (222567)
6  655 West Broadway, Suite 1900
   San Diego, CA  92101
7  Telephone:  619/231-1058
   619/231-7423 (fax)
8  ramzia@csgrr.com

9  [Proposed] Lead Counsel for Plaintiffs

10                    UNITED STATES DISTRICT COURT

11                    NORTHERN DISTRICT OF CALIFORNIA

12 | In re VERIFONE HOLDINGS, INC. | ) | Master File No. 3:07-cv-06140-MHP
   | SECURITIES LITIGATION | ) |
13 | ——————————————————— | ) | CLASS ACTION
   | | ) |
14 | This Document Relates To: | ) | THE NATIONAL ELEVATOR INDUSTRY
   | | ) | PENSION FUND'S OMNIBUS
15 | ALL ACTIONS. | ) | OPPOSITION TO ALL OTHER MOTIONS
   | | ) | FOR APPOINTMENT AS LEAD COUNSEL
16 | ——————————————————— | ) |

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I.    INTRODUCTION .................................................................................................1

II.   ARGUMENT .......................................................................................................2

      A.   The PSLRA's Lead Plaintiff Provisions ......................................................2

           1.   Governing Law ...................................................................................2

           2.   Legislative History.............................................................................3

           3.   Groups of Plaintiffs............................................................................4

      B.   The National Elevator Fund Is the "Most Adequate Plaintiff" Because It Is
           the Only Applicant that Satisfies All of the PSLRA's Lead Plaintiff
           Requirements ...............................................................................................5

      C.   Neither the Batucha Group nor the Harel Group Have Demonstrated that
           They Can or Will Fairly and Adequately Represent the Interests of the
           Class.............................................................................................................6

           1.   The Harel and Batucha Groups Have Not Demonstrated Their
                Cohesiveness......................................................................................6

      D.   The Israeli Entities Are Atypical and Are Subject to Unique Defenses .................7

           1.   The Israeli Entities Have Not Demonstrated Attorney-in-Fact
                Authority Under the Laws of Israel ....................................................7

           2.   The Israeli Entities' Distance from This Forum May Create
                Practical Difficulties that Would Make It Difficult for Them to
                "Fairly and Adequately Represent" the Class.............................................9

           3.   The Israeli Entities' Various Connections to Verifone Will Subject
                the Class to Unique Defenses ....................................................9

III.  CONCLUSION....................................................................................................11

1

## TABLE OF AUTHORITIES

2

Page

3

CASES

4

*Borochoff v. Glaxosmithkline PLC*,
    246 F.R.D. 201 (S.D.N.Y. 2007) ................................................................2, 6, 9

5

6

*Bowman v. Legato Sys.*,
    195 F.R.D. 655 (N.D. Cal. 2000) ...............................................................4

7

*Crawford v. Onyx Software Corp.*,
    2002 U.S. Dist. LEXIS 1101 (W.D. Wash. 2002) .......................................5, 7

8

*Glauser v. EVCI Career Colls. Holding Corp.*,
    236 F.R.D. 184 (S.D.N.Y. 2006) ...............................................................5

9

10

*Grace v. Perception Tech. Corp.*,
    128 F.R.D. 165 (D. Mass. 1989) ...............................................................10

11

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ...................................................................5

12

13

*In re Bank One S'holders Class Actions*,
    96 F. Supp. 2d 780 (N.D. Ill. 2000) .........................................................11

14

*In re Cable & Wireless, PLC, Sec. Litig.*,
    217 F.R.D. 372 (E.D. Va. 2003) ...............................................................3

15

16

*In re Cardinal Health, Inc. Sec. Litig.*,
    226 F.R.D. 298 (S.D. Ohio 2005) ...........................................................8

17

*In re Cavanaugh*,
    306 F.3d 726 (9th Cir. 2002) ........................................................... *passim*

18

19

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001)...................................................................3, 5, 6

20

*In re Century Bus. Servs., Sec. Litig.*,
    202 F.R.D. 532 (N.D. Ohio 2001) ...........................................................5

21

22

*In re Espeed, Inc. Sec. Litig.*,
    232 F.R.D. 95 (S.D.N.Y. 2005) ...............................................................4

23

*In re Gemstar-TV Guide Int'l, Inc. Sec. Litig.*,
    209 F.R.D. 447 (C.D. Cal. 2002)............................................................1, 5, 7

24

25

*In re Indep. Energy Holdings PLC, Sec. Litig.*,
    210 F.R.D. 476 (S.D.N.Y. 2002) .............................................................2

26

*In re Lernout & Hauspie Sec. Litig.*,
    138 F. Supp. 2d 39 (D. Mass. 2001) .........................................................6

27

28

1

2                                                                                                    **Page**

3  *In re MicroStrategy Inc. Sec. Litig.,*
          110 F. Supp. 2d 427 (E.D. Va. 2000) ...............................................................11
4

5  *In re Milestone Sci. Sec. Litig.,*
          183 F.R.D. 404 (D.N.J. 1998)..............................................................................6

6  *In re Network Assocs. Sec. Litig.,*
          76 F. Supp. 2d 1017 (N.D. Cal. 1999) ...............................................2, 6, 7, 9
7

8  *In re Nw. Corp. Sec. Litig.,*
          299 F. Supp. 2d 997 (D.S.D. 2003) ....................................................................6

