Joseph W. Cotchett
Mark Molumphy
**COTCHETT, PITRE & McCARTHY**
840 Malcolm Road, Suite 200
Burlingame, California 94010
Telephone:    (650) 697-6000
Facsimile:    (650) 697-0577

Stanley M. Grossman                          Patrick V. Dahlstrom
Marc I. Gross                                Joshua B. Silverman
Jeremy A. Lieberman                          **POMERANTZ HAUDEK BLOCK**
**POMERANTZ HAUDEK BLOCK**                     **GROSSMAN & GROSS LLP**
  **GROSSMAN & GROSS LLP**                   One North LaSalle Street
100 Park Avenue                              Suite 2225
New York, New York 10017-5516                Chicago, Illinois 60602
Telephone: (212) 661-1100                    Telephone: (312) 377-1181
Facsimile: (212) 661-8665                    Facsimile: (312) 377-1184

**Attorneys for Plaintiff CLAL Finance Batucha Investment Management Ltd.**
**And Direct Investment House (Providence Funds) Ltd.**

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| IN RE VERIFONE HOLDINGS, INC. SECURITIES LITIGATION, | No. C 07-06140 MHP<br><br>Honorable Marilyn Hall Patel<br>Courtroom 15<br><br>Hearing: March 17, 2008<br>            2:00 p.m. |

**MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER
SUPPORT OF CLAL FINANCE BATUCHA INVESTMENT MANAGEMENT,
LTD.'S AND DIRECT INVESTMENT HOUSE (PROVIDENCE FUNDS) LTD.'S
MOTION TO APPOINT LEAD PLAINTIFF AND APPROVE LEAD COUNSEL**

1

## TABLE OF CONTENTS

2

3    PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

4    ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

5              A.     CLAL AND DIRECT SHOULD BE APPOINTED
6                     LEAD PLAINTIFFS FOR THE CLASS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

7                     1.     *Cavanaugh's* Three-Step Process For Appointing Lead Plaintiff . . . . . . . 6

8                            a.     Notice of Pendency . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

9                            b.     Losses Suffered by the Plaintiffs . . . . . . . . . . . . . . . . . . . . . . . . . 7

10                           c.     Typicality and Adequacy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

11                           d.     Rebutting the Presumption . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

12             B.     CLAL'S AND DIRECT'S SELECTION OF COUNSEL SHOULD BE
13                    APPROVED AS LEAD AND LIAISON COUNSEL FOR THE CLASS . . . . . 14

14    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CLAL  FINANCE BATUCHA INVESTMENT MANAGEMENT, LTD.'S AND DIRECT INVESTMENT HOUSE'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND FOR APPROVAL OF LEAD COUNSEL

1

## TABLE OF AUTHORITIES

2

3    **Cases**

4
*Alfadda v. Fenn,*
5        935 F.2d 475 (2d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

6    *Aronson v. McKesson HBOC, Inc.,*
        79 F. Supp. 2d 1146, 1153 (N.D. Cal. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 12
7
*In re Baan Co., Sec. Litig.,*
8        186 F.R.D. 214 (D.D.C. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

9    *In re Cable & Wireless, PLC, Secs. Litig.,*
        217 F.R.D. 372 (E.D. Va. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
10
*In re Cavanaugh,*
11        306 F.3d 726 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 10, 13, 15

12   *In re Comverse Technology, Inc., Sec. Litig.,*
        2007 U.S. Dist. LEXIS 14878 (E.D.N.Y. Mar. 2, 2007) . . . . . . . . . . . . . . . . . . . . . . . 8, 9
13
14   *In re Cornerstone Propane Partners LP Sec. Litig.,*
        2006 U.S. Dist. LEXIS 25819 (N.D. Cal. May 3, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . 3

15   *Corwin v. Seizinger,*
        2008 U.S. Dist. LEXIS 3045 (S.D.N.Y. Jan. 8, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . 14
16
17   *Cromer Fin. Ltd. v. Berger,*
        137 F. Supp. 2d 452 (S.D.N.Y. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

18   *Danis v. USN Communs., Inc.,*
19        189 F.R.D. 391 (N.D. Ill. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

20   *Dura Pharmaceuticals, Inc. v. Broudo,*
        544 U.S. 336 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10
21
22   *Erikson v. Cornerstone Propane Partners LP,*
        2003 U.S. Dist. LEXIS 18009 (N.D. Cal. Sept. 9, 2003) . . . . . . . . . . . . . . . . . . . . . . 6, 15

23   *In re eSpeed, Inc. Sec. Litig.,*
24        232 F.R.D. 95 (S.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

25   *Hanon v. Dataproducts Corp.,*
        976 F.2d 497 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
26
27   *Hill v. The Tribune Company,*
        2005 U.S. Dist. LEXIS 2391 (N.D. Ill. Oct. 13, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . 8

28

*Hunt v. Enzo Biochem, Inc.*,
   2008 U.S. Dist. LEXIS 1472 (Jan. 8, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Itoba, Ltd. v. Lep Group PLC*,
   54 F.3d 118 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Lax v. First Merchants Acceptance Corp.*,
   1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 11, 1997) . . . . . . . . . . . . . . . . . . . . . . . . . 9

