Joseph W. Cotchett
Mark Molumphy
**COTCHETT, PITRE & McCARTHY**
840 Malcolm Road, Suite 200
Burlingame, California 94010
Telephone:   (650) 697-6000
Facsimile:   (650) 697-0577

| | |
|---|---|
| Stanley M. Grossman | Patrick V. Dahlstrom |
| Marc I. Gross | Joshua B. Silverman |
| Jeremy A. Lieberman | **POMERANTZ HAUDEK BLOCK** |
| **POMERANTZ HAUDEK BLOCK** | **GROSSMAN & GROSS LLP** |
| **GROSSMAN & GROSS LLP** | One North LaSalle Street |
| 100 Park Avenue | Suite 2225 |
| New York, New York 10017-5516 | Chicago, Illinois 60602 |
| Telephone: (212) 661-1100 | Telephone: (312) 377-1181 |
| Facsimile: (212) 661-8665 | Facsimile: (312) 377-1184 |

**Attorneys for Plaintiff CLAL Finance Batucha Investment Management Ltd. And Direct Investment House (Providence Funds) Ltd.**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **IN RE VERIFONE HOLDINGS, INC. SECURITIES LITIGATION,** | No. C 07-06140 MHP<br><br>**Honorable Marilyn Hall Patel**<br>**Courtroom 15**<br><br>**Hearing: March 17, 2008**<br>2:00 p.m. |

**MEMORANDUM OF POINTS AND AUTHORITIES OF CLAL FINANCE BATUCHA INVESTMENT MANAGEMENT, LTD. AND DIRECT INVESTMENT HOUSE (PROVIDENCE FUNDS) LTD. IN REPLY TO COMPETING MOTIONS FOR APPOINTMENT OF LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL**

# **TABLE OF CONTENTS**

CLAL AND DIRECT SHOULD BE APPOINTED
LEAD PLAINTIFFS FOR THE CLASS ........................................................... 1

   A.    CLAL and Direct Have the Largest Financial
          Interest in the Relief Sought by the Class ................................................. 4

   B.    CLAL and Direct Satisfy Rule 23 Typicality and Adequacy ...................... 7

        1.    Typicality ................................................................................. 7

        2.    Adequacy ................................................................................. 8

   C.    CLAL and Direct Satisfy the Requirements for a Group ........................ 11

   D.    Foreign Institutional Investors May be Appointed Lead Plaintiffs ................. 12

   E.    CLAL and Direct are the Ideal Lead Plaintiffs Envisioned by the PLSRA .......... 13

CONCLUSION ................................................................................ 15

# TABLE OF AUTHORITIES

**Cases**

*Alfadda v. Fenn*,
　935 F.2d 475, 478 (2d Cir. 1991) ........................................... 12

*In re Baan Co., Sec. Litig.*,
　186 F.R.D. 214 (D.D.C. 1999) ............................................. 11

*In re Cable & Wireless, PLC, Sec. Litig.*,
　217 F.R.D. 372 (E.D. Va. 2003) ......................................... 6, 12

*In re Cavanaugh*,
　305 F.3d 726 (9th Cir. 2002) ............................................ 2, 11

*In re Clearly Canadian Secs. Litig.*,
　1999 WL 707737 (N.D. Cal. Sept. 3, 1999) ................................... 6

*In re Comdisco Sec. Litig.*,
　150 F. Supp. 2d 943 (N.D. Ill. 2001) ........................................ 6

*In re Comverse Technology, Inc. Secs. Litig.*,
　2007 U.S. Dist. LEXIS 14878 (E.D.N.Y. March 2, 2007) ..................... 2, 4

*In re Cornerstone Propane Partners, L.P. Secs. Litig.*,
　2006 U.S. Dist. LEXIS 25819 (N.D. Cal. May 3, 2006) ........................ 6

*Corwin v. Seizinger*,
　2008 U.S. Dist. LEXIS 3045 (S.D.N.Y. Jan. 8, 2008) ......................... 12

*In re Critical Path, Inc. Sec. Litig.*,
　156 F. Supp. 2d 1102 (N.D. Cal. 2001) ...................................... 5

*Cromer Fin. Ltd. v. Berger*,
　137 F. Supp. 2d 452 (S.D.N.Y. 2001) ....................................... 12

*Danis v. USN Communs., Inc.*,
　189 F.R.D. 391 (N.D. Ill. 1999) ............................................ 7

*In re Doral Fin. Corp. Sec. Litig.*,
　414 F. Supp. 2d 398 (S.D.N.Y. 2006) ........................................ 6

*Dura Pharmaceuticals, Inc. v. Broudo*,
　544 U.S. 336 (2005) ...................................................... 2, 5

*In re eSpeed, Inc. Sec. Litig.*,
　232 F.R.D. 95 (S.D.N.Y. 2005) ........................................... 4, 6

*505 Pension Trust Fund v. Anchor Capital Advisors*,
　498 F.3d 920 (9th Cir. 2007) ........................................... 13, 14

*Hanon v. Dataproducts Corp.*,
    976 F.2d 497 (9th Cir. 1992) ................................................... 7

