1  Reed R. Kathrein (139304)
   Peter E. Borkon (212596)
2  HAGENS BERMAN SOBOL SHAPIRO LLP
   715 Hearst Avenue, Suite 202
3  Berkeley, CA 94710
   Telephone: (510) 725-3000
4  Facsimile: (510) 725-3001
   reed@hbsslaw.com
5  peterb@hbsslaw.com

6  Lewis S. Kahn (*Pro Hac Vice*)
   KAHN GAUTHIER SWICK, LLC
7  650 Poydras Street, Suite 2150
   New Orleans, LA  70130
8  Telephone: (504) 455-1400
   Facsimile: (504) 455-1498
9  lewis.kahn@kgscounsel.com

10 Attorneys for Plaintiff

11 [Additional counsel listed on signature page]

12
13                       UNITED STATES DISTRICT COURT
14                       NORTHERN DISTRICT OF CALIFORNIA
15                            SAN FRANCISCO DIVISION

16 | IN RE VERIFONE HOLDINGS, INC. | ) | Master File No. C 07-6140 MHP |
   | SECURITIES LITIGATION | ) | |
17 | | ) | CLASS ACTION |
   | | ) | |
18 | | ) | BRIEF IN FURTHER SUPPORT OF |
   | | ) | WESTEND CAPITAL MANAGEMENT, |
19 | | ) | LLC'S MOTION FOR LEAD |
   | This Document Relates To: All Actions | ) | PLAINTIFF AND IN OPPOSITION TO |
20 | | ) | COMPETING MOTIONS |
21
22
23

NO. 07-6140 MHP

010006-13  225619 V1

**INTRODUCTION**

Eight movants seek to be appointed as Lead Plaintiff in this securities class action filed on behalf of all purchasers of VeriFone Holdings, Inc. ("VeriFone" or the "Company") common stock. Although each of the eight movants claim to satisfy the most adequate plaintiff provisions of Section 21D(a)(3)(B) of the Securities Exchange Act of 1934, as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), only WestEnd Capital Management, LLC ("WesteEnd") is truly the most adequate plaintiff.[1]

WestEnd suffered losses of $1,002,206.90 as a result of the Company's misdeeds and it satisfies the typicality and adequacy requirements of Fed. R. Civ. P. 23 ("Rule 23"), to the extent required by the PSLRA. By way of contrast, the other competing movants either suffer from serious conflicts which disqualify them from serving as the Lead Plaintiff, or claim substantially smaller losses than WestEnd. Specifically, there are three movants claiming greater losses than WestEnd. The first group is the Israeli Investor Group. The Israeli Investor Group is not the most adequate plaintiff because it is an impermissible grouping of investors cobbled together by attorneys in an effort to gain appointment as Lead Counsel in this case. The second group, CLAL Finance Batucha Investment Management, Ltd. ("CLAL Finance") and Direct Investment House (collectively the "CLAL Group"), are also impermissible groups. Further, the CLAL Group is atypical under the tenets of Rule 23 because one of its members is a day trader, subjecting it to a potentially unique defense. The third group, the National Elevator Industry Pension Fund ("National Elevator Fund"), will have a serious conflict rendering it atypical and inadequate. Accordingly, WestEnd respectfully requests that this Court grant its motin to be appointed Lead Plaintiff and approve its selection of Lead and Liaison Counsel.

---

[1] The hearing on the competing motions for lead plaintiff appointment is March 17, 2008. [Dkt. No. 59]. Accordingly, under the Court's local rules, opposition briefs are due February 25, 2008 and reply briefs are due March 3, 2008.

BRIEF ISO WESTEND CAP. MGMT., LLC'S MOT FOR LEAD PL. AND IN OPP'N TO COMP MOTS. - No. 07-06140 MHP

- 1 -

010006-13 225619 V1

**ARGUMENT**

**A.     WestEnd Is the Most Adequate Plaintiff**

The Ninth Circuit employs a "simple three-step process for identifying the lead plaintiff" in cases governed by the PSLRA. *In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002). "The first step consists of publicizing the pendency of the action, the claims made and the purported class period." *Id*. "In step two, the district court must consider the losses allegedly suffered by the various plaintiffs before selecting the 'presumptively most adequate plaintiff' – and hence the presumptive lead plaintiff – the one who 'has the largest financial interest in the relief sought by the class' and 'otherwise satisfies the requirements of Rules 23.'" *Id*. at 729-730. Finally, the *Cavanaugh* Court stated that "(t)he third step of the process is to give other plaintiffs an opportunity to rebut the presumptive lead plaintiff's showing that it satisfies Rule 23(a)'s typicality and adequacy requirements." *Id*.

