# Exhibit B

This is G o o g l e's cache of http://www.local37membersvoice.net/news/forbes_security_lawyer_lerach.htm as retrieved on Feb 12, 2008 22:34:50 GMT.
G o o g l e's cache is the snapshot that we took of the page as we crawled the web.
The page may have changed since that time. Click here for the current page without highlighting.
This cached page may reference images which are no longer available. Click here for the cached text only.
To link to or bookmark this page, use the following url:
http://www.google.com/search?q=cache:RId74qC8u2gJ:www.local37membersvoice.net/news/forbes_security_lawyer_lerach.htm+o'donoghue+lerach&hl=en&ct=clnk&cd=1&gl=us

*Google is neither affiliated with the authors of this page nor responsible for its content.*

These search terms have been highlighted: **o donoghue lerach**

LOCAL37MEMBERSVOICE

Home | What's New? | Facts | Salaries | Speak Out | Donate | Links | Constitution -ByLaws | Documents | LM2s | News (IUOE) | Search | History | More Info | FAQ's

Home
Up
The high life-cab of Trump tower crane
Deconstructing the crane
Forbes article on Bill **Lerach** mentions Operating Engineers
Slow Roasted - Seven Years of Anti-Labor Practices Backfire on Coffee Giant
Crane operators face stiffer rules
CTW Coalition Announces Organizing Drive

*Daniel Fisher*. **Forbes**. New York: Feb 13, 2006.Vol.177, Iss. 3;  pg. 102

Securities lawyer Bill **Lerach** styles himself as a crusader for corporate justice, but his union allies don't have such a good record themselves.

It's a mystery that perplexes defense attorneys and rival plaintiff lawyers alike: How does William **Lerach** maintain his reign as the nation's leading securities class action lawyer? He's got his troubles. He's entangled in a federal investigation of whether class action plaintiffs were illegally rewarded for signing onto lawsuits; he had a bitter 2004 breakup with onetime mentor Melvyn Weiss; and in 1995 Congress passed a law specifically designed to rein him in.

Yet **Lerach** keeps getting hired. Last year he was the lead lawyer in a third--37 out of 119--of all securities class action settlements (according to Cornerstone Research, a consulting firm for lawyers). His San Diego firm, **Lerach** Coughlin Stoia Geller Rudman & Robbins, bagged the largest securities settlement in history, a total of $7.1 billion from Citigroup, JPMorgan Chase and CIBC last summer for their roles in the Enron collapse. The firm's likely fee: $680 million and counting.

Frequent Filers

These unions, all of which have their own legal problems, frequently appear in court as plaintiffs in securities class actions.

- United Brotherhood of Carpenters

- International Brotherhood of Electrical Workers

- International Brotherhood of Teamsters

- Laborers' International Union of North America

- United Association of Plumbers & Pipefitters

**Lerach**'s main client in the Enron case is the University of California. Far more often, however, he represents another type of plaintiff: labor unions, particularly those in the corruption-infested construction trades. A strong supporter of the Democratic party, **Lerach** has aligned himself tightly with these unions by handing over handsome contributions to their political causes and sharing fees with their outside law firms. Of those 37 cases last year he represented union-affiliated funds 13 times.

**Lerach** needs such allies to maintain control of securities class actions under the 1995 reform law, which was designed to end the practice of using figurehead plaintiffs to mount nuisance suits that mostly enriched plaintiff lawyers. With billions of dollars in assets, union funds can claim large losses, win designation as lead plaintiffs and thus control lucrative cases.

Since 2000, cases where union plaintiffs allied with **Lerach** & Co. have generated at least $1.1 billion in settlements, according to Cornerstone, providing some $240 million in fees. More striking is the frequency with which a few unions have shown up in court, usually with **Lerach** as their lawyer: Funds associated with the United Brotherhood of Carpenters have won the role of lead or representative plaintiff in at least 18 securities class actions since 2000, while Laborers' International Union of North America funds have won 15 and the United Association of Plumbers & Pipefitters, 13. Plaintiffs aren't supposed to be in more than five securities suits in a three-year period. **Lerach** says that rule doesn't apply to separate pension funds within the same union.

