Martin D. Chitwood
(To Be Admitted *Pro Hac Vice*)
mchitwood@chitwoodlaw.com
James M. Wilson, Jr.
(Admitted *Pro Hac Vice*)
jwilson@chitwoodlaw.com
CHITWOOD HARLEY HARNES LLP
2300 Promenade II
1230 Peachtree Street, N.E.
Atlanta, Georgia 30309
Telephone: (404) 873-3900
Facsimile: (404) 876-4476

Gregory E. Keller (To Be Admitted *Pro Hac Vice*)
gkeller@chitwoodlaw.com
Darren T. Kaplan (To Be Admitted *Pro Hac Vice*)
dkaplan@chitwoodlaw.com
Eran Rubinstein (To be Admitted *Pro Hac Vice*)
erubinstein@chitwoodlaw.com
Susan Boltz Rubinstein
(To be Admitted *Pro Hac Vice*)
srubinstein@chitwoodlaw.com
11 Grace Avenue, Suite 306
Great Neck, New York  11021
Telephone: (516) 773-6090
Fax: (404) 876-4476

Robert C. Schubert (State Bar No. 62684)
Juden Justice Reed (State Bar No. 153748)
Willem F. Jonckheer (State Bar No. 178748)
SCHUBERT & REED LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA  94111
Telephone: (415) 788-4220
Facsimile:  (415) 788-0161

Proposed Liaison Counsel

Attorneys for Movants and Proposed Lead Counsel

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE VERIFONE HOLDINGS, INC. SECURITIES LITIGATION )<br><br>)<br>)<br>)<br>)<br>)<br>)<br>Document Relates To: )<br>)<br>)<br>    All Actions )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Master File No.<br>C 07-6140 MHP<br><br>**CLASS ACTION**<br><br>**REPLY MEMORANDUM IN FURTHER SUPPORT OF THE ISRAELI INSTITUTIONAL INVESTOR GROUP'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD PLAINTIFF'S SELECTION OF LEAD COUNSEL**<br><br>DATE:  March 17, 2008<br>TIME: 2:00 p.m.<br>COURTROOM:  15<br>JUDGE: Hon. Marilyn Hall Patel |

TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................ 1

II.    STATEMENT OF ISSUES ................................................................................. 1

III.   STATEMENT OF FACTS AND PROCEDURAL POSTURE OF THE CASE ......................... 1

IV.    ARGUMENT ..................................................................................................... 2

       A.   The Israeli Institutional Investor Group Suffered The Largest Losses Under The Longest, .
            And Most Appropriate, Class Period ..................................................................... 3

       B.   Competing Movants Have Failed To Rebut The Statutory Presumption That The Israeli
            Institutional Investor Group Is The Most Adequate Lead Plaintiff. ...................................... 5

            1.   The Israeli Institutional Investor Group is a cohesive group that will adequately
                 represent the interests of the Class................................................................. 6

            2.   The Israeli Institutional Investor Group is not subject to unique defenses.................. 8

                 a.   The Israeli Institutional Investor Group has standing. ................................ 9

                 b.   Israel will give preclusive effect to a judgment by this Court. .................... 9

                 c.   The interests of Phoenix Insurance Company, Ltd. are aligned with
                      those of absent class members. ................................................................. 13

V.     CONCLUSION ................................................................................................... 14

Reply Memorandum In Further Support of the Israeli Institutional Investor Group's Motion for Appointment as Lead
Plaintiff and Approval of Lead Plaintiff's Selection of Lead Counsel. C 07-6140 MHP

i

<u>TABLE OF AUTHORITIES</u>

**Cases**

*Bayshore Ford Truck Sales, Inc. v. Ford Motor Co.*, Civil Action No. 99cv741 (JLL), 2006 WL
    3371690 (D.N.J. Nov. 17, 2006)..................................................................................... 13

*Bhojwani v. Pistiolis*, 06 Civ. 13761, 2007 WL 2197836 (S.D.N.Y. July 31, 2007) ................................ 4

*Borochoff v. Glaxosmithkline PLC*, 246 F.R.D. 201 (S.D.N.Y. 2007)...................................................... 11

*Cromer Finance Ltd. v. Berger*, 205 F.R.D. 113 (S.D.N.Y. 2001) ........................................................... 12

*David et al. v. Nice Systems Ltd. et al.*, 2:01-CV-00737-JAG (D.N.J.)...................................................... 12

*Dubin v. Miller,* 132 F.R.D. 269 (D. Colo. 1990).................................................................................. 14

*In re Activism Sec. Litig.*, 621 F. Supp. 415 (D.C. Cal. 1985)................................................................ 12

*In re Baan Co. Sec. Litig.*, 186 F.R.D. at 231 ......................................................................................... 8

*In re Cendant Corp. Litig.*, 264 F.3d 201 (3d Cir. 2001)........................................................................... 6

*In re Gilat Satellite Networks, Ltd.*, CV-02-1510-CPS (E.D.N.Y.)............................................................ 12

*In re Lloyd's American Trust Fund Litig.*, No. 96 Civ. 1262 (RWS), 1998 WL 50211
  (S.D.N.Y. Feb. 6, 1998) .................................................................................................. 11

*In re Microstrategy Inc. Securities Litigation*, 110 F. Supp. 2d 427 (E.D. Va. 2000) .............................. 7

*In re Party City Sec. Litig.*, 189 F.R.D. 91 (D.N.J. 1999) ........................................................................ 12

