UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOEL EICHENHOLTZ, individually and on behalf of all others similarly situated, | No. C 07-06140 MHP |
| Plaintiff, | **ORDER** |
| v. | **Re: Appointment of Lead Counsel** |
| VERIFONE HOLDINGS, INC., et al., | |
| Defendants. | |

Presently pending in front of this court are a number of related securities fraud class action lawsuits filed against VeriFone Holdings, Inc. ("Verifone") and certain of its officers and directors (collectively "defendants") on behalf of purchasers of Verifone common stock during August 31, 2006 through December 3, 2007. Each action alleges violations of the federal securities laws under sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. sections 78j(b) and 78t(a), and Securities and Exchange Commission rule 10b-5 promulgated under section 10(b), 17 C.F.R. section 240.10b-5.

BACKGROUND[1]

Verifone is a Delaware corporation with its principal place of business in San Jose, CA. It engages in the design, marketing and service of transaction automation systems that enable electronic payments among consumers, merchants and financial institutions. Plaintiffs claim that between August 30, 2006 and December 3, 2007,[2] defendants Verifone and its managers engaged in a scheme to deceive the market and on a course of conduct that artificially inflated Verifone's stock price and operated as a fraud or deceit on class period purchasers of Verifone's stock by

1  misrepresenting the company's financial condition. As a result of their purchases of Verifone stock
2  during this period, plaintiffs claim to have suffered economic losses. Specifically, on December 3,
3  2007 investors learned that defendants would be forced to restate the company's financial and
4  operational results reported on March 1, 2007 or later. The March 1, 2007 report pertained to the
5  time period from November 1, 2006—the day Verifone acquired Lipman Electronics Engineering,
6  Ltd.—to January 31, 2007. The same day, December 3, 2007, Verifone's stock price collapsed to
7  approximately $26.00 per share—a decline of over 45%—or $22.00 per share.
8        The first lawsuit was filed against defendants on December 4, 2007. Eight other lawsuits
9  followed.[3] Pursuant to 15 U.S.C. section 78u-4(a)(3)(A)(I), the first notice that a class action had
10 been initiated against defendants was published on the same day.

## LEGAL STANDARD

The Private Securities Litigation Reform Act of 1995 ("PSLRA") sets forth a three-tiered procedure for the selection of a lead plaintiff to oversee securities class actions. 15 U.S.C. § 78u-4(a)(3); In re Cavanaugh, 306 F.3d 726 (9th Cir. 2002). First, the plaintiff who files the initial action must, within twenty days of filing the action, publish a notice to the class informing class members of their right to file a motion for appointment as lead plaintiff. 15 U.S.C. § 8u-4(a)(3)(A)(I). Within sixty days after publication of the required notice, any member or members of the proposed class may apply to the court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action. Id. § 78u-4(a)(3)(A), (B). Next, according to the PSLRA, the court shall appoint as lead plaintiff the movant or movants that the court determines to be most capable of adequately representing the interests of class members. Id. § 78u-4(a)(3)(B)(I). Subsection (a)(3)(B)(iii) requires a presumption that the most adequate plaintiff:

    (aa) has either filed the complaint or made a motion in response to a notice under [the PSLRA];
    (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
    (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

For purposes of appointing lead plaintiff, the focus is only on the typicality and adequacy requirements of Rule 23. See Cavanaugh, 306 F.3d at 730.

2

Only by a showing that a lead plaintiff will not fairly and adequately represent the class, or is subject to unique defenses that will render such plaintiff incapable of adequately representing the class, will this presumption be overcome. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

DISCUSSION

Plaintiffs seek to consolidate these nine related actions pursuant to Rule 42(a) of the Federal Rules of Civil Procedure. Under the PSLRA, prior to selecting a lead plaintiff, the court must decide whether to consolidate the related actions. See 15 U.S.C. § 78u-4(a)(3)(B)(ii). Here, each action asserts substantially the same claims against the same defendants and raises substantially the same questions of law and fact. Also, each of these cases alleges violations of Sections 10(b) and 20(a) of the Exchange Act. Thus, all of the prerequisites for consolidation under rule 42(a) are present. Consequently, the court orders the actions CONSOLIDATED.

The court now turns to the three-tiered procedure for the selection of a lead plaintiff. It is clear that the plaintiff who filed the initial action published a notice to the class informing class members of their right to file a motion for appointment as lead plaintiff within twenty days of the filing. Within sixty days after publication of the required notice, multiple members of the proposed class applied to this court to be appointed lead plaintiff. The court must now determine the movant that is most capable of adequately representing the interests of class members.

Six separate sets of plaintiffs and their attorneys have moved to be appointed as lead plaintiff and lead counsel. At this time, there are only three in serious contention.[4] The approximate financial interest asserted by each under both a first-in first-out ("FIFO") and last-in first-out ("LIFO") calculation is:

- Phoenix Insurance Company, Prisma Provident Funds, Prisma Mutual Funds, Harel Insurance Company and Harel Pia Mutual Funds ("Israeli Group"): Purchase of approximately 1.5 million shares leading to losses of approximately $18 million according to a FIFO calculation and approximately $13.5 million according to a LIFO calculation.

3

1  • CLAL Finance Batucha Investment Management and Direct Investment House
2     ("CLAL"): Retention of approximately 143,000 shares for losses of $3.18 million.
3  • National Elevator Fund ("NEF"): The purchase and sale of 242,750 shares between
4     September 2006 and December 2007 for a loss of $2.028 million.

The information provided by the movants, however, is insufficient for this court to make an informed decision. In order to determine the movant with the largest financial interest, the court requires the following information from the following eight entities: 1) Phoenix Investment Company, Ltd.; 2) Prisma Provident Funds, Ltd.; 3) Prisma Mutual Funds, Ltd.; 4) Harel Insurance Company; 5) Harel Pia Mutual Funds; 6) CLAL Finance Batucha Investment Management Ltd.; and 7) Direct Investment House (Providence Funds) Ltd.[5] Specifically, the court requires sworn declarations from each entity that:

- Set forth in table format: 1) the number of Lipman shares the entity held immediately before consummation of the merger on November 1, 2006; 2) the number of Lipman shares the entity held immediately after the consummation of the merger on November 1, 2006; 3) the number of Lipman shares that were converted to Verifone shares as part of the merger; and 4) the name of the exchange over which each purchase and sale of Lipman shares was conducted.

- For each entity, provide, in table format: 1) the number of original Verifone shares—not including Verifone shares gained as a result of the merger with Lipman—purchased between August 30, 2006 and December 3, 2007; 2) the total funds expended in purchasing Verifone shares during this period; 3) the number of original Verifone shares sold during this period;[6] 4) the total funds received from selling the original Verifone shares during this period; 5) the number of original Verifone shares retained as of December 3, 2007; 6) the amount paid for the shares retained as of December 3, 2007—calculated according to the price paid for the shares bought most recently in time, but prior to, December 3, 2007;[7] and 7) the losses incurred due to shares retained as of December 3, 2007.[8]

4

- State the owner—not beneficial owner, but the actual holder—of the Lipman and Verifone shares claimed to be owned by the entity, broken down by each account or fund held by the entity. Specifically, in whose name were the shares held? Furthermore, who had control to vote those shares and who had the authority to buy or sell those shares?
- State what information, if any, the entity had regarding Lipman that was not generally available to the public outside their home country and what relationship, if any, it or any of its officers or directors had with Lipman before the merger.

CONCLUSION

The parties to whom this order applies are ordered to provide this information to the court within thirty (30) days of the date of this order.

IT IS SO ORDERED.

Dated: May 14, 2008

MARILYN HALL PATEL
United States District Court Judge
Northern District of California

# ENDNOTES

1. These facts were derived from the allegations contained in the class action styled <u>Lien v. Verifone Holdings, Inc., et al.</u>, C 07-06195 JSW (filed December 6, 2007).

2. This is the longest proposed class period in the complaints.

3. <u>See</u> <u>Lien v. Verifone Holdings, Inc., et al.</u>, C 07-06195; <u>Vaughn, et al. v. Verifone Holdings, Inc., et al.</u>, C 07-06197; <u>Feldman et al. v. Verifone Holdings, Inc., et al.</u>, C 07-06218; <u>Cerini v. Verifone Holdings, Inc., et al.</u>, C 07-06228; <u>Westend Capital Management LLC v. Verifone Holdings, Inc., et al.</u>, C 07-06237; <u>Hill v. Verifone Holdings, Inc., et al.</u>, C 07-6238; <u>Offutt v. Verifone Holdings Inc., et al.</u>, C 07-06241; <u>Feitel v. Verifone Holdings, Inc., et al.</u>, C 08-00118. On January 30, 2008 a notice of voluntary dismissal was filed by plaintiff Peter A. Kraft in <u>Kraft v. Verifone Holdings, Inc., et al.</u>, C 07-01588 in the Southern District of Indiana. Plaintiffs Brian Vaughn and Miriam Logan have also withdrawn their complaint. <u>See</u> Docket No. 106.

4. IBEW Local 363 Pension purchased 2,767 shares, which led to a loss of approximately $70,000. The Steelworkers Pension Trust purchased 28,200 shares for a loss of $607,041. Westend Capital Management, LLC purchased approximately 965,000 shares and sold 1,200 shares for a loss of approximately $1 million. All of these losses are dwarfed by the other contenders.

5. The court notes that each of the first two "groups" listed above consists of separate, unrelated entitles which also introduces other issues not dealt with in this order.

6. Because the court has not found evidence of purchases of original Verifone shares by any entity before August 30, 2006, any shares sold on or after August 30, 2006 were necessarily shares acquired on or after August 30, 2006. If an entity had non-zero Verifone shares held as of August 30, 2006, that entity is to provide information regarding the same.

7. For instance, if an entity bought ten shares at ten dollars on day one, twenty shares at twenty dollars on day two, thirty shares at thirty dollars on day three and subsequently sold fifty shares on the day before the revelation of impropriety that sent the stock price crashing down to five dollars, it would have ten shares on hand at the time of the revelation. Under the calculation the court desires, the purchase price will be $30 \times 10 = \$300$. Specifically, the purchase price of the retained shares will be the price paid for the shares bought closest in time to, but before, the revelation date.

8. If a share was not sold within 90 days subsequent to December 3, 2007, the loss is to be measured using an average of the daily closing price of Verifone stock during the 90-day period beginning December 3, 2007. If a share was sold within 90 days subsequent to December 3, 2007, the loss is to be measured using the higher of the actual sale price or an average of the daily closing price from December 3, 2007 to the date of sale. Under the example in endnote 6, if the share price after the revelation remains constant at $5, then the entity's loss would be [$30 - $5] x 10 = $250.