UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                )
BERMAN DEVALERIO PEASE          )
TABACCO BURT & PUCILLO,         )
                                )
        Plaintiff               )
                                )
v.                              )        Civil Action No. 07-cv-12127-PBS
                                )
ERAN RUBINSTEIN and             )
SUSAN M. BOLTZ RUBINSTEIN,      )
                                )
        Defendants              )
_____)

REPORT AND RECOMMENDATION
ON DEFENDANTS' MOTION TO DISMISS OR TRANSFER

February 7, 2008

SOROKIN, M.J.

Defendants have filed a motion to dismiss for lack of personal jurisdiction, pursuant to

Fed.R.Civ.P. 12(b)(2) and, in the alternative, a motion for transfer of venue to the Eastern

District of Pennsylvania or dismissal for forum non conveniences in favor of that district.

Docket #9.  In response to an Order of Reference, I recommend that this motion be DENIED.


STATEMENT OF FACTS

The facts are drawn from the documents submitted by the parties.  When the parties

dispute a fact, I have accepted Plaintiff's version of the fact, provided Plaintiff submitted specific

facts rather than mere general conclusory assertions.  Ticketmaster-N.Y., Inc. v. Alioto, 26 F.3d

201, 203 (1st Cir. 1994).

1

1.     The Parties and Relevant Entities

This suit concerns a contractual business arrangement entered into on or about March 26, 2007 and formally terminated on or about September 10, 2007.  Plaintiff is a general partnership law firm in Boston.  Defendants are a husband and wife residing in Pennsylvania, within the jurisdiction of the Eastern District of Pennsylvania.  Both Defendants are practicing attorneys.

2.     Formation of the Contract

Defendants were Of Counsel to the law firm Lerach Coughlin, a competitor to the plaintiff law firm, from March 15, 2006 to March 15, 2007.  Docket #9-2, at ¶¶ 2, 5-6; Docket #9-4.  After this employment ended, Defendants emailed, on March 17, 2007, one of Berman DeValerio's partners, Kathleen Donovan-Maher, at her residence in Massachusetts, stating "I [Susan Rubinstein] would like to speak to you about working with your firm. . . . We now have important clients in the Middle East and Europe ready to sign up for portfolio monitoring . . . . As time is of the essence, please get back to me asap if you feel your firm would be interested in working with us to bring these clients to your firm."  Docket #34-2, at 2[1]; see also Docket #9-5, at ¶ 8; Docket #9-2, at ¶ 8.  In writing to her partners about her follow up conversation with Defendants, Donovan-Maher said that Defendants were "very interested in joining Berman DeValerio in an Of Counsel capacity."  Docket #34-2, at 2.

On March 19, Defendants and two of Berman DeValerio's Boston partners, Norman Berman and Jeffrey Block, met in New York City.  Docket #9-5, at ¶ 10; Docket #12-3, at *3. Defendants assert that the parties "conducted contractual negotiations" during this meeting and agreed that they would use Defendants' previous contract with Lerach Coughlin as a template for

---

[1] Page number references of docketed items are to the ECF page number at the top of the page, not the page number appearing on the bottom of the document.

their own agreement, while Plaintiff characterizes this meeting as purely "exploratory" and says that "[n]o contract negotiations occurred during this interview."  Docket #9-5, at ¶ 11; Docket #13, at ¶ 5.

On March 22, Defendants traveled to Boston at Plaintiff's invitation for a day and a half of meetings with Berman DeValerio's staff.  Docket #9-5, at ¶¶ 14-15; Docket #13, at ¶¶ 6-7. According to Plaintiff, the parties "discussed the terms of a possible association" at this point and drafted an agreement at the end of the day.  Id., at ¶ 6.  Defendants, on the other hand, claim that "[t]here were no *substantial* contract discussions in Boston and no contractual negotiations," but do concede that "minimal changes" were made to the proposed contract, including the addition of a termination clause.  Docket #9-5, at ¶ 15 (emphasis added).  In any event, the meetings were plainly part of the decisionmaking process.

On March 26, Norman Berman, as a representative of his firm, "signed a letter agreement [in Boston] and emailed it as a PDF to Defendants," who had returned to their home in Pennsylvania.  Docket #13, at ¶ 8.  Defendants added a handwritten amendment, signed the agreement, and mailed it back to Berman DeValerio's Boston office.  Docket #9-5, at ¶ 18; Docket #12-3., at *4.[2]

---

[2] The parties dispute the propriety and effect of this amendment: Norman Berman claims that Defendants "unilaterally changed" the terms and that upon receipt, he promptly "telephoned the Rubinsteins and told them that the proposed change was not acceptable," while Defendants claim that the handwritten caveat to the termination clause was inserted with permission of Plaintiff and that they received no objection.  Docket #13, at ¶ 8; Docket #9-5, at ¶ 18; Docket #16, at 1.  Defendants further argue in their latest reply memorandum that either the agreement with the amendment added was the ultimate contract, and thereby it was "fully executed and finalized in Pennsylvania," or that, if Plaintiff's assertion that "there was never a formal mutual consent" is correct, "there was/is no written agreement and this action, based on the written agreement between the parties, must therefore be dismissed."  Id. Disposition of the pending Motion does not turn on resolution of this factual dispute.  For ease of reference, I refer to the letter as the agreement or contract.

The contract provides, in the very first paragraph, that Defendants would "assume an 'Of Counsel' relationship with Berman DeValerio," and their primary duties to the firm would be "institutional outreach to communicate with and secure clients for the Berman DeValerio institutional investor portfolio monitoring program."  Docket #9-5, ¶ 1.  Their primary contact person at the firm would be Kathleen Donovan-Maher in the Boston office.  Id.  In the event that the business relationship ended, Defendants agreed that they would not encourage any clients obtained for the firm through their efforts to terminate their relationship with Plaintiff or "establish a relationship with any competitor firm."  Id., at 3.  Defendants were to receive a monthly salary of $25,000, plus expenses and a share of the fees generated by any clients they brought to the firm.

3.     Events and Activities Under the Contract

Defendants contend that their performance under the contract "took place almost exclusively in Pennsylvania [where they maintained a home office], New York, or foreign countries," in that they did not physically appear for work in Boston.  Docket #9-5, at ¶ 19.  Nonetheless, Defendants came to Boston twice during the period they worked for Plaintiff and also joined, by  telephone, conferences occurring in Boston.  Docket #13, at ¶¶ 9, 11, 14; Docket #9, at ¶ 26.  Defendants had a variety of other interactions and transactions with the Boston-based office of Plaintiff.  Defendants received legal, marketing and administrative support in or from the Boston office.  Id., at ¶¶ 12-13.  They were placed on the firm's web site and provided email accounts, Blackberry devices, letterhead, business cards, etc., all of which tasks were arranged by Plaintiff's Boston office.  Docket #13, at ¶ 12; Docket #34-4, at 2, 3.  At no time did representatives of Berman DeValerio travel to Pennsylvania to meet with Defendants.  Docket

4

#13, at ¶ 16.

While Defendants assert that they performed "without direction" from Berman DeValerio staff and that "any reporting required was nominal at best," they concede that they communicated with the Boston office by phone, fax, mail, and email.  Docket #9, at ¶¶ 22, 21.  Moreover, they do not dispute Plaintiff's contention that the parties communicated frequently, if not daily during their association.  Docket #13, at ¶ 13.  The nature of their work securing institutional clients for the firm's monitoring program would obviously involve substantial communication with and oversight by the partners of the firm.  After all, they marketed the firm, i.e. the services of the Boston-based lawyers.

Over the course of their association, Plaintiff paid Defendants "approximately $150,000 and travel expense reimbursements totaling nearly $85,000."  Docket #13, at ¶ 14.  The evidence establishes that these payments were approved or originated in Boston, given that Defendants were only in contact (or almost exclusively in contact) with the Boston office.  Defendants make much of the fact that the wire transfer receipts list the sending bank as located in Rhode Island. Docket #16, at 2.  This is insignificant, however, given that the review, approval and authorization for the payments – whether salary or reimbursements –  occurred at the Boston office of the Plaintiff.

4.    Termination of the Business Relationship

On July 18, 2007, Defendants informed Glen DeValerio, a Boston-based partner, that Patrick Coughlin, a partner at Coughlin Stoia (the successor firm to Defendants' former employer), had invited them to resume a working relationship with his firm.  Docket #12-2, at ¶ 67; Docket #12-2, at 38.  On August 31, 2007, while still associated with Plaintiff firm in an Of

5

Counsel capacity, Defendants, by their own admission, "decided to accept an offer made by [the Coughlin] firm" and began work Of Counsel to that firm on September 1, 2007. Docket #12-2, at ¶ 77; Docket #12-2, at 39; see also Docket #9-2, at ¶¶ 16, 22.

Defendants terminated the contract on or about September 10, 2007, by notice sent from Pennsylvania to Plaintiff. Docket #12-2, at ¶ 79; Docket #9-5, at ¶ 26; Docket #9-2, at ¶ 23. Plaintiff alleges that at this time Defendants returned to the Coughlin firm, bringing with them "all of the clients, contacts and relationships that they had developed" while associated with Plaintiff firm, in violation of the terms of the contract. Id., at ¶ 23-24.

    5.    <u>Litigation</u>

Plaintiff's complaint alleges that Defendants induced clients to leave Berman DeValerio, with particular emphasis on two foreign institutional investors, in violation of the parties' contract and fair business practices. Id., at ¶ 24. The complaint includes five counts against Defendants: (1) breach of contract; (2) procuring breach of contract, in inducing the clients to leave; (3) interference with advantageous business relations; (4) breach of fiduciary duty; and (5) money had and received. Id., at ¶¶ 25-48.

Shortly after Plaintiff filed suit in Massachusetts, Defendants filed a separate complaint in the Eastern District of Pennsylvania asserting claims related to the same agreement. Defendants alleged, *inter alia,* that Plaintiff breached the contract between the parties; acted in bad faith regarding the opening of a branch in New York City; misrepresented the sufficiency of the firm's capabilities; and defamed Defendants in a letter copied to the Coughlin firm. Docket #12-2, at ¶¶ 87-115. The Court does not here address the merits of the suit or Plaintiff's claim that the Pennsylvania suit "should properly have been filed as counterclaims to the Massachusetts suit,"

but does take note of the complaint insofar as it sets forth factual allegations which are relevant to this Motion.  Docket #12-3, at *6.

The parties agreed to stay the Pennsylvania case pending resolution of this Motion.

DISCUSSION

I.    Personal Jurisdiction

"In its simplest formulation, *in personam* jurisdiction relates to the power of a court over a defendant."  Pritzker v. Yari, 42 F.3d 53, 59 (1st Cir. 1994).  "It is of two varieties, general and specific."  Id.  Plaintiff is proceeding on a specific jurisdiction theory.  "Specific personal jurisdiction . . . is narrower in scope and may be relied upon only 'where the cause of action arises directly out of, or relates to, the defendant's forum-based contacts.'"  Id., at 60 (quoting United Elec. Workers v. 163 Pleasant St. Corp., 960 F.2d 1080, 1088-89 (1st Cir. 1992)).

"The proper exercise of specific *in personam* jurisdiction hinges on satisfaction of two requirements: first, that the forum in which the federal district court sits has a long-arm statute that purports to grant jurisdiction over the defendant; and second, that the exercise of jurisdiction pursuant to that statute comports with the strictures of the [Due Process Clause of the] Constitution."  Pritzker, 42 F.3d at 60; see also Burger King v. Rudzewicz, 471 U.S. 462, 471-72 (1985) (due process constraints subject defendant to forum's jurisdiction only when he has established sufficient meaningful contacts); International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (subjecting defendant to forum state's jurisdiction must not offend traditional notions of fair play and substantial justice).

Plaintiff bears the burden of establishing a *prima facie* case authorizing personal jurisdiction.  U.S.S. Yachts, Inc. v. Ocean Yachts, Inc., 894 F.2d 9, 11 (1st Cir. 1990).  Mere

7

reliance on the allegations of the pleadings is not enough.  Chlebda v. H.E. Fortna & Brother, Inc., 609 F.2d 1022, 1024 (1st Cir. 1979).  But, "[i]f the plaintiff makes a *prima facie* showing of jurisdiction supported by specific facts alleged in the pleadings, affidavits, and exhibits, its burden is met."  Ealing Corp. v. Harrods, Ltd., 790 F.2d 978, 979 (1st Cir. 1986).  Under the *prima facie* test, "a district court does not act as a factfinder; to the contrary, it ascertains only whether the facts duly proffered, fully credited, support the exercise of personal jurisdiction."  Alers-Rodriguez v. Fullerton Tires Corp., 115 F.3d 81, 84 (1st Cir. 1997).  In this case, given the detailed and specific evidence provided by Plaintiff, I apply this *prima facie* evidence standard.

"Questions of specific jurisdiction are always tied to the particular claims asserted."  Phillips Exeter Academy v. Howard Phillips Fund, 196 F.3d 284, 289 (1st Cir. 1999) (citing United Elec. Workers, 960 F.2d at 1089).  Therefore, in cases involving both contract and torts claims, the First Circuit encourages separate analysis of the claims, although in cases such as this where several tort claims are intertwined with contractual agreements, the inquiries may "resemble each other."  Phillips Exeter, 196 F.3d at 289; Jet Wine & Spirits, Inc. v. Bacardi & Co., Ltd., 298 F.3d 1, 10 (1st Cir. 2002).

A.    Jurisdiction Over Breach of Contract Claim

"In contract cases, a court charged with determining the existence *vel non* of personal jurisdiction must look to the elements of the cause of action and ask whether the defendant's contacts with the forum were instrumental either in the formation of the contract or in its breach."  Phillips Exeter, 196 F.3d at 289; see also United Elec. Workers, 960 F.2d at 1089-90.

1.    Massachusetts Long-Arm Statute Establishes Jurisdiction Over Contract Claim

Under the Massachusetts long-arm statute, "[a] court may exercise personal jurisdiction

8

over a person, who acts directly or by an agent, as to a cause of action in law or equity arising

from the person's . . . transacting any business in this commonwealth." M.G.L.A. c. 223A §

3(a).[3] The most incidental of purposeful contacts will satisfy the broadly construed transacting

business requirement of § 3(a). See, e.g., Bond Leather Co., Inc. v. Q.T. Shoe Mfg. Co., Inc.,

764 F.2d 928, 931-32 (1st Cir. 1985) (defendant transacted business under § 3(a) by sending

letters of guaranty into Massachusetts); Hahn v. Vermont Law School, 698 F.2d 48, 50 (1st Cir.

1983) (sending law school application information and acceptance letter); Ealing Corp., 790 F.2d

978, 983 (making phone calls and sending telex draft of business agreement); Nova Biomedical

Corp. v. Moller, 629 F.2d 190, 193-95 (1st Cir. 1980) (sending letters threatening patent

litigation). A defendant need not be physically present in Massachusetts in order to have

transacted business here. Workgroup Tech. Corp. v. MGM Grand Hotel, LLC, 246 F.Supp.2d

102, 109-10 (D.Mass. 2003).

There is no doubt that Defendants transacted business in Massachusetts. Defendants

initiated contact with a Berman DeValerio partner in Massachusetts seeking employment with

the firm; met with employees of the firm for a day and a half during the negotiating process;

worked for the Boston-based firm in an Of Counsel capacity; obtained (or were expected to

obtain) clients for partners in Boston by marketing the firm's services; were paid a substantial

salary plus reimbursement of significant expenses by the Boston office; sought and were

promised a portion of the fees obtained from clients they brought to the firm; sought (and,

---

[3] Massachusetts courts construe § 3(a)'s "transacting business" test as extending jurisdiction to the outermost limit permitted by the Due Process Clause. Cambridge Literary Properties, Ltd. v. W. Goebel Porzellanfabrik G.m.b.H & Co., 295 F.3d 59, 63 (1st Cir. 2002). "[W]hen a state's long-arm statute is coextensive with the outer limits of due process, the court's attention properly turns to the . . . federal constitutional standards." Sawtelle v. Farrell, 70 F.3d 1381, 1388 (1st Cir. 1995).

according to Plaintiff, obtained) marketing materials from staff in Boston; and traveled, twice, to Boston for business-related meetings. In addition, Plaintiff asserts that Defendants maintained regular contact with the Boston staff, an assertion supported by numerous instances of contact noted in Defendants' complaint filed in Pennsylvania. Docket #13, at ¶ 13; Docket #12-2, at ¶¶ 36, 38-40, 42-43, 45, 49, 51, 56, 58, 65, 67-68, 72. Accordingly, Defendants transacted business in the state and this contract claim arose from those business transactions. I find that jurisdiction over the contract claim is proper under § 3(a) of the state's long-arm statute.

2. <u>Personal Jurisdiction Over Contract Claim Comports with Due Process</u>

The Fourteenth Amendment's concern for fundamental fairness is expressed by the requirement that there be "minimum contacts" between the defendant and the forum state sufficient to establish specific jurisdiction. "[T]he mere existence of a contractual relationship between an out-of-state defendant and an in-state plaintiff does not suffice, in and of itself, to establish jurisdiction . . . . Rather, 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing . . . must be evaluated.'" <u>Phillips Exeter</u>, 196 F.3d at 290 (<u>quoting</u> <u>Burger King</u>, 471 U.S. at 478-79). The test for minimum contacts is in three parts.

a. <u>Contract Claim Arises Out of and Relates to Forum Contacts</u>

"First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities." <u>United Elec. Workers</u>, 960 F.2d at 1089. "[T]he relatedness test is, relatively speaking, a flexible, relaxed standard." <u>Pritzker</u>, 42 F.3d at 61. However, "[t]he relatedness requirement is not met merely because a plaintiff's cause of action arose out of the general relationship between the parties; rather, the action must arise out of the specific

contacts between the defendant and the forum state." Sawtelle, 70 F.3d at 1389.

Count I of the Complaint alleges that Defendants breached their obligations to Plaintiff under a contract negotiated at least partly in Massachusetts, the terms of which subjected them to ongoing connection to Massachusetts in performance, and under which Defendants frequently communicated with Massachusetts. Moreover, the entire relationship began when Defendants wrote to a Boston-based partner seeking employment with the law firm. The contract claim arises out of the Massachusetts contacts.

b.      Defendants Purposefully Availed Themselves of Massachusetts Law

Plaintiff must also show that Defendants' contacts with Massachusetts represented a "purposeful availment of the privilege of conducting activities in [Massachusetts], thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable." United Elec. Workers, 960 F.2d at 1089. The two cornerstones of purposeful availment are "voluntariness and foreseeability." Nowak v. Tak How Investments, Ltd., 94 F.3d 708, 716 (1st Cir. 1996). The first prong is easily satisfied; Defendants sought and obtained a relationship with Plaintiff of their own volition.

Due process also "require[s] that individuals have 'fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign.'" Burger King, 471 U.S. at 472 (quoting Shaffer v. Heitner, 433 U.S. 186, 218 (1977)). Evaluating foreseeabilty requires that the Court examine the structure of the relationship between the parties. In particular, "with respect to interstate contractual obligations, [the Supreme Court] ha[s] emphasized that parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of

11

their activities." Burger King, 471 U.S. at 473 (quoting Travelers Health Assn. v. Virginia, 339 U.S. 643, 647 (1950)).

The evidence herein establishes the foreseeability of Defendants' being subject to litigation in Massachusetts. They sought a relationship with the firm in which their job was to obtain business for the Boston lawyers. The contract anticipated substantial interaction with the Boston office. During their work for the firm, they had almost daily contact with Boston-based lawyers and staff. Litigation in Massachusetts regarding their performance under the contract was foreseeable.

Defendants highlight Plaintiff's presence in other states and outsourcing to a vendor in Georgia. Docket #16, at 2-3. They also note that they wanted to be associated on business materials with the newly-opened New York branch of Berman DeValerio. The fact remains, however, that the evidence establishes that they had substantial contacts within Massachusetts and that those contacts were more than sufficient to make litigation in Boston foreseeable.

c.      Gestalt Factors Are Satisfied

The third element of the due process inquiry requires that "the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable." United Elec.Workers, 960 F.2d at 1089. The Court has identified five relevant considerations: "(1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies." Id., at 1088. "These [G]estalt factors are designed to put into sharper perspective the reasonableness and fundamental fairness of exercising jurisdiction in

12

particular situations." <u>Pritzker</u>, 42 F.3d at 64. The Gestalt factors "are not ends in themselves, but they are, collectively, a means of assisting courts in achieving substantial justice. In very close cases, they may tip the constitutional balance." <u>Ticketmaster</u>, 26 F.3d at 209.

Regarding the hardship of appearing in Massachusetts, Defendants must "demonstrate some kind of special or unusual burden" in this respect. <u>Pritzker</u>, 42 F.3d at 64. Defendants point out that they must care for their two-year-old child as well as elderly parents in Pennsylvania, making travel to Massachusetts more difficult. Docket #9-5, at ¶ 36. Defendants' family obligations, however, did not prevent them from traveling overseas for work in 2007 or from traveling abroad from January 4-14, 2008. Docket #27, at 2. I reject the contention that two lawyers engaged in international law practice cannot defend this lawsuit, even acting pro se, if it proceeds in Boston rather than Philadelphia.

Defendants contend that travel to Boston "will be very difficult for them . . . financially" because they "currently have limited resources." Docket #9, at ¶ 35; Docket #9-5, at ¶ 36. Furthermore, they assert that they cannot afford to hire counsel in Massachusetts. No financial affidavit or other evidence of lack of resources has been submitted. Moreover, Defendants are two attorneys who, last year, earned a combined $25,000 per month from Berman DeValerio, who earned a similar income in their prior law firm job, and who now work for another law firm. Defendants have not demonstrated, by way of record evidence, a financial inability to travel to Boston or to litigate the case in Boston rather than in Philadelphia.

Based on the facts before the Court, Defendants have not presented a "special or unusual burden" that would invoke the first of the Gestalt factors. "[S]taging a defense in a foreign jurisdiction is almost always inconvenient and/or costly," but "[i]n the modern era, the need to

travel between [distant states] creates no especially ponderous burden for business travelers." Pritzker, 42 F.3d at 64 (considering travel between New York and Puerto Rico). By noting general personal and financial hardship, Defendants have "not adequately demonstrated that an exercise of jurisdiction in the present circumstances is onerous in a special, unusual, or other constitutionally significant way." Id.

With respect to the second Gestalt factor, "[t]he purpose of the inquiry is not to *compare* the forum's interest to that of some other jurisdiction, but to determine the extent to which the forum *has* an interest." Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 151 (1st Cir. 1995) (emphasis in original). "Massachusetts has an interest not only in providing a forum for its residents, but also in enforcing business transactions consummated within its boundaries." Carlson Corp. v. University of Vermont, 402 N.E.2d 483, 487 (Mass. 1980). Defendants initiated an ongoing employment relationship with a business located in Massachusetts for which they solicited business and from which they accepted support, expense reimbursement, and income. In these circumstances, Massachusetts has a sufficient interest in the outcome of the dispute governing this relationship to warrant the exercise of jurisdiction, even though Defendants executed the contract in Pennsylvania.

Third, Plaintiff's interest in obtaining convenient and effective relief weighs in favor of finding jurisdiction. The assessment that a plaintiff could as easily litigate its case elsewhere or perhaps obtain fuller relief in another jurisdiction gives too little weight to a plaintiff's choice of forum. Foster-Miller, 46 F.3d at 151. Plaintiff must be accorded "a degree of deference in respect to the issue of its own convenience." Ticketmaster, 26 F.3d at 211.

The fourth factor the Court must weigh is the judicial system's interest in obtaining

resolution to the controversy in the most efficacious manner.  Pritzker, 42 F.3d at 64.  There is no evidence that this factor favors Defendants.

Finally, with respect to substantive social polices, Massachusetts has an interest in redressing harms allegedly inflicted on businesses operating here.  See Nowak, 94 F.3d at 719.

Accordingly, I recommend that the Court has personal jurisdiction over Defendants with respect to Count I of the Complaint.

B.     Jurisdiction Over Tort Claims

Along with the contract claim discussed above, Plaintiff has also brought several tort claims, jurisdiction over which must be addressed separately.  "Because the elements differ in a tort case, a court charged with determining the existence *vel non* of personal jurisdiction must probe the causal nexus between the defendant's contacts and the plaintiff's cause of action." Phillips Exeter, 196 F.3d at 289.  Counts II-IV allege procurement of breach of contract, interference with advantageous business relations, and breach of fiduciary duty.  In addition, in Count V, Plaintiff asserts a money had and received claim for return of the funds paid to Defendants.

1.     Massachusetts Long-Arm Statute Establishes Jurisdiction Over Tort Claims

To establish jurisdiction over the tort claims, Plaintiff relies on § 3(c) of the Massachusetts long-arm statute, which provides that the Court has personal jurisdiction over a party which "caus[es] tortious injury by an act or omission in this commonwealth."  M.G.L.A. c. 223A § 3(c).  In this case, Plaintiff alleges that during their association with Berman DeValerio, Defendants "were using [Plaintiff's] payments, expense reimbursements, resources and personnel to fund and support their client development activities which they planned to deliver to the

15

Coughlin firm." Docket #9-2, at ¶ 17.

Plaintiff alleges that "well before July 12, Defendants had no intention of honoring their Agreement" and that Defendants took "all of the clients, their contacts, and other information gained during their association with [Plaintiff] and [used] those resources in their work for their former law firm." Docket #9-2, at ¶¶ 17, 3. Defendants' own admissions lend some support to this theory as they concede they became Of Counsel to a competitor firm ten days before they terminated their Of Counsel relationship with Berman DeValerio. Compare Phillips Exeter, 196 F.3d at 291 (relatedness requirement not satisfied because plaintiff advanced no theory that any disloyalty occurred in the forum state).

In light of this theory of the Complaint – that at some point during the relationship with Plaintiff, Defendants intended to take sensitive information and clients from Plaintiff while purporting to continue to work for Plaintiff – Defendants' actions and statements (written and oral) during the employment relationship support jurisdiction. Under Plaintiff's theory, Defendants' actions in Massachusetts and statements sent into Massachusetts were part of the tortious conduct causing injury. In these circumstances, the fact that Defendants were outside of Massachusetts when they made most of their statements to Plaintiff is immaterial because their statements and work were directed at and sent into Massachusetts. See Ticketmaster, 26 F.3d at 205 ("an allegedly tortious act committed outside the borders of Massachusetts, purposefully directed at the state and intended to cause injury there, could constitute an in-forum act within the meaning of section 3(c)"); Murphy v. Erwin-Wasey, Inc., 460 F.2d 661, 664 (1st Cir. 1972) (in a claim of fraudulent misrepresentation, defendant acted within the state when he knowingly sent a false statement in); Litchfield Fin. Corp. v. Buyers Source Real Estate Group, 389 F.Supp.2d 80,

85 (D. Mass. 2005) (jurisdiction over subsection (c) of the MLAS may exist where the basis of the tort claim was the defendant's outreach to Massachusetts).

       2.     <u>Personal Jurisdiction Over Tort Claims Comports With Due Process</u>

The due process standard for torts claims is the same as the contractual inquiry, with "three distinct components" to the analysis: relatedness, purposeful availment, and reasonableness in light of the Gestalt factors. <u>Foster-Miller</u>, 46 F.3d at 144. All three components must be satisfied. <u>Ticketmaster</u>, 26 F.3d at 206. The analysis of the Gestalt factors, in relation to the tort claims, is largely unchanged but may require separate inquiry as to Massachusetts' interest in adjudicating the individual claims.

       a.     <u>Procurement of Breach of Contract and Interference with Advantageous Business Relations Claims</u>

"It is sufficient for purposes of due process that the suit [is] based on a contract which had substantial connection with [the forum state]." <u>McGee v. International Life Ins. Co.</u>, 355 U.S. 220, 223 (1957). This holds true whether the claim is for breach of contract or a tort action centered around a contract. <u>Jet Wine</u>, 298 F.3d at 10-11. The contracts with which Defendants allegedly interfered, according to the Complaint, were contracts between Plaintiff in Massachusetts and overseas clients. Docket #9-2, at ¶ 24. This is sufficient to satisfy the relatedness inquiry. <u>Jet Wine</u>, 298 F.3d at 10-11 (when non-Massachusetts company interfered with a contract with Massachusetts company, federal court possessed jurisdiction over the interference tort claim despite a lack of other contacts). If Defendants urged a third party "to violate its legal obligations [to the Massachusetts-based Plaintiff]. . . that was a voluntary act for which it should have known that [the Massachusetts-based Plaintiff] might well sue," thus fulfilling the purposeful availment requirement. <u>Id</u>., at 11. As to the second Gestalt factor, the

claims concern agreements and business relations to which a Massachusetts company was party. This state has an interest in adjudicating disputes concerning business relations and agreements to which a Massachusetts company is a party.  Carlson Corp., 402 N.E.2d at 487.  The remainder of the Gestalt factor analysis is unchanged.

      b.    <u>Breach of Fiduciary Duty Claim</u>

"A breach of fiduciary duty occurs where the fiduciary acts disloyally."  <u>Phillips Exeter</u>, 196 F.3d at 291.  That Plaintiff felt the effects of an alleged breach in Massachusetts is insufficient: there must be evidence that Defendants committed an act of disloyalty in the state.  <u>Platten v. HG Bermuda Exempted Ltd.</u>, 437 F.3d 118,138 (1st Cir. 2006).  Under Plaintiff's theory discussed above, Defendants did.

The alleged acts of disloyalty occurring on trips to Massachusetts and/or in the course of communications with people in Massachusetts during the employment relationship with the law firm's Boston office establishes the relatedness and purposeful availment required under the Due Process Clause.  Further, where the claim concerns breach of duty owed to a company located in Massachusetts, the state has an interest in adjudicating the dispute.  Again, the rest of the Gestalt factor analysis is unchanged.

      c.    <u>Claim for Money Had and Received</u>

Plaintiff's final claim concerns money paid according to a contract to which a company in Massachusetts was party, alleging unjust enrichment due to failure to comply with the terms of the agreement.  Docket #9-2, at ¶¶ 44-48.  The exercise of jurisdiction over this claim complies with Due Process requirements for the same reasons that the Due Process Clause permits the exercise of jurisdiction over the contract claim.

II.     Defendant's Request to Transfer this Action

Defendants argue that venue in Massachusetts is improper under 28 U.S.C. § 1391(a)(2) and that the Court should transfer the case to the Eastern District of Pennsylvania.  Docket #9, at ¶ 45.  In the alternative, they move that the Court should transfer on grounds of forum non conveniens, pursuant to 28 U.S.C. § 1404(a).  Id., at ¶ 46.

A.     Venue is Proper in Massachusetts

Section 1391(a)(2) provides that in a case where federal jurisdiction is premised on diversity, venue is proper in a judicial district "in which a substantial part of the events or omissions giving rise to the claim occurred."  28 U.S.C. § 1391(a)(2).  An event or omission "need not be a point of dispute between the parties in order to constitute a substantial event [or omission] giving rise to the claim."  Uffner v. La Reunion Francaise, S.A., 244 F.3d 38, 43 (1st Cir. 2001).  In addition, for the purposes of venue, the First Circuit looks not only to the acts of defendants but has "chosen a more holistic view of the acts underlying a claim."  Id., at n.6.  The Court looks "not to a single 'triggering event' prompting the action, but to the entire sequence of events" which led to the claim.  Id., at 42.  The First Circuit has recognized that "when the events underlying a claim have taken place in different places, venue may be proper in any number of districts."  Id.  In that inquiry, "[t]he focus is not on . . . which judicial district would be the better venue."  ScanSoft, Inc. v. Smart, 2003 WL 23142188, *3 (D.Mass. 2003).

Defendants claim that venue in Massachusetts is improper because "the only judicial district where a 'substantial' part of the events or omissions giving rise to plaintiff's claim" was the Eastern District of Pennsylvania or, possibly, the Southern District of New York.  Docket #9, at ¶ 45.  Defendants' outreach to Massachusetts seeking employment, Defendants'

communications sent into Massachusetts on a frequent (if not daily) basis, and Defendants' travel

to Massachusetts as part of the negotiating process were all "significant part[s] of the 'entire

sequence' and 'historical predicate' of events" giving rise to all counts of Plaintiff's suit.  Rooney

v. Walt Disney World Co., 2003 WL 22937728, *6 (D.Mass. 2003) (holding that defendant

corporation's advertising campaign in Boston, acceptance of plaintiff's phone call from

Massachusetts, and offer to send promotional materials into Massachusetts established both

personal jurisdiction and propriety of venue); see also Uffner, 244 F.3d at 42-43 (in an insurance

dispute, venue was proper in Puerto Rico because insured ship sank in Puerto Rican waters,

constituting the only event that occurred in that district); ScanSoft, 2003 WL 23142188, *3

(negotiations for alleged contract occurred in Massachusetts and discussions occurred remotely

between plaintiff in Massachusetts and defendant in foreign states).  Thus, venue is proper in this

District, whether or not the facts in this case would also make venue proper in the Eastern

District of Pennsylvania.

     B.     Transfer is Not Appropriate Under the Forum Non Conveniens Statute

"Under § 1404(a), a district court may transfer any civil action to any other district where

it may have been brought '[f]or the convenience of parties and witnesses, in the interest of

justice.'"  Coady v. Ashcraft & Gerel, 223 F.3d 1, 11 (1st Cir. 2000) (quoting 28 U.S.C. §

1404(a)).  "The statute is intended to place discretion in the district court to adjudicate motions

for transfer according to an individualized, case-by-case consideration of convenience and

fairness."  Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988).  Under § 1404, the Court

considers such factors as "the convenience of the parties and witnesses, the order in which

jurisdiction was obtained by the district court, the availability of documents, and the possibilities

20

of consolidation." <u>Cianbro Corp. v. Curran-Lavoie, Inc.</u>, 814 F.2d 7, 11 (1st Cir. 1987) (<u>citing</u>

<u>Codex v. Milgo Elec. Corp.</u>, 553 F.2d 735, 737 (1st Cir. 1977)). There is a "strong presumption

in favor of the plaintiff's choice of forum," and therefore "[t]he burden of proof rests with the

party seeking transfer." <u>Coady</u>, 223 F.3d at 11. The First Circuit has indicated that transfer is

only appropriate when trial in the forum state would be "seriously inconvenient" for a defendant.

<u>Vencedor Mfg. Co., Inc. v. Gougler Industries, Inc.</u>, 557 F.2d 886, 893 (1st Cir. 1977).

 The convenience of the parties favors Massachusetts. Plaintiff's office and its employees

are located here. While Pennsylvania is obviously more convenient to Defendants, transferring

the case would simply transfer the inconvenience from one party to the other. "The presumption

in favor of a plaintiff's choice of forum renders transfer inappropriate where its effect is merely

to shift the inconvenience from one party to the other." <u>Sigros v. Walt Disney World Co.,</u> 129

F.Supp.2d 56, 71 (D.Mass. 2001). In addition, the relative cost of Defendants traveling to

Massachusetts for trial is less than the cost of the larger number of employees of Plaintiff

traveling to Pennsylvania.

 The convenience of the witnesses tips in favor of Massachusetts. The number of material

witnesses for Plaintiff located in Boston exceeds the two Defendants in Pennsylvania who also

have material testimony. These witnesses are the central witnesses in this case. For they are the

ones with evidence regarding the terms of the parties' relationship, the parties' performance

during their relationship, and the parties' conduct or statements regarding each other after the

relationship ended.

 Defendants identify a number of non-party witnesses located in Pennsylvania or in New

York, within the supboena power of the federal court in Philadelphia. These witnesses, to the

extent they are relevant at all, are of substantially less importance.  Defendants contend that

Plaintiff breached the agreement either by not opening a New York office or not publicizing the

office in New York in an attempt to evade New York tax law, thereby breaching the Agreement's

compliance with law provision.  Thus, they say testimony from two New York state tax officials

is key and that these witnesses are beyond this Court's subpoena power but within the

Philadelphia court's reach.  Even assuming that these officials would testify in a private civil

dispute, their testimony appears to be of dubious admissibility and, at best, of minimal

significance.  Defendants state the officials would "testify to contacts from Defendants and

[Defendants'] concerns that lead to the termination of the agreement with Plaintiff."  Thus, the

non-hearsay testimony the officials offer concerns the meaning and application of New York

state tax rules or statutes.  That  is a question of law, not a subject for factual testimony from

state officials charged with enforcing the tax laws.

Next, Defendants refer to unspecified individuals at the Coughlin Stoia law firm

regarding Defendants' alleged effort to bring clients to that firm.  While there may well be

witnesses with relevant testimony from this law firm, Defendants have not identified the identity

of these witnesses, the subject matter of their testimony or the location of the witnesses.  The

mere fact that Coughlin Stoia has an office in Philadelphia does not render all its employees or

partners subject to subpoena in Philadelphia given that the firm's main office is in San Diego and

the only person from the firm the pleadings refer to by name is located in that office.  Rule 45

requires "delivering a copy [of the subpoena for a non-party] to the named person."  See also

Federal Trade Comm'n v. Compagnie DeSaint-Gobain-Pont-A-Mousson, 636 F.2d 1300, 1312-

13 (D.C.Cir. 1980)(noting that the Rule requires in person service upon an unwilling witness).

Other witnesses Defendants identify are either irrelevant to the transfer analysis (Atlanta witness), irrelevant or insignificant at trial (witness regarding size and scope of Plaintiff's law firm), or of dubious admissibility or significance (witnesses regarding conversations with Defendants). Defendants suggestion that numerous lawyers can refute Plaintiff's claims that it uses confidential information and practices misses the point. Plaintiff is claiming that its internal analysis methods are propriety, something of which these lawyers have no knowledge, rather than the practices of Plaintiff's outside vendor, something of which these unidentified witnesses may have knowledge.

The availability of documents favors Massachusetts. Most of the documents are in the possession of the parties, and Plaintiff is located here.

The interests of justice favors Massachusetts, as Massachusetts has a much more significant relationship to the dispute than Pennsylvania. Defendants sought employment with the Boston-based Plaintiff and came to Massachusetts both in the course of seeking employment and in the course of that employment. Defendants' work focused, exclusively, on marketing the services of the Boston-based law firm to potential clients – none of whom were located in Pennsylvania – i.e., Defendants sought to bring business to Massachusetts. Plaintiff, on the other hand, never traveled to Pennsylvania and while the Defendants performed some of their work in Philadelphia they also worked in New York, overseas and in Massachusetts.

Defendants press one final concern. They contend they cannot afford to litigate here. Their contingency counsel representing them in Pennsylvania says he will defend the present claims if lodged there, but this attorney will not appear here (either in defense or even if all claims are here), and they contend they cannot afford to hire hourly counsel in Boston. The

ability to hire counsel to defend a case is an important consideration.  Nonetheless, the facts

undermine Defendants' position.  Defendants are both practicing lawyers who work in an

international area of securities law.  They earned a combined $25,000 per month from Plaintiff

and that same income from their prior job.  They are presently employed.  Nothing in the record

establishes indigency or any financial difficulty other than the conclusory assertion of such.

While hiring counsel either in Pennsylvania or here is expensive, nothing in the record suggests

any financial limitation rendering the acquisition of counsel in Massachusetts meaningfully more

expensive or difficult than in Pennsylvania.  The very fact that Defendants can currently engage

counsel to represent them in all aspects of the dispute, albeit in Philadelphia, further illustrates

that point.


CONCLUSION

For the foregoing reasons, I recommend that the Court DENY the Defendants' Motion.[4]


 /s/ Leo Sorokin
LEO SOROKIN
UNITED STATES MAGISTRATE JUDGE

---

[4] The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72, any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. See Keating v. Secretary of Health and Human Services, 848 F.2d 271 (1st Cir. 1988); United States v. Emiliano Valencia-Copete, 792 F.2d 4 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-379 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also, Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466 (1985).