9  *In re Peregrine Sys. Sec. Litig.,*
          2002 U.S. Dist. LEXIS 27690 (S.D. Cal. 2002) ................................................7
10

11  *In re Razorfish, Inc. Sec. Litig.,*
          143 F. Supp. 2d 304 (S.D.N.Y. 2001) ................................................................5

12  *In re Royal Ahold N.V. Sec. & ERISA Litig.,*
          219 F.R.D. 343 (D. Md. 2003)...........................................................................9
13

14  *In re Royal Dutch/Shell Transport Sec. Litig.,*
          No. 04-374 (JWB), slip op. (D.N.J. June 30, 2004).........................................9

15  *In re Safeguard Scientifics,*
          216 F.R.D. 577 (E.D. Pa. 2003).......................................................................11
16

17  *In re Telxon Corp. Sec. Litig.,*
          67 F. Supp. 2d 803 (N.D. Ohio 1999)................................................................4

18  *In re Turkcell Iletisim Hizmetler, A.S. Sec. Litig.,*
          209 F.R.D. 353 (S.D.N.Y. 2002) ......................................................................8
19

20  *In re Vaxgen Sec. Litig.,*
          2004 U.S. Dist. LEXIS 29812 (N.D. Cal. 2004) ..............................................5

21  *In re Vivendi Universal, S.A. Sec. Litig.,*
          242 F.R.D. 76 (S.D.N.Y. 2007) ........................................................................9
22

23  *In re Waste Mgmt., Inc. Sec. Litig.,*
          128 F. Supp. 2d 401 (S.D. Tex. 2000) ..........................................................2, 7

24  *In re: Discovery Labs. Sec. Litig.,*
          No. 06-1820, slip op. (E.D. Pa. July 24, 2002)................................................9
25

26  *Padilla v. Lever,*
          463 F.3d 1046 (9th Cir. 2006) ..........................................................................4

27  *Richardson v. TVIA, Inc.,*
          2007 U.S. Dist. LEXIS 28406 (N.D. Cal. 2007) ..............................................3
28

1

2                                                                                                              **Page**

3  *Ruland v. Infosonics Corp.*,
        2006 U.S. Dist. LEXIS 79144 (S.D. Cal. 2006) ...............................................................5
4
   *Sakhrani v. Brightpoint, Inc.*,
5        78 F. Supp. 2d 845 (S.D. Ind. 1999) ............................................................................5, 7

6  *Schriver v. Impac Mortgage Holdings, Inc.*,
        2006 U.S. Dist. LEXIS 40607 (C.D. Cal. 2006)...................................................1, 5, 6, 7
7
   *Shiring v. Tier Techs., Inc.*,
8        244 F.R.D. 307 (E.D. Va. 2007) ..................................................................................10

9  *Smith v. Suprema Specialties, Inc.*,
        206 F. Supp. 2d 627 (D.N.J. 2002) ............................................................................7, 8
10
   *Stengle v. Am. Italian Pasta*,
11        2005 U.S. Dist. LEXIS 43816 (W.D. Mo. 2005)...........................................................5

12 *Tanne v. Autobytel, Inc.*,
        226 F.R.D. 659 (C.D. Cal. 2005) ..................................................................................4
13
   *Weisz v. Calpine Corp.*,
14        2002 U.S. Dist. LEXIS 27831 (N.D. Cal. 2002) .........................................................4

15 *Wenderhold v. Cylink Corp.*,
        188 F.R.D. 577 (N.D. Cal. 1999)...................................................................................2
16
   *Yousefi v. Lockheed Martin Corp.*,
17        70 F. Supp. 2d 1061 (C.D. Cal. 1999) ........................................................................4

18 **STATUTES, RULES AND REGULATIONS**

19 15 United States Code
        §78u-4(a)(3)(B)...............................................................................................................1
20        §78u-4(a)(3)(B)(iii)(I).....................................................................................................4

21 Federal Rules of Civil Procedure
        Rule 23 ................................................................................................... *passim*
22

23 **LEGISLATIVE HISTORY**

24 H.R. Conf. Rep. No. 104-369 (1995), *reprinted in*
        1995 U.S.C.A.A.N. 679 733 ......................................................................................3, 8
25

26 **SECONDARY AUTHORITIES**

27 Day Trading: Your Dollars at Risk.......................................................................................11

28

1

2                                                                                                    **Page**

3  Oral Statement of Chairman Arthur Levitt, Before the Senate Permanent
           Subcommittee on Investigations, Committee on Governmental Affairs,
4          Concerning Day Trading (Sept. 16, 1999)..........................................................................11

5  Day Trading ...........................................................................................................................11

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   The National Elevator Industry Pension Fund (hereinafter, the "National Elevator Fund")

2   respectfully submits this memorandum of law in further support of its motion for appointment as

3   lead plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), and in

4   opposition to all other motions.  15 U.S.C. §78u-4(a)(3)(B).

5   **I.    INTRODUCTION**

6   In addition to the National Elevator Fund's motion, seven other lead plaintiff motions were

7   filed.[1]  Of those seven, only two claim larger losses than the National Elevator Fund: (i) The Phoenix

8   Insurance Company, Ltd; Prisma Provident Funds, Ltd.; Prisma Mutual Funds, Ltd., Harel Insurance

9   Co., and Harel Pia Mutual Funds (the "Harel Group"), and (ii) CLAL Finance Batucha Investment

10  Mgmt., Ltd; and Direct Investment House (Providence Funds) Ltd. (the "Batucha Group")

11  (collectively, the Harel Group and the Batucha Group are defined herein as "the Israeli Entities").

12  Among all the applicants, however, the National Elevator Fund should be deemed the "most

13  adequate plaintiff" because it has the largest financial interest of any proposed lead plaintiff that ***also***

14  satisfies the requirements of Rule 23.  *See generally In re Cavanaugh*, 306 F.3d 726 (9th Cir. 2002);

15  *In re Gemstar-TV Guide Int'l, Inc. Sec. Litig.*, 209 F.R.D. 447 (C.D. Cal. 2002).  Moreover, as the

16  domestic institutional investor with the largest losses before the Court, the National Elevator Fund

17  occupies a preferred position among those seeking lead plaintiff appointment in this case.  *See*

18  *Schriver v. Impac Mortgage Holdings, Inc.*, 2006 U.S. Dist. LEXIS 40607, at *14 (C.D. Cal. 2006)

19  ("The PSLRA's presumption that the most adequate plaintiff is the plaintiff with the largest financial

20  interest reflects a congressional intent that institutional investors should be appointed lead plaintiff

21  wherever possible . . . .").

22  Although the Harel and Batucha Groups claim larger losses, their motions should be denied

23  for a host of reasons.  First, they have not presented any evidence, in the form of declarations or

24  otherwise, demonstrating that they are legitimate and cohesive groups with the "joint decision-

25  making" ability consistent with the language and spirit of the PSLRA.  *See Impac*, 2006 U.S. Dist.

26

27  [1]    On February 14, 2008, Police and Fire Retirement System of the City of Detroit filed a Notice of Withdrawal for Appointment of Lead Plaintiff and Approval of Its' Selection of Lead Counsel. (Docket #62).

28

1  LEXIS 40607, at *28 n.10 ("there is no reason the Impac/IMH Group or its constituent groups could

2  not have submitted such evidence in connection *with their initial motions*").[2]  A group's "failure to

3  provide significant information about the identity of the members other than a conclusory statement

4  of names, transactions for purchase of securities, and largest financial interest should result in denial

5  of their application for appointment as Lead Plaintiff." *In re Waste Mgmt., Inc. Sec. Litig.*, 128 F.

6  Supp. 2d 401, 413 (S.D. Tex. 2000); *Wenderhold v. Cylink Corp.*, 188 F.R.D. 577, 586 (N.D. Cal.

7  1999).

8      Second, neither the Batucha Group nor the Harel Group have submitted any evidence

9  demonstrating that a judgment by this Court will be given *res judicata* effect in Israel.  *See*

10  *Borochoff v. Glaxosmithkline PLC*, 246 F.R.D. 201 (S.D.N.Y. 2007).  Third, based on the present

11  record the Batucha and Harel Groups' authority to claim investment losses and standing to bring

12  securities class actions is uncertain.  *In re Network Assocs. Sec. Litig.*, 76 F. Supp. 2d 1017, 1026

13  (N.D. Cal. 1999).  Finally, and most critically, the Batucha Fund covered defendant VeriFone during

14  the Class Period – a fact which will allow defendants to persuasively argue that the Batucha Fund is

15  subject to unique defenses.  *See In re Indep. Energy Holdings PLC, Sec. Litig.*, 210 F.R.D. 476, 481

16  (S.D.N.Y. 2002) ("Courts have routinely found a disqualifying unique defense where the potential

17  named plaintiff has had a direct or personal relationship with a board member or officer of the

18  issuing company.").

19      Under *Cavanaugh*, all other remaining motions should be denied because their claimed losses

20  are significantly less than the National Elevator Fund's loss of over $2 million.

21  **II.    ARGUMENT**

22      **A.    The PSLRA's Lead Plaintiff Provisions**

23          **1.    Governing Law**

24      In *Cavanaugh*, the Ninth Circuit set forth the process district courts are to apply in

25  determining who is the "most adequate" plaintiff.  306 F.3d at 729-33.  First, "the district court must

26  consider the losses allegedly suffered by the various plaintiffs" to determine which one has the

27  ───────────────

28  [2]    Unless otherwise noted all emphasis is added and citations are omitted.

1  largest financial interest. *See id*. at 729-30. In determining financial interest, "the court may select

2  accounting methods that are both rational and consistently applied." *Id*. at 730 n.4. Once the district

3  court determines which movant has the greatest loss, it "must then focus its attention on ***that*** plaintiff

4  and determine, ***based on the information [it] has provided in [its] pleadings and declarations***,

5  whether [it] satisfies the requirements of Rule 23(a)." *Id*. at 730 (emphasis added and in original).

6  "The second additional factor that the court should consider in making [its] threshold

7  adequacy determination will arise ***only*** when the movant with the largest interest in the relief sought

8  by the class is a group rather than an individual person or entity." *In re Cendant Corp. Litig.*, 264

9  F.3d 201, 266 (3d Cir. 2001). "[A] group is not entitled to presumptive lead plaintiff status unless it

10  'otherwise satisfies' Rule 23, which in turn requires that it be able to 'fairly and adequately protect

11  the interests of the class.' If the court determines that the way in which a group seeking to become

12  lead plaintiff was formed or the manner in which it is constituted would preclude it from fulfilling

13  the tasks assigned to a lead plaintiff, the court should disqualify that movant . . . ." *Id*.

14  Finally, if the plaintiff with the largest loss ***also*** satisfies Fed. R. Civ. P. 23 ("Rule 23"), that

15  plaintiff becomes the presumptive lead plaintiff. *Id*.; *In re Cable & Wireless, PLC, Sec. Litig.*, 217

16  F.R.D. 372, 377 (E.D. Va. 2003) ("a movant's financial interest is just a beginning point, and courts

17  acknowledge that they must also consider the movant's ability and willingness to adequately

18  represent the class"). *Richardson v. TVIA, Inc.*, 2007 U.S. Dist. LEXIS 28406, *16-*20 (N.D. Cal.

19  2007).

20  ## 2.    Legislative History

21  Congress enacted the PSLRA to encourage courts to appoint as lead plaintiffs shareholders,

22  preferably institutional investors, with: (1) large financial stakes in the outcome of the litigation; and

23  which (2) possess the requisite resources and sophistication to manage and supervise class counsel.

24  *See* H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.A.A.N. 679, 689-90, 733 ("The

25  Conference Committee believes that increasing the role of institutional investors . . . will ultimately

26  benefit shareholders and assist courts by improving the quality of representation in securities class

27  actions."); *Cavanaugh*, 306 F.3d at 738 (PSLRA was designed to "promote the goal of attracting

28  institutional investors" as lead plaintiffs).

THE NATIONAL ELEVATOR INDUSTRY PENSION FUND'S OMNIBUS OPPOSITION TO ALL
OTHER MOTIONS FOR APPOINTMENT AS LEAD COUNSEL - 3:07-cv-06140-MHP        - 3 -

1    The National Elevator Fund is such an investor.  Based in Pennsylvania, the Fund oversees

2  nearly $3 billion in assets, has experience serving in a fiduciary capacity and possesses the necessary

3  sophistication and resources to simultaneously prosecute this case and oversee class counsel.  *See*

4  *Yousefi v. Lockheed Martin Corp.*, 70 F. Supp. 2d 1061, 1066 (C.D. Cal. 1999) ("Ideally, courts will

5  appoint institutional investors with large holdings in the stock as lead plaintiff.").

6    While the National Elevator Fund's status as an institutional investor is not ***by itself***

7  controlling under the PSLRA, *see, e.g.*, *Tanne v. Autobytel, Inc.*, 226 F.R.D. 659 (C.D. Cal. 2005),

8  the Court should give added weight to this fact as both of the other movants with larger losses are

9  unrelated and loose groups of atypical investors.  *See Weisz v. Calpine Corp.*, 2002 U.S. Dist.

10  LEXIS 27831, at *29 (N.D. Cal. 2002) ("As an institutional entity, Local 1298 is preferable to an

11  individual plaintiff . . . ."); *In re Espeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 100 (S.D.N.Y. 2005) ("a

12  group of unrelated investors should not be considered as lead plaintiff when that group would

13  displace the institutional investor preferred by the PSLRA").

14             **3.    Groups of Plaintiffs**

15    The PSLRA expressly permits a "person ***or*** group of persons" to be appointed lead plaintiff.

16  15 U.S.C. §78u-4(a)(3)(B)(iii)(I).  "Where a statute fails to define a key term, this court's 'duty, in

17  matters of statutory construction, is to give effect to the intent of Congress.'"  *Padilla v. Lever*, 463

18  F.3d 1046, 1057 (9th Cir. 2006).  The PSLRA does not define what a "group" can or should be and,

19  in *Cavanaugh*, the Ninth Circuit expressly left it to the district courts to decide whether a "group of

20  persons" can aggregate their losses for purposes of becoming lead plaintiff.  306 F.3d at 731 n.8

21  ("***we are not asked to determine whether a group can satisfy the 'largest financial interest'***

22  ***requirement by aggregating losses***"); *In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 818-89

23  (N.D. Ohio 1999) (engaging in lengthy statutory analysis of "groups").

24    Addressing this statutory ambiguity, courts hold that "the phrases 'members' and 'group of

25  persons' must be read in the context of the overall scheme and purpose of the Reform Act [which]

26  was to eradicate lawyer-driven securities fraud class actions."  *Bowman v. Legato Sys.*, 195 F.R.D.

27  655, 658 (N.D. Cal. 2000).  In *American Italian Pasta*, Judge Smith reasoned that

28

THE NATIONAL ELEVATOR INDUSTRY PENSION FUND'S OMNIBUS OPPOSITION TO ALL
OTHER MOTIONS FOR APPOINTMENT AS LEAD COUNSEL - 3:07-cv-06140-MHP        - 4 -

1
2
3

> granting a request to appoint an unrelated group of investors would violate the purposes behind the PSLRA, which includes the prevention of lawyer-driven litigation. Organizing disparate combinations of shareholders for the purpose of aggregating the "most damage" is contrary to the spirit and purposes of the Act, and it is unreasonable to construe the PSLRA's reference to a "group" as meaning a "group of otherwise disinterested and disconnected parties."

4

5    *Stengle v. Am. Italian Pasta*, 2005 U.S. Dist. LEXIS 43816, at *15 (W.D. Mo. 2005). As discussed

6    herein, by their filings, the Harel and Batucha Groups' members have left little doubt that they were

7    "created by the efforts of lawyers hoping to ensure their eventual appointment as lead counsel" and,

8    as such, are "groups" of the sort district courts in this circuit and throughout the country look upon

9    with disfavor. *Cendant*, 264 F.3d at 267; *see Gemstar-TV Guide*, 209 F.R.D. at 451; *Ruland v.*

10   *Infosonics Corp.*, 2006 U.S. Dist. LEXIS 79144, at *8-*11 (S.D. Cal. 2006); *In re Vaxgen Sec.*

11   *Litig.*, 2004 U.S. Dist. LEXIS 29812, at *16 (N.D. Cal. 2004); *Impac*, 2006 U.S. Dist. LEXIS 40607,

12   at *20-*32; *Glauser v. EVCI Career Colls. Holding Corp.*, 236 F.R.D. 184, 189-90 (S.D.N.Y.

13   2006).[3]

14   **B.    The National Elevator Fund Is the "Most Adequate Plaintiff" Because It Is the Only Applicant that Satisfies All of the PSLRA's Lead Plaintiff Requirements**

15

16          The papers filed with the Court reveal that the National Elevator Fund's financial interest is

17   larger than all but two of the other competing movants. While the Harel and Batucha Groups claim

18   larger losses, only the National Elevator Fund should be afforded presumptive lead plaintiff status

19   because, in addition to its significant financial interest, only it has also made a "threshold" showing

20   of typicality and adequacy under Rule 23. *See Cavanaugh*, 306 F.3d at 732 ("district court has

21   latitude as to what information it will consider in determining typicality and adequacy"); *Impac*,

22   2006 U.S. Dist. LEXIS 40607, at *19-*26.

23          The National Elevator Fund is typical because its claims arise from the same course of

24   conduct and the same operative facts which damaged the entire class. *See Hanlon v. Chrysler Corp.*,

25   150 F.3d 1011, 1020 (9th Cir. 1998); Memorandum of Law in Support of National Elevator Industry

26   ---

27   [3]        *See also In re Century Bus. Servs., Sec. Litig.*, 202 F.R.D. 532 (N.D. Ohio 2001); *Sakhrani v. Brightpoint, Inc.*, 78 F. Supp. 2d 845, 853 (S.D. Ind. 1999); *In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304 (S.D.N.Y. 2001); *Crawford v. Onyx Software Corp.*, 2002 U.S. Dist. LEXIS 1101, at *4-*5 (W.D. Wash. 2002).

28

1    Pension Fund's Motion for Appointment as Lead Plaintiff and for Approval of Its Selection of Lead

2    Counsel ("Opening Mem.") at 5-7. The National Elevator Fund is also adequate because its interests

3    are not antagonistic to those of the class, it does not suffer from any conflicts of interest and because

4    it has a sufficient interest in the outcome of the litigation to ensure that it will vigorously prosecute

5    it. *See Impac*, 2006 U.S. Dist. LEXIS 40607, at *19; *Cendant*, 264 F.3d at 264 ("institutional

6    investors . . . with large losses will, more often than not, satisfy the typicality and adequacy

7    requirements [of Rule 23]"); Opening Mem. at 6-7.

8         Finally, unlike the Israeli Entities, the National Elevator Fund has selected just **one law firm**

9    to prosecute this litigation on behalf of the putative class. *See Glaxosmithkline*, 246 F.R.D. at 205

10   ("Coughlin Stoia Geller Rudman & Robbins LLP . . . is well qualified and has successfully served as

11   lead counsel . . . in numerous complex securities class actions."); *In re Milestone Sci. Sec. Litig.*, 183

12   F.R.D. 404, 418 (D.N.J. 1998) ("The potential for duplicative services and the concomitant increase

13   in attorneys' fees works against the approval of multiple lead counsel.").

14        Accordingly, the National Elevator Fund's motion should be granted and all other motions

15   should be denied.

16   **C.    Neither the Batucha Group nor the Harel Group Have Demonstrated
           that They Can or Will Fairly and Adequately Represent the Interests**
17   **       of the Class**

18        **1.    The Harel and Batucha Groups Have Not Demonstrated Their
                 Cohesiveness**
19

20        One of the ways that courts ensure that the PSLRA's legislative purposes are carried out is to

21   ensure that groups seeking appointment as lead plaintiff demonstrate that they can "'effectively

22   manage the litigation and the lawyers.'" *Network Assocs.*, 76 F. Supp. 2d at 1026; *In re Nw. Corp.*

23   *Sec. Litig.*, 299 F. Supp. 2d 997, 1005 (D.S.D. 2003); *In re Lernout & Hauspie Sec. Litig.*, 138 F.

24   Supp. 2d 39, 44-45 (D. Mass. 2001). In *Impac*, Judge Carney had occasion to consider whether two

25   such groups with the ***first and second largest respective losses before the court*** could manage the

26   litigation and the lawyers and concluded:

27              The Court agrees with *Gemstar* and other cases holding that groups of
          unrelated investors, while not per se impermissible lead plaintiffs under the PSLRA,
28        are not adequate class representatives absent a showing that they are able to
          coordinate their efforts in the litigation. . . . The absence of any evidence of a

1
2
3
4

relation among the [] proposed members, or between the two groups, suggests that the purpose of the combination was to secure lead plaintiff status for the group and appointment of lead counsel status for their attorneys.  This lack of relation, combined with the absence of any explanation of how the group intends to conduct discovery or coordinate litigation efforts or strategy, poses a danger that the group will not be cohesive. . . .  In sum, the Court finds that the Impac/IMH Group is not entitled to the presumption that it is the most adequate plaintiff because it has not made the required preliminary showing that it would adequately represent the class.

5
6

2006 U.S. Dist. LEXIS 40607, at *25-*27 (footnotes omitted); *Gemstar-TV Guide*, 209 F.R.D. at

7

447-50.

8
9
10
11
12
13
14
15

Here, like the groups in *Impac*, the Harel and Batucha Groups have not presented any explanation regarding how and when they were joined together, intend to conduct discovery, or coordinate litigation efforts and strategy.  In fact, neither group has provided one scintilla of evidence regarding anything about themselves "other than a conclusory statement of names [and] transactions for purchase of securities." *Waste Mgmt.*, 128 F. Supp. 2d at 413; *Crawford*, 2002 U.S. Dist. LEXIS 1101, at *4-*5 (finding that "loose group[s] of investors whose relationship was forged only in a effort to win appointment as lead plaintiff" are infirm under Rule 23); *Gemstar-TV Guide*, 209 F.R.D. at 451; *Network Assocs.*, 76 F. Supp. 2d at 1026.

16
17
18
19

Whether considered individually or as groups, therefore, these groups have not demonstrated that they are cohesive, capable of adequately leading this litigation and directing their attorneys in this complex action.  *See Impac*, 2006 U.S. Dist. LEXIS 40607, at *28-*29; *Smith v. Suprema Specialties, Inc.*, 206 F. Supp. 2d 627, 635 (D.N.J. 2002); *Brightpoint*, 78 F. Supp. 2d at 847-48.

20

**D.     The Israeli Entities Are Atypical and Are Subject to Unique Defenses**

21

**1.     The Israeli Entities Have Not Demonstrated Attorney-in-Fact Authority Under the Laws of Israel**

22
23
24
25
26
27
28

The Israeli Entities are a hodgepodge of asset managers, mutual funds and insurance companies.  Accordingly, if appointed, defendants will persuasively argue that the Israeli Entities lack a financial stake in the outcome of this litigation because the Israeli Entities themselves did not suffer investment losses.  *See Network Assocs.*, 76 F. Supp. 2d at 1030; *In re Peregrine Sys. Sec. Litig.*, 2002 U.S. Dist. LEXIS 27690, at *53-*57 (S.D. Cal. 2002).  To appoint as a lead plaintiff a movant that itself may have no losses would dramatically undermine one of the fundamental precepts of the PSLRA, which is to appoint as lead plaintiffs those "class members with large

1   amounts at stake." H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679,

2   733. Indeed, even if this case were to yield a 100% recovery for the class, defendants will later

3   claim that the Israeli Entities are entitled to no recovery as the funds they **manage** actually own the

4   stock at issue – not the Israeli Entities.[4] *See Smith*, 206 F. Supp. 2d at 634-36; *In re Turkcell Iletisim*

5   *Hizmetler, A.S. Sec. Litig.*, 209 F.R.D. 353, 357-58 (S.D.N.Y. 2002) (limiting asset manager's loss to

6   the .35% fee it earned on the total assets it invested).

7          In *Cardinal Health*, for instance, the court denied an asset manager's lead plaintiff motion,

8   reasoning: "Wood Asset Management will be subject to a unique defense regarding its standing to

9   assert securities fraud claims on behalf of its clients because it has no proof that it is the clients'

10  attorney-in-fact." *In re Cardinal Health, Inc. Sec. Litig.*, 226 F.R.D. 298, 311 (S.D. Ohio 2005).

11  Here, like the asset manager in *Cardinal Health*, the Israeli Entities have also failed to provide any

12  evidence that they are their clients' "attorney-in-fact." *Id*. This omission is fatal. To illustrate

13  further, in *Smith* the issue was whether an asset manager, like CLAL Finance Batucha Investment

14  Management, could be appointed lead plaintiff. 206 F. Supp. 2d at 634. The court found that,

15  "[a]lthough on the surface it appear[ed]" that the investment firms had suffered the greatest financial

16  loss, it was not entitled to lead plaintiff status because it did not, for instance, submit evidence that it

17  had received permission to move on their clients' behalf. *Id*. at 633-34. In denying the investment

18  advisor's motion, the *Smith* court reduced its claimed losses from $2.1 million to $310,000 –

19  representing the difference between its claimed financial interest and the losses the advisor actually

20  had standing to claim. *Id*. at 636.

21         Ultimately, because the Israeli Entities apparently did not suffer a loss of their own and have

22  failed to **timely** present any evidence that they have been granted "attorney-in-fact" authority to file

23  suit against VeriFone, the Israeli Entities' motions for appointment as lead plaintiff should be

24  denied. *See Cardinal*, 226 F.R.D. at 311.

25

26  _____

27  [4]     The same holds true for the motion filed by Westend Capital Management, LLC. However,
    because it claims to have suffered a loss half the size of the National Elevator Fund's, under
28  *Cavanaugh*, the Court need not reach its motion. *See Cavanaugh*, 306 F.3d at 732.

1

**2.    The Israeli Entities' Distance from This Forum May Create Practical Difficulties that Would Make It Difficult for Them to "Fairly and Adequately Represent" the Class**

2

3    In *Network Associates*, 76 F. Supp. 2d at 1029, Judge Whyte refused to appoint two foreign

4    financial entities, like those that comprise the Israeli Entities, in part, because of the practical

5    problems associated with their involvement:

6              Finally, both ING and KBC are foreign organizations. They are distant. . . .
        The distances involved and some differences in business culture would impede their
7        ability to manage and to control American lawyers conducting litigation in
        California. ***At trial, the representative plaintiff would normally testify and attend.***
8        ***In a long trial, it would be obviously difficult for ING or KBC to attend in its***
        ***entirety***. The Court certainly does not say that a foreign investor could never qualify.
9        But these factors, when added to the others set forth above, ***reinforce the Court's***
        ***conclusion that neither KBC nor ING can fairly and adequately represent the***
10       ***class***.

11    *Id.* at 1030. Similarly, here, it is difficult to conceive of how the Israeli Entities' members could

12    efficiently meet with their American counsel during business hours, let alone effectively and

13    adequately represent the class and exercise the control over counsel mandated by the PSLRA. *Id.*

14    The distances involved alone will serve to convert even the most elementary exercise such as a

15    conference call or a deposition into a task of Herculean proportions requiring significant advance

16    planning, translation and increased cost to the class. These entities should, by themselves, be the

17    face of the class.[5]

18    **3.    The Israeli Entities' Various Connections to Verifone Will Subject the Class to Unique Defenses**

19

20    The Israeli Entities, VeriFone and Lipman Electronic Engineering Ltd. (which VeriFone

21    acquired during the Class Period) have several potentially troubling connections and relationships

22    that defendants will later exploit to the detriment of the class should the Court appoint them as lead

23    _____

[5]       Not only would the appointment of the Israeli Entities under these circumstances create
24    practical difficulties, it is also unclear whether the outcome of the case will be given *res judicata*
      effect in Israel. *In re: Discovery Labs. Sec. Litig.*, No. 06-1820, slip op. at 5 n.2 (E.D. Pa. July 24,
25    2002) attached as Ex. A to the Declaration of Ramzi Abadou in Support of the National Elevator
      Industry Pension Fund's Omnibus Opposition to All Other Motions for Appointment as Lead
26    Counsel ("Abadou Decl."), filed concurrently herewith; *In re Royal Dutch/Shell Transport Sec.*
      *Litig.*, No. 04-374 (JWB), slip op. at 36-37 (D.N.J. June 30, 2004) (denying lead plaintiff motion of
27    foreign investor with largest loss on res judicata grounds) (Abadou Decl., Ex. B); *GlaxoSmithKline*,
      2007 U.S. Dist. LEXIS 74621 (same); *In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76
28    (S.D.N.Y. 2007); *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 219 F.R.D. 343 (D. Md. 2003).

1   plaintiffs.  For example, Phoenix Insurance Company, Ltd. is controlled by Delek Group (Delek),

2   which has a 53% ownership interest in Phoenix.  Delek disclosed in its Quarterly Report, filed on

3   May 15, 2007, that Delek has begun beta-testing an interface to the BP electronic payment system

4   through a mid-stream device supplied by VeriFone.  Delek's business relationships with VeriFone

5   place the interests of Phoenix in conflict with absent class members who are adverse to VeriFone.

6   Similarly, the Batucha Fund, for instance, published a "Special Equities Update" on August 1, 2007

7   which provides equities *recommendations* on several companies reviewed by Batucha, including

8   *VeriFone*.  Additionally, a news article published on November 9, 2006 by Market Watch quotes a

9   Batucha analyst, Tzahi Avraham, regarding his view on the VeriFone acquisition of Retalix.  *The*

10  *fact that Batucha was actively publishing reports and recommendations regarding purchases of*

11  *VeriFone based on its conversations with Company insiders will render it subject to an attack*

12  *regarding its reliance under the fraud-on-the-market presumption*.  *See Grace v. Perception Tech.*

13  *Corp.*, 128 F.R.D. 165, 169 (D. Mass. 1989) ("Personal contact with corporate officers and special

14  meetings at the company will render a plaintiff atypical to represent the class.")  Such an attack, if

15  successful, would render certification of a class action in this case more difficult and could,

16  effectively, eviscerate the ability of absent class members to obtain any recovery.  *See Shiring v. Tier*

17  *Techs., Inc.*, 244 F.R.D. 307, 313 (E.D. Va. 2007) ("Thus, where, as here, plaintiff relies on the

18  fraud-on-the-market doctrine to establish typicality, any reliance on non-market information means

19  that 'he cannot be said to have relied on the integrity of the market, and is atypical of those who have

20  so relied.'").

21      Moreover, as an entity that engaged in "day-trading" during the Class Period, the Batucha

22  Fund did not invest in VeriFone stock in any true sense of the word.[6]  According to the Securities

23  and Exchange Commission, *day traders do not invest*, instead "[t]hrough the use of sophisticated

24  computer software, day traders sit in front of computer screens and look for nothing more than real

---

[6]      In addition, legitimate questions exist as to the actual size of the Batucha Fund's claimed financial interest because of gross inaccuracies in its trading data.  For instance, while the Batucha Group claims a loss exceeding $17 million, the National Elevator Fund has calculated its loss at approximately $8.4 million.

1  time price movements.  What it is that they are buying or selling is of no concern to them."[7]  *In re*

2  *Bank One S'holders Class Actions*, 96 F. Supp. 2d 780, 784 (N.D. Ill. 2000) (refusing to appoint as

3  lead plaintiff an entity that "***engaged in extensive daytrading***"); *In re MicroStrategy Inc. Sec. Litig.*,

4  110 F. Supp. 2d 427, 436-37 (E.D. Va. 2000); *In re Safeguard Scientifics*, 216 F.R.D. 577, 582-83

5  (E.D. Pa. 2003) (finding day traders "atypical and not an adequate representative because he is

6  subject to unique defenses regarding reliance and materiality.").

7          Unlike typical class members, the Batucha Group bought and sold large volumes of shares

8  daily, seeking profits of pennies a share on the normal price fluctuations that occur in every stock.  If

9  appointed, defendants will later argue that the Batucha Fund's unusual investment strategy is not the

10  approach of typical investor members of the class who purchased (or sold) VeriFone securities in

11  ***reliance*** on publicly available information.  *See, e.g.*, *Safeguard*, 216 F.R.D. at 582-83.  Because

12  such an investment strategy clearly has little, if anything, to do with defendants' fraudulent public

13  statements and/or omissions, the Batucha Fund is atypical.  *See id.*

14  **III.    CONCLUSION**

15          For the foregoing reasons, the National Elevator Fund should be appointed as lead plaintiff

16  and all other motions should be denied.

17  DATED:  February 15, 2008                Respectfully submitted,

18                                           COUGHLIN STOIA GELLER
                                               RUDMAN & ROBBINS LLP
19                                           RAMZI ABADOU

20

21                                           _____
                                                    s/ Ramzi Abadou
22                                               RAMZI ABADOU

23

24

---

25  [7]      *See* Abadou Decl., Ex. C (Day Trading: Your Dollars at Risk, *available at* http:
26  //www.sec.gov/investor/pubs/daytips.htm; Oral Statement of Chairman Arthur Levitt, Before the
    Senate Permanent Subcommittee on Investigations, Committee on Governmental Affairs,
27  Concerning Day Trading (Sept. 16, 1999), *available at* http://www.sec.gov/news/testimony
    /testarchive/1999/tsty2099.htm; and Day Trading, *available at* http://www.sec.gov/answers
28  /daytrading.htm).

THE NATIONAL ELEVATOR INDUSTRY PENSION FUND'S OMNIBUS OPPOSITION TO ALL
OTHER MOTIONS FOR APPOINTMENT AS LEAD COUNSEL - 3:07-cv-06140-MHP          - 11 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
CHRISTOPHER P. SEEFER
100 Pine Street, Suite 2600
San Francisco, CA  94111
Telephone:  415/288-4545
415/288-4534 (fax)

[Proposed] Lead Counsel for Plaintiffs

S:\CasesSD\Verifone 07\BRF 00049205.doc

1

**CERTIFICATE OF SERVICE**

2          I hereby certify that on February 15, 2008, I electronically filed the foregoing with the Clerk

3   of the Court using the CM/ECF system which will send notification of such filing to the e-mail

4   addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have

5   mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF

6   participants indicated on the attached Manual Notice List.

7          I further certify that I caused this document to be forwarded to the following designated

8   Internet site at: http://securities.csgrr.com/.

9          I certify under penalty of perjury under the laws of the United States of America that the

10  foregoing is true and correct.  Executed on February 15, 2008.

11
                                          s/ Ramzi Abadou
12                                        RAMZI ABADOU

13
                                   COUGHLIN STOIA GELLER
14                                     RUDMAN & ROBBINS LLP
                                   655 West Broadway, Suite 1900
15                                 San Diego, CA  92101-3301
                                   Telephone:  619/231-1058
16                                 619/231-7423 (fax)
                                   E-mail: rabadou@csgrr.com
17

18

19

20

21

22

23

24

25

26

27

28

# Mailing Information for a Case 3:07-cv-06140-MHP

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Ramzi Abadou**
  ramzia@csgrr.com,debh@csgrr.com

- **Brendan P. Cullen**
  cullenb@sullcrom.com

- **Timothy Alan DeLange**
  kristinas@blbglaw.com,timothyd@blbglaw.com

- **Daniel C. Girard**
  girardgibbs@girardgibbs.com,cma@girardgibbs.com

- **Nicole Catherine Lavallee**
  nlavallee@bermanesq.com,ysoboleva@bermanesq.com

- **Jonathan Krasne Levine**
  jkl@girardgibbs.com,mav@girardgibbs.com

- **Alan Roth Plutzik**
  aplutzik@bramsonplutzik.com

- **Juden Justice Reed**
  jreed@schubert-reed.com,plee@schubert-reed.com,akeng@schubert-reed.com,rschubert@schubert-reed.com

- **Aaron M. Sheanin**
  ams@girardgibbs.com,amv@girardgibbs.com,ace@girardgibbs.com

- **Michael Howard Steinberg**
  steinbergm@sullcrom.com

- **Steven Noel Williams**
  swilliams@cpmlegal.com,jverducci@cpmlegal.com,dburwell@cpmlegal.com,cwalker@cpmlegal.

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)