Lerwill v. Inflight Motion Pictures, Inc.,
   582 F.2d 507 (9th Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*In re Nortel Networks Corp. Sec. Litig.*,
   2003 U.S. Dist. LEXIS 15702 (S.D.N.Y. Sept. 8, 2003) . . . . . . . . . . . . . . . . . . . . . . . . 14

*In re Northern Dist. Of Cal., Dalkon Shield IUD Prod. Liab. Litig.*,
   693 F.2d 847 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*In re Olsten Corp. Sec. Litig.*,\
   3 F. Supp. 2d 286, 296 (E.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Osher v. Guess?, Inc.*,
   2001 U.S. Dist. LEXIS 6057 (C.D. Cal. Apr. 26, 2001) . . . . . . . . . . . . . . . . . . . . . . . 6, 15

*In re Pacific Gateway Exchange, Inc. Secs. Litig.*,
   No. C 00-1211 PJH, slip op. (N.D. Cal. Nov. 17, 2000) . . . . . . . . . . . . . . . . . . . . . . . 3, 7

*In re Razorfish, Inc. Sec. Litig.*,
   143 F. Supp. 2d 304 (S.D.N.Y. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Riordan v. Smith Barney*,
   113 F.R.D. 60 (N.D. Ill. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*In re Royal Ahold N.V. Secs. & ERISA Litig.*,
   351 F. Supp.334(D. Md. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*In re Silicon Graphics, Inc. Secs. Litig.*,
   183 F.3d 970 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Squyres v. Union Texas Petroleum Holdings, Inc.*,
   1998 U.S. Dist. LEXIS 22945 (C.D. Cal. Nov. 2, 1998) . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Takeda v. Turbodyne Techs., Inc.*,
   67 F. Supp. 2d 1129 (C.D. Cal. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Tanne v. Autobytel, Inc.*,
   226 F.R.D. 659 (C.D. Cal. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*In re Vivendi Universal, S.A. Secs. Litig.*,
   242 F.R.D. 76 (S.D.N.Y. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*In re Watchguard Sec. Litig.*,
        2005 U.S. Dist. LEXIS 40923 (D. Wash. July 13, 2005) . . . . . . . . . . . . . . . . . . . . . . . . 1

*Weltz v. Lee*,
        1999 F.R.D. 129 (S.D.N.Y. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Wenderhold v. Cylink Corp.*,
        188 F.R.D.577 (N.D. Cal. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10


**Docketed Cases**

*Cerini v. Verifone Holdings, Inc.*,
        No. C 07-06228 MHP (N.D. Cal. Dec. 10, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Eichenholtz v. Verifone Holdings, Inc.*,
        No. C 07-06140 MHP (N.D. Cal. Dec. 4, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Feitel v. Verifone Holdings, Inc.*,
        No. C 08-00118 MHP (Jan. 7, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Feldman v. Verifone Holdings, Inc.*,
        No. C 07-06218 MHP (Dec. 7, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Lien v. Verifone Holdings, Inc.*,
        No. C 07-06195 JSW (N.D. Cal. Dec. 6, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Hill v. Verifone Holdings, Inc.*,
        No. C 07-06238 MHP (Dec. 10, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Offut v. Verifone Holdings, Inc.*,
        No. C 07-06241 MHP (Dec. 11, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Vaughn v. Verifone Holdings, Inc.,
        No. C 07-06197 VRW (Dec. 6, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Westend Capital Management LLC v. Verifone Holdings, Inc.*,
        No. C 07-o6327 MMC (Dec. 10, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*


**Congressional Materials**

H.R. Conf. Rpt. No. 104-369, 104th Cong. 1st Sess (Nov. 28, 1995) . . . . . . . . . . . . . . . . . . 12, 15

CLAL Finance Batucha Investment Management, Ltd. ("CLAL") and Direct Investment House, (Providence Funds) Ltd. ("Direct") respectfully submit this Memorandum of Points and Authorities in Further Support of their Motion for Appointment as Lead Plaintiff and for Approval of Lead Counsel, and in opposition to the opposing motions for lead plaintiff.

**PRELIMINARY STATEMENT**

CLAL and Direct have the largest financial interest of any movant seeking to represent the Class defined as purchasers of Verifone Holdings, Inc. ("Verifone" or the "Company") common stock during the Class Period of March 1, 2007 through December 3, 2007.[1]  The first Notice of Pendency filed in this action stated a class period of March 1, 2007 through November 30, 2007.[2]  The end date of November 30, 2007 does not reflect that fact that shares of Verifone common stock were traded until the disclosure on December 3, 2007.  Accordingly, shares purchased between November 30, 2007 and December 3, 2007 were artificially inflated and should be included in the Class.

There is no basis, however, to extend the class period earlier to August 31, 2006 or September 1, 2006, and nothing in the complaints citing an earlier commencement date allege anything that would support such an extension.[3]  In deciding the motions for appointment of lead plaintiff, the Court "must rely solely on the pleadings and declarations that each contestant provides."  *In re Watchguard Sec. Litig.*, 2005 U.S. Dist. LEXIS 40923, at *8 (D. Wash. July 13,

[1] *See* Declaration of Jane Nettesheim ("Nettesheim Dec .") at Exhibit 3A, filed herewith.

[2] *See* Declaration of Patrick V. Dahlstrom In Support Of The Memorandum of Points and Authorities In Support Of CLAL Finance Batucha Investment Management, Ltd.'s and Direct Investment House (Providence Funds), Ltd.'s Motion To Appoint Lead Plaintiff And Lead Counsel ("Dahlstrom Dec."), at Exhibit A.

[3] *See Lien v. Verifone Holdings, Inc.*, No. C 07-06195 JSW, Complaint (Dec. 6, 2007) (Docket Entry #1); *Vaughn v. Verifone Holdings, Inc.*, No. C 07-06197 VRW, Complaint (Dec. 6, 2007) (Docket Entry #1); *Cerini v. Verifone Holdings, Inc.*, No. 07-06228 SC, Complaint (Dec. 10, 2007) (Docket Entry #1); *Westend Capital Management LLC v. Verifone Holdings, Inc.,* No. C 07-06327 MMC, Complaint (Dec. 10, 2007) (Docket Entry #1).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CLAL  FINANCE BATUCHA INVESTMENT MANAGEMENT, LTD.'S AND DIRECT INVESTMENT HOUSE'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND FOR APPROVAL OF LEAD COUNSEL

2005), *citing Cavanaugh*, 206 F.3d at 730.  Here, the only documents that have been filed in support a longer class period are the filed complaints.  Thus, unless the complaints citing the longer class period allege facts that adequately plead a basis for the longer period, there should be no deviation from the class period in the Notice of Pendency published pursuant to the first filed case.

The statement upon which all of the complaints rely in disclosing the truth is a December 3, 2007 Verifone press release which explicitly states that Verifone would "need to restate results from the first three quarters of fiscal 2007." *Compare Eichenholtz v. Verifone Holdings, Inc.*, No. C 07-06140 MHP, Complaint ¶31 (N.D. Cal. Dec. 4, 2007) (Docket Entry #1), *with Lien v. Verifone Holdings, Inc.*, No. C 07-06195 JSW, Complaint ¶32 (N.D. Cal. Dec. 6, 2007) (Docket Entry #1), *and Cerini v. Verifone Holdings, Inc.*, No. C 07-06228 MHP, Complaint ¶¶32, 34 (N.D. Cal. Dec. 10, 2007) (Docket Entry #1).  The *Cerini* Complaint also cited to an *Associated Press* report that tied the restatement directly to the integration of the Lipman Electronics acquisition, which was not completed until "November 2006," *see Cerini* Complaint ¶34, and thus did not appear on Verifone's financials until March 1, 2007.  Accordingly, the *Associated Press* reiterated that Verifone "will restate results from the first none months of the [fiscal] year." *Id.*

There is absolutely no new information in the *Lien, Vaughn*, or *Westend* complaints that supports extending the class period to August 31, 2006, or in the *Cerini* complaint to extend the class period to September 1, 2006. The only new factual information annexed to the complaints are the named plaintiffs' purchases of Verifone common stock prior to March 1, 2007.  Donald Cerini, in fact, purchased a grand total of 125 shares on January 29, 2007 and sold all of them on February 27, 2007, one day before the true Class Period begins, which means that he can not establish loss causation for any of his claimed loss of $248.75.  *See Cerini v. Verifone Holdings, Inc.*, No. C 07-06228 MHP, Certification (N.D. Cal. Dec. 10, 2007) (Docket Entry #1).  *See also In re Cornerstone Propane Partners LP Sec. Litig.*, 2006 U.S. Dist. LEXIS 25819, at *24-*28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CLAL  FINANCE BATUCHA INVESTMENT MANAGEMENT, LTD.'S AND DIRECT INVESTMENT HOUSE'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND FOR APPROVAL OF LEAD COUNSEL

2

1    (N.D. Cal. May 3, 2006); *In re Pacific Gateway Exchange, Inc. Secs. Litig.*, No. C 00-1211 PJH,

2    slip op., at 3-4 (N.D. Cal. Nov. 17, 2000).  Ron Dockswell, one of the plaintiffs signing a

3    Certification in the *Vaughn* action purchased a total of 50 shares on January 25, 2007; Miriam

4    Logan purchased a total of **3** shares on January 9, 2007.  *See Vaughn v. Verifone Holdings, Inc.*,

5    No. C 07-06197 VRW, Certification (Dec. 6, 2007) (Docket Entry #1).

6            Such gamesmanship is precisely the type of attorney-driven abuse that the Private

7    Securities Litigation Reform Act of 1995 (the "PSLRA") was intended to eradicate from

8    securities class action litigation:

9
                Congress enacted the PSLRA to deter opportunistic private
10               plaintiffs from filing abusive securities fraud claims . . . .

11              . . . .

12              The managers observed that plaintiffs routinely were filing lawsuits
                "against issuers of securities and others whenever there [was] a
13              significant change in an issuer's stock price, **without regard to any
                underlying culpability fo the issuer**, and with only faint hope that
14              the discovery process might lead eventually to some plausible cause
                of action."
15

16   *In re Silicon Graphics, Inc. Secs. Litig.*, 183 F.3d 970, 973, 977-78 (9th Cir. 1999) (citing H.R.

17   Rep. Conf. No. 104-369, at 32-41 (1995) (emphasis added).

18           The *Lien*, *Vaughn*, and *Westend* complaints citing a class period that begins on August 31,

19   2006, and the *Cerini* complaint citing September 1, 2007, allege that statements made from

20   August 31, 2006 through February 28, 2007 were false for the same reasons that statements

21   between March 1, 2007 through December 3, 2007 were false.  Yet, the only statements relied

22   upon in the complaints to ground the allegations of false statements from August 31, 2006

23   through February 28, 2007 are the December 3, 2007 press release and *Associated Press* report.

24   Even a cursory review of the December 3, 2007 press release and *Associated Press* report,

25   however, reveals that they do not offer any basis to allege that the statements from August 31,

26   2006 through February 28, 2007 were false, material, or artificially inflated the price of Verifone

27

28

1    common stock.

2    Furthermore, there is nothing in the *Lien* Complaint or the other three complaints alleging

3    an earlier starting date for the class period that even begins to satisfy the heightened pleading

4    standard under the PSLRA for alleging fraud under Section 10(b) of the Securities Exchange Act

5    of 1934 from August 31, 2006 through February 28, 2007.

6    The *Lien*, *Vaughn*, *Westend*, and *Cerini* complaints are nothing more than opportunistic

7    attempts to extend the class period in order to file actions on behalf of clients who purchased

8    Verifone common stock prior to the class period alleged the Notice of Pendency.  Without a shred

9    of support, these four complaints were filed with the hope that by the time an amended complaint

10   was filed some plausible cause of action would be cobbled together.  And, in so doing, the most

11   adequate plaintiff with the largest financial interests in the recovery sought by the class that

12   purchased in the correct class period may be brushed aside.  Such gaming of the process under the

13   PSLRA should not be countenanced.

14   As the majority of complaints allege, this is a securities class action on behalf of public

15   investors who purchased the securities of Verifone during the period from March 1, 2007 through

16   December 3, 2007.[4]  On December 3, 2007, the Company surprised investors when it announced

17   that its financial statements for the three months ended January 31, 2007, the three and six months

18   ended April 30, 2007 and the three and nine months ended July 31, 2007 should no longer be

19   relied upon. The Company stated that the problem with the financial statements was due to errors

20   in accounting related to the valuation of in-transit inventory and allocation of manufacturing and

21   distribution overhead to inventory. Each of these accounting errors affected VeriFone's reported

22   costs of net revenues. Further, the Company disclosed that its restated financial statements would

23

24

---

25   [4] *See Eichenholtz v. Verifone Holdings, Inc.*, No. C 07-06149 MHP, Complaint ¶1 (Dec. 4, 2007) (Docket Entry #1); *Feldman v. Verifone Holdings, Inc.*, No. C 07-06218 MHP, Complaint ¶1 (Dec. 7, 2007)(Docket Entry #1); *Hill v. Verifone Holdings, Inc.*, No. C 07-06238 MHP, Complaint ¶1 (Dec. 10, 2007)(Docket Entry #1); *Offut v. Verifone Holdings, Inc.*, No. C 07-05241 MHP, Complaint ¶1 (Docket Entry #1); *Feitel v. Verifone Holdings, Inc.*, No. C 08-00118 MHP, Complaint ¶1 (Jan. 7, 2008)(Docket Entry #1).

26

27

28

correct errors that overstated previously reported inventories by "material amounts," and understated the Company's cost of net revenues by "material amounts." A preliminary review revealed that these restatements would result in reductions to the Company's previously reported inventory levels of approximately $7.7 million, $16.5 million and $30.2 million as of January 31, 2007, April 30, 2007 and July 31, 2007, respectively. Additionally, the Company would realize reductions to its previously reported pre tax income of approximately $8.9 million, $7.0 million and $13.8 million for the three month periods ended January 31, 2007, April 30, 2007 and July 31, 2007, respectively.

Also on December 3, 2007, the *Associated Press* detailed how the Company had "overstated its profit before taxes by almost $30 million, or 80 percent, in the first three quarters of the fiscal year." One analyst detailed how the restatement "calls into question VeriFone's gross margins, which up until now have been positive fuel for the stock." Other analysts stated that the necessary inventory adjustments were likely related to VeriFone's acquisition of Lipman Electronic Engineering, which the Company completed in November 2006.

On this news of the restatement of Verifone's financials going back to March 1, 2007, the Company's shares fell $22.00 per share, or over 45.8 percent, to close on December 3, 2007 at $26.03 per share, on unusually heavy trading volume. All of the elements of the claims under Section 10(b) of the Exchange Act are alleged only for the Class Period of March 1, 2007 through December 3, 2007. Accordingly, that is the Class Period that the Court should use to determine the movants' financial interest in the relief sought by the Class.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CLAL FINANCE BATUCHA INVESTMENT MANAGEMENT, LTD.'S AND DIRECT INVESTMENT HOUSE'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND FOR APPROVAL OF LEAD COUNSEL

5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## ARGUMENT

**A.    CLAL AND DIRECT SHOULD BE APPOINTED
LEAD PLAINTIFFS FOR THE CLASS**

    **1.    *Cavanaugh's Three-Step Process For Appointing Lead Plaintiff***

        **a.    Notice of Pendency**

      The Ninth Circuit has held that the PSLRA "provides a simple three-step process for identifying the lead plaintiff." *In re Cavanaugh*, 305 F.3d 726, 729 (9th Cir. 2002). "The first step consists of publicizing the pendency of the action, the claims made and **the purported class period**." *Id.* (Emphasis added.) The Class Period announced in the Notice of Pendency for first filed action was March 1, 2007 through November 30, 2007. *See* Dahlstrom Dec., at Exhibit A; *Eichenholtz v. Verifone Holdings, Inc.*, No. 07-06140 MHP, Complaint ¶ 1 (Docket Entry #1).. The *Eichenholtz* Complaint alleges that the first misstatement which artificially inflated the price of Verifone stock occurred on March 1, 2007. *See Eichenholtz* Complaint ¶23.

      Under 15 U.S.C. §78u-4(a)(3)(B)(iii)(I), the Court is directed to consider all motions by plaintiffs or purported class members seeking to be appointed as lead plaintiffs filed in response to the Notice of Pendency, and "shall" appoint "the presumptively most adequate plaintiff" to serve as lead plaintiff. Further, the Court shall presume that plaintiff is "the person, or group of persons," that:

        (aa)    has either filed the complaint or made a motion in response
                to a notice . . . ;

        (bb)    in the determination of the court, has the largest  financial
                interest in the relief sought by the class; and

        (cc)    otherwise satisfies the requirements of Rule 23 of the
                Federal Rules of Civil Procedure.

*See Erikson v. Cornerstone Propane Partners LP*, 2003 U.S. Dist. LEXIS 18009, at *8-*9 (N.D. Cal. Sept. 9, 2003); *Squyres v. Union Texas Petroleum Holdings, Inc.*, No. CV 98-6085 LGB (AIJx), 1998 U.S. Dist. LEXIS 22945, at *5 (C.D. Cal. Nov. 2, 1998); *Osher v. Guess?, Inc.*, No.

CV 01-00871 LGB (RNBx), 2001 U.S. Dist. LEXIS 6057, at *11 (C.D. Cal. Apr. 26, 2001).

Westend Capital Management, LLC is the only movant that filed a complaint alleging a class period different from the class period cited in the Notice of Pendency upon which the current motions have been filed. *See Westend Capital Management, LLC v. Verifone Holdings, Inc.*, No. 07-06237 MMC, Complaint ¶1 (Dec. 10, 2007) (Docket Entry #1). The *Westend* Complaint, however, is virtually identical to the *Lien* Complaint, which like the *Westend* Complaint, does not state any reason for extending the Class Period to a date earlier than March 1, 2007. A review of Westend's purchases of Verifone common stock demonstrates why it extended the class period: Westend purchased only 15,200 shares between March 1, 2007 and December 3, 2007. It purchased 80,450 prior to March 1, 2007, with 72,900 purchased on one day alone, October 17, 2006.

Westend's purchases, as well as all of the other movants' purchases prior to March 1, 2007, were made prior to the first alleged misstatement in the first filed complaint, the *Eichenholtz* Complaint. Accordingly, any alleged loss from those purchases should not be included in the loss calculation for lead plaintiff purposes because "it has not [been] shown that if purchased the stock following the issuance of these allegedly false and misleading statements." *See In re Pacific Gateway Exchange, Inc. Secs. Litig.*, No. C 00-1211 PJH, slip op., at 3-4 (N.D. Cal. Nov. 17, 2000).

The Notice of Pendency for the first filed action has properly been published pursuant to the PSLRA, and satisfies the first steep under *Cavanaugh* for the Class Period of March 1, 2007 through November 30, 2007.

b.    **Losses Suffered by the Plaintiffs**

Under *Cavanaugh*, "[i]n step two, . . . . the district court must compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit." 306 F.3d at 230 (footnote omitted). Here, CLAL and Direct have the most to gain from the lawsuit because they have the "largest financial stake in the controversy." *Id.*    That is, they have "the largest

1  financial interest in the relief sought by the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

2  The "largest financial interest" is not defined under the PSLRA, but most courts understand that term

3  to mean the largest amount of losses in a securities litigation.

4      Although after the passage of the PSLRA many courts relied upon the First-In-First-Out

5  ("FIFO") methodology for calculating losses to determine lead plaintiffs, most courts today hold that

6  Last-In-First-Out ("LIFO") is the preferred method over FIFO.  As Judge Scheindlin of the Southern

7  District of New York recently noted, courts have "'generally rejected FIFO as an appropriate means

8  of calculating losses in securities fraud cases.'"  *Hunt v. Enzo Biochem, Inc.*, 2008 U.S. Dist. LEXIS

9  1472, at *21 (Jan. 8, 2008) (quoting *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 101 (S.D.N.Y.

10  2005).  *See also In re Comverse Technology, Inc., Sec. Litig.*, 2007 U.S. Dist. LEXIS 14878, at *22-

11  *25 (E.D.N.Y. Mar. 2, 2007); *Hill v. The Tribune Company*, 2005 U.S. Dist. LEXIS 2391, at *10

12  (N.D. Ill. Oct. 13, 2005) ("The current majority view, however, is apparently that securities fraud

13  losses should be calculated using LIFO.")

14

15      Based on the filings made in support of the movants' motions for appointment of lead

16  plaintiff, CLAL and Direct had an damages expert calculate the losses of each movant for the period

17  of March 1, 2007 through December 3 2007.  *See generally* Nettesheim Dec., at ¶12 and Exhibit 2A.

18  The following chart shows the net shares purchased and retained through December 3, 2007 and

19  trading losses under the LIFO methodology based on CLAL and Direct's expert's calculations:

| Movant | Retained Shares | Gain/(Loss) |
|---|---|---|
| CLAL | 88,715 | $(2,680,480) |
| Direct | 24,720 | $   (399,757) |
| **CLAL and Direct** | **113,435** | **$(3,080,237)** |
| NEIP | 89,336 | $(2,369,981) |
| Harel | 421 | $      (4,316) |
| Harel PIA | 1,845 | $     259,218 |
| Phoenix | 2,000 | $     309,293 |
| Primsa Mutual Funds | 32,104 | $    (658,027) |
| Prisma Provident Funds | 31,735 | $    (443,615) |
| **Israeli Group:** | **68,105** | **$(1,105,958)** |
| Steelworkers | 28,200 | $    (606,977) |
| Detroit Police & Fire | 27,823 | $    (442,804) |
| Westend | 13,800 | $    (225,024) |
| IBEW | 2,767 | $     (70,221) |
| APERS | 2,900 | $     (47,691) |
| Baldwins | 0 | 0 |

Since the Supreme Court's decision in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005), some courts have focused more on retained shares as well as losses an indication of the "largest financial interest" in the litigation.  *See, e.g., In re Comverse Technology, Inc., Sec. Litig.*, 2007 U.S. Dist. LEXIS 14878, at *22-*25 (E.D.N.Y. Mar. 2, 2007).  This approach utilizes the factors first described in *In re Olsten Corp. Sec. Litig.*, 3 F. Supp.2d 286, 296 (E.D.N.Y. 1998); *Lax v. First Merchants Acceptance Corp.*, 1997 U.S. Dist. LEXIS 11866, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997), with a particular emphasis on the retained shares and LIFO losses.  Here, CLAL and Direct's have the largest losses under the LIFO methodology and the greatest financial interest

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CLAL FINANCE BATUCHA INVESTMENT MANAGEMENT, LTD.'S AND DIRECT INVESTMENT HOUSE'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND FOR APPROVAL OF LEAD COUNSEL

9

1   based on retained shares.  Accordingly, CLAL and Direct are presumed to be the most adequate

2   plaintiff.

3       c.    **Typicality and Adequacy**

4       Having ascertained which movant has the largest financial interest in the outcome of this

5   litigation, "the court must appoint that plaintiff as lead, unless it finds that he does not satisfy the

6   typicality or adequacy requirement." *Cavanaugh*, 206 F.3d at 732.  For purposes of a motion to

7   appoint lead plaintiff pursuant to the PSLRA, however, all that is required is a "preliminary showing"

8   that the lead plaintiff's claims are typical and adequate.  *Aronson v. McKesson HBOC, Inc.*, 79 F.

9   Supp. 2d 1146, 1158 (N.D. Cal. 1999)(citing *Wenderhold v. Cylink Corp.*, 188 F.R.D.577, 587 (N.D.

10  Cal. 1999)).  *See also Tanne v. Autobytel, Inc.*, 226 F.R.D. 659, 666 (C.D. Cal. 2005).

11      The typicality requirement of Fed. R. Civ. P. 23(a)(3) is satisfied where the named

12  representative's claims have the "same essential characteristics as the claims of the class at large."

13  *Danis v. USN Communs., Inc.*, 189 F.R.D. 391, 395 (N.D. Ill. 1999).  "A class is typical if it arises

14  from the same event or course of conduct that gives rise to claims of other class members and all

15  claims are based on the same legal theory."  *Id.*  Indeed, the "similarity of legal theory may control

16  even where factual distinctions exist between the claims of the named representatives and the other

17  class members."  *Id.  See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (The

18  typicality requirement serves to "assure that the interest of the named representative aligns with the

19  interests of the class.") (citation omitted).

20      Here, CLAL's and Direct's claims are typical of those of the Class.  Each alleges, as do all

21  class members, that defendants violated the Exchange Act by making what they knew or should have

22  known were false or misleading statements of material facts concerning Verifone, or omitted to state

23  material facts necessary to make the statements they did make not misleading.  CLAL and Direct, as

24  did all members of the Class, purchased Verifone common stock during the Class Period at prices

25  artificially inflated by defendants' misrepresentations or omissions and were damaged upon the

26  disclosure of those misrepresentations and/or omissions.  These shared claims, which are based on

the same legal theory and arise from the same events and course of conduct as the class claims,

satisfy the typicality requirement of Rule 23(a)(3).

The adequacy of representation requirement of Rule 23(a)(4) is satisfied where it is

established that a representative party "will fairly and adequately protect the interests of the class."

Accordingly,

> The Ninth Circuit has held that representation is "adequate" when
> counsel for the class is qualified and competent, the representative's
> interests are not antagonistic to the interests of absent class members,
> and it is unlikely that the action is collusive.

*Takeda v. Turbodyne Techs, Inc.*, 67 F. Supp. 2d 1129, 1137 (C.D. Cal. 1999)(citing *In re Northern

Dist. Of Cal., Dalkon Shield IUD Prod. Liab. Litig.*, 693 F.2d 847, 855 (9th Cir. 1982)).  *Accord

Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978).  The class representative

must also have "sufficient interest in the outcome of the case to ensure vigorous advocacy." *Takeda*,

67 F. Supp. 2d at 1137 (citing *Riordan v. Smith Barney*, 113 F.R.D. 60, 64 (N.D. Ill. 1986)).

CLAL and Direct are adequate representatives for the Class.  There is no antagonism between

their interests and those of the Class and their losses demonstrate that they have sufficient interests

in the outcome of this litigation. On the other hand, two of the members of the Israeli Institutional

Investor Group doe not have any losses during the Class Period, and therefore lack the standing to

bring this action.  Thus, they are neither typical nor adequate to represent the Class.

Furthermore, CLAL and Direct are exactly the type of investor that Congress intended to lead

securities class actions in passing the PSLRA.  *See* H.R. Conf. Rpt. No. 104-369, 104th Cong. 1st

Sess (Nov. 28, 1995).  Moreover, CLAL and Direct have a history of collaborating together in Israel.

Many of the employees of Direct began their careers at CLAL, which is the preeminent investment

house in Israel.  More importantly, Giora Zarechansky, the CEO of Direct, a signatory to Direct's

Certification, and the liaison for Direct who will be overseeing the litigation, worked for a number

of years as a senior executive at CLAL and is well acquainted with the senior management of CLAL

who will be overseeing this litigation.  Indeed, Mr. Zarechansky has known Yossi Alharal, the

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CLAL  FINANCE BATUCHA INVESTMENT MANAGEMENT, LTD.'S AND DIRECT INVESTMENT HOUSE'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND FOR APPROVAL OF LEAD COUNSEL

11

signatory for the CLAL Certification and liaison with CLAL in this litigation, for years prior to this litigation, which will further facilitate the oversight of Class Counsel and the litigation by both CLAL and Direct.

Such pre-existing relationships and the fact that it is only two entities in the group are predicates endorsed by courts and the SEC as justifying the appointment of a group. For example, in *Aronson*, 79 F. Supp. 2d at 1153, the district court held that absent a pre-existing relationship such as that between CLAL and Direct would thwart Congress's intention to prevent lawyer-driven litigation. *Accord In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 304, 308-09 (S.D.N.Y. 2001). The SEC, as well as district courts, have held that unrelated persons or entities may comprise a group so long as the group is small. *See Weltz v. Lee*, 1999 F.R.D. 129, 132-33 (S.D.N.Y. 2001); *In re Baan Co., Sec. Litig.*, 186 F.R.D. 214, 216-17 (D.D.C. 1999) (citing SEC amicus brief in support thereof). Here, CLAL and Direct have the pre-existing relationships required by *Aronson* and *Razorfish*, and are of the size endorsed by *Baan* and the SEC. Accordingly, CLAL and Direct satisfy the grounds for appointment as a "group" whose claims are typical and will adequately represent the Class.

### d.    Rebutting the Presumption

The "third step of the process is to give other plaintiffs an opportunity to rebut the presumptive lead plaintiff's showing that it satisfies Rule 23"s typicality and adequacy requirements." *Cavanaugh*, 306 F.3d at 730. Generally, investment manages like CLAL and Direct are challenged on typicality grounds and adequacy grounds because they trade on accounts other than their own. Here, however, CLAL's accounts include it own shares, mutual fund shares, and pension fund shares. Direct's accounts include its own shares and pension fund shares.

Under Israeli law, CLAL and Direct have power of attorney over the shares invest for mutual funds pursuant to Article 76B of the Mutual Joint Investments Law. Further, under Article 3 of the Financial Services Supervisor Act, CLAL and Direct are authorized to take all actions available to recover pension funds' assets.

Further, CLAL's investment contracts give CLAL the right to handle on behalf of its client

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CLAL FINANCE BATUCHA INVESTMENT MANAGEMENT, LTD.'S AND DIRECT INVESTMENT HOUSE'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND FOR APPROVAL OF LEAD COUNSEL

12

1   the technical aspects relating to litigation in or outside Israel which are necessary for establishing the

2   client's right to receive any form of compensation.

3          Accordingly, although CLAL's and Direct's accounts included shares for mutual funds and

4   pension funds, as well as their own shares, Israeli law and the investment contracts authorize them

5   to lead this action on their clients' behalf and the Class.

6          The fact that CLAL and Direct purchased shares on the Tel Aviv Stock Exchange, the TASE,

7   is also of no moment.  As Judge Chin noted recently under similar circumstances,

8
9              Other courts in this District have appointed foreign investors as class
               representatives in securities class actions that included both foreign
               and U.S. purchasers of a foreign company's shares.  *See, e.g., In re*
10             *Nortel Networks Corp. Sec. Litig.*, No. 01 Civ. 1855 (RMB), 2003
               U.S. Dist. LEXIS 15702, 2003 WL 22077464 (S.D.N.Y. Sept. 8,
11             2003) (certifying class action brought by Canadian union pension trust
               fund alleging fraud in connection with securities of Canadian
12             Company).  While defendants may raise a subject matter jurisdiction
               defense, such a defense would not be "unique" to [proposed class
13             representative], as it appears that many (if not most) of the class
               members would be foreign investors.  [The proposed class
14             representative] elected to file suit here, and there is no reason to doubt
               its ability to respond to a motion to dismiss for lack of subject matter
15             jurisdiction, should such a motion be made.

16  *Corwin v. Seizinger*, 2008 U.S. Dist. LEXIS 3045, at *13-*14 (S.D.N.Y. Jan. 8, 2008).

17         Here, more than half of all of the outstanding share of Verifone trade on the TASE, which

18  likely means that "many (if not most) of the class member would be foreign investors."  Moreover,

19  lead investors, like CLAL and Direct, "can defend the lack of subject matter jurisdiction argument

20  by providing evidence that much of [Defendants'] fraudulent scheme occurred in the United States."

21  *In re Cable & Wireless, PLC, Secs. Litig.*, 217 F.R.D. 372, 377 (E.D. Va. 2003), *citing Cromer Fin.*

22  *Ltd. v. Berger*, 137 F. Supp. 2d 452 (S.D.N.Y. 2001); *Alfadda v. Fenn*, 935 F.2d 475, 478 (2d Cir.

23  1991); *accord Corwin*, 2008 U.S. Dist. LEXIS 3045, at *14-*15.

24
25         Moreover, because, here, the *Eichenholtz* Complaint alleges misrepresentations in Verifone's

26  Form 10-Q's filed with the Securities and Exchange Commission, subject matter jurisdiction is

27  supported for shares purchased on foreign exchanges.  *See Itoba, Ltd. v. Lep Group PLC*, 54 F.3d

28

118, 123 (2d Cir. 1995); *In re Royal Ahold N.V. Secs. & ERISA Litig.*, 351 F. Supp.334, 362 (D. Md. 2004). Further, assuming *arguendo* that an Israeli court did not give *res judicata* effect to judgments or settlements in a U.S. class action, "the risk of nonrecognition does not compel exclusion of all foreign class members." *In re Vivendi Universal, S.A. Secs. Litig.*, 242 F.R.D. 76, 104 (S.D.N.Y. 2007). Where, as here, "significant alleged conduct occurred in the United States . . . the United States has a string interest in the enforcement of those laws where applicable." *Id.*

In sum, neither CLAL's and Direct's status as investment managers, nor the fact that they are foreign investors, raises any typicality or adequacy grounds to rebut the presumption that they are the most adequate plaintiffs in this litigation. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

**B.    CLAL'S AND DIRECT'S SELECTION OF COUNSEL SHOULD BE APPROVED AS LEAD AND LIAISON COUNSEL FOR THE CLASS**

The PSLRA vests authority in the lead plaintiff to select lead counsel, subject to approval by the Court.    15 U.S.C. § 78u-4(a)(3)(B)(v); *Osher*, 2001 U.S. Dist. LEXIS 6057, at *15. The Court should only interfere with lead plaintiff's selection when necessary "to protect the interests of the class." *See* H.R. Conf. Rpt. No. 104-369, at 35, 104th Cong. 1st Sess (Nov. 28, 1995); 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).    Indeed, the "Court's role is limited to approving  (or rejecting) that choice." *Erikson v. Cornerstone Propane Partners LP*, 2003 U.S. Dist. LEXIS 18009, at *12, *citing Cavanaugh*, 306 F.3d at 734.

Here, CLAL and Direct have selected Pomerantz Haudek Block Grossman & Gross LLP to serve as Lead Counsel and Cotchett, Pitre & McCarthy to serve as Liaison Counsel for the Class. As detailed in its firm resumes (*see* Dahlstrom Dec., Exhibit D), the Pomerantz firm has extensive expertise and experience in the field of securities litigation and has successfully prosecuted numerous securities fraud class actions and obtained excellent recoveries on behalf of defrauded investors. Thus, the Court may be confident that the Class will receive the highest caliber of legal representation.

## CONCLUSION

CLAL and Direct respectfully requests that the Court appoint them as Lead Plaintiff, approve

their selection of Pomerantz Haudek Block Grossman & Gross LLP to serve as Lead Counsel and

Cotchett, Pitre & McCarthy to serve as Liaison Counsel for the Class, and grant such other relief as

the Court may deem to be just and proper.

Dated: February 19, 2008

Respectfully submitted,

**COTCHETT, PITRE & McCARTHY**

By: _s/Mark Molumphy_
    Mark Molumphy (State Bar No. 168009)
Joseph W. Cotchett
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, California 94010
Telephone:    (650) 697-6000
Facsimile:    (650) 697-0577

Stanley M. Grossman
Marc I. Gross
Jeremy A. Lieberman
**POMERANTZ HAUDEK BLOCK**
  **GROSSMAN & GROSS, LLP**
100 Park Avenue
New York, New York 10017
Telephone: (212) 661-1100
Facsimile: (212) 661-866

Patrick V. Dahlstrom
Joshua B. Silverman
**POMERANTZ HAUDEK BLOCK**
  **GROSSMAN & GROSS, LLP**
One North LaSalle Street, Suite 2225
Chicago, Illinois 60602
Telephone: (312) 377-1181
Facsimile: (312) 377-1184

**Attorneys for CLAL Finance**
**Batucha Investment Management, Ltd.**
**And Direct Investment House (Providence Funds) Ltd.**

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CLAL FINANCE BATUCHA INVESTMENT MANAGEMENT, LTD.'S AND DIRECT INVESTMENT HOUSE'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND FOR APPROVAL OF LEAD COUNSEL

15