*Hill v. The Tribune Company*,
    2005 U.S. Dist. LEXIS 2391 (N.D. Ill. Oct. 13, 2005) ........................... 4

*Hunt v. Enzo Biochem, Inc.*,
    471 F. Supp. 2d 390 (S.D.N.Y. 2006) ........................................... 2

*Hunt v. Enzo Biochem, Inc.*,
    2008 U.S. Dist. LEXIS 1472 (Jan. 8, 2008) ..................................... 4

*Itoba, Ltd. v. Lep Group PLC*,
    54 F.3d 118, 123 (2d Cir. 1995) ............................................... 12

*Kops v. NVE Corp.*,
    2006 U.S. Dist. LEXIS 49713 (D. Minn. July 17, 2007) .......................... 4

*In re McKesson HBOC, Inc. Sec. Litig.*,
    97. Supp. 2d 993 (N.D. Cal. 1999) ............................................. 5

*In re Nortel Networks Corp. Sec. Litig.*,
    2003 U.S. Dist. LEXIS 15702 (S.D.N.Y. Sept. 8, 2003) ......................... 12

*In re Northern Dist. Of Cal., Dalkon Shield IUD Prod. Liab. Litig.*,
    693 F.2d 847 (9th Cir. 1982) .................................................. 8

*Pfizer Inc. Sec. Litig.*,
    233 F.R.D. 334 (S.D.N.Y. 2005) ............................................... 6

*Riordan v. Smith Barney*,
    113 F.R.D. 60 (N.D. Ill. 1986) ................................................ 8

*In re Royal Ahold N.V. Secs. & ERISA Litig.*,
    351 F. Supp.334 (D. Md. 2004) ............................................... 12

*In re Royal Ahold N.V. Sec. and ERISA Litig.*,
    219 F.R.D. 343 (D. Md. 2003) ................................................. 9

*Ruland v. Infosonics Corp.*,
    2006 U.S. Dist. LEXIS 79144 (S.D. Cal. Oct. 23, 2006) ......................... 4

*Sonus Networks, Inc. Secs. Litig.*,
    2007 U.S. Dist. LEXIS 71031 (D. Mass. Sept. 25, 2007) ........................ 14

*In re Sunbeam Secs. Litig.*,
    2001 U.S. Dist. LEXIS 25703 (S.D. Fla. July 3, 2001) .......................... 9

*Takeda v. Turbodyne Techs, Inc.*,
    67 F. Supp. 2d 1129 (C.D. Cal. 1999) .......................................... 8

*Taubenfeld v. Career Education Corp.*,
   2004 U.S. Dist. LEXIS 4363 (N.D. Ill. March 22, 2004) ........................ 9

*In re: Unumprovident Corp. Secs. Litig.*,
   2003 U.S. Dist. LEXIS 24633 (E.D. Tenn. Nov. 6, 2003) ...................... 13

*In re Vivendi Universal, S.A. Secs. Litig.*,
   242 F.R.D. 76 (S.D.N.Y. 2007) ........................................... 13

*Weltz v. Lee*,
   1999 F.R.D. 129 (S.D.N.Y. 2001) ......................................... 11

CLAL Finance Batucha Investment Management, Ltd. ("CLAL"), and Direct Investment House (Providence Funds) Ltd. ("Direct"), respectfully submit this Reply Memorandum of Points and Authorities in further support of their motion for appointment as Lead Plaintiffs and Approval of Lead Counsel, and in opposition to the competing motions for appointment thereof.

**CLAL AND DIRECT SHOULD BE APPOINTED LEAD PLAINTIFFS FOR THE CLASS**

CLAL and Direct have the largest financial interest of any of the movants seeking to be appointed as lead plaintiffs under the accepted methodologies for calculating loss for the appropriate Class Period in this litigation, *i.e.,* March 1, 2007 through December 3, 2007.[1] As explained in their Response, the complaints filed with this Court *do not* support a class period commencing earlier than March 1, 2007. The Israeli Investor Group cites two cases in a footnote as support for the longer class period, but neither is on point. Unlike here, in *In re Party City Sec. Litig.*, 189 F.R.D. 91, 94 n.3 (D.N.J. 1999), there was no reference to any disagreement among the parties with respect to the class period, and the court was simply stating how it would address the issue of multiple class periods. In *In re Star Gas Sec. Litig.*, 2005 WL 818617 (D. Conn. Apr. 8, 2005), there is no discussion of what evidence, or lack thereof, was before the court in making its determination to use the longer class period. More importantly, the case upon which it relied, *Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 504 (S.D. Fla. 2003), was a class certification opinion where defendants were arguing that additional notice should have been given for lead plaintiff *after* a second amended complaint had been sustained. Under those circumstances, the district court held that the initial notice of pendency did not control the class period.

Here, CLAL and Direct have shown that the complaints on file – the only operative

---

[1] The Class Period stated in the Notice of Pendency published pursuant to Section 21D(a)(3)(A)(i) in the first filed action ended on November 30, 2007. Because Verifone common stock continued to trade before the actual disclosure on December 3, 2007, which ends the Class Period, the correct end date should be December 3, 2007.

1  documents upon which the Court can rely for making any determination of the claims[2] – do not
2  support an earlier class period. Although the Court in *Star Gas* declined to ascertain whether the
3  complaints on file supported liability for an earlier class period, it is clear that other courts have
4  not hesitated "to consider loss causation on the pleadings when faced with a pre-discovery
5  motion." *See In re Comverse Technology, Inc. Secs. Litig.*, 2007 U.S. Dist. LEXIS 14878, at *15
6  (E.D.N.Y. March 2, 2007), *citing Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005).
7  *See also Hunt v. Enzo Biochem, Inc.*, 471 F. Supp. 2d 390 (S.D.N.Y. 2006) (dismissing
8  complaint for failure to adequately plead loss causation).

9  Here, the pleadings on file do not support transaction or loss causation prior to March 1,
10  2007. Where (as here) it is clear from the face of the pleadings that no losses were suffered
11  before any alleged corrective disclosure for statements made prior to March 1, 2007, "the court
12  would be abdicating its responsibility under the PSLRA if it were to ignore that issue at this
13  stage." *See Comverse*, 2007 U.S. Dist. LEXIS 14878, at *16. As the *Comverse* court explained:

> It is clear that courts cannot include non-recoverable losses in a
> calculation of each litigant's financial interest. To illustrate the
> point, the court offers the following example: If a plaintiff in this
> case had alleged that it suffered losses from sales of Comverse
> stock in 1990, years before any alleged misconduct (stock options
> backdating) had even begun, it is undisputed that such losses
> would not be recoverable. It follows that a court would be remiss
> to include such losses in calculating a litigant's approximate
> recoverable loss, simply because a plaintiff included those losses
> in its complaint. The facts of this case present a similar challenge.
> Before calculating a plaintiff's financial interest, the court must
> first determine what portion, if any, of a plaintiff's losses constitute
> potential recoverable losses for purposes of the necessary
> PSLRA/*Olsten-Lax* analysis. And under *Dura*, failure to
> demonstrate loss causation constitutes a fatal flaw that necessitates
> removing those losses from the financial interest calculation.

*Id.*, n.6. It is not enough to state, as NEIP suggests, that it is too early to address this core issue.

> At bottom, either it is appropriate to consider loss causation, and
> the principles articulated by *Dura*, in the context of a PSLRA

---

[2] *See In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002) (the court "must rely solely on the pleadings and declarations that each contestant provides").

motion, or it is not. Beyond deciding which plaintiff has some claim against Comverse, this court must determine precisely which losses each plaintiff stands to recover as this litigation proceeds. That decision turns on whether each alleged loss, including the losses that P&P sustained before March 14, 2006, is adequately supported by allegations of loss causation. In short, *Dura, Hunt, In re Veeco*, and *Kops*, much like this case, require a court to make pre-discovery loss causation determinations regarding asserted claims (or parts of asserted claims) that are based on the facts alleged in the complaint.

*Id.*, at * 18.

This Court may, and should, consider the allegations in the complaints on file to determine the appropriate class period here. Upon such review, the Court will find that the only Class Period sufficiently pleaded is March 1, 2007 through December 3, 2007.

The following chart lists the movants as well as their retained shares and losses under the LIFO ("Last-In-First-Out") method of calculating losses for the appropriate Class Period:

| Movant[3] | Retained Shares | Retained Losses | LIFO Losses |
| --- | --- | --- | --- |
| CLAL/Direct | 113,435 | $(3,042,622) | $(3,080,237) |
| NEIP | 89,336 | $(1,968,106) | $(2,369,981) |
| Israeli Inst. Group | 68,105 | $(1,767,030) | $(1,105,958) |
| Steelworkers | 28,200 | $ (606,977) | $ (606,977) |
| Westend | 13,800 | $ (226,172) | $ (225,024) |
| APERS | 2,900 | $ (47,691) | $ (47,691) |
| IBEW | 2,767 | $ (70,221) | $ (70,221) |
| Baldwin | 0 | $ 0 | $ 0 |

Whether one calculates losses under the LIFO method or solely on the retained shares, CLAL and Direct have the largest financial interest in this litigation. Moreover, they satisfy the

---

[3] The National Elevator Industry Pension Fund is designated as "NEIP," the Arkansas Public Employees Pension Fund is designated as "APERS," WestEnd Capital Management, LLC is designated as "Westend."

MEMORANDUM OF POINTS AND AUTHORITIES OF CLAL FINANCE BATUCHA INVESTMENT MANAGEMENT, LTD. AND DIRECT INVESTMENT HOUSE IN REPLY TO COMPETING MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL                                                                            -3-

additional requirements of typicality and adequacy under Fed. R. Civ. P. 23.  Accordingly, they should be appointed as Lead Plaintiffs in this litigation.[4]

### A. CLAL and Direct Have the Largest Financial Interest in the Relief Sought by the Class

The majority of district courts throughout the federal judiciary currently rely on the LIFO methodology in calculating financial interest for the purpose of appointing lead plaintiffs under the PSLRA.  *See, Hunt v. Enzo Biochem, Inc.*, 2008 U.S. Dist. LEXIS 1472, at *21 (Jan. 8, 2008) (quoting *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 101 (S.D.N.Y. 2005); *Hill v. The Tribune Company*, 2005 U.S. Dist. LEXIS 2391, at *10 (N.D. Ill. Oct. 13, 2005) ("The current majority view, however, is apparently that securities fraud losses should be calculated using LIFO.")

The LIFO methodology includes gains and losses on shares that were purchased and sold during the Class Period prior to the disclosure on December 3, 2007.  Under the LIFO methodology, CLAL and Direct have the largest financial interest in the litigation.  *See* Declaration of Jane Nettesheim file in support of CLAL's and Directs' Memorandum of Points and Authorities in Further Support of the Motion for Appointment of Lead Plaintiff and Approval of Class Counsel, C 07-06140 MHP (Docket Entry # 76, Exhibits 1 and 2).

What was once a minority view on calculating losses, but is now gaining adherents since the Supreme Court's decision in *Dura*, is the method that calculates losses based solely on retained shares.  *See Kops v. NVE Corp.*, 2006 U.S. Dist. LEXIS 49713 (D. Minn. July 17, 2007); *In re Comverse Technology, Inc. Sec. Litig.*, 2007 U.S. Dist. LEXIS 14878, at *23 (E.D.N.Y.. March 2, 2007); *Ruland v. Infosonics Corp.*, 2006 U.S. Dist. LEXIS 79144, t *13

---

[4] Bryce and Debra Baldwin have withdrawn their motion for appointment as lead plaintiff.  The Police and Fire Retirement System of the City of Detroit have withdrawn their motion, leaving only the Steelworkers Pension Trust as the remaining member of their group moving for appointment as lead plaintiff.  APERS and Westend did not file a memorandum of points and authorities in Response to the competing motions for appointment as lead plaintiffs, and IBEW Local 363 Pension and Benefit Funds filed a Response conceding that it does not have the largest financial interest in this litigation.

(S.D. Cal. Oct. 23, 2006). The seminal case involving this approach was Judge Whyte's opinion in *In re McKesson HBOC, Inc. Sec. Litig.*, 97 Supp. 2d 993, (N.D. Cal. 1999), where an institutional investor's motion for appointment as lead plaintiff was denied when the court refused to include losses based on "in and out" transactions. *Id.*, at 997-98. *See also In re Critical Path, Inc. Sec. Litig.*, 156 F. Supp. 2d 1102, 1107-08 (N.D. Cal. 2001) (adopting an approach based on the number of net shares purchased during the class period). A calculation of loss based on retained shares is consistent with *Dura* as there cannot be any recoverable loss for shares sold prior to the disclosure of the misstatements or omissions. Under the retained shares methodology, CLAL and Direct also have the largest financial interest:

| **Movant** | **Retained Shares** | **Gain/(Loss)** |
|---|---|---|
| CLAL | 88,715 | $(2,516,304) |
| Direct | 24,720 | $ (526,318) |
| CLAL and Direct | 113,435 | $(3,042,622) |
| NEIP | 89,336 | $(1,968,106) |
| Harel | 421 | $ (11,106) |
| Harel PIA | 1,845 | $ (55,029) |
| Phoenix | 2,000 | $ (50,180) |
| Primsa Mutual Funds | 32,104 | $ (789,206) |
| Prisma Provident Funds | 31,735 | $ (861,509) |
| Israeli Group: | 68,105 | $ (1,767,030) |
| Steelworkers | 28,200 | $ (606,977) |
| Westend | 13,800 | $ (226,172) |
| APERS | 2,900 | $ (47,691) |
| IBEW | 2,767 | $ (70,221) |

*See* Supplemental Declaration of Jane D. Nettesheim at Exhibit 1, filed herewith.

The retained shares methodology is consistent with this Court's application of the

decision in *Dura* to the definition of the class in *In re Cornerstone Propane Partners, L.P. Secs. Litig.*, 2006 U.S. Dist. LEXIS 25819, at *27-*28 (N.D. Cal. May 3, 2006). Here, if the Court defines the Class to exclude shares purchased and sold prior to the disclosure on December 3, 2007, as it did in *Cornerstone*, then the only shares that should be considered for the purpose of calculating losses are the retained shares. As the chart above shows, under such a calculation, CLAL and Direct have the largest financial interest in the relief sought by the Class.

Both the Israeli Institutional Group and the NEIP continue to proffer losses based on the FIFO ("First-In-First-Out") methodology, which has fallen out of acceptance by courts that have addressed the equities of the competing methods. As another court in this district has noted,

> Use of the first in, first out method . . . will identify damages where in reality there may be none; the FIFO assumption is in no way based on actual trading practices in general, let alone the trades of actual claimants.

*In re Clearly Canadian Secs. Litig.*, 1999 WL 707737, at *4 (N.D. Cal. Sept. 3, 1999). *See also In re Doral Fin. Corp. Sec. Litig.*, 414 F. Supp. 2d 398, 403 (S.D.N.Y. 2006) (FIFO "has fallen our of favor in this District, given its tendency to overstate the losses of institutional investors and to understate gains made from stock sold during the class period"); *Pfizer Inc. Sec. Litig.*, 233 F.R.D. 334, 338 n.3 (S.D.N.Y. 2005) (same); *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. at 100-01 (discussing cases and adopting LIFO methodology); *In re Cable & Wireless, PLC, Sec. Litig.*, 217 F.R.D. 372, 378-79 (E.D. Va. 2003) ("[C]ourts have generally rejected FIFO as an appropriate means of calculating losses in securities fraud cases."); *In re Comdisco Sec. Litig.*, 150 F. Supp. 2d 943, 945 (N.D. Ill. 2001) (FIFO overlooks "benefits rather than true loses from the alleged securities fraud").

In sum, under either of the accepted methods for calculating losses, *i.e.*, LIFO or retained shares, CLAL and Direct have the largest financial interest in the relief sought by the Class.

**B.     CLAL and Direct Satisfy Rule 23 Typicality and Adequacy**

    **1.     Typicality**

CLAL's claims and Direct's claims arise from the "same essential characteristics as the claims of the class at large." *Danis v. USN Communs., Inc.*, 189 F.R.D. 391, 395 (N.D. Ill. 1999). "A class is typical if it arises from the same event or course of conduct that gives rise to claims of other class members and all claims are based on the same legal theory." *Id.* Moreover, the "similarity of legal theory may control even where factual distinctions exist between the claims of the named representatives and the other class members." *Id. See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (The typicality requirement serves to "assure that the interest of the named representative aligns with the interests of the class.") (citation omitted).

Here, CLAL and Direct seek to represent both their own accounts and the accounts of clients for whom CLAL and Direct have complete discretion to invest in Verifone securities. *See* Joint Declaration of Yossi Alharal & Giora Zarechansky in Support of the Motion of CLAL Finance Batucha Investment Management, Ltd. and Direct Investment House (Providence Funds) Ltd.'s Motion to Appoint Lead Plaintiff and Approve Lead Counsel (the "Joint Dec."), at ¶¶ 2,3; *see also* Article 76B of the Israeli Mutual Joint Investments Law, and Article 3 of the Israeli Financial Services Supervisor Act.

Furthermore, CLAL and Direct have the authority to file an action on behalf of their own accounts and the discretionary accounts they have listed in their Certifications pursuant to Israeli law, *see* Article 76B of the Israeli Mutual Joint Investments Law, and Article 3 of the Israeli Financial Services Supervisor Act, and pursuant to contract. *See* Joint Dec., ¶¶2,3. Indeed, Article 76B of the Mutual Joint Investment Law grants CLAL and Direct power of attorney for the funds it advises.

Accordingly, the claims of CLAL, Direct, and their client accounts all arise from the same event or course of conduct that gives rise to the claims of other class members, are based

on the same legal theory, and the distinction between CLAL's and Direct's personal accounts and their clients' accounts do not render them atypical.

### 2. **Adequacy**

CLAL and Direct "will fairly and adequately protect the interests of the class." Fed. R. Civ. P 23(a)(4). As the Ninth Circuit has held:

> representation is "adequate" when counsel for the class is qualified and competent, the representative's interests are not antagonistic to the interests of absent class members, and it is unlikely that the action is collusive.

*Takeda v. Turbodyne Techs, Inc.*, 67 F. Supp. 2d 1129, 1137 (C.D. Cal. 1999)(citing *In re Northern Dist. Of Cal., Dalkon Shield IUD Prod. Liab. Litig.*, 693 F.2d 847, 855 (9th Cir. 1982)). Quite simply, the class representative must also have "sufficient interest in the outcome of the case to ensure vigorous advocacy." *Takeda*, 67 F. Supp. 2d at 1137 (citing *Riordan v. Smith Barney*, 113 F.R.D. 60, 64 (N.D. Ill. 1986)).

Here, CLAL and Direct have not only "sufficient interest" in the relief sought by the Class, but have the largest financial interest. Moreover, they do not have interests that are antagonistic to absent class members, nor are they subject to any unique defenses. Indeed, the challenge made by NEIP to CLAL stating that it "was actively publishing reports and recommendations regarding purchases of VeriFone based on its conversations with Company insiders," NEIP Omnibus Opposition at 10, is not supported by either the November 9, 2006 Market Watch report written and published by DowJones, or the "Special Equities Update" dated August 1, 2007, both of which were cited by NEIP in support of its contention. *See* Dahlstrom Declaration in Support of CLAL and Direct's Reply, at Exhibits A and B. Nowhere in either document is there a single reference to any discussion with Verifone personnel, much less a reference to non-public information. The unsupported attack by NEIP is a desperate attempt to create an impression of a conflict the simply does not exist.

Furthermore, the cases cited by NEIP in support of their attack are not on point. In

MEMORANDUM OF POINTS AND AUTHORITIES OF CLAL FINANCE BATUCHA INVESTMENT MANAGEMENT, LTD. AND DIRECT INVESTMENT HOUSE IN REPLY TO COMPETING MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL    -8-

*Grace v. Perception Tech. Corp.*, 128 F.R.D. 165 (D. Mass. 1989), two of four plaintiffs were not certified as class representatives as they were named as defendants in a counterclaim by the defendant company, *id.*, at 170, and "were privy to some unique information," *id.*, at 169, upon which they relied prior to making their purchasing up to 90% of one plaintiff's stock. *Id.* In *Shiring v. Tier Techologies, Inc.*, 244 F.R.D. 307 (E.D. Va. 2007), the court declined to appoint a plaintiff as a class representative because he had interviewed with the Chief Financial Officer before being employed at the defendant company during which he received non-public information upon which he relied in making his purchases, *id.*, at 313, and abdicated his supervisory role to his counsel. *Id.*, at 316.

Here, there is no evidence that CLAL relied on anything other than public information to make its purchases, or that anyone involved with the purchase of Verifone stock met with anyone from Verifone. Furthermore, CLAL and Direct have affirmatively averred that they are maintaining control over counsel and have not abdicated their duties to the Class.

Just as baseless is NEIP's canard that CLAL was "day-trading." NEIP Omnibus Opposition at 10. CLAL is Israel's largest brokerage house that trades its own shares and clients shares; it is not a daytrader. That it had multiple trades or sales on particular days is not evidence of a daytrader. It is not always possible to trade entire blocks of shares either on a purchase or sale, and thus shares must be broken into smaller amounts. Even if CLAL was a daytrader, however, it would not be fatal. *See Taubenfeld v. Career Education Corp.*, 2004 U.S. Dist. LEXIS 4363, at *13 (N.D. Ill. March 22, 2004). Unlike CLAL and Direct, in *Taubenfeld*, the court noted that in *Bank One Shareholders Class Actions*, 96 F. Supp. 2d 780 (N.D. Ill. 2000), the proposed lead plaintiff "did not have a larger loss than the 'handful of institutional investors who make up the [opposing group].'" 2004 U.S. Dist. LEXIS 4363, at *13. Moreover, more recently, courts have rejected the proposition that day traders "may not be able to rely on the 'fraud on the market' theory of reliance." *Id.*, *citing In re Royal Ahold N.V. Sec. and ERISA Litig.*, 219 F.R.D. 343, 354 (D. Md. 2003) ("where false information and misleading omissions

1  pollute the market, all types of investors are injured"); *In re Sunbeam Secs. Litig.*, 2001 U.S.
2  Dist. LEXIS 25703, at *1-*2 (S.D. Fla. July 3, 2001) (noting there is no "persuasive precedent or
3  case law establishing that day traders . . . absent specific refutation of the rebuttable presumption
4  of reliance, are not entitled to the presumption of reliance where they bought in an efficient
5  secondary market").

6　　　　The cases cited by NEIP do not proffer any persuasive case law to the contrary.  In *In re*
7  *MicroStrategy Inc. Sec. Litig.*, 110 F. Supp. 2d 427 (E.D. Va. 2000), the court refused to appoint
8  an institutional investor that was an options trader for its own account finding that "the evidence
9  it submitted did not permit a confident conclusion that its loss was as large as it averred . . .
10 submitted a conclusory affidavit and a collection of indecipherable financial statements that
11 purported to support the affidavit's conclusion." *Id.*, at 436.  Further, it "suggested that most of
12 its losses occurred before defendants issued the first correction." *Id.*   In *In re Safeguard*
13 *Scientifics*, 216 F.R.D. 577 (E.D. Pa. 2003), the defendants showed that the proposed class
14 representative had "increased his holdings . . . even after public disclosure of the alleged fraud,"
15 and that he "would have made – and if fact did – purchase stock regardless of the fraudulent
16 omission." *Id.*, at 582.  Thus, in *Safeguard* the court found that the defendants had made a
17 specific refutation of the rebuttable presumption of reliance.  Here, there is no evidence of any
18 refutation, much less a "specific refutation."

19　　　　NEIP is confused on many of the factual matters, but perhaps most glaring is the fact that
20 is alleges that CLAL miscalculated its losses and "claims a loss exceeding $17 million," which
21 NEIP "has calculated its loss at approximately $8.4 million."  NEIP Omnibus Opposition at n.6.
22 CLAL *never* alleged its losses were $17 million, the Israeli Institutional Group did.  NEIP is flat
23 our wrong about this fact, as well as its ungrounded charges that CLAL was "day-trading" and
24 had "conversations with Company insiders."  NEIP Omnibus Opposition at 10.  No evidence is
25 proffered to support NEIP's propositions because, like its misrepresentation that CLAL claimed
26 $17 million in losses, they are not true.

27
28 MEMORANDUM OF POINTS AND AUTHORITIES OF CLAL FINANCE BATUCHA INVESTMENT MANAGEMENT, LTD. AND DIRECT INVESTMENT HOUSE IN REPLY TO COMPETING MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL -10-

1   When the fog of innuendo and misrepresentation is cleared away, NEIP's attacks on
2   CLAL and Direct can be seen for what they really are: desperate attempts at diverting the Court
3   away from the fact that CLAL and Direct satisfy typicality and adequacy. As CLAL and Direct
4   satisfy Rule 23(a), they should be appointed as Lead Plaintiffs. *Cavanaugh*, 206 F.3d at 732
5   ("the court must appoint that plaintiff as lead, unless it finds that he does not satisfy the
6   typicality or adequacy requirement").

**C.     CLAL and Direct Satisfy the Requirements for a Group**

The PSLRA explicitly supports the appointment of a "group" as Lead Plaintiff. 15 U.S.C. §78u-4(a)(3)(B)(iii)(I). NEIP and the Steelworkers argue that CLAL and Direct are not cohesive or will not be able to direct the litigation and monitor counsel. Nothing could be further from the truth. As the Joint Declaration by CLAL and Direct make clear, the signatories to the Certifications on behalf of CLAL and Direct have a pre-existing relationship prior to this litigation and motions for appointment as Lead Plaintiffs. *See* Joint Declaration, at ¶¶ 2,3. Moreover, as averred in their Joint Declaration, CLAL and Direct will meet regularly with counsel and send executive level representatives of each entity to California as is necessary for hearings, depositions, and settlement negotiations. *Id.* There is nothing in the cases cited by either NEIP or the Steelworkers that requires more.

Furthermore, as noted in the Joint Declaration, as well as proffered under Israeli law and pursuant to contract, CLAL and Direct have standing individually and as authorized representatives of their clients' accounts. *See id.*; Article 76B of the Israeli Mutual Joint Investments Law; Article 3 of the Israeli Financial Services Supervisor Act.

Assuming, *arguendo*, that CLAL and Direct did not submit the Joint Declaration of CLAL and Direct to establish the pre-existing relationship and cohesiveness of the "group," the case law and SEC is clear that *two* members of a group is an acceptable and workable number even absent a pre-existing relationship. *See, e.g., Weltz v. Lee*, 1999 F.R.D. 129, 132-33 (S.D.N.Y. 2001); *In re Baan Co., Sec. Litig.*, 186 F.R.D. 214, 216-17 (D.D.C. 1999) (citing SEC

1  amicus brief in support thereof).  Here, CLAL and Direct have provided the necessary

2  information to appoint them as a "group" to represent the Class as Lead Plaintiffs.

3  **D.    Foreign Institutional Investors May be Appointed Lead Plaintiffs**

4      The fact that CLAL and Direct are Israeli entities does not establish a basis not to appoint

5  them as lead plaintiffs.  As noted recently in a similar action,

> Other courts in this District have appointed foreign investors as class representatives in securities class actions that included both foreign and U.S. purchasers of a foreign company's shares.  *See, e.g., In re Nortel Networks Corp. Sec. Litig.*, No. 01 Civ. 1855 (RMB), 2003 U.S. Dist. LEXIS 15702, 2003 WL 22077464 (S.D.N.Y. Sept. 8, 2003) (certifying class action brought by Canadian union pension trust fund alleging fraud in connection with securities of Canadian Company).  While defendants may raise a subject matter jurisdiction defense, such a defense would not be "unique" to [proposed class representative], as it appears that many (if not most) of the class members would be foreign investors. [The proposed class representative] elected to file suit here, and there is no reason to doubt its ability to respond to a motion to dismiss for lack of subject matter jurisdiction, should such a motion be made.

14  *Corwin v. Seizinger*, 2008 U.S. Dist. LEXIS 3045, at *13-*14 (S.D.N.Y. Jan. 8, 2008).

15      Here, more than half of all of the outstanding share of Verifone trade on the TASE,

16  which likely means that "many (if not most) of the class member would be foreign investors."

17  Moreover, lead investors, like CLAL and Direct, "can defend the lack of subject matter

18  jurisdiction argument by providing evidence that much of [Defendants'] fraudulent scheme

19  occurred in the United States."  *In re Cable & Wireless, PLC, Secs. Litig.*, 217 F.R.D. 372, 377

20  (E.D. Va. 2003), *citing Cromer Fin. Ltd. v. Berger*, 137 F. Supp. 2d 452 (S.D.N.Y. 2001);

21  *Alfadda v. Fenn*, 935 F.2d 475, 478 (2d Cir. 1991); *accord Corwin*, 2008 U.S. Dist. LEXIS

22  3045, at *14-*15.

23      Further, because, here, the *Eichenholtz* Complaint alleges misrepresentations in

24  Verifone's Form 10-Q's filed with the Securities and Exchange Commission, subject matter

25  jurisdiction is supported for shares purchased on foreign exchanges.  *See Itoba, Ltd. v. Lep*

26  *Group PLC*, 54 F.3d 118, 123 (2d Cir. 1995); *In re Royal Ahold N.V. Secs. & ERISA Litig.*, 351

F. Supp.334, 362 (D. Md. 2004). Also, assuming *arguendo* that an Israeli court did not give *res judicata* effect to judgments or settlements in a U.S. class action, "the risk of nonrecognition does not compel exclusion of all foreign class members." *In re Vivendi Universal, S.A. Secs. Litig.*, 242 F.R.D. 76, 104 (S.D.N.Y. 2007). Where, as here, "significant alleged conduct occurred in the United States . . . the United States has a string interest in the enforcement of those laws where applicable." *Id.*

In sum, CLAL and Direct chose to file an action under United States law, *see* Joint Declaration at ¶6, and the fact that they are foreign investors does not raise any grounds to rebut the presumption that they are the most adequate plaintiffs in this litigation.

### E. CLAL and Direct are the Ideal Lead Plaintiffs Envisioned by the PLSRA

The appointment of CLAL and Direct as Lead Plaintiffs satisfies a critical legislative goal behind enacting the PSLRA – to encourage sophisticated institutions with large financial interests to serve as lead plaintiff in securities class actions. *See* H.R. Conf. Rpt. No. 104-369, 104th Cong. 1st Sess (Nov. 28, 1995). They are institutional investors that trade on their own beneficially owned shares as well as discretionary accounts for their clients. *See* Joint Declaration at ¶¶ 2,3. As such, they have "greater incentive . . . to effectively pursue the claims of the class." *See In re: Unumprovident Corp. Secs. Litig.*, 2003 U.S. Dist. LEXIS 24633, at *31 (E.D. Tenn. Nov. 6, 2003). Their incentive "rises out of a desire to recoup personal losses," as well as "a desire to recover losses incurred by its clients as a result of advice or management." *Id.* Thus, CLAL's and Direct's "incentive is much greater than the actual dollar value of its clients' loss because [they] also seek[] to maintain customer trust and goodwill in order to sustain its business." *Id.*

NEIP's and the Steelworkers' attacks on CLAL and Direct as investment managers only cites self-serving case law regarding the standing requirements for investment managers. On the other hand, in *505 Pension Trust Fund v. Anchor Capital Advisors*, 498 F.3d 920 (9th Cir. 2007), the Ninth Circuit noted that

> an investment advisor has an interest in its own right to receive full and fair disclosures regarding the true value of a company's stock, and therefore is a "purchaser" under the PSLRA with proper standing to pursue litigation on behalf of its individual clients.

498 F.3d at 922. In a subsequent case, a district court analyzed the range of judicially created requirements for investment managers, and grounded in part on *505 Pension Trust Fund*, concluded that:

> The most reasonable test, I believe, should turn on whether [the investment manager] had the discretionary authority to make the Sonus purchases. This is because the key question is whether [the investment manager] *relied* upon the alleged false statements of Defendants in purchasing Sonus stock. If [the investment manager] was not the decision maker, then [the investment manager] would have a difficult time proving that it made any decisions that could constitute reliance.

*In re Sonus Networks, Inc. Secs. Litig.*, 2007 U.S. Dist. LEXIS 71031, at *30 (D. Mass. Sept. 25, 2007).

Here, CLAL and Direct traded their own accounts and discretionary accounts. Further, they are authorized under Israeli law and contract to file this action on behalf of their clients' interests. Thus, although the Ninth Circuit does not require more than discretion to trade on the accounts, CLAL and Direct satisfy even the strictest standards for appointment as Lead Plaintiffs.

To deny appointment of CLAL and Direct, as NEIP contends, would thwart one of the key goals of the PSLRA. Among the largest institutional investors with the capacity to manage and oversee litigation are mutual funds and brokerage accounts. If courts create too high a threshold, the largest and most adequate institutional investors will be foreclosed from representing plaintiffs in securities class action litigation. Accordingly, the Court should apply the "reasonable test" the *Sonus* court applied based on the Ninth Circuit's decision in *505 Pension Trust*.

# CONCLUSION

For the reasons stated herein and their earlier filings with the Court, CLAL and Direct respectfully request that the Court grant their motion.

Dated: February 25, 2008

Respectfully submitted,

**COTCHETT, PITRE & McCARTHY**

By: s/*Mark Molumphy*
    Mark Molumphy (State Bar No. 168009)
Joseph W. Cotchett
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, California 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

Stanley M. Grossman
Marc I. Gross
Jeremy A. Lieberman
**POMERANTZ HAUDEK BLOCK
  GROSSMAN & GROSS, LLP**
100 Park Avenue
New York, New York 10017
Telephone: (212) 661-1100
Facsimile: (212) 661-866

Patrick V. Dahlstrom
Joshua B. Silverman
**POMERANTZ HAUDEK BLOCK
  GROSSMAN & GROSS, LLP**
One North LaSalle Street, Suite 2225
Chicago, Illinois 60602
Telephone: (312) 377-1181
Facsimile: (312) 377-1184

**Attorneys for CLAL Finance
Batucha Investment Management, Ltd.
And Direct Investment House (Providence Funds) Ltd.**