The movants agree that step one of the *Cavanaugh* test - publicizing notice of the action - was completed in accordance with the terms of the PSLRA. *See* [Dkt. Nos. 15, 23, 27, 30, 33-2, 35, 39, and 40]. Applying the second part of the *Cavanaugh* test, the losses of the competing movants are:

1. Israeli Investor Group (five Israeli Funds – losses not itemized):  $13,574,400 - $17,916,409

2. CLAL Group (two funds – CLAL ($2,513,721), Direct ($664,741)): $3,178,462

3. National Elevator Fund: $2,027,938

4. WestEnd: $1,002,207

5. Arkansas Public Employees' Retirement System ("Arkansas"): $619,122

6. Steelworkers Pension Trust ("Steelworkers"): $607,041[2]

---

[2]     Initially, Steelworkers moved as part of a group with the Police and Firemen Retirement System of City of Detroit. [Dkt. No. 40]. The Police and Firemen Retirement System of City of Detroit has since withdrawn from the lead plaintiff argument. [Dkt. No. 62]. The Steelworkers Fund, whose losses are approximately $600,000, has effectively withdrawn from the lead plaintiff arguments as well, indicated that it "takes no position on the appointment of other movants." [Dkt. No 64].

BRIEF ISO WESTEND CAP. MGMT., LLC'S MOT FOR LEAD
PL. AND IN OPP'N TO COMP MOTS. - No. 07-06140 MHP      - 2 -
010006-13 225619 V1

7. IBEW Local 363 Pension and Benefit Fund ("IBEW Fund"): $70,376[3]

8. Boyce Baldwin and Debra Baldwin ("Baldwins"): $62,899[4]

### 1. The Israeli Investor Group Is an Impermissable Group

A majority of courts have refused to appoint lawyer-driven groups as Lead Plaintiff reasoning that their "unrelatedness and numerosity render them inadequate to represent the class." *Schriver v. IMPAC Mort. Holdings, Inc.*, No. SACV 06-31 CJC, 2006 U.S. Dist. Lexis 40607, *22-23 (C.D. Cal. May 1, 2006); *see also In re Donnkenny Inc. Sec. Litig.,* 171 F.R.D. 156, 157-158 (S.D.N.Y. 1997) ("To allow an aggregation of unrelated plaintiffs to serve as lead plaintiffs defeats the purpose of choosing a lead plaintiff.")  The only groups that courts have appointed as Lead Plaintiff under the PSLRA are small, cohesive groups that demonstrate they had a pre-existing relationship.  *See In re Waste Management, Inc.,* 128 F. Supp. 2d 401, 413 (S.D. Tex. 2000) ("at a maximum a small group with the largest financial interest in the outcome of the litigation and a pre-litigation relationship based on more than their losing investment, satisfies the terms of the PSLRA and serves the purpose behind its enactment."); *Schriver*, 2006 U.S. Dist. Lexis 40607 at *25 ("The Court agrees with *Gemstar* and other cases holding that groups of unrelated investors, while not per se impermissible lead plaintiffs under the PSLRA, are not adequate class representatives absent a showing that they are able to coordinate their efforts in the litigation.") (citations omitted); *In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 455-457 (S.D. Tex. 2002) (reviewing applications of groups seeking appointment as Lead Plaintiff to determine if the grouping is a "manipulated effort to aggregate largers losses" or a grouping which has affirmatively decided to work together and agreed upon a decision-making structure), *In re Baan Co. Sec. Litig.,* 186 F.R.D. 214, 219 (D.D.C. 1999) (citing the SEC's amicus brief in sanctioning

---

[3] IBEW Fund filed a supplemental memorandum on February 15, 2008 whereby it effectively withdrew from the lead plaintiff arguments and indicated that it did "not specifically oppose any of the other movants' applications for lead plaintiff." [Dkt. No 67].

[4] The Baldwins have also withdrawn from this case. [Dkt. No. 74].

small groups that are "capable of effectively managing the litigation and exercising control over counsel").

In this case, none of the groups moving for appointment as Lead Plaintiff have shown that they are small, cohesive groups that can control and direct this case. For example, the Israeli Investor Group fails to provide sufficient evidence for the Court to determine who they are, how they are organized, what their decision making prcess is or how they intend to control and lead this litigation. The Israeli Investor Group's entire description of its members is as follows:

> The Phoenix Insurance Company, Ltd. is one of Isreal's leading insurance companies. Prisma Provident Funds, Ltd., Isreal's largest provident fund management company, and Prisma Mutual Funds, Ltd. are both owned by Prisma Investment House, Ltd., the largest private investment house in Israel. Harel Pia is one of Isreal's leading mutual fund management firms. Harel Insurance Company, Ltd. is one of Israel's leading insurance and finance groups.

[Dkt. No. 39 at 1-2].

Four short sentences that do little more than identify members of the Israeli group by name are insufficient to establish that this is a cohesive group with a pre-existing relationship, an agreement to work together, and an established leadership and decision-making structure. None of the group's members have submitted, either in the group's motion or in their individual certifications, even the most basic statement that they have affirmatively decided to work together as a cohesive group; that they have discussed with each other and agreed upon a leadership and decision-making structure for the group; or that they have a existing relationship that pre-dates the filing of this case.[5] Without any such statement, there is insufficient evidence to appoint the Israeli Investor Group as Lead Plaintiff in this case. *See In re Waste Management, Inc.,* 128 F.Supp.2d at 413 ("The burden is on those seeking to aggregate to demonstrate the cohesiveness of their purported 'group' and that failure to provide significant information about the identity of the members other than a conclusory statement of names, transactions for purchase of securities, and

---

[5] Furthermore, the resume of the Israeli Investor Group's attorneys is attached to the group's motion for appointment as lead plaintiff. [Dkt. No. 41 at ¶¶ 7-8].

1  largest financial interest should result in denial of their application for appointment as Lead

2  Plaintiff.") (citations omitted).

3        Any attempt by the Israeli Investor Group to belatedly correct this deficiency should be

4  rejected by the Court.  The PSLRA is clear: "not later than 60 days after the date on which the

5  notice is published, any member of the purported class may move the court to serve as lead

6  plaintiff of the purported class."  15 U.S.C. § 78u-4(a)(3)(A)(i)(II).  The Israeli Investor Group

7  itself notes that "(t)he time period within which Class members may move to be appointed Lead

8  Plaintiff in this case expires on February 4, 2008.  15 U.S.C. § 78u-4(a)(3)(A).  At least one court

9  has declined to a request by group to "submit supplemental briefing" to "remedy" the failure to

10  provide any indication of the group's cohesiveness and coordination because such information

11  should have been submitted "in connection with the initial motions or stipulation to combine into

12  groups."  *See Schriver*, 2006 U.S. Dist. Lexis 40607 at *27-28, n.10.  Accordingly, because the

13  Israeli Investor Group is an impermissible group which has not satisfied the statutory requirements

14  of the PSLRA, its motion seeking to be appointed Lead Plaintiff should be denied.

15        **2.**      **The CLAL Group Is an Impermissable Group and Not an Adequate Plaintiff**

17        The CLAL Group is also an impermissable group.  The CLAC Group's description of its

18  members states:

19      CLAL . . . is one of Israel's oldest investment management firms.  It specializes in
       managing portfolios by providing expert advisory services and a full range of
20      financial products and services.  CLAL is the largest non-banking member of the
       Tel Aviv Stock Exchange, managing assets in excess of $1.8 billion.
21      . . .

23      Direct manages is (sic) one of twenty members of the Tel Aviv Stock Exchange and
       manages its clients' investments through a number of financial tools.  It has
24      experience discharging fiduciary duties, and its CEO Giora Dan Zarechansky and
       CFO Ron Aharon will oversee the litigation on behalf of Direct.

25  [Dkt. No. 27 at 1-2].

26        Here, clearly the CLAL Group's evidence is inadequate to establish the relationship

27  between the CLAL movants.  Although "(Direct) CEO Giora Dan Zarechansky and CFO Ron

28

Aharon will oversee the litigation on behalf of Direct," the CLAL Gourp fails to offer evidence establishing any agreement between CLAL and Direct to work together or establish a leadership and decision-making structure. Because no information concerning the cohesiveness, pre-existing relationship, or coordination between CLAL Group members, CLAC and Direct, was submitted in this case, the Court should not appoint the CLAC Group as Lead Plaintiff in this case. *See In re Waste Management, Inc.,* 128 F.Supp.2d at 413 *supra*, ("The burden is on those seeking to aggregate to demonstrate the cohesiveness of their purported 'group' and failure to provide significant information about the identity of the members other than a conclusory statement of names, transactions for purchase of securities, and largest financial interest should result in denial of their application for appointment as Lead Plaintiff.") (citations omitted).

Moreover, and perhaps most importantly, the CLAC Group suffers a substantive flaw in that its members fail to meet the typicality requirement of Rule 23. The trading data provided by the CLAC Group shows that in a period of only nine months, group member CLAC made over 5,000 trades in the Company's stock. [Dkt. No. 27-4, (Exhibit B to CLAC Group's Motion and Memorandum In Support of Consolidation and Lead Plaintiff Appointment)]. On numerous days there were multiple trades and multiple buys and sells. This type of trading pattern indicates that CLAC acted as a day-trader whose losses and profits resulted not from relying on the Company's financial statements, but from the overall volatility of the market.[6] Therefore, because the allegations in this case relate to the Class Member's purported losses that resulted from the Company's misrepresentations, and because CLAL did not necessarily rely upon the misrepresentations when purchasing the Company's stock, it does not meet the typicality requirement of Rule 23. *See*, *e.g.*, *In re Silicon Storage Tech. Sec. Litiig.*, No. C 05-0295 PJH, 2005 U.S. Dist. Lexis 45246 at *25 (N.D. Cal. May 3, 2005) (refusing to appoint an in-and-out trader as Lead Plaintiff because the in-and-out trader did not meet typicality requirement), *In re*

---

[6] Day trader is defined at www.investorwords.com as a "(v)ery active stock trader who holds positions for a very short time and makes several trades each day. Day traders are individuals who are trying to make a career out of buying and selling stocks very quickly, often making dozens of trades in a single day and generally closing all positions at the end of each day. Day trading can be costly, since the commissions and the bid/ask spread add up when there are so many transactions."

*Bally Total Fitness Sec. Litig.*, No. 04 C 3530, 2005 U.S. Dist. Lexis 6243 at *16-18 (N.D. Ill. Mar. 15, 2005) (refusing to appoint as Lead Plaintiff in-and-out trader did not meet typicality requirement), *In re McKesson HBOC, Inc. Sec. Litig.*, 97 F. Supp. 2d 993, 997-8 (N.D. Cal. 1999) (refusing to count losses of in-and-out trader).  Accordingly, because the CLAC Group is an impermissible group and it fails to meet the typicality requirement of Rule 23, the CLAL Group should not be appointed Lead Plaintiff in this case.  The motion of the CLAC Group should therefore be denied.

### 3. The National Elevator Pension Fund Is an Inadequate Lead Plaintiff.

The National Elevator Fund does not meet the typicality and adequacy requirements of Rule 23.  Under Rule 23, "representative claims are 'typical' if they are reasonably co-extensive with those of absent class members" and are "'adequate' when: (1) counsel for the class is qualified and competent; and (2) the representative's interest are not antagonistic to the interest of the absent class members." *Apple v. LJ Int'l., Inc.*, No. CV 07-6076 GAF (JWJx), 2008 U.S. Dist. Lexis 12618 at *16-*17 (C.D. Cal. Feb. 8, 2008), *citations omitted*.  Here, the General Counsel for the National Elevator Fund is the law firm of O'Donoghue & O'Donoghue ("O'Donoghue").  *See*, Kathrein Decl. at Exhibit A, Summary Plan Description of National Elevator Fund.[7]  O'Donoghue, in addition to serving as the National Elevator Fund's Legal Counsel, also serves as counsel for many other union pension funds, including the Plumbers & Pipefitters National Pension Plan ("Plumbers & Pipefitters").  *See* Kathrein Decl. at Exhibit B (Forbes article dated February 13, 2006).

Both the National Elevator Fund and the Plumbers & Pipefitters have served as Lead Plaintiffs in numerous securities class actions and the O'Donoghue firm has earned fees as class counsel in such cases - despite not having been appointed Lead Counsel.  For example, in *In re Cisco Systems, Inc. Sec. Litig.,* No. 01-20418 (N.D. Cal.), Louis P. Malone III, a partner at O'Donoghue, submitted a Fee Declaration seeking $278,457.50 as class counsel despite admitting that O'Donoghue is "outside counsel" for the fund and "as outside counsel, O'Donoghue monitors

---

[7]    "Kathrein Decl." refers to the Declaration of Reed R. Kathrein in Further Support of WestEnd Capital Management, LLC's Motion for Lead Plaintiff and in Opposition to Competing Motions, filed concurrently herewith.

litigation matters for the Fund as part of its responsibilities, supervises outside litigation counsel on its behalf and reports to the Fund's Board of Trustees on a quarterly basis." *See* Kathrein Decl. at Exhibit C, *In re Cisco Systems, Inc. Securities Litigation*, No. 01-20418, Declaration of Louis P. Malone, III In Support of Motion for Final Approval of Class Action Settlement and Plan of Allocation of Settlement Proceeds and Award of Attorney's Fees and Reimbursement of Expenses.[8]

When the National Elevator Fund acts through its legal counsel, its legal counsel should not be acting as a class counsel, nor seeking an attorneys' fee when the case is resolved. *Kramer v. Scientific Control Corp.*, 534 F.2d 1085, 1089-90 (3rd Cir. 1976) (because of conflicting interests, an "attorney-plaintiff class representative may not also serve as counsel for the class."). Here there will be a conflict if the National Elevator Fund intends to permit O'Donoghue or any other of its other outside counsel (other than Coughlin Stoia Geller Rudman & Robbins, LLP) to act as class counsel. In such circumstances, the burden is on the National Elevator Fund to demonstrate that its outside counsel is not engaged in the prohibited conflict of serving as both class representative and class counsel. *See Feder v. Electronic Data Sys. Corp.*, 429 F.3d 125, 133 (5th Cir. 2005) (approving of an "outside counsel" arrangement where counsel was "not a puppet of class counsel . . . does not answer to class counsel . . . [and whose] interests are fully aligned with those of [the class representative and] . . . the absent members of the class."). Moreover, if selected as Lead Plaintiff, the National Elevator Fund has a duty "to be alert for, and to report to the court any conflict of interest on the part of class counsel, as for example, counsel's greater concern for a receiving a fee than for pursuing the class claims." *Maywalt v. Parker and Parsley Petroleum Co.*, 67 F.3d 1072, 1078 (2nd Cir. 1995) (*citing*, 7A C, Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 1769.1, at 386-387 (1986)).

Based upon the past actions of the National Elevator Funds' general counsel, the O'Donoghue firm, the Court needs assurance that any request for attorneys' fees will comply with the requirements of the PSLRA which prohibits plaintiff from sharing in the award of attorneys'

---

[8] Lead Counsel in *Cisco* was Lerach Coughlin Stoia Geller Rudman & Robbins, LLP, the same firm that currently represents the National Elevator Fund minus William Lerach.

BRIEF ISO WESTEND CAP. MGMT., LLC'S MOT FOR LEAD PL. AND IN OPP'N TO COMP MOTS. - No. 07-06140 MHP - 8 -
010006-13 225619 V1

fees. 15 U.S.C. § 78u-4(a)(4). Failure to provide such assurance will inhibit the National Elevator Fund from performing its fiduciary duty to the absent class members of being "alert for, and (reporting) to the court any conflict of interest on the part of class counsel, as for example, counsel's greater concern for a receiving a fee than for pursuing the class claims." *Maywalt*, *supra*. At the very least, discovery into any such side arrangement is required.

### B.     WestEnd's Choice of Counsel Should be Approved

WestEnd has the largest losses of any Movant who does not suffer from a disabling conflict. Once the three movants who claim losses greater than WestEnd are eliminated, WestEnd has the largest loss. As also demonstrated by its Certification, WestEnd is prepared to consult with counsel on a regular basis and direct the course of litigation. Moreover, WestEnd meets the requirements of Rule 23. First, its interests are typical of the other Class Members because it, like the other Class Members, purchased the Company's stock "in reliance on the company's alleged misrepresentations or omissions." *Tanne v. Autobytel*, 226 F.R.D. 659, 666-668 (N.D. Cal. 2005). WestEnd is also an adequate class representative because it has suffered over $1,000,000 in financial loss, ensuring vigorous advocacy, and because it has retained experienced counsel. See [Dkt. No. 31 (Exhibit A to Declaration of Reed R. Kathrein in Support of Motin of WestEnd Capital Management, LLC for Consolidation of All Cases, Appointment of Lead Plaintiff and Approval of Lead Plaintiff's Choice of Lead and Liaison Counsel)].

Finally, the PSLRA vests authority in the Lead Plaintiff to select and retain counsel to represent the Class, subject to the Court's approval. 15 U.S.C. § 78u-4(a)(3)(B)(v) and 15 U.S.C. § 77z-1(a)(3)(B)(v)). A Court should not disturb the Lead Plaintiffs' choice of counsel unless necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa) and 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II)(aa).

WestEnd has selected Kahn Gauthier Swick, LLC to serve as Lead Counsel for the Class and Hagens Berman Sobol Shapiro LLP to serve as Liaison Counsel for the Class. These firms

1  have not only successfully prosecuted complex securities actions, but have also successfully

2  prosecuted many other types of complex class actions. Furthermore, WestEnd's counsel has

3  consistently invested time and resources in carefully investigating and prosecuting this case. This

4  Court may be assured that the Class will receive the highest caliber of legal representation if

5  WestEnd is selected to serve as Lead Plaintiff and its selection of Counsel is approved.

**CONCLUSION**

For all of the foregoing reasons, and the reasons set forth in its opening motion, memorandum and all supporting papers, WestEnd respectfully requests that this Court: (1) consolidate all similar actions; (2) appoint WestEnd to serve as Lead Plaintiff in this action; and (3) approve WestEnd's selection of Counsel for the Class.

Dated: February 25, 2008                HAGENS BERMAN SOBOL SHAPIRO, LLP

                                                /s/ Reed R. Kathrein
                                                REED R. KATHREIN

REED R. KATHREIN
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
reed@hbsslaw.com

*Proposed Liaison Counsel for Lead Plaintiff Movant, WestEnd Capital Management, LLC and the Class*

Lewis S. Kahn (*Pro Hac Vice*)
KAHN GAUTHIER SWICK, LLC
650 Poydras Street, Suite 2150
New Orleans, LA 70130
Telephone: (504) 455-1400
Facsimile: (504) 455-1498
lewis.kahn@kgscounsel.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Kim E. Miller (SBN 178370)
KAHN GAUTHIER SWICK, LLC
12 East 41st Street, 12th Floor
New York, NY 10017
Telephone: (212) 696-3730
Facsimile: (504) 455-1498
kim.miller@kgscounsel.com

*Attorneys for Lead Plaintiff Movant, WestEnd Capital Management, LLC and Proposed Lead Counsel for the Class*

Steve Berman
HAGENS BERMAN SOBOL SHAPIRO, LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

*Additional Counsel*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 25, 2008 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses registered, as denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

                                                               /s/ Reed R. Kathrein
                                                              REED R. KATHREIN

# Mailing Information for a Case 3:07-cv-06140-MHP

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Ramzi Abadou**
  ramzia@csgrr.com,debh@csgrr.com

- **Brendan P. Cullen**
  cullenb@sullcrom.com,carrejoa@sullcrom.com

- **Timothy Alan DeLange**
  kristinas@blbglaw.com,timothyd@blbglaw.com

- **Daniel C. Girard**
  girardgibbs@girardgibbs.com,cma@girardgibbs.com

- **Nicole Catherine Lavallee**
  nlavallee@bermanesq.com,ysoboleva@bermanesq.com

- **Jonathan Krasne Levine**
  jkl@girardgibbs.com,mav@girardgibbs.com

- **Mark Cotten Molumphy**
  mmolumphy@cpmlegal.com,oszeto@cpmlegal.com,pskahan@cpmlegal.com,jacosta@cpmlegal.com

- **Alan Roth Plutzik**
  aplutzik@bramsonplutzik.com

- **Juden Justice Reed**
  jreed@schubert-reed.com,plee@schubert-reed.com,akeng@schubert-reed.com,rschubert@schubert-reed.c

- **Aaron M. Sheanin**
  ams@girardgibbs.com,amv@girardgibbs.com,ace@girardgibbs.com

- **Michael Howard Steinberg**
  steinbergm@sullcrom.com

- **Steven Noel Williams**
  swilliams@cpmlegal.com,jverducci@cpmlegal.com,dburwell@cpmlegal.com,cwalker@cpmlegal.com,rjit

## Manual Notice List

The following is the list of attorneys who are **not**
on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use
your mouse to select and copy this list into your word processing program in order to create notices or labels for
these recipients.

- (No manual recipients)