**Lerach** makes no apologies for recruiting the unions as clients--or for eyebrow-raising gifts like the $1.3 million his firm gave to an AFL-CIO Building Trades political fund in 2004. "We are clearly pro-worker, progressive Democrats," he says. "Anybody who knows us knows that about us--they know our heart's in the right place."

Rival plaintiff lawyers are getting frustrated at losing out to **Lerach** and the unions. In court challenges they are starting to cite the fact that some unions are under federal oversight for problems that include corruption. Their argument is that these unions are not particularly good representatives for other shareholders.

In a pending lawsuit filed last year against Dana Corp. in federal court in Ohio, for example, lawyers for the City of Philadelphia challenged the Plumbers & Pipefitters National Pension Fund's bid to be lead plaintiff "because there is growing evidence that this organization has not consistently upheld its fiduciary duties." Philadelphia pointed out that the union's top two officials were forced to resign in 2004 for sinking $800 million of a $4 billion fund into the

then-shuttered Diplomat Hotel & Resort in Hollywood, Fla.

The Plumbers' outside lawyer, Louis Malone of Washington, D.C.'s **O'Donoghue & O'Donoghue**, says, "What happened in the past is not reflective of what is going on now. There's a whole new leadership."

A federal judge in California rejected the team of **Lerach** and the Teamsters' Central States Pension Fund as lead plaintiff in a lawsuit against Redback Networks in 2004, noting the fund was operating under a federal consent decree related to charges of corruption and mismanagement.

The fighting concerns not only the awarding of lead counsel status but also the amount of the fees. Every dollar that goes to the lawyers is a dollar that is not going to investors. Last May the New York State Teachers' Retirement System and three other large funds challenged the $33 million, or 22%, payout **Lerach** got in a $150 million settlement of a suit against Texas utility company TXU, calling it a "garden variety federal securities case." The judge upheld the fee, which had been negotiated in advance by the Plumbers & Pipefitters National Pension Fund. The Plumbers fund has no in-house securities lawyers and relies instead on **O'Donoghue & O'Donoghue**, which gets a piece of any fees from **Lerach**.

Malone says the fee arrangement doesn't mean he's beholden to **Lerach**. In one 2003 Plumbers case, against utility company AES, the lawyers took no fee. But others say the unions aren't doing the job Congress intended.

"There's little if any evidence that they try to negotiate a better price," says Joseph Grundfest, a professor at Stanford Law School who runs the Stanford Securities Class Action Clearinghouse. A recently completed study by Michael Perino, a professor at St. John's University School of Law in New York, supports this view. Perino, analyzing 232 class action settlements, found that union funds showed no evidence of playing law firms against one another to drive down fees, while large state funds did.

Lerach's relationship with plaintiffs is an issue in a criminal investigation in Los Angeles, where lawyer Seymour Lazar was indicted in June 2005 on charges of receiving kickbacks from Lerach's old law firm in exchange for serving as a plaintiff in numerous securities suits between 1977 and 2004. According to the indictment and documents since filed in the case, Milberg Weiss funneled payments to an intermediary law firm, Los Angeles' Best Best & Krieger, that applied the money against fees Lazar owed the law firm for other business. Best Best & Krieger said it is a witness, not a subject, in the investigation and declined further comment. **Lerach** declined to comment on the pending investigation, and Lazar has denied any wrongdoing.

**Lerach** cannot be accused of hiding his relationship with the unions. The campaign contributions and fees to intermediary lawyers are all out in the open. So to that extent, reform has been a success.


Best regards,
*Bryan*

<u>**My pledge to you**</u>: " *Many Financial Planners spend 80% of their time looking for new business. As nearly 100% of my clients are referred to me, I can focus 100% of my attention to my clients' needs and staying abreast of the latest planning strategies. Thank you for your business and your referrals. "*

Copyright 2006 Local37MembersVoice | Site Map | Contact Info
Site Maintained by Laborers for JUSTICE