*In re Star Gas Sec. Litig.*, No. 04-CV-1766 (JBA), 2005 WL 818617 (D. Conn. Apr. 8, 2005) ........... 3, 4

*In re Turkcell Iletisim Hizmetler, A.S. Sec. Litig.*, 209 F.R.D. 353 (S.D.N.Y. 2002).............................. 12

*In re U.S. Financial Sec. Litig.*, 69 F.R.D. 24 (S.D. Cal. 1975) .............................................................. 12

*In re Versata, Inc. Sec. Litig.,* No. C 01-1439 SI, 2001 WL 34012374 (N.D. Cal. 2001)........................ 7

*In re Vivendi Universal*, S.A., Sec. Litig., 242 F.R.D. 76 (S.D.N.Y. 2007)............................................. 11

*Israeli, et al. v. Team Telecom Intl., et al.*, 04-CV-4305 (D.N.J.) ........................................................... 12

*Local 144 Nursing Home Pension Fund*, 2000 WL 33173017, at *4........................................................ 8

*Mohanty v. BigBand Networks, Inc.,* No. C 07-5101 SBA, 2008 WL 426250
  (N.D. Cal. Feb. 14, 2008)................................................................................................. 10

*Parnes, et al., v. Digital Lightwave, Inc.,* No. 99-11293 (11th Cir. Aug. 25, 1999) ................................... 7

*Smith v. Suprema Specialties, Inc.*, 206 F. Supp. 2d 627 (D.N.J. 2002)......................................... 9

*Tahan v. Hodgson,* 662 F.2d 862 (D.D.C. 1981)..................................................................... 9

*Takeda v. Turbodyne Techs., Inc.*, 67 F.Supp. 2d 1129 (C.D. Cal. 1999) ................................. 12

**Statutes**

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) .................................................................................. 3, 6

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)................................................................................. 3, 6

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa)-(bb) ..................................................................... 6

Reply Memorandum In Further Support of the Israeli Institutional Investor Group's Motion for Appointment as Lead Plaintiff and Approval of Lead Plaintiff's Selection of Lead Counsel. C 07-6140 MHP

iii

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.    INTRODUCTION

The Israeli Institutional Investor Group,[1] a small, cohesive group of institutions, is the prototypical lead plaintiff envisioned by the PSLRA.   In addition, the Group has losses in the operative class period that are multiples of the losses of all other movants, and, it is, therefore, also the presumptive lead plaintiff under the PSLRA.  Further, because there is no basis to rebut the presumption that the Group should be lead plaintiff, no competing movant has been able to do so.  Accordingly, the Israeli Institutional Investor Group should be appointed the lead plaintiff in this matter.

## II.   STATEMENT OF ISSUES

The issues to be decided by the Court are (1) the appointment of Lead Plaintiff and (2) the approval of Lead Plaintiff's selection of Lead and Liaison Counsel.

## III.  STATEMENT OF FACTS AND PROCEDURAL POSTURE OF THE CASE

Plaintiffs in the Related Actions allege that during the Class Period, Defendants issued materially false and misleading statements and/or omitted material information by, *inter alia*, overstating the Company's inventories and understating its cost of net revenues in order to falsely inflate the Company's revenues and earnings.   As a result, the Israeli Institutional Investor Group, and other similarly situated members of the investing public, suffered enormous losses.

There currently are five lead plaintiff motions for consideration by the Court.[2]  Of the movants, the Israeli Institutional Investor Group suffered the greatest losses, in the amount of $17,916,409, as shown below in Table 1.  As required by Civil L. R. 7-3(a), four movants timely filed opposition papers on February 15, 2008: the Group; IBEW Local 363 Pension and Benefit Funds ("IBEW Funds");[3]

---

[1]  Prisma Provident Funds, Ltd., Prisma Mutual Funds, Ltd., The Phoenix Insurance Company, Ltd., Harel Insurance Company, and Harel Pia Mutual Funds (also referred to herein as the "Group").

[2]   Bryce and Debra Baldwin withdrew their motion to be appointed lead plaintiff on February 19, 2008 (*see* Docket No. 74).

[3]  In a one page response, IBEW asserted unspecified  "myriads of issues" against all other movants, which should not even be entertained.  *See* IBEW Funds Response, Docket No. 67.

Reply Memorandum In Further Support of the Israeli Institutional Investor Group's Motion for Appointment as Lead Plaintiff and Approval of Lead Plaintiff's Selection of Lead Counsel. C 07-6140 MHP

Steelworkers Pension Fund ("Steelworkers"); and National Elevator Industry Pension Fund ("National Elevator"). On February 19, 2008, four days after the February 15 filing deadline, movant Clal Finance Batucha Investment Management, Ltd. and Direct Investment House, (Providence Funds) Ltd. ("Clal Batucha/Direct") filed its opposition papers.[4] Arkansas Public Employees' Retirement System ("APERS") filed papers on February 25, 2008, the same date as this filing, announcing its withdrawal. Westend Capital Management, LLC ("Westend") is apparently no longer pursuing appointment as lead plaintiff, having failed to file any papers other than its original motion as of this filing.

| TABLE 1: SUMMARY OF CLAIMED LOSSES | |
| --- | --- |
| **Movant(s)** | **Claimed Losses** |
| The Israeli Institutional Investor Group | $17,916,409[5] |
| Clal Batucha/Direct | $ 3,178,462[6] |
| National Elevator Fund | $ 2,027,936 |
| Westend | $ 1,002,207 |
| Steelworkers | $ 649,907[7] |
| IBEW Funds | $ 70,376 |

## IV.    ARGUMENT

The Israeli Institutional Investor Group is the statutory presumptive lead plaintiff because it has satisfied all three requirements under the PSLRA: (1) it timely filed its motion for appointment as lead

---

[4] Under the Local Rules, the deadline for filing responsive papers was February 15 because the 21st day prior to March 10 (which under the Clerk's Notice dated February 13, 2008 should be the date used to calculate the briefing schedule), was February 18, which was President's Day, a legal holiday under Fed. R. Civ. P. 6(a). In order to comply with the 21-day mandate of the Local Rule, responsive papers were required to be filed on February 15, not February 19.

[5] The operative Class Period, based on the information currently available and the allegations in the complaints, is August 31, 2006 through December 3, 2007. The Israel Institutional Investor Group calculated its losses based on this Class Period as follows: Prisma Provident Funds, Ltd. – loss of $7,388,977 under FIFO or LIFO; Prisma Mutual Funds, Ltd. – loss of $1,105,619 under FIFO or LIFO; The Phoenix Insurance Company, Ltd. – loss of $2,607,957 under FIFO or LIFO; Harel Insurance Company – FIFO loss of $5,459,765 and LIFO loss of $1,116,762; Harel Pia Mutual Funds – loss of $1,354,089 under FIFO or LIFO. Movants' combined estimated losses are $17,916,409 using the FIFO accounting method, and $13,573,404 using the LIFO accounting method.

[6] Clal Batucha's claimed losses are $2,513,721 and Direct's claimed losses are $664,741, for a combined claimed loss of $3,178,462. It is important to note that the losses claimed by Clal Batucha were reported in their brief in U.S. dollars. However, the relevant purchases were made in NIS (New Israeli Shekel) with no explanation of the exchange rate or other pertinent information affecting their calculations into U.S. dollars.

[7] Steelworkers joint lead applicant, Police and Fire Retirement System of Detroit withdrew its application.

Reply Memorandum In Further Support of the Israeli Institutional Investor Group's Motion for Appointment as Lead Plaintiff and Approval of Lead Plaintiff's Selection of Lead Counsel. C 07-6140 MHP

2

1    plaintiff; (2) it has the largest financial interest in the relief sought by the class; and (3) it satisfies the

2    adequacy and typicality requirements of Rule 23.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

3        The statutory presumption in the PSLRA for appointing a lead plaintiff "may be rebutted only

4    upon proof by a member of the purported class that the presumptively most adequate plaintiff will not

5    fairly and adequately protect the interests of the class or is subject to unique defenses that render such

6    plaintiff incapable of adequately representing the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).   The

7    competing movants have failed to rebut the presumption in favor of the Israeli Institutional Investor

8    Group.

9

10        A.    **The Israeli Institutional Investor Group Suffered The Largest Losses Under The Longest, And Most Appropriate, Class Period**

11        The correct Class Period for this case is August 31, 2006 through December 3, 2007.  This is the

12   appropriate Class Period because Defendants made materially false and misleading statements to the

13   public in 2006, as alleged in detail in the *Lien*, *Westend Capital Management*, *Vaughn* and *Cerini*

14   complaints.   These four complaints expressly charge that Defendants made materially false and

15   misleading statements to the public, beginning with Verifone's August 31, 2006 third-quarter earnings

16   release, and they provide reasons why such statements were materially false and misleading when made,

17   including that the Company (i) was materially overstating its inventory, (ii) was understating its cost of

18   revenue, (iii) was misstating its gross margins, (iv) was violating GAAP, (v) had misrepresented the

19   financial success of the integration with Lipman Electronic, and (vi) lacked internal and financial

20   controls. *See Lien*, Complaint ¶¶ 23 – 36; *Vaughn*, Complaint ¶¶ 26 – 32; *Cerini,* Complaint ¶¶ 18 – 24;

21   *Westend*, Complaint, ¶¶ 23-36.  Consequently, August 31, 2006 through December 3, 2007 is the most

22   inclusive class period for this action, and losses should be calculated based on this Class Period.  *In re*

23   *Star Gas Sec. Litig.*, No. 04-CV-1766 (JBA), 2005 WL 818617, at *7 (D. Conn. Apr. 8, 2005) (used the

24   longest class period alleged for purposes of appointing lead plaintiffs because "it would be premature to

25   limit the plaintiff class . . . at such an early stage of the litigation").

26

27

28

Reply Memorandum In Further Support of the Israeli Institutional Investor Group's Motion for Appointment as Lead Plaintiff and Approval of Lead Plaintiff's Selection of Lead Counsel. C 07-6140 MHP

3

Notices of the complaints alleging the lengthier class period were published within days of the filing dates of the complaints. *See* Declaration of Martin D. Chitwood in Further Support of the Israeli Institutional Investor Group's Motion for Lead Plaintiff and in Opposition to Competing Motions for Lead Plaintiff filed simultaneously herewith ("Chitwood Decl."), Exs. A-D.  The initial notice announcing the filing of the first complaint, *Eichenholtz v. VeriFone Holdings, Inc.*, No C 07-06140 MHP (filed on December 4, 2007), was published on December 5, 2007.  Over the next several days, additional complaints were filed, four of which allege class periods with earlier start dates than the first-filed complaint: *Lien* (filed December 6, 2007); *Vaughn* (filed December 6); *Cerini* (filed December 10); and *Westend Capital Management LLC* (filed December 10).

For purposes of deciding who to appoint as lead plaintiff in this action, the Court should utilize the longest class period: August 31, 2006 through December 3, 2007.  As explained in the Israeli Institutional Investor Group's brief in support of their motion for appointment as lead plaintiff (Docket No. 39), the longest class period is the most appropriate in cases involving different alleged class periods at the lead plaintiff stage.  *See Bhojwani v. Pistiolis*, 06 Civ. 13761, 2007 WL 2197836, at *3 (S.D.N.Y. July 31, 2007); *In re Star Gas Sec. Litig.*, 2005 WL 818617, at *7.  In *Bhojwani*, the first of ten securities class action complaints alleged a class period beginning on June 28, 2005.  Subsequently filed complaints alleged a class period beginning on November 2, 2004.  In choosing to use November 2, 2004 as the start date of the class period, the court noted that no prejudice would result from designating a longer period as the class period because "[w]hile the first of the complaints filed with the court proposed a shorter class period, and announced it in the notice [pursuant to the requirements of the PSLRA], a subsequent notice, published shortly thereafter by at least one movant, alleged the longer class period."  *Id.*  As in *Bhojwani*, the longest alleged class period should be used for purposes of deciding the motions for lead plaintiff appointment currently pending before the Court.

Because  Clal  Batucha/Direct  and  National  Elevator  do  not  have  adequate  losses  to  be

Reply Memorandum In Further Support of the Israeli Institutional Investor Group's Motion for Appointment as Lead Plaintiff and Approval of Lead Plaintiff's Selection of Lead Counsel. C 07-6140 MHP

4

competitive for lead plaintiff appointment, they argue that the class period should be artificially *shortened* to March 1, 2007 through November 30, 2007, even though doing so would exclude the claims of hundreds of thousands of investors who should be class members and who were damaged as a result of the Defendants' unlawful actions. *See* Clal Batucha/Direct Response, Docket No. 75, and National Elevator Reply, Docket No. 79 at 3.[8]   By arguing for a *shorter* class period, Clal Batucha/Direct and National Elevator are arguing against the interests of the Class they feign to represent.  Under the facts of this motion, no movant legitimately seeking to be a fiduciary to the Class could argue for such an artificially shortened class period.

APERS filed today (February 25) a withdrawal of its motion to be appointed lead plaintiff and endorsed the candidacy of National Elevator, stating that National Elevator has the largest losses using LIFO terminology.  Withdrawals such as this one – that endorse another movant – are known in the parlance of the national plaintiffs' securities bar as "noisy withdrawals."  Such "noisy withdrawals" are almost always lawyer-driven, and there is usually a quid pro quo for the endorsement.  APERS' "noisy withdrawal" is particularly suspect because even though APERS advocated for the longer class period in its initial motion papers (APERS' Lead Plaintiff Memorandum, Docket No. 33-2, at 1), the damages calculations it sets forth in its withdrawal papers use the shorter, impermissible class period.  APERS neither points out, nor explains, this sudden and facially inexplicable switch to the incorrect class period.  Using the operative Class Period, the Israeli Institutional Investor Group has FIFO damages of $17,916,409 and LIFO damages of $13,573,404, both of which dwarf the losses of all other movants.

### B.   Competing Movants Have Failed To Rebut The Statutory Presumption That The Israeli Institutional Investor Group Is The Most Adequate Lead Plaintiff.

---

[8] Curiously, National Elevator relied on the longer and correct Class Period in its original motion papers, but, like APERS, suddenly switched in its Reply brief filed today (February 25) and argued – without any explanation for the switch – the damages of the shorter, impermissible class period.  Apparently, National Elevator recognized, after seeing the damages of the competing movants, that the unsupportable shorter class period would, as with Clal Batucha/Direct, offer a better chance of being appointed lead plaintiff.  *Compare* National Elevator Motion for Lead Plaintiff, Docket No. 35 at 1-4 (adopting long class period) *with* its Reply, Docket No. 79 at 3 (adopting the Clal Batucha/Direct class period).  Israeli Institutional InvestorGroup submits National Elevator's switch from the correct class period in its original motion to the shorter, impermissible class period in the Reply brief, is telling.

Reply Memorandum In Further Support of the Israeli Institutional Investor Group's Motion for Appointment as Lead Plaintiff and Approval of Lead Plaintiff's Selection of Lead Counsel. C 07-6140 MHP

5

To rebut the presumption that the Israeli Institutional Investor Group is the "most adequate plaintiff," competing movants must provide actual "proof" that the Group "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa)-(bb); *In re Cendant Corp. Litig.*, 264 F.3d 201, 264 (3d Cir. 2001). Competing movants' submissions fall far short of carrying the evidentiary burden needed.

### 1. The Israeli Institutional Investor Group is a cohesive group that will adequately represent the interests of the Class.

The PSLRA explicitly contemplates the appointment of a "person or group of persons" as the lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The Israeli Institutional Investor Group consists of only five members, a size sanctioned by the SEC, making it a small group that can easily interact and represent the Class. *See, e.g., In re Baan Co. Sec. Litig.*, 186 F.R.D. 214, 224 (D.D.C. 1999) (acknowledging that the SEC has specifically endorsed groups with up to five members to serve as lead plaintiff).

Each member of the Israeli Institutional Investor Group has signed a Joint Declaration expressing in detail its commitment to the group prosecution of the claims in this action and to their agreement as to how they will oversee this litigation. As set forth in their Joint Declaration in Support of the Israeli Institutional Investor Group's Motion for Appointment as Lead Plaintiff, being filed simultaneously herewith ("Jt. Decl."), the Group consists of sophisticated institutional investors that will communicate regularly with each other and their counsel to discuss and monitor the litigation. *See* Jt. Decl., ¶¶12, 19. The Group will exercise joint decision-making, with each member entitled to one vote on issues that cannot be decided unanimously. Jt. Decl., ¶19. Each member of the Israeli Institutional Investor Group has in-house counsel to help oversee this litigation. Jt. Decl., ¶18. The Group has agreed to be responsible for directing and overseeing the activities of its lead counsel, including but not limited

Reply Memorandum In Further Support of the Israeli Institutional Investor Group's Motion for Appointment as Lead Plaintiff and Approval of Lead Plaintiff's Selection of Lead Counsel. C 07-6140 MHP

6

to matters of discovery, expert witnesses, status reports, and settlement negotiations. Thus, as reflected in the Joint Declaration, the Group has demonstrated that it is a cohesive group that will adequately represent the Class. *See In re Versata, Inc. Sec. Litig.,* No. C 01-1439 SI, 2001 WL 34012374, at *7 (N.D. Cal. 2001) ("The members of the group have expressed their individual desire to take a pro-active role in vigorously representing the class and directing counsel . . .The group has shown that it can and does intend to work collectively toward their goals. It has established a regular meeting calendar, a mechanism for 'emergency' meetings, and a procedure to resolve disagreements between members and avoid impasse"); *see also In re Microstrategy Inc. Sec. Litig.*, 110 F. Supp. 2d at 435 (citing *Parnes, et al., v. Digital Lightwave, Inc.,* No. 99-11293 (11th Cir. Aug. 25, 1999)) (court should consider "an explanation of how its members would function collectively; and a description of the mechanism that its members and the proposed lead counsel have established to communicate with one another about the litigation.").

Clearly, the speculation of competing movants that the members of the Israeli Institutional Investor Group are not a cohesive group that will work together to effectively represent the proposed Class is unfounded. *See e.g.,* National Elevator's Response, Docket No. 72 at 6; Steelworker's Response, Docket No. 64 at 2. In addition, several movants have speculated that the Group lacks a pre-litigation relationship and consequently, cannot be appointed to act as lead plaintiff. *See, e.g.,* Steelworker's Response, Docket No. 64 at 2. However, even though a pre-litigation relationship is not required, the Group has unequivocally established that its members do have a pre-litigation relationship with each other. *See* Jt. Decl., ¶13.[9]

---

[9] Courts throughout the country have explicitly rejected the need for a pre-litigation relationship. For example, in *In re Versata*, WL 34012374, at *5, the Court concluded that a "case-by-case inquiry" allowed more flexibility in determining the lead plaintiff who will most "actively represent the class," which is the most important concern. *See also In re Microstrategy Inc. Securities Litigation*, 110 F. Supp. 2d 427, 435 (E.D. Va. 2000) (discussing three approaches and deciding on a case-by-case analysis because it allows "maximum flexibility"). Moreover, "[t]he beneficial characteristics sought in a group with a pre-existing relationship – cohesiveness, an ability to direct litigation, and collective confluence with the interests of the class – can be found in unrelated groups on a case-by-case basis." *In re Versata*, 2001 WL 34012374 at *5. In the case-by-case

Reply Memorandum In Further Support of the Israeli Institutional Investor Group's Motion for Appointment as Lead Plaintiff and Approval of Lead Plaintiff's Selection of Lead Counsel. C 07-6140 MHP

7

1

National Elevator attempts to rebut the presumption that the Israeli Institutional Investor Group

2

is the most adequate lead plaintiff by drastically exaggerating logistical problems that might arise if the

3

group is appointed as Lead Plaintiff. National Elevator Response, Docket No. 72 at 9.  However, the

4

Group has assured the Court that distance will not affect its ability to work with proposed Lead Counsel

5

to adequately represent the Class and efficiently litigate this action.  *See* Jt. Decl., ¶20.  Consequently,

6

this cannot be a factor to consider. *See Lernout & Hauspie Sec. Litig.*, 138 F. Supp. 2d 39 (D. Mass.

7

2001) (appointing three foreign investors as lead plaintiff after considering factors such as their

8

willingness to travel and whether they had a viable plan to manage the case).

9

10

Finally, the Israeli Institutional Investor Group has selected only one firm as its Proposed Lead

11

Counsel, with the other firm acting as Liaison Counsel.  *See In re Baan Co. Sec. Litig*., 186 F.R.D. at

12

231 (appointing multiple lead counsel could cause duplication of effort, increased attorneys' fees,

13

friction or lack of coordination among counsel, and delay of the litigation).

14

15

Thus, the Israeli Institutional Investor Group is the most adequate lead plaintiff because it will

16

effectively control the litigation and vigorously represent the interests of the Class.

17

### 2.    The Israeli Institutional Investor Group is not subject to unique defenses.

18

Competing movants make three arguments in support of their assertion that Israeli Institutional

19

Investor Group will be subject to unique defenses: (1) that the Group purportedly lacks standing to

20

pursue the claims against defendants; (2) that a judgment rendered by this Court might not be given *res*

21

*judicata* effect in Israel; and (3) that the interests of Phoenix Insurance Company, Ltd. ("Phoenix") are

22

23

analysis, a group structured in order to maximize its sophisticated business knowledge provides good support for

24

appointment as lead plaintiff.  *Id.*, at *7; *Local 144 Nursing Home Pension Fund*, 2000 WL 33173017, at *4.  Thus, even if the members of the Group had not had a pre-existing relationship, their losses could be combined for purposes of the Group's lead plaintiff motion so long as the resulting group is small and cohesive enough to ensure that it will be able to adequately

25

control and oversee the litigation, as is the case here.  *See In re Baan Co. Securities Litigation*, 186 F.R.D. 214, 216 (D.D.C. 1999) ("[t]he text of the PSLRA does not limit the composition of a 'group of persons' to those only with a pre-existing

26

relationship, nor does the legislative history provide a sound enough foundation to support such a gloss."); *Local 144 Nursing Home Pension Fund*, 2000 WL 33173017, at *5 ("the PSLRA does not require that members of a group of investors have

27

some sort of pre-litigation relationship in order to be appointed lead plaintiff").

28

Reply Memorandum In Further Support of the Israeli Institutional Investor Group's Motion for Appointment as Lead
Plaintiff and Approval of Lead Plaintiff's Selection of Lead Counsel. C 07-6140 MHP

8

1   in conflict with absent Class members. None of these arguments is correct.

2               **a.      The Israeli Institutional Investor Group has standing.**

3       Steelworkers and National Elevator *speculate* that the Israeli Institutional Investor Group lacks

4   standing to sue because its members are asset managers who lack a financial stake in this litigation.

5   However, the members of the Group were and are the beneficial owners of VeriFone common stock and,

6   thus, the Group has standing to sue. *See* Jt. Decl., ¶¶2-11. The Group directly suffered significant

7   financial losses, totaling $17,916,409. Additionally, all of the members have full and complete

8   discretion to buy and sell securities for their accounts as well as to institute legal action on their behalf.

9   *See* Jt. Decl., ¶¶3, 5, 7, 9, 11. Attached as Addendum A to the Joint Declaration are each member's

10  losses attributable to each fund over which the member has investment decision-making authority and

11  the authority to bring suit, including seeking to act as lead plaintiff. As beneficial owners of VeriFone

12  stock, each member of the Israeli Institutional Investor Group has standing to assert claims in this action.

13      The cases cited by Steelworkers and National Elevator as support for the proposition that the

14  Israeli Institutional Investor Group lacks standing have no application to the facts of this case. For

15  example, in *Smith v. Suprema Specialties, Inc.*, 206 F. Supp. 2d 627 (D.N.J. 2002), the court declined to

16  appoint an investment management company as lead plaintiff because the company did not function as a

17  single investor and submitted no evidence showing it had permission to move on behalf of its clients.

18  *Id*. at 633-34. By contrast, the five members of the Israeli Institutional Investor Group have submitted

19  evidence of their authority to take legal action on behalf of their funds. *See* Jt. Decl., ¶¶3, 5, 7, 9, 11; *see*

20  *Local 144 Nursing Home Pension,* 2000 WL 33173017, at *4-5 (declarations submitted by a group of

21  five institutional investors satisfied court that the group would manage the litigation effectively).

22              **b.      Israel will give preclusive effect to a judgment by this Court.**

23      Israeli courts recognize American judgments. *See Tahan v. Hodgson,* 662 F.2d 862, 868 (D.D.C.

24  1981) ("Even assuming that reciprocity is required by either the federal government or the District of

Reply Memorandum In Further Support of the Israeli Institutional Investor Group's Motion for Appointment as Lead Plaintiff and Approval of Lead Plaintiff's Selection of Lead Counsel. C 07-6140 MHP

9

Columbia, we would still enforce the Israeli judgment since Israel in all probability would enforce a similar American judgment and thus meets the reciprocity criterion. Israel provides for enforcement of foreign judgments by a statute, which reads in relevant part that 'in dealing with and for the purposes of a matter within its jurisdiction, a court or tribunal in Israel may recognize a foreign judgment even if subsection (a) (providing for recognition of foreign judgments where an agreement with a foreign state specifically so mandates) does not apply to it, if it considers it lawful and just to do so.'"). Indeed, Israel itself allows for litigants, including investors, to bring class actions claims.[10]

National Elevator's arguments against the preclusive effects of an American judgment in Israel are flawed. First, it is National Elevator's burden to come forth with evidence, not speculation, that the Israeli Institutional Investor Group is subject to a unique defense, such as that an Israeli court will not accord preclusive effect to an American judgment. National Elevator Fund has utterly failed to offer any evidence concerning whether there is a preclusive effect to an American judgment, and therefore this cannot be a basis to rebut the presumption that the Israeli Institutional Investor Group should be appointed lead plaintiff. *See Mohanty v. BigBand Networks, Inc.,* No. C 07-5101 SBA, 2008 WL 426250, at *8 (N.D. Cal. Feb. 14, 2008) ("However, the arguments and evidence presented by Sphera Fund are a totally inadequate basis for this Court to form any opinion as to whether Cypriot courts would give binding effect to this Court's judgments. As an initial matter, Sphera Fund does not even so much as provide an authenticated version of the Cypriot Civil Procedure Rules, but instead only provides a link to a webpage that is primarily in Greek and appears to contain translations of various Cypriot laws. [Internal citations to the record omitted.] Sphera Funds provides absolutely no evidence

---

[10] The Israeli Class Actions Act of 2006 superseded prior legislation that also allowed for class actions. S.H. 2054, Sec. 1 *et seq.* The 2006 legislation and a comparison with Rule 23 is found at Journal of International Law and Policy, Vol. V, Eran Taussig, "Prerequisites to Class Action Certification: A Comparison of New Israeli law and Rule 23(a) of the Federal Rules of Civil Procedure."

Reply Memorandum In Further Support of the Israeli Institutional Investor Group's Motion for Appointment as Lead Plaintiff and Approval of Lead Plaintiff's Selection of Lead Counsel. C 07-6140 MHP

10

that this webpage presents accurate, let alone canonical, translations of the laws of Cyprus. . . . In fact, Sphera Fund has presented no expert testimony – or even textual analysis – demonstrating that the laws of Cyprus actually 'only authorize representative civil actions where the absent plaintiffs explicitly sign a power of attorney to the representative plaintiff' as Sphera Fund claims. The Court therefore has no basis on which to render an informed ruling on this question.").

The cases relied upon by National Elevator are of no avail here because, unlike in this case, in those cases, the courts were presented with evidence regarding the lack of preclusive effect afforded to American judgments by the particular foreign courts at issue.  One of the critical elements in these decisions was that, unlike in Israel, the lead plaintiff applicant's home country did not specifically recognize class actions and the adjudication of claims for absent class members *See In re Vivendi Universal*, S.A., Sec. Litig., 242 F.R.D. 76, 103-105 (S.D.N.Y. 2007) (court eliminated German and Austrian shareholders from the class *after* considering expert testimony as to whether a German court would recognize a judgment in a U.S. class action, but allowed British, French, and Dutch shareholders to remain because the risk of nonrecognition did not compel their exclusion); *Borochoff v. Glaxosmithkline PLC*, 246 F.R.D. 201, 204 (S.D.N.Y. 2007) (relying on *Vivendi*'s analysis of German law, court declined to appoint German institutional investor as lead plaintiff because it was presented with evidence indicating that the formalities of German law may well preclude the recognition of a judgment).  National Elevator cites to no case which has concluded that ***Israeli courts***, as opposed to German, French or Italian courts, do not recognize American judgments, and the Israeli Institutional Investor Group is aware of no such case.

Second, courts routinely have appointed foreign entities to serve in a representative capacity, even when faced with such baseless speculation as raised by National Elevator. *See, e.g., In re Lloyd's American Trust Fund Litig*., No. 96 Civ. 1262 (RWS), 1998 WL 50211, at *15 n.7 (S.D.N.Y. Feb. 6, 1998) (58% of class members resided in countries which might not give preclusive effect to American

Reply Memorandum In Further Support of the Israeli Institutional Investor Group's Motion for Appointment as Lead Plaintiff and Approval of Lead Plaintiff's Selection of Lead Counsel. C 07-6140 MHP

11

1    judgment); *In re U.S. Financial Sec. Litig.*, 69 F.R.D. 24, 51 (S.D. Cal. 1975) (citing other cases

2    certifying classes including foreign members); *Cromer Finance Ltd. v. Berger*, 205 F.R.D. 113, 126

3    (S.D.N.Y. 2001) (certifying a class that contained many foreign members); *In re Turkcell Iletisim*

4    *Hizmetler, A.S. Sec. Litig.*, 209 F.R.D. 353, 360 (S.D.N.Y. 2002) (certifying a class which included

5    foreign members).  Indeed, in the following cases, the court appointed an Israeli institutional investor as

6    lead plaintiff: *David et al. v. Nice Systems Ltd. et al.*, 2:01-CV-00737-JAG (D.N.J.); *In re Gilat Satellite*

7    *Networks, Ltd.*, CV-02-1510-CPS (E.D.N.Y.); and *Israeli, et al. v. Team Telecom Intl., et al.,* 04-CV-

8    4305 (D.N.J.).

9

10    Third, even if the *res judicata* argument raised only by National Elevator against the Israeli

11    Institutional Investor Group were substantive (which it is not), it is premature.  *See Takeda v. Turbodyne*

12    *Techs., Inc.*, 67 F.Supp. 2d 1129, 1138 (C.D. Cal. 1999).  In appointing German foreign nationals as co-

13    lead plaintiffs, the court in *Takeda* noted that the examination of the preclusive effect of an American

14    judgment in particular foreign jurisdictions is "more properly addressed at the class certification state."

15    *Id.*; *see also In re Party City Sec. Litig.*, 189 F.R.D. 91 (D.N.J. 1999) (a wide-ranging analysis under

16    Rule 23 should be left for consideration of a motion for class certification).  *See also In re Activism Sec.*

17    *Litig.*, 621 F. Supp. 415, 432 (D.C. Cal. 1985) (in rejecting defendants' argument at class certification

18    stage that class should be limited to purchasers in the United States "since foreign courts would be

19    unlikely to accord preclusive effect against their citizens should defendants prevail in this action," court

20    noted "[i]t would be premature for the court to limit the class at this time based on such sheer

21    speculation").

22

23    In the case at bar, only a suggestion has been made that there may be an issue regarding *res*

24    *judicata,* and the case law provides that the suggestion is incorrect.  This Court should reject the

25    argument advanced by National Elevator and appoint the presumptive lead plaintiff, the Israeli

26    Institutional Investor Group, as Lead Plaintiff.

27

28

Reply Memorandum In Further Support of the Israeli Institutional Investor Group's Motion for Appointment as Lead
Plaintiff and Approval of Lead Plaintiff's Selection of Lead Counsel. C 07-6140 MHP

12

1

### c.    The interests of Phoenix Insurance Company, Ltd. are aligned with those of absent class members.

In an effort to fabricate a conflict where none exists, National Elevator also asserts that a company called Delek Group owns a 53% interest in Phoenix and has a business relationship with VeriFone, which could place the interest of Phoenix in conflict with absent Class members who are adverse to VeriFone. National Elevator Response, Docket No. 72 at 10. However, the facts belie this contention.

The SEC form 10-Q relied on by National Elevator actually shows that a company called Delek US Holdings, Inc., *not Delek Group*, reported purchasing a certain component from VeriFone in May 2007. *See* Chitwood Decl., Ex. E (Delek US Holdings, Inc.'s Form 10-Q dated May 15, 2007 at 27). Delek US Holdings, Inc. is owned by a company called Delek Petroleum. Delek Petroleum in turn, is owned by Delek Group. *See* Chitwood Decl., Ex. F (Organizational Chart for Delek Group). Delek U.S. Holdings, Inc. has not reported any further transactions with Verifone since the one time transaction of purchasing a component.

There is no direct link between Delek U.S. Holdings, Inc. and Phoenix. As stated in the accompanying affidavit from Phoenix's General Legal Counsel and Secretary, "The Phoenix operates independently from Delek USA, which does not possess any ownership or control interest in Phoenix. Delek USA's business dealings are independent from those conducted by Phoenix, and Phoenix is not involved with Delek USA's business decisions." *See* Chitwood Decl., Ex. G (Dagan Decl., at ¶3).

Thus, the transaction by Delek U.S. Holdings, Inc., even if it were sufficient to raise the spectre of a conflict, which it is not, cannot be attributed or otherwise linked to Phoenix. *See Bayshore Ford Truck Sales, Inc. v. Ford Motor Co.*, Civil Action No. 99cv741 (JLL), 2006 WL 3371690, at *15 (D.N.J. Nov. 17, 2006) (court rejected argument that certain Ford dealership franchisees could not be adequate class representatives on the grounds that they continued to deal with the defendant Ford Motor Company).

Reply Memorandum In Further Support of the Israeli Institutional Investor Group's Motion for Appointment as Lead Plaintiff and Approval of Lead Plaintiff's Selection of Lead Counsel. C 07-6140 MHP

13

1

2    Moreover, not only does National Elevator get the facts wrong, it fails to describe what the consequences of a conflict would be.  This is not a case in which a potential lead plaintiff for example is not pursuing claims against a member of a group of defendants that is accused of unlawful actions and has been sued by another lead plaintiff candidate due to a potential conflict.  *See e.g., Dubin v. Miller,* 132 F.R.D. 269, 272 (D. Colo. 1990) ("[t]he omission to sue a potential defendant cannot but prejudice the class.")  The Israeli Institutional Investor Group is pursuing all the same claims against all the same defendants that National Elevator is pursuing.

3

4

5

6

7

8

9    In sum, in this case the company that actually dealt with Verifone has no interest in Phoenix at all and, consequently, will not subject Phoenix to a unique defense.

10

11   **V.    CONCLUSION**

12           For all the foregoing reasons, the Israeli Institutional Investor Group respectfully requests that the Court:

13

14      1.   deny the competing motions for Lead Plaintiff appointment;

15

16      2.   appoint the Israeli Institutional Investor Group as Lead Plaintiff pursuant to § 21 (D)(a)(3)(B) of the PSLRA; and

17

18      3.   approve Movants' choice of Chitwood Harley Harnes LLP as Lead Counsel and Schubert & Reed LLP as Liaison Counsel, pursuant to § 21 (D)(a)(3)(B)(v) of the PSLRA.

19

20                          Dated: February 25, 2008

21

22                              **SCHUBERT & REED LLP**

23                          By:    s/ Juden Justice Reed
                            Robert C. Schubert (State Bar No. 62684)
24                          Juden Justice Reed (State Bar No. 153748)
                            Willem F. Jonckheer (State Bar No. 178748)
25                          Three Embarcadero Center, Suite 1650
                            San Francisco, CA 94111
26                          Telephone: (415) 788-4220
                            Facsimile:  (415) 788-0161
27

28                          *Proposed Liaison Counsel*

Reply Memorandum In Further Support of the Israeli Institutional Investor Group's Motion for Appointment as Lead Plaintiff and Approval of Lead Plaintiff's Selection of Lead Counsel. C 07-6140 MHP

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CHITWOOD HARLEY HARNES LLP**
Martin D. Chitwood
James M. Wilson, Jr.
2300 Promenade II
1230 Peachtree Street, N.E.
Atlanta, Georgia 30309
Telephone: (404) 873-3900
Facsimile:  (404) 876-4476

**CHITWOOD HARLEY HARNES LLP**
Gregory E. Keller
Darren T. Kaplan
Eran Rubinstein
Susan Boltz Rubinstein
11 Grace Avenue, Suite 306
Great Neck, New York 11021
Telephone: (516) 773-6090
Fax: (404) 876-4476

*Counsel for Movants and Proposed Lead Counsel*

Reply Memorandum In Further Support of the Israeli Institutional Investor Group's Motion for Appointment as Lead Plaintiff and Approval of Lead Plaintiff's Selection of Lead Counsel. C 07-6140 MHP

15