1   FINKELSTEIN & KRINSK LLP
    JEFFREY R. KRINSK (SBN 109234)
2   jrk@classactionlaw.com
    MARK L. KNUTSON (SBN 131770)
3   mlk@classactionlaw.com
    501 West Broadway, Suite 1250
4   San Diego, CA 92101
    Tel: (619) 238-1333
5   Fax: (619) 238-5425

6   Attorneys for Objector David Stern
    and the Putative Class of
7   Tel Aviv Stock Exchange Purchasers

8

9                   UNITED STATES DISTRICT COURT

10                 NORTHERN DISTRICT OF CALIFORNIA

11  In re VERIFONE HOLDINGS, INC.        )   Master File No. 3:07-cv-6140-EMC
    SECURITIES LITIGATION                )
12                                       )   **CLASS ACTION**
    _____     )
13                                       )   **OBJECTION OF DAVID STERN AND**
    This Document Relates to:            )   **THE PUTATIVE CLASS OF TEL AVIV STOCK**
14  ALL ACTIONS.                         )   **EXCHANGE PURCHASERS TO PROPOSED**
                                         )   **CLASS ACTION SETTLEMENT AND**
15  _____     )   **MEMORANDUM IN SUPPORT THEREOF**

16                                       **Hearing Date:      February 6, 2014**
                                         **Hearing Time:      1:30 p.m.**
17                                       **Judge:             Hon. Edward M. Chen**
                                         **Dept.:             Courtroom 5**
18                                       **Filed:             12/4/07 (reopened 3/4/13)**

19

20

21

22

23

24

25

26

27

28

─────────────────────────────────────────────────────────
OBJECTION OF DAVID STERN AND THE PUTATIVE CLASS OF TEL AVIV STOCK EXCHANGE
PURCHASERS TO PROPOSED SETTLEMENT AND MEMORANDUM IN SUPPORT THEREOF

# TABLE OF CONTENTS

**PAGE**

I.    SUMMARY OF ARGUMENT .................................................................................................... 1

    A.    Introduction ............................................................................................................. 1

    B.    The Class Notice is Defective ................................................................................. 3

    C.    The Plan of Allocation is Defective ........................................................................ 4

    D.    The Attorneys' Fees Provisions Are Defective ....................................................... 5

    E.    The Lack of Clarity in the Preliminary Approval Process Prevented
        Heightened Scrutiny of the Proposed Settlement ................................................... 5

II.   STATEMENT OF FACTS ....................................................................................................... 6

III.  IN THE "HEIGHTENED SCRUTINY" REVIEW CONTEXT, THE USLP CANNOT
    SATISFY ITS BURDEN OF PROVING THE "SETTLEMENT ONLY" CLASS MEETS
    THE REQUIREMENTS OF RULE 23, INCLUDING ITS DUTY OF FAIR AND ADEQUATE
    REPRESENTATION OF ALL MEMBERS OF THE SETTLING CLASS .......................................... 9

    A.    USLP Must Prove it Fulfilled its Rule 23 Fiduciary Duties to All Class Members ... 9

    B.    The "Settlement Only" Class Settlement Must be Given "Heightened Scrutiny" ... 11

IV.   BECAUSE OF THE SECRETIVE MANNER IN WHICH THE SETTLEMENT WAS NEGOTIATED,
    THE OPAQUE MANNER BY WHICH PRELIMINARY APPROVAL WAS OBTAINED, AND
    THE DEFECTS IN THE PLAN OF ALLOCATION AND ATTORNEYS' FEES PROVISIONS, USLP
    CANNOT PROVE THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE, OR THAT IT
    FAIRLY AND ADEQUATELY REPRESENTED THE INTERESTS OF ALL MEMBERS OF THE
    SETTLEMENT CLASS ........................................................................................................ 15

    A.    The Lack of Transparency in Negotiating the Settlement and Preliminary
        Approval Process .................................................................................................... 15

    B.    The Plan of Allocation Prefers the USLP and Short-Changes TASE Purchaser
        Members of the Enlarged Settlement Class ........................................................... 17

    C.    The "Quick Pay" Attorneys' Fee Payment Provisions Are Unfair to All
        Class Members ...................................................................................................... 20

V.    IF CLASS NOTICE WAS MAILED TO THE TASE PURCHASERS IT IS STILL DEFECTIVE
    UNDER RULE 23 AS TO TASE  PURCHASERS FOR NOT BEING IN THE "CLEAR, CONCISE
    AND EASILY UNDERSTOOD LANGUAGE" (HEBREW AND NEW ISRAEL SHEKELS) NEEDED
    FOR THEM TO "INTELLIGENTLY" WEIGH THEIR OPTIONS, AND NOT PROVIDING
    ENHANCED NOTICE AND CLASS MEMBER CLAIM-FILING ASSISTANCE
    PROCEDURES TO ASSURE A "LEVEL PLAYING FIELD" FOR THEM TO SEEK
    THEIR FAIR SHARE OF THE SETTLEMENT FUND ................................................................ 22

    A.    The Stringent Notice Requirements of Rule 23 and the Constitution ..................... 22

i

**TABLE OF CONTENTS (cont'd)**

**PAGE**

B.      There is No Evidence Proving That Individual Mailed Notices Were Sent to the TASE Purchasers ................................................................................. 22

C.      Even If It Was Mailed, The English Language Printed Notice, the Settlement Website And Claims Assistance Procedures Are Defective For Not Being In Hebrew .............................................................................................. 23

VI.      THE TASE OBJECTORS RESPECTFULLY REQUEST THE COURT: (I) DELAY, OR DENY, FINAL APPROVAL WITHOUT PREJUDICE; (II) DESIGNATE A SUBCLASS OF THE TASE PURCHASERS WITH SEPARATE REPRESENTATION; AND (III) DIRECT THE PARTIES TO PROMPTLY RENEGOTIATE, IF THEY CAN, A PROPOSED SETTLEMENT THAT CAN SURVIVE A "HEIGHTENED REVIEW" AND SATISFY RULE 23 ................................................ 24

OBJECTION OF DAVID STERN AND THE PUTATIVE CLASS OF TEL AVIV STOCK EXCHANGE
PURCHASERS TO PROPOSED SETTLEMENT AND MEMORANDUM IN SUPPORT THEREOF

**TABLE OF AUTHORITIES**

**PAGE(S)**

<u>CASES</u>

*Amchem Products v. Windsor,*
521 U.S. 591 (1997) ................................................................. 1, 2, 3, 9, 10, 11, 12, 13, 14, 16, 24

*CLAL Finance Batucha Investment Management, Ltd. v. Perrigo Co.,*
No. 09-cv-2255-TPG, 2011 WL 5331648 (S.D.N.Y. Sep. 28, 2011) ..................................6

*Cohen v. Beneficial Indus. Loan Corp.,*
337 U.S. 541 (1949) ...................................................................................................9

*Cornwell v. Credit Suisse Group,*
729 F.Supp.2d 620 (S.D.N.Y. 2010) ...........................................................................6

*Crawford v. Equifax Payment Ser., Inc.,*
201 F.3d 877 (7th Cir. 2000) .......................................................................................9

*Diaz v. Trust Territory of Pac. Islands,*
876 F.2d 1401 (9th Cir. 1989) ...................................................................................10

*Eisen v. Carlisle & Jacquelin,*
417 U.S. 156, 174 (1974) .....................................................................................22, 24

*Georgine v. Amchem Products, Inc.,*
83 F.3d 610 (3rd Cir. 1996).......................................................................................11

*Grant v. Bethlehem Steel Corp.,*
823 F.2d 20 (2d Cir. 1987) ........................................................................................10

*Hanlon v. Chrysler Corp.,*
150 F.3d 1011 (9th Cir. 1998) ...........................................................................2, 10, 11

*Hayes v. Wal-Mart Stores, Inc.,*
725 F.3d 349 (3d Cir. 2013) ......................................................................................11

*In re Alstom SA Sec. Litig.,*
741 F.Supp.2d 469 (S.D.N.Y. 2010) .............................................................................6

*In re Assicurazioni Generali S.p.A. Holocaust Ins. Litig.,*
M.D.L. No. 1374, 2007 WL 3129894 (S.D.N.Y., Oct.26, 2007)......................................4, 23

*In re Austrian & German-Bank Holocaust Litig.,*
317 F.3d 91 (2nd Cir. 2003) ......................................................................................25

*In re BP P.L.C. Sec. Litig,*
843 F. Supp.2d 712 (S.D. Tex. 2012)............................................................................6

*In re Diamond Foods, Inc. Sec. Litig.,*
2013 WL 1891382 (N.D. Cal., May 6, 2013) ................................................................10

iii

**TABLE OF AUTHORITIES (cont'd)**

PAGE(S)

*In re Findley*,
993 F.2d 7 (1993) ...................................................................................................13

*In re Hydrogen Peroxide Antitrust Litig.*,
552 F.3d 305 (3d Cir. 2008) ...................................................................................11

*In re Royal Bank of Scotland Grp. PLC Litig*,
765 F.Supp.2d 327 (S.D.N.Y. 2011) .......................................................................6

*In re Infineon Technologies AG Sec. Litig.*,
No. 04-cv-04156-JW, 2011 WL 7121006 (N.D. Cal., Mar. 17, 2011) ................. 6

*In re Joint Eastern and Southern Dist. Asbestos Litigation*,
982 F.2d 721 (1992) ...............................................................................................13

*In Re VeriFone Holdings, Inc. Sec. Litigation*,
704 F.3d 694 (9th Cir. 2012) ...................................................................................8

*In re Vivendi Universal, S.A., Sec. Litig.*,
842 F.Supp.2d 522 (S.D.N.Y. 2012) .......................................................................6

*In re Western Union Money Transfer Litig.*,
No. 01 Civ. 0335(CPS), 2004 WL 3709932 (E.D.N.Y. Oct. 19, 2004)..........................4, 23

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.*,
396 F.3d 922 (8th Cir. 2005) .................................................................................10

*Kamilewicz v. Bank of Boston Corp.*,
100 F.3d 1348 (7th Cir. 1996) ............................................................................2, 14

*Kaufman v. Am. Exp. Travel Related Servs., Inc.*,
283 F.R.D. 404 (N.D. Ill. 2012) ............................................................................23

*Lapiner v. Camtek, Ltd.*,
C-08-1327-MMC, 2009 WL 1542708 (N.D. Cal. June 2, 2009) ............................4

*Martens v. Smith Barney, Inc.*,
181 F.R.D. 243 (S.D.N.Y. 1998) ...........................................................................10

*Martens v. Thomann*,
273 F.3d 159 (2d Cir. 2001) ..................................................................................10

*Morrison v. National Bank of Australia Ltd.*,
561 U.S. 267, 130 S. Ct. 2869 (2010) ...............................1, 3, 4, 7, 10, 14, 19, 22

*Mullane v. Cent. Hanover Bank & Trust Co.*,
339 U.S. 306 (1950) ...............................................................................................22

*Narouz v. Charter Commc'ns, LLC*,
591 F.3d 1261 (9th Cir. 2010) ...............................................................................10

iv

**TABLE OF AUTHORITIES (cont'd)**

**PAGE(S)**

*Orantes–Hernandez v. Smith*,
541 F.Supp. 351 (C.D.Cal.1982) ............................................................................22

*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797 (1985) ...............................................................................................22

*Smart Technologies, Inc. S'holder Litig.*,
11-cv-7673-KBF, 2013 WL 139559 (S.D.N.Y. Jan. 11, 2013) ................................6

*Smith v. DaimlerChrysler Services North America, LLC*,
No. Civ.A.00-CV-6003, 2005 WL 2739213 (D.N.J. Oct. 24, 2005) ......................23

*Wal-Mart Stores, Inc. v. Dukes*,
131 S.Ct. 2541 (2011) ............................................................................................11

*Walters v. Reno*,
C94-1204C, 1996 WL 897662 (W.D. Wash. Mar. 13, 1996) .................................22

*Zimmermann v. Epstein Becker & Green, P.C.*,
09-CV-30194, 2010 WL 2724001 (D. Mass. July 8, 2010) ......................................2

**OTHER AUTHORITIES**

*"Cardozo's Foot": The Chancellor's Conscience and Constructive Trusts*,
56 LAW & CONTEMP. PROB., 3, 7 (1993) ...............................................................13

7A C. Wright, A. Miller & M. Kane, FEDERAL PRACTICE AND PROCEDURE,
§1769.1 (1986) .......................................................................................................15

JUDGES CLASS ACTION NOTICE AND CLAIMS PROCESS CHECKLIST &
PLAIN LANGUAGE GUIDE (2010)..............................................................................23

MANUAL FOR COMPLEX LITIGATION (FOURTH) (2004) § 21.31 ...................................4, 10

OBJECTION OF DAVID STERN AND THE PUTATIVE CLASS OF TEL AVIV STOCK EXCHANGE
PURCHASERS TO PROPOSED SETTLEMENT AND MEMORANDUM IN SUPPORT THEREOF

1   **I.   SUMMARY OF ARGUMENT**

2      **A.   Introduction**

3      Israeli resident David Stern ("Stern"), on behalf of himself and the putative class of

4   purchasers of VeriFone Holdings, Inc. ("VeriFone") common stock on the Tel Aviv Stock

5   Exchange ("TASE") ("TASE Purchasers" or "TASE Objectors") from March 7, 2007 through

6   December 2, 2007, objects to the proposed Stipulation of Settlement ("Settlement") of this United

7   States ("US") Class Action. If approved, the Settlement will purportedly extinguish Stern's

8   individual and the TASE Purchaser Class's claims – under both Israeli and US law – while short-

9   changing them and preferring the claims of US Lead Plaintiff ("USLP"), an improper outcome

10  being achieved *via* a confusing and deficient Settlement notice.[1]

11     *Morrison v. National Bank of Australia Ltd.*, 561 U.S. 267, 130 S. Ct. 2869 (2010)

12  ("*Morrison*") and *Amchem Products v. Windsor,* 521 U.S. 591 (1997) ("*Amchem*") command that (i)

13  because the Securities and Exchange Act of 1934 (15 U.S.C. § 78a *et seq.*) ("1934 Act") does not

14  have extra-territorial application, purchasers of securities on foreign exchanges cannot assert 1934

15  Act claims, and (ii) the U.S. Constitution and Fed.R.Civ.P. 23 ("Rule 23") forbid the "adventurous"

16  practice of consensually creating expanded settlement classes not certifiable in an adversarial

17  context, to provide defendants "global peace", preferential treatment to the representative parties and

18  larger fees to class counsel. *Morrison,* 130 S.Ct. at 2884-85; *Amchem,* 521 U.S. at 620-23.

19     The USLP has violated these restrictions through the 11th hour expansion of the class

20  definition – for settlement purposes only – to include purchasers "on foreign exchanges or

21  otherwise" – language never included in any prior complaints during the six years this action has

22  been pending – and then obtaining preliminary approval of this newly created "global class" under

23  opaque circumstances. The USLP did this to give defendants "global peace" while benefitting from a

24  Settlement and Plan of Allocation that short-changed the newly added TASE Purchasers and

25  preferred the USLP while giving that counsel grossly preferential payment terms on its legal fees,

26  which put the class members at risk. Rule 23's requirement of fair and adequate representation of all

---

27  [1] To the Court and parties, please take notice that Plaintiff Stern intends to appear at the Final

28  Settlement Approval Hearing.

OBJECTION OF DAVID STERN AND THE PUTATIVE CLASS OF TEL AVIV STOCK EXCHANGE
PURCHASERS TO PROPOSED SETTLEMENT AND MEMORANDUM IN SUPPORT THEREOF

1    class members forbids approving settlements emanating from such conduct.

2         Creating enlarged settlement classes – the certifiability of which was never litigated in an

3    adversarial context – providing defendants with "global peace", the representative plaintiff(s) with

4    preferential treatment and class counsel with large fees – is a serious departure from proper

5    settlement standards. *Amchem*, 521 U.S. at 626-29. That is why the Ninth Circuit demands courts

6    "must pay 'undiluted, even heightened, attention' to class certification requirements in a settlement

7    context." *Hanlon v. Chrysler Corp.* 150 F.3d 1011, 1019 (9th Cir. 1998), *quoting Amchem*, 521 US

8    at 2248. Settlements require courts to be "even more scrupulous" and review them under "a higher

9    standard of fairness", to insure "strict compliance with Rule 23", in order to be certain the settling

10   parties are not conducting a "staged performance" to "put one over on the court." *Amchem*, *supra*, at

11   619-22; *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.,* 55 F.3d 768, 805

12   (3d Cir. 1995) ("*In re Gen. Motors*"); *Hanlon*, *supra*, at 1026; *Zimmermann v. Epstein Becker &*

13   *Green, P.C.*, 09-CV-30194, 2010 WL 2724001, at *2 (D. Mass. July 8, 2010) *aff'd*, 657 F.3d 80 (1st

14   Cir. 2011); *Kamilewicz v. Bank of Boston Corp.*, 100 F.3d 1348, 1352 (7th Cir. 1996).[2]

15        The months of negotiations to try to settle the TASE Purchasers' separate case and extinguish

16   their legal rights took place in complete secrecy. When settlement negotiations began in the US case

17   in March 2013, TASE class counsel were not informed, were never asked to participate or discuss

18   the settlement proposals, or were never provided drafts of the Stipulation or Notice. Israeli counsel

19   for the putative class of TASE Purchasers were first told of the settlement on August 15, 2013, six

20   days after the "Unopposed" Preliminary Approval papers had been filed on August 9, 2013.[3]

21        The Preliminary Approval briefs referred to the expanded class definition ("purchasers…on

22   foreign exchanges or otherwise") only twice - once in a footnote, once in a supplemental brief. The

23   settling parties never briefed or otherwise brought to the Court's attention the significant

24   *Morrison*/*Amchem*/Rule 23/Constitutional issues, this expansion of the class definition, the release of

25   "foreign claims" language and the worldwide injunction against litigation raised by adding the TASE

---

[2] Here, as elsewhere, emphasis has been added unless otherwise stated.

[3] *See* Declaration of Gil Ron in Support of Objection of David Stern and the Putative Class of Tel Aviv Stock Exchange Purchasers to Proposed Class Action Settlement and Memorandum in Support Thereof ("Ron Decl."), at ¶31.

OBJECTION OF DAVID STERN AND THE PUTATIVE CLASS OF TEL AVIV STOCK EXCHANGE
PURCHASERS TO PROPOSED SETTLEMENT AND MEMORANDUM IN SUPPORT THEREOF

1    VeriFone stock purchasers – who had a separate class action pending in Israel, asserting Israeli law

2    claims, represented by Israeli counsel.  In fact, even the existence of the TASE class action in Israel

3    was never disclosed to the Court – let alone "homed in on." *Amchem* at 619-22.

4         The Court heard only from the US settling parties, who represented the Settlement was the

5    product of "non-collusive negotiations", provided no "preferential treatment" to USLP, "has no other

6    defects", and touted an individually mailed notice program as being so extensive and effective that it

7    would miss "one percent (1%)", at most, of class members and "has no other defects." *See*

8    Unopposed Motion for Preliminary Approval of Class Action Settlement, Dkt # 307, at p. 8-11.

9    None of these statements were accurate.

10        The TASE Objectors are unable to determine if the aggregate amount of the Settlement is

11   fair.[4]  But the gross amount of the settlement does not assure fairness to all class members. It is but

12   one of many factors to be considered in determining if the USLP has met its burden of proving all

13   elements necessary to obtain final approval. The TASE Objectors seek not to "upset the apple cart."

14   They wish rather to keep it upright. While the settlement cannot now be approved, it may yet be

15   salvaged following further action.

16        **B.    The Class Notice is Defective**

17        There is good reason to suspect that individual mailed notices were not sent to the TASE

18   Purchasers who were added as class members. Stern never received a mailed notice. Stern Decl., ¶2.

19   A search in Israel, including inquiries to institutional investors, has not turned up one class member

20   who received a mailed notice.  Ron Decl., ¶33.

---

21   [4] We cannot tell if the valuable strict liability claims of the TASE Purchasers were actually vigorously in the mix when the dollar amount was negotiated; thus we do no waive this objection.

22   We do not waive the argument that *Morrison* and/or *Amchem* require the irrevocable disapproval of

23   the US Settlement. Nor do we waive any argument that application of Rule 23 to approve this settlement would violate the Rules Enabling Act. *Amchem*, 521 U.S. at 613.:

24        Rule 23's requirements must be interpreted in keeping with Article III constraints, and with the Rules Enabling Act, which instructs that rules of procedure "shall not

25        abridge, enlarge or modify any substantive right, …" 28 U.S.C. §2072(b).

26   Including purchasers on foreign exchanges via a Rule 23 settlement may violate the Rules Enabling Act if doing so "enlarges" the TASE Purchasers' substantive rights by placing them in a settlement

27   of claims they cannot assert. It may modify, if not abridge, the NYSE class members' rights by forcing them to share the recovery fund with "class members" who have no right to sue for the

28   settled claims.

3

Even assuming that notice was mailed to the TASE Purchasers, it is defective. The enlarged Settlement Class contained thousands of additional, often unsophisticated, individual investors living in Israel who purchased or received the VeriFone stock on the TASE. Many Israelis are far from fluent in English because Hebrew is the official language. Commerce and stock transactions take place in New Israeli Shekels ("NIS").[5]  For many TASE Purchasers, the English/dollars notice and claim form – if they ever saw one – is a confusing mishmash of legal and financial gibberish of <u>foreign</u> currency and <u>foreign</u> language – that many certainly cannot intelligently comprehend.[6]

### C.     The Plan of Allocation is Defective

The USLP represented to the Court that the "Plan of Allocation does not treat USLP preferentially. But it does. Thus, the Plan is not fair to <u>all</u> settlement class members. The TASE Purchasers' claims (whether valued under US or Israeli law) are much stronger (and more valuable) in the settlement context than the 1934 Act claims pleaded by the USLP. <u>All</u> TASE Purchasers have <u>non-fraud/strict liability</u> claims – none of which require proof of <u>scienter</u> – compared to the claims of the NYSE purchasers – <u>all</u> of which require proof of scienter.

Despite this important qualitative distinction, the Plan of Allocation provides no recognition of or preferential allocation for those superior claims, even though it makes preferential allocations to increase or decrease the claims of other groups by 50% within the Settlement class.[7]  By short-

---

[5] The TASE utilizes a real-time computerized trading system trading in the NIS, the currency of Israel since January 1, 1986. TASE securities prices are quoted as agorot (http://www.tase.co.il /Eng/PublicationsandEducation/FAAQ/FAQ_Inv/Pages/_Inv.aspx. "Investing on the TASE – FAQs"). The shekel consists of 100 agorot. Denominations made in this currency are marked with the shekel sign. ₪. *See also. Laviner v. Camtek. Ltd.*. C-08-1327-MMC. 2009 WL 1542708 (N.D. Cal. June 2. 2009) (noting that where stocks are listed on both a US Exchange and the TASE, the stocks are traded in different currencies, namely the Dollar and Shekel.).

[6] The MANUAL FOR COMPLEX LITIGATION (FOURTH) (2004) § 21.31 (the "MANUAL"), states that counsel should discuss with the court whether publication of notice in a foreign language is appropriate. When so advised, courts have permitted or required class notices be in foreign languages. *In re Assicurazioni Generali S.p.A. Holocaust Ins. Litig.*, M.D.L. No. 1374, 2007 WL 3129894 (S.D.N.Y., Oct. 26, 2007) (Requiring administrator to <u>translate class notice and claim form into appropriate languages for foreign class members</u>); *In re Western Union Money Transfer Litig.*, No. 01 Civ. 0335(CPS), 2004 WL 3709932, at *5 (E.D.N.Y. Oct. 19, 2004) (Where settlement class included foreign class members, individual notice must be sent to all class members be translated into various foreign languages).

[7] For instance, "recognized loss" distinctions of up to 50% between class members justified by differences of "scienter" loss causation at different times of the class period and limits on the

4

1  changing the TASE Purchasers' <u>strict liability</u> claims, <u>USLP preferred its own scienter claims</u> and

2  those of the NYSE purchasers it originally represented.

### D.     <u>The Attorneys' Fees Provisions Are Defective</u>

4      The Settlement is <u>non-approvable</u> due to the provisions stating that any fees awarded "shall

5  be paid to Lead Counsel ... <u>immediately</u> after the Court executes an order awarding such fees" – a

6  device called "Quick-Pay." To pay USLP's Class Counsel 100% of their fees "immediately", is a

7  preference to Class Counsel that misaligns their interests with that of class members. "Quick Pay"

8  allows the lawyers to get paid 100% <u>immediately</u>, even though the settlement and/or fee award

9  judgment <u>is not yet final</u> and is subject to reversal or reduction on appeal. Quick Pay means class

10  members have to wait an indeterminate time to get one penny – certainly 18-24 months – and

11  perhaps more now that this Settlement has morphed into a global/multi-language class, a time-

12  consuming worldwide claims process and a complex Plan of Allocation. Class Counsel have much

13  more work to do to oversee the administration of this complex matter through to its conclusion.

14      This misalignment is exacerbated by the repayment promises of <u>all</u> counsel receiving "Quick

15  Pay" fees <u>being entirely UNSECURED</u>! Nobody gets a multi-million dollar unsecured loan. No

16  evidence has been submitted as to the financial ability of these plaintiffs' firms (located throughout

17  the US) to honor their repayment promises. Neither courts nor class members should be required to

18  accept a simple "we are good for it" assurance.

### E.     <u>The Lack of Clarity in the Preliminary Approval Process Prevented Heightened Scrutiny of the Proposed Settlement</u>

21      Because of the scant disclosure of the enlarged class definition during Preliminary Approval,

22  several issues were never considered, let alone <u>focused on</u>: (i) was a Hebrew language notice with an

23  enhanced claims solicitation/assistance program for the TASE purchaser class members needed (ii)

24  was the class definition expansion inconsistent with the USLP's fiduciary duties of fair and adequate

25  representation of all class members or did it require subclassing and separate representation; (iii) was

26  the USLP's Plan of Allocation skewed to favor it and the other NYSE purchasers and short-change

27  aggregate option purchaser share of the pot to "3%." *See* Stipulation of Settlement, Dkt # 306, Ex.
A-1, at p. 6-11.

OBJECTION OF DAVID STERN AND THE PUTATIVE CLASS OF TEL AVIV STOCK EXCHANGE
PURCHASERS TO PROPOSED SETTLEMENT AND MEMORANDUM IN SUPPORT THEREOF

1   the TASE Purchasers of the Settlement Class; and (iv) were the unsecured "Quick Pay" attorneys'

2   fees provisions unfair to all class members.[8]

3   ## II.   STATEMENT OF FACTS

4          This action was filed in December 2007. After the USLP and its counsel were designated,

5   First and Second Amended Complaints were filed in October 2008 and June 2010, on behalf of "all

6   purchasers of VeriFone publicly traded securities between August 31, 2006 and March 1, 2008." The

7   <u>only</u> claims asserted in the complaints were under Sections 10(b), 20(a) and 20A of the 1934 Act

8   and Securities and Exchange Commission ("SEC") Rule 10b-5 (17 C.F.R. 240.10b-5). In June 2010,

9   *Morrison* was decided and quickly – and virtually uniformly – applied to preclude purchasers of

10  stock on non-domestic exchanges from asserting Securities Act of 1933 (15 U.S.C. § 77a *et seq.*)

11  ("1933 Act")[9] and 1934 Act claims <u>and excluding foreign exchange buyers from classes asserting</u>

12  <u>1933 and 1934 Act claims</u>. Indeed, purchasers on the TASE of a dual listed traded company (like

13  VeriFone) have been removed from US securities class actions after *Morrison. CLAL Finance*

14  *Batucha Investment Management, Ltd. v. Perrigo Co.*, No. 09-cv-2255-TPG, 2011 WL 5331648, at

15  *2 (S.D.N.Y. Sep. 28, 2011).[10]   In September 2010, as *Morrison* rippled through the courts, the

16  USLP filed a Third Amended Consolidated Complaint ("TACC"). It contained the same class

---

17  [8] Having reached out to sweep into a "global" settlement claims that were being litigated in a

18  separate class action, in a foreign jurisdiction, asserting claims under foreign law, the settling
    parties were obligated to raise these significant issues during the "<u>heightened scrutiny</u>" preliminary
    approval process.

19  [9] The holding in *Morrison* applies with equal force to the 1933 Act.  In *re Smart Technologies, Inc.*

20  *S'holder Litig.*, 11-cv-7673-KBF, 2013 WL 139559, at *5-6 (S.D.N.Y. Jan. 11, 2013), *citing*
    *Morrison*, 130 S.Ct. at 2884; *In re Royal Bank of Scotland Grp. PLC Litig.*, 765 F.Supp.2d 327

21  (S.D.N.Y. 2011), 338 & n. 11 (S.D.N.Y. 2011) (The "Securities Act, like the Exchange Act, does
    not have extraterritorial reach."); *In re Vivendi Universal, S.A., Sec. Litig.*, 842 F.Supp.2d 522, 529

22  (S.D.N.Y. 2012) (The "Court determines that *Morrison's* underlying logic counsels extending its
    holding to cover the Securities Act.").

23  [10] *See also, Cornwell v. Credit Suisse Group,* 729 F.Supp.2d 620, 625-26 (S.D.N.Y. 2010) (sales of

24  securities listed on a foreign exchange, even if purchased by United States residents, are not
    actionable); *In re Royal Bank of Scotland Grp. PLC Litig.*, 765 F. Supp. at 338-39 (shares issued in

25  the Exchange Offer were listed on foreign exchanges, not an American stock exchange and were
    thus precluded); *In re Alstom SA Sec. Litig.*, 741 F.Supp.2d 469, 472-73 (S.D.N.Y. 2010)

26  (precluding claims of plaintiffs who purchased securities on French Stock Exchange); *In re BP*
    *P.L.C. Sec. Litig*, 843 F. Supp.2d 712, 794-95 (S.D. Tex. 2012) (precluding securities fraud claims

27  of purchasers of securities on London Stock Exchange); *In re Infineon Technologies AG Sec. Litig.,*
    No. 04-cv-04156-JW, 2011 WL 7121006, at *3 (N.D. Cal., Mar. 17, 2011) (precluding claims of

28  purchasers on the Frankfurt Stock Exchange).

definition language and asserted the same claims. No further complaint was ever filed. <u>None</u> of these complaints filed by the USLP ever referred to – let alone defined – the class as including purchasers of VeriFone securities on any "foreign exchange" in general – or the TASE specifically, where VeriFone's stock was listed and traded. However, <u>all</u> of these complaints did allege that VeriFone's "stock trades on the NYSE under the ticker symbol 'PAY' [and] 'VeriFone stock met the requirements for listing and was listed and actively traded on the NYSE [and] VeriFone files reports with the SEC and the NYSE.'" TACC, Dkt 262, at pp. 42, 379-380. <u>The TASE was never mentioned</u>!

In January 2008, <u>Israeli</u> lawyers, representing a purchaser of VeriFone stock on the TASE filed a class action in Israel asserting claims under the <u>Israeli</u> Securities Act of 1968 ("1968 Act") on behalf of all purchasers of VeriFone stock on the TASE between March 7, 2007 and December 2, 2007. Ron Decl., at ¶12. The VeriFone shares traded on the TASE had first been listed on the TASE in November 2006 when TASE listed and traded Lipman Electronic Engineering Ltd. ("Lipman"),[11] was acquired by VeriFone for shares of VeriFone stock. The acquisition resulted in the issuance of some 13-14 million new Verifone shares for the old Lipman shares. Post-merger, millions of VeriFone shares were purchased on the TASE in "after market trading."

Over the objection of Israeli Class counsel, an Israeli District Court stayed the Israeli Class Action in April 2010. That decision was appealed to the Israeli Supreme Court. The appeal was argued in January 2013. During argument, the parties reached a stipulation later formalized and "so ordered" by the Supreme Court. The relevance of the Israeli Supreme Court proceeding and order are discussed in our Response to the Seefer Declaration and the Ron Declaration (¶¶16-18, 25-29), which are incorporated herein by reference.

Here in the US, the TACC was dismissed without leave in March 2011. Later that dismissal

---

[11] Lipman was a corporation headquartered in Israel  Its stock was traded on the TASE. The Lipman acquisition was detailed in the TACC at ¶ 2. During the settlement class period, millions of shares of VeriFone stock that were purchased (traded) on the TASE created damages that may approach a billion dollars. Israeli law has a more favorable damage measure than the US.  Ron Decl., ¶¶18, 32, 34.

1    was reversed. *In Re VeriFone Holdings, Inc. Sec. Litigation*, 704 F.3d 694 (9th Cir. 2012).[12]  After

2    remand, no Motion for Class Certification was filed and no class was ever certified via contested

3    motion practice.[13] No further Amended Complaint was filed. The US settling parties started

4    settlement negotiations in March 2013, reaching agreement in June 2013. Israeli Class counsel were

5    never informed of these negotiations, invited to participate, or asked to review a draft Stipulation or

6    Notice. Ron Decl., at ¶31. On August 9, 2013, the USLP had filed a 14-page "Unopposed Motion"

7    seeking Preliminary Approval of the Settlement (which included multiple pages of exhibits), asking

8    the Court to "certify the class for settlement purposes." Only then, six days later on August 15, 2013,

9    after months of secret negotiations undertaken to settle their clients' Israeli law claims, was Israeli

10   counsel finally informed of the settlement and made aware of the filing.

11           In October 2013, the Court held the Preliminary Approval hearing.[14] The briefing, which

12   repeatedly characterized the Motion as being "Unopposed", never disclosed (i) the existence of the

13   competing class action, or (ii) that, without prior notice to this Court or to Israeli Class counsel, the

14   USLP and the defendants had expanded the class definition – for settlement purposes only – to

15   include purchasers of VeriFone stock "on any domestic or foreign exchange or otherwise."

16           There were only two references in the briefing to this very important, significantly expanded

17   class definition – one in a footnote – another in a supplemental brief.[15]  Neither reference revealed

18   the change was made during the settlement negotiations to try to vacuum in, settle and extinguish the

---

[12] Meanwhile, VeriFone's stock was delisted on the TASE. Thus, VeriFone has faded from view in the Israeli financial world and is no longer traded there. This likely has serious implications for the notice procedures discussed at §V, *infra*.

[13]  In an adversarial context, defendants would have opposed inclusion of foreign exchange purchasers in the class, and likely would have prevailed.

[14] When the Court requested supplemental briefing on the issue of the "propriety" of certifying a class for settlement purposes only (Dkt # 308), the USLP filed a 28-page brief purportedly addressing the Court's concerns.

[15] Buried in the pile of papers originally submitted to obtain preliminary approval was the actual Stipulation of Settlement (Dkt # 308) which, in a mundane Section entitled "Definitions", under the term "Class", enlarged the class definition, adding the new words "on any domestic or foreign exchange or otherwise." The "foreign" law release language was also buried in the "Definitions" section of the Stipulation in a dense, long, confusing section, "Released Claims." *Id.*, at ¶1.20. Unfortunately, courts often have to conduct a heightened scrutiny review confronted with a "mountain of evidence" submitted in a non-adversarial setting. *C.f. Marcus v. BMW of N.A., LLC*, 687 F.3d 583, 596-97 (3d Cir. 2012).

8

claims of thousands of TASE Purchasers who had a then-pending class action in a foreign jurisdiction, asserting claims under foreign law, being prosecuted by separate counsel. Nor was there any discussion – NOT ONE WORD – of the *Morrison/Amchem*/Rule 23 issues raised, by creating a global settlement-only class that could not have been certified under *Morrison* in a contested proceeding,[16] or of the words "foreign ... law" buried in the release language to support the worldwide injunction the Court was asked to enter. Nor was the adequacy of the notice "focused on" in light of the TASE Purchasers who live in a country where Hebrew/NIS are the language/currency having been added for settlement purposes only.

The issues presented by including the TASE Purchasers in the expanded class definition were never raised at the hearing.[17] Even though there were discussions at the hearing over the complexity of the Notice and the need to take proper steps to assure that investors – especially individual/ unsophisticated investors – receive accurate and easy to understand information so that they could intelligently weigh their options – none of these important issues were presented when USLP's Counsel had an opportunity and obligation to do so (Hrg. Tr., at p. 21:19-23):

> THE COURT:...And the class is defined as anyone who traded VeriFone securities between two particular dates.
>
> [USLP's COUNSEL]:   Right.

**III.   IN THE "HEIGHTENED SCRUTINY" REVIEW CONTEXT, THE USLP CANNOT SATISFY ITS BURDEN OF PROVING THE "SETTLEMENT ONLY" CLASS MEETS ALL THE REQUIREMENTS OF RULE 23, INCLUDING ITS DUTY OF FAIR AND ADEQUATE REPRESENTATION OF ALL MEMBERS OF THE SETTLING CLASS**

**A.   USLP Must prove it Fulfilled its Rule 23 Fiduciary Duties to All Class Members**

A class representative is a fiduciary for class members. *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 549 (1949); *see also Crawford v. Equifax Payment Ser., Inc.*, 201 F.3d 877, 880 (7th Cir. 2000) (fiduciary duty to act in the best interests of all class members); *Martens v.*

---

[16] *Amchem* forbids judicial approval of settlements based on the creation of enlarged uncertifiable classes for the economic convenience and benefit of the settling parties – *i.e.*, the much desired "global peace" for defendants and their insurance carriers, and potentially large attorneys' fees for accommodating class counsel. *Amchem*, 521 U.S. at 626-28.

[17] *See* October 2, 2013 Preliminary Approval Hearing Transcript ("Hrg. Tr.").

9

*Thomann*, 273 F.3d 159, 173 n. 10 (2d Cir. 2001) (same). This duty includes selecting class counsel who will diligently represent the interests of the class, not those of counsel, or of the lead plaintiff alone. *In re Diamond Foods, Inc. Sec. Litig.*, 2013 WL 1891382, at *17 (N.D. Cal., May 6, 2013); Rule 23(a)(4). To ensure that the representative plaintiff fulfills his/her fiduciary duty owed the absent class members, the Court "must inquire into the terms and circumstances of [the settlement] to ensure that it is not collusive or prejudicial," *i.e.*, a "staged performance" of the type Justice O'Connor alluded to in *Amchem*.[18] *Diaz v. Trust Territory of Pac. Islands*, 876 F.2d 1401, 1408 (9th Cir. 1989); (521 U.S. at 621).

"Class actions certified solely for settlement ... sometimes make meaningful judicial review more difficult and more important." MANUAL §21.62. "[S]ettlement class actions" always required "closer judicial scrutiny than approval of settlements reached only after class certification has been litigated through the adversary process." *Id.* From early on, courts were directed to hold these settlements to a "higher standard of fairness." *Hanlon,* 150 F.3d at 1026; see Rule 23(e).

It is USLP's burden to show that the relevant Rule 23 requirements are met and that class certification is warranted, including class certification for settlement purposes. *See Narouz v. Charter Commc'ns, LLC*, 591 F.3d 1261, 1266 (9th Cir. 2010) (for settlement purposes, "class plaintiff has the burden of showing that the requirements of Rule 23(a) are met and that the class is maintainable pursuant to Rule 23(b)") (*citing Amchem*, 521 U.S. at 613-14).[19] "[A] plaintiff must show ... evidence specific to the ... geographic areas actually covered by the class definition to allow a district court to make a factual finding." *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 357 (3d Cir.

[18] The Court also "has a fiduciary duty to the non-representative class members who were not party to the settlement agreement because [i]nherent in any class action is the potential for conflicting interests among the class representatives, class counsel, and absent class members." *Martens v. Smith Barney, Inc.*, 181 F.R.D. 243, 262 (S.D.N.Y. 1998) (internal citations omitted); *Grant v. Bethlehem Steel Corp.*, 823 F.2d 20, 22 (2d Cir. 1987) ("In approving a proposed class action settlement, the district court has a fiduciary responsibility to ensure that 'the settlement is fair and not a product of collusion, and that the class members' interests were represented adequately.'") *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 932 (8th Cir. 2005) (court must "act" as a fiduciary, serving as a guardian of the rights of class members."). MANUAL §21.61 ("Judicial review must be exacting and thorough. The task is demanding because the adversariness of litigation is often lost after the agreement to settle.").

[19] Likewise, it is "proponents of the settlement that have the burden of sufficiently documenting that the settlement terms are fair, reasonable and adequate to the class." *Hemphill v. San Diego Ass'n of Realtors, Inc.*, 225 F.R.D. 616, 623 (S.D. Cal. 2005).

10

OBJECTION OF DAVID STERN AND THE PUTATIVE CLASS OF TEL AVIV STOCK EXCHANGE
PURCHASERS TO PROPOSED SETTLEMENT AND MEMORANDUM IN SUPPORT THEREOF

2013):

> It is plaintiff's burden to show that a class action is a proper vehicle for this lawsuit. *See Comcast Corp. v. Behrend*, 133 S.Ct. 1426, 1432 (2103) ("The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual  named parties only. To come within the exception, a party seeking to maintain a class action <u>must affirmatively demonstrate his compliance with Rule 23</u>." (Citations and quotation marks omitted.)).

Settlements negotiated prior to class certification are subject to an even "<u>*higher* showing of fairness</u>." *In re Gen. Motors* 55 F.3d at 805 ("We affirm the need for courts to be <u>even more scrupulous</u> than usual in approving settlements where no class has yet been formally certified").

### B.      The "Settlement Only" Class Settlement Must Be Given "Heightened Scrutiny"

After years of abuse, the courts demand <u>clear proof of strict compliance with applicable Rule 23 standards</u>. "[Class] certification is proper only if 'the trial court is satisfied, after a <u>rigorous analysis</u>, that the prerequisites of Rule 23(a) have been satisfied.' … Frequently that 'rigorous analysis' will entail some overlap <u>with the merits of the plaintiff's underlying claim</u>. That cannot be helped." *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011) (internal citations omitted). "<u>Factual determinations</u> supporting Rule 23 <u>findings must be made by a preponderance of the evidence</u>." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 307 (3d Cir. 2008), <u>and the burden of proof rests on the movant</u>, *Id.*, at 316, Fn. 14. "<u>A party's assurance to the court that it intends or plans to meet the requirements is insufficient</u>." *Id.* at 318.

The polar star guiding federal district courts in the settlement approval process is *Amchem*, where Justice Ginsburg mandated that lower courts must pay "<u>undiluted, even heightened attention</u>" to class certification requirements in a settlement context." *Amchem*, 521 U.S. at 620. The Ninth Circuit in *Hanlon* described *Amchem*:

> *Amchem* was a settlement class action which attempted to settle all pending and future asbestos litigation. The asbestos manufacturers wished to resolve all claims, including those not yet filed. ... <u>The class was never divided into sub-classes and additional counsel was never appointed to represent the interests of plaintiffs with as yet undeveloped or undiagnosed injuries</u>. Despite these problems, the class was conditionally certified and the settlement approved.
>
> The Third Circuit vacated the certification because the requirements of Rule 23 were not met independent of the settlement agreement. *Georgine v. Amchem Products, Inc.*, 83 F.3d 610, 617-618 (3rd Cir. 1996). The Supreme Court affirmed. *Amchem Products, Inc. v. Windsor*, _ U.S.__, 117 S.Ct. 2231, 138 L.Ed.2d 689

11

---

OBJECTION OF DAVID STERN AND THE PUTATIVE CLASS OF TEL AVIV STOCK EXCHANGE
PURCHASERS TO PROPOSED SETTLEMENT AND MEMORANDUM IN SUPPORT THEREOF

(1997). The Court found that the clashing interests of present and future claimants presented insurmountable conflicts for class counsel who could not possibly provide adequate representation to both groups as required by Rule 23(a)(4). *Id.* 117 S.Ct. at 2251. The Court also held that all of the Rule 23 standards for class actions must be met without regard to the presence or terms of a pending settlement agreement. *Id.* at 2249.

> <u>At the heart of *Amchem* was concern over settlement allocation decisions: . . . [the] amount of [settlement] money that was not fairly distributed between present and future claimants....The Supreme Court found this dual representation to be particularly troubling, given that present plaintiffs had a clear interest in a settlement that maximized current funds ....</u>

150 F.3d at 1020-21.

The proposed settlement class could never have been certified to include "<u>purchasers on foreign exchanges</u>." This would never fly under *Morrison* and its progeny. Thus, USLP settled claims it could not litigate on the merits, even though those claims were being presented in a foreign country, in a class action under foreign law. Those claims were stronger than any 1934 Act claims that could have gone forward to trial if the US Class Action was terminated and the stay in Israel lifted. This "disarmed" both the USLP and the Court. *Amchem*, 521 U.S. at 621. The "threat of litigation" could not be used to "press for a better offer" for the foreign exchange class members' claims swept into the global settlement. *Id*.

*Amchem* stressed the requirements of our Constitution <u>and</u> Rule 23 concerning judicial approval of class action settlements. They may be approved "<u>only</u>" if class representative(s) carry <u>their burden of proof</u> that they both fairly adequately represented the interests of this class, the settlement is "<u>fair, reasonable and adequate</u>", <u>and</u> that the class notice complied with due process and Rule 23(c)(2)(B) requirements (*Amchem*, 521 U.S. at 608, 617):

> Subdivisions (a) and (b) of Rule 23 <u>focus court attention on whether a proposed class action has sufficient unity so that absent members can fairly be bound by decisions of class representatives. That dominant concern persists when settlement ... is proposed.</u>

*Id*., at 621. It is not enough that the settlement looks "big":

> The safeguards provided by the Rule 23(a) and (b) ... [are] ... the standards set for the protection of absent class members serve to inhibit appraisals of the chancellor's foot kind – class certifications dependent upon the court's gestalt judgment or

overarching impression of the settlement's fairness.[20]

* * *

As the Third Circuit pointed out, named parties ... sought to act on behalf of a single giant class rather than on behalf of discrete subclasses. In significant respects, the interests of those within the single class are not aligned.

*Id*., at 621, 625.

Obviously, all class members want a "big" settlement – but, as always, the devil is in the details:

"But the settlement does more than simply provide a general recovery fund", the Court of Appeals immediately added; '[r]ather, it makes important judgments on how recovery is to be *allocated* among different kinds of plaintiffs, decisions that necessarily favor some elements over others." 83 F.3d at 630.

The settling parties, in sum, achieved a global compromise with no structural assurance of fair and adequate representation for the diverse groups and individuals affected.

*Id*. at 611, 28.  In such a situation:

"[W]here differences among members of a class are such that subclasses must be established, we know of no authority that permits a court to approve a settlement without creating subclasses. The class representatives may well have thought that the Settlement serves the aggregate interests of the entire class. But the adversity among subgroups requires that the members of each subgroup cannot be bound to a settlement except by consents given by those who understand that their role is to represent solely the members of their respective subgroups." *In re Joint Eastern and Southern Dist. Asbestos Litigation*, 982 F.2d 721, 742-743 (1992), modified on reh'g *sub nom. In re Findley*, 993 F.2d 7 (1993).

The Third Circuit found no assurance here – either in the terms of the settlement or in the structure of the negotiations – that the named plaintiffs operated under a proper understanding of their representational responsibilities. 83 F.3d at 630-631. That assessment, we conclude, is on the mark.

*Id*. at 628-29.  Judge Ginsburg continued:

---

[20] About 350 years ago, the English legal scholar John Selden articulated the classic complaint about the chancery's exercise of jurisdiction in equity. Selden remarked in his Table Talk,

Equity is A Roguish thing.…Equity is according to the conscience of him that is Chancellor. …Tis all one as if they should make the Standard for the measure wee call A foot, to be the Chancellors foot; what an uncertain measure would this be; One Chancellor has a long foot another A short foot a third an indifferent foot; tis the same thing in the Chancellors Conscience.

The "Chancellor's foot" has since become proverbial shorthand for the argument that equity is an unjustified and unfortunate interference in the regular course of the rule of law. H. Jefferson Powell, "*Cardozo's Foot": The Chancellor's Conscience and Constructive Trusts*, 56 LAW & CONTEMP. PROB., 3, 7 (1993).

13

---

OBJECTION OF DAVID STERN AND THE PUTATIVE CLASS OF TEL AVIV STOCK EXCHANGE
PURCHASERS TO PROPOSED SETTLEMENT AND MEMORANDUM IN SUPPORT THEREOF

"... specifications of the Rule – those designed to protect <u>absentees by blocking unwarranted or overbroad class definitions – demand undiluted, even heightened, attention in the settlement context. Such attention is of vital importance</u>, ... [Since otherwise the] court would face a bargain proffered for its approval <u>without benefit of adversarial investigation</u>, see, *e.g., Kamilewicz v. Bank of Boston Corp.,* 100 F.3d 1348, 1352 (C.A.7 1996) (Easterbrook, J., dissenting from denial of rehearing en banc) (parties "<u>may even put one over on the court, in a staged performance</u>"), *cert. denied,* 520 U.S. 1204, 117 S.Ct. 1569, 137 L.Ed.2d 714 (1997).

*Id.,* at 620-21.

The evidence submitted justifying the Settlement falls far short of the mark. Generic and boilerplate declarations by USLP and its allies fail to provide the necessary detail to support settlement approval. The <u>two-page</u> declaration of the mediator singing the praises of all involved, assuring that he "<u>closely</u>" presided over the negotiations, which were "<u>conducted at arm's length</u>", "<u>carefully</u>" and in "<u>good faith</u>" by all parties, concluded:

The mediation process involved <u>extensive analysis</u> of the parties' positions, including the merits of plaintiffs' securities fraud claims, orders of this Court and the United States Court of Appeals for the Ninth Circuit on VeriFone's motions to dismiss, defendants' potential defenses, the amount of available directors' and officers' liability insurance and defendants' financial condition.

Declaration of Layn R. Phillips, Dkt #325, at ¶5. Yes – reassuring generalities, but that is all. There was no evidence that any of the following were considered: (i) the expansion of the class definition; (ii) the Israeli law of strict liability; (iii) the reasons for the US Class to get a premium; (iv) the potential conflicts and allocation issues; or (v) the competing legal claims evaluated. The mediator cannot heap praise in the generalized terms, then claim that detailed information cannot be shared because it is "confidential." These are not star chamber proceedings. A mediator cannot issue broadsides of praise without providing the Court with the facts needed to conduct a "heightened scrutiny" review. This Declaration must be stricken.

The Gilardi firm's Final Approval Declaration does not contain the word "Israel." Declaration of Carole K. Sylvester ("Sylvester Decl."), Dkt # 326. It does claim that 95,000 notices have been mailed and 2,949 claims have already been submitted "near the end of" the claims period. But an unanswered important question is – how many Notices were mailed and how many claims are

14

1    from the TASE Purchasers.[21]

2         USLP in its Final Declaration, not surprisingly, issues a ringing endorsement of its hand-

3    picked class counsel and of its own conduct as well. Decl. of Robert O. Betts ("Betts Decl."), Dkt #

4    324.   As to itself, it says it "participated in the litigation", was "fully informed regarding the

5    prosecution of the case", the "settlement strategy" and "monitored and was kept informed about the

6    progress of the settlement", including attendance at the mediations. Betts Decl., at ¶4. Again,

7    generalities. What did USLP know about the Israeli TASE class action? When was it a matter of

8    consideration? Why were negotiations secreted from TASE Purchasers and the Israeli counsel? Why

9    did the Plan of Allocation not recognize the superior value of the TASE Purchasers' strict liability

10   claims?  What was its involvement in formulating the Plan of Allocation which favored itself?

11        These broad, general reassurances and "boilerplate" declarations are used repeatedly by these

12   lawyers with only the case names and numbers changing, as they churn out settlements. Final

13   approval requires "heightened scrutiny" including detailed factual findings supported by an

14   evidentiary record reflecting the adversarial process in this case. The USLP[22] and Gilardi, should be

15   present at the Final Approval Hearing to assist the Court in its "heightened scrutiny" review. Israeli

16   counsel will be there.

17   **IV.   BECAUSE OF THE SECRETIVE MANNER IN WHICH THE SETTLEMENT WAS NEGOTIATED, THE OPAQUE MANNER BY WHICH PRELIMINARY APPROVAL WAS OBTAINED, AND THE DEFECTS IN THE PLAN OF ALLOCATION AND ATTORNEYS' FEES PROVISIONS, USLP CANNOT PROVE THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE, OR THAT IT FAIRLY AND ADEQUATELY REPRESENTED THE INTERESTS OF ALL MEMBERS OF THE SETTLEMENT CLASS**

18
19
20

21   **A.   The Lack of Transparency in Negotiating the Settlement and Preliminary Approval Process**

22        The express reference to purchasers on "foreign exchanges or otherwise" was never included

23

24   [21] The 2,949 claims appear to be very small, *i.e.*, "low claim rate case." The case is 6 years old and VeriFone has been delisted for over three years from one of two exchanges it was listed on. This is significant for two reasons. First, it calls into significant question the sufficiency of the entire notice process. Secondly, if this is a "low claims rate" case, this means the individual class member recoveries may be unusually large – which means the conflicting allocation issues among the class members are of increased importance – there is more at stake!

25
26

27   [22] [I]t is incumbent on the [USLP] to be alert for, and to report to the Court, any conflict of interest on the part of class counsel . . .. *See, generally*, 7A C. Wright, A. Miller & M. Kane, FEDERAL PRACTICE AND PROCEDURE, §1769.1, at 386-87 (1986).

28

---

15

OBJECTION OF DAVID STERN AND THE PUTATIVE CLASS OF TEL AVIV STOCK EXCHANGE PURCHASERS TO PROPOSED SETTLEMENT AND MEMORANDUM IN SUPPORT THEREOF

in the class definition before settlement negotiations began. This modification took place during the settlement negotiations. It was only first ever presented to the Court as part of a "mountain" of "Unopposed" motion papers submitted to obtain Preliminary Approval. What transpired here involves a lack of transparency and a shortfall in the duty of all to act with candor – a duty always present – but even more important where, as here, it involved a large, purportedly global class-action settlement requiring the Court's "heightened scrutiny." Despite this, during the Preliminary Approval process, neither the USLP or the defendants ever disclosed the existence of the Israeli Class Action, or raised its existence for consideration, never disclosed that the Settlement would extinguish claims in a foreign jurisdiction, release foreign law claims, and require entering a worldwide perpetual injunction against any Settlement class member from prosecuting any claims anywhere worldwide![23] Nor did VeriFone ever "notify" this Court of the inclusion of the Israeli Class members in their US Class Action as it agreed to do at the direction of the Israeli Supreme Court. See TASE Objectors' Response to Seefer Declaration.

USLP certainly never alerted the Court to the *Morrison/Amchem* limitations and constitutional issues this extraterritorial global settlement raised. When parties fail to act with candor, the Court cannot conduct a "heightened scrutiny" review. Why did no counsel to the settling parties simply write or say to the Court: "we enlarged the class definition to include purchases on 'foreign exchanges and otherwise,' to include a competing class action in Israel, which raises some issues your Honor might want to consider for instance...." Then a candid discussion of the legal issues presented could have occurred and the Court could have properly focused on them.[24]

---

[23] How disturbingly convenient. Defendants get the Israeli case stayed until termination of the US case. They surreptitiously add the Israeli Class members to the Settlement Class here to extinguish the TASE Purchasers' claims, and get a perpetual global injunction from this Court against them litigating those claims in Israel. Add to that – the Israelis received no notice/claim form mailed to them – at least in a language they could clearly  understand and thus end up getting NONE (or virtually none) of the Settlement proceeds. If Rule 23's fairness standards mean anything, they mean that no court would ever sanction such an outcome.

[24] Given the opaque circumstances under which the TASE Purchasers have been bundled into this settlement class, without their consent suggests that especially heightened scrutiny of all aspects of the Settlement is called for – including requiring the settling parties to disclose any agreements or understandings that may exist outside the four corners of the Settlement – as required by Rule 23(e)(3), including, for example, the so-called "Blow" provision. Was the TASE volume considered and used in the Blow provision?

16

1

**B.**     **The Plan of Allocation Prefers the USLP and Short-Changes TASE Purchasers**

2          The Settlement created a complex Plan of Allocation to carve up the settlement proceeds

3   among various groups of class members with competing, at times conflicting, interests. Examples of

4   this are the provisions that limit the total amount to be paid options purchasers (up to 3% of the

5   overall net settlement) and differential calculations of "recognized loss" for persons who purchased

6   VeriFone stock at differing periods during the class period, favoring some – disadvantaging others –

7   by 50%! *See* Stipulation of Settlement, Dkt # 306, Ex. A-1, at p. 6-11. But in crafting the Plan of

8   Allocation, USLP improperly favored its claims over the claims of the TASE Purchasers having

9   superior rights under both the Israeli law they plead, <u>or</u> the US law that USLP somehow thinks may

10  apply notwithstanding *Morrison*.

11         Israeli securities laws are <u>substantially more favorable to and protective of investors</u> than the

12  US securities laws, which in recent years have undergone a significant contraction due to restrictive

13  legislation and court decisions. A very significant element of an open market securities fraud claim

14  under US law (the 1934 Act) – and likely the most serious impediment to a plaintiff's recovery – is

15  the element of "scienter", *i.e.*, knowledge or fraudulent intent. To obtain preliminary approval, the

16  settling parties sang in perfect harmony on this point – stressing over and over that this significant

17  hurdle justified in large part the Settlement.[25]

18         The 1968 Act makes clear that the liability standards under that Act are extremely favorable

19  to Israeli citizens buying securities on the TASE, at least when compared to the 1934 Act, which

20  covers the US stock exchange purchasers. The 1968 Act provides:

21         **Section 31.     Liability of signatories of prospectus**

22         (a)     (1)     Any party signing a prospectus ... is liable to anyone who bought
                           securities from the offeror ... [or] ... in <u>the course of trading a stock</u>
23                         <u>exchange, or over the counter, for damage caused to them by the</u>
                           <u>inclusion of a misleading item in the prospectus</u>.[26]

24                                        * * *

25

---

26  [25] Throughout, defendant filed briefs emphasizing that the "USLP" "<u>acknowledged</u>" the "<u>particular</u>
    <u>challenges</u>" and difficulties in "<u>proving scienter</u>." Dkt # 309.

27  [26]  "**Misleading item**" is defined as "including something that is likely to mislead a reasonable
    investor, and any matter the omission of which is likely to mislead a reasonable investor."

28

17

**Section 38B.  Civil liability of principal shareholders or of senior corporation officer**

The provision of sections 31 through 34 shall apply, *mutatis mutandis*, to a principal shareholder or to a senior corporate officer <u>who has submitted a report or notice</u> . . .

\* \* \*

**Section 38C. Liability for damage on account of misleading item in report, notice or document**

(a)    The provisions of sections 31 to 34 shall apply, as applicable and *mutatis mutandis*:

(1)    <u>To a corporation, director of a corporation, its general manager or a controlling shareholder therein – with regard to a misleading item that was in a report, notice or document that the corporation filed pursuant to this law.</u>[27]

In order to avoid the otherwise <u>strict liability</u> imposed on issuers, directors, senior corporate officers, and principal and/or controlling shareholders under the 1968 Act, a potentially liable party must prove, <u>as an affirmative defense</u> under Section 33, negating liability:

(1)    . . . that he or she has taken <u>all appropriate measures</u> to ensure that the prospectus, opinion, report or certification . . . did not contain any misleading items, <u>and</u> that he or she <u>believed in good faith</u> that it did not contain any such items.

Another important difference is that under Israel's "safe harbor" provision (§32A), the immunity for false forward-looking statements is significantly <u>narrower</u> than the <u>absolute</u> immunity available under US law and likely does not protect this corporate issuer at all. Immunity for false forward-looking statements under Israeli law requires that a <u>defendant prove</u>:

(3)    <u>Clear emphasis</u> was placed on <u>the main factors</u> that are to be viewed as being <u>likely</u> to result in the forward-looking information not being realized.

More importantly, under the 1968 Act, there is <u>no</u> absolute forward-looking statement immunity. Under the 1968 Act, any "party that <u>knew</u> that the forward-looking information would not be realized" does not have immunity – an exception not recognized in US law which provides

---

[27] The words "report, notice or document" receives a broad interpretation under Israeli law. Pursuant to Israeli Securities Regulations (Periodic and Immediate Reports of Foreign Corporation), §§ 5761-2000, documents filed with the SEC must also be filed with the Israeli Securities Authority and the TASE.

absolute immunity.[28]

These are important differences. The Israeli liability standard of <u>all defendants</u> to <u>all</u> <u>purchasers</u>, including purchasers in the "<u>trading (open) market</u>", is – prima facie – <u>strict liability</u>. Knowledge of falsity – scienter – is not required for liability. Knowledge only must be proven to overcome forward-looking statement immunity. Liability exists under Israeli law not only for "misleading items" in a prospectus but also any "<u>report, notice or document filed by the issuer</u>." And strict liability is not limited only to the corporation, but extends to directors, principals or controlling shareholders, senior corporate officers and corporate general managers.[29]

Even if somehow – despite *Morrison* – US law applied[30] to the TASE Purchasers' claims – the differential value analysis still applies. The VeriFone shares listed on the TASE were, as part of the Lipman merger, issued *via* a 1933 Act Registration Statement, giving those purchasing these shares in the TASE aftermarket a strict liability §11 claim. The NYSE purchasers do NOT have this strict liability claim; USLP had no §11 claims.  And in seven years, USLP despite amending its

---

[28] The prospectus for the Lipman merger (Registration Statement, Form S-4, Amendment No. 2, filed with the SEC August 8, 2006) by which the new VeriFone shares were issued to TASE Purchasers was <u>filled</u> with forward-looking statements. However, the pages of boilerplate warnings <u>did not</u> place any emphasis on one over the other in terms of "<u>likely</u>" impact. No "<u>main factors</u>" were identified as likely to result in the forward-looking statement not coming to fruition. If at trial, either knowledge or the lack of differential analysis was proved, it would have voided any legal immunity. In this case, there was <u>no</u> forward-looking statement liability immunity in Israel when under US law the immunity was absolute.

[29] While the Israeli courts granted VeriFone's stay request, they never made any final ruling on the ongoing interlocutory dispute as to whether Israeli or US substantive law applied to the claims asserted there under the Israeli Class Action law. The Israel Supreme Court proceedings in January and February 2013 are discussed in detail in the TASE Objectors' Response to the Seefer Declaration. The Israeli lawyers for the TASE class made clear their position that Israeli law controlled and should any attempt be made later to settle the claims asserted in Israel for the Israeli/TASE class in the competing US Class Action, the superior value of those claims under Israeli law had to be factored in. Ron Decl., at ¶32.

[30] This Court, before which these Israeli purchaser claims have now been brought <u>has never made any such ruling</u>. How could it under *Morrison*? Indeed, that legal question has never been presented to this Court. This Court, unlike the court in Israel, is expert in US law and, unlike the Israeli court, is bound to follow the precedents of the US federal court system. *Morrison* and its progeny are quite clear in stating that purchasers on foreign exchanges do not have legal rights under the US securities laws. No deference is due the Israeli courts' non-binding comments. Importantly, whatever statements were made by Israeli judges in this regard were not a "final ruling." The Israeli judge actually said "Not, we will interpret *Morrison*." Response to Seefer Decl., at p. 3. VeriFone was directed by the Israeli Supreme Court as part of its stay order to "<u>notify</u>" this Court of the potential inclusion of the Israeli Class members in the US Action which  VeriFone simply ignored. Ron Decl., at ¶28.

1    complaint numerous times never pleaded any §11 claims on behalf of the  TASE Purchasers or

2    otherwise.

3         USLP is trapped. No matter what law applies, the TASE Purchasers had their superior non-

4    scienter strict liability claims short-changed by the Plan of Allocation. It is securities law 101 that a

5    claim that does not require proof of fraudulent conduct, *i.e.*, actual knowledge or recklessness –

6    especially a "strict liability" claim – is of greater settlement value than a claim requiring proof of

7    scienter. In fact, plans of allocation involving 1933 Act and 1934 Act claims routinely include

8    differential allocations between these claims in order for settlement to be viewed as fair, just and

9    adequate to class members.

10        **C.    The "Quick Pay" Attorneys' Fee  Provisions Are Unfair to All Class  Members**

11        USLP cannot prove that the provision that any fees awarded by the Court "shall be paid to

12   Lead Counsel ... <u>immediately</u> after the Court executes an order awarding such fees", so-called

13   "Quick-Pay", is fair to class members. Stipulation of Settlement, Dkt # 306, at ¶6.2. It is not fair and

14   not equitable to class members. Rather, it is a breach of counsel's duty not to prefer itself over the

15   class. "Quick Pay" gets the lawyers their money <u>immediately</u>. They get 100% immediately, even

16   though the Settlement approval and/or fee award judgment <u>is not final</u>, even though the class

17   members will have to wait months or even years, to get one penny. And the Settlement approval

18   remains subject to appeal and reversal or modification. This is objectionable under any circumstance

19   – but more so here where the settlement is complex and worldwide – requiring a global claims

20   process involving a complex Plan of Allocation, bound to result in confusion of class members.[31]

21        This basic lack of fairness is exacerbated by allowing the repayment obligations of counsel

22   receiving "Quick Pay" fees to be UNSECURED![32] Because any fee repayment would be owed to the

---

[31]"Quick Pay" disincentivizes Lead Counsel from vigorously overseeing the claims administration process through to conclusion – including the monetary distribution to the clients in a way that assures proper treatment of all class members.

[32] On November 15, 2013, the Supreme Court granted *certiorari* in *Halliburton Co., et al. v. Erica P. John Fund, Inc.*, No. 13-317, to address the fraud-on-the-market presumption. Lead counsel justified the Settlement in part by citing the risk to securities class actions posed by the then abstract risk the Court would someday curtail the use of the fraud on the market doctrine, which "underpins certification of securities class actions" and the elimination of which would make it substantially more difficult to get or maintain class certification in these cases. *See* Motion for Final Approval,

20

1    Settlement Fund for the benefit of the class, these self-serving fee payment terms create a conflict

2    between class counsel and the class members whose interests they are supposed to protect. The class

3    should not be forced to take the financial risk of class counsel (there are some 15-20 plaintiffs'

4    counsel throughout the US who stand to get fees doled out at the "discretion" of USLP's Counsel)

5    not being able to repay what they owe.[33]

6        Defendants' willingness to accommodate class counsels' interests[34] in return for crafting an

7    expanded Settlement Class providing them "global peace" is understandable. Why the USLP would

8    permit this is not as clear – although it's counsel did craft and get Preliminary Approval of a Plan of

9    Allocation giving preferential treatment to the USLP while representing to the Court it did not. The

10   USLP has provided no evidence to justify this "unsecured" obligation.[35] The "Quick Pay" fee

11   provisions must be eliminated or revised to provide for <u>an ironclad surety bond</u> assuring full

12   repayment of all fees.[36]

13   ///

14   ///

15   ///

16

17   _____

     Dkt 321, at p. 14. Now that formerly abstract threat is <u>real and imminent</u> and it could threaten the
18   finances of plaintiffs' securities class action firms.

19   [33] These are uncertain financial times in the legal business. Even large, prestigious firms have failed
     (or made major layoffs) in recent years. *See e.g.* "The Anatomy of Law Firm Failures, Hildebrandt,
20   Nov. 19, 2008 - http://media.insidecounsel.com/insidecounsel/historical/white paper432.pdf; Heller
     Ehrman Law Firm to Dissolve - http://www.sfgate.com/business/article/ Heller-Ehrman-law-firm-
21   to-dissolve-Friday_3193215.php; Dewey & LeBoeuf Files for Bankruptcy – http://dealbook.
     nytimes.com/ 2012/05/28/dewey-leboeuf-files-for-bankruptcy/?_r=0.

22   [34] Note, however, that defendants insulate themselves from any responsibility for this self-dealing
     maneuver. Stipulation of Settlement, Dkt # 306, at ¶6.5-6.7.

23   [35] No fees should be awarded now given the necessity for a revised Settlement, a new Notice
     program, *etc.* But if fees ever are awarded, Israeli counsel are entitled to fair compensation as well.
24   Despite defendants efforts, the Israeli Class Action was never dismissed and was pending when the
     settling parties modified the class definition to explicitly include the TASE Purchasers in the
25   settlement (if valid), <u>entitled them to their fair share of the fund</u>.

26   [36] The potential for self-serving back-scratching here is obvious. The USLP has served as a plaintiff
     in many securities class actions using its favored counsel. It serves as a USLP, benefits from
27   preferred treatment via opaque distinctions in complex, hard to understand Plans of Allocation
     drafted by counsel who use this Plaintiff to get control of cases, generating fees. This synergistic
28   practice is great for them but not for absent class members.

_____
OBJECTION OF DAVID STERN AND THE PUTATIVE CLASS OF TEL AVIV STOCK EXCHANGE
PURCHASERS TO PROPOSED SETTLEMENT AND MEMORANDUM IN SUPPORT THEREOF

**V.   IF CLASS NOTICE WAS MAILED TO THE TASE PURCHASERS IT IS STILL DEFECTIVE UNDER RULE 23 AS TO TASE PURCHASERS FOR NOT BEING IN THE "CLEAR, CONCISE AND EASILY UNDERSTOOD LANGUAGE" (HEBREW AND NEW ISRAEL SHEKELS) NEEDED FOR THEM TO "INTELLIGENTLY" WEIGH THEIR OPTIONS, AND NOT PROVIDING FOR ENHANCED CLASS MEMBER CLAIM-FILING ASSISTANCE TO ASSURE A "LEVEL PLAYING FIELD" FOR THEM TO SEEK THEIR FAIR SHARE OF THE SETTLEMENT FUND**

### A.   The Stringent Notice Requirements of Rule 23 and the US Constitution

"[I]ndividual notice to identifiable class members is not discretionary" [the] "court is required to direct to class members the best notice practicable under the circumstances." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-76 (1974). Such notices must be in clear, concise, plain, and easily understood language. *See* Rule 23(c)(2)(b). The "best notice practicable" standard demanded by due process asks if notice was accomplished by means that "one desirous of actually informing the absentee might reasonable adopt to accomplish it."[37] *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950).

### B.   There is No Evidence Proving That Individual Mailed Notices Were Sent to the TASE Purchasers

At the preliminary approval hearing, the Court immediately focused on the proposed Notice, specifically asking about what "reasonable methods" had been taken to identify all the class members. Hrg. Tr., at pp. 9-11. The Court's concerns were responded to with reassurances of ease and regularity with respect to the mailed Notice. To ameliorate the Court's concerns, USLP responded to the Court "[t]he class is not going to be hard to notify" and twice stated that mailed Notice "would likely miss 1% of class members at most." Hrg. Tr., at pp. 10-11.

From what the TASE Objectors can discover, no notice was ever mailed to the TASE Purchasers of the settlement class. Ron Decl., at ¶23. Neither the Israeli Representative Plaintiff nor

---

[37] "Courts have frequently held that adequate notice requires accommodation [for] the language limitations of a non-citizen audience." *Walters v. Reno*, C94-1204C, 1996 WL 897662 at *12 (W.D. Wash. Mar. 13, 1996) *citing Padilla–Augustin v. INS,* 21 F.3d 970, 976 (9th Cir.1994) (explaining that when the alien is representing himself and has language difficulties, "a high degree of clarity should be a part of the process accorded"); *Orantes–Hernandez v. Smith,* 541 F.Supp. 351, 386 (C.D.Cal.1982) (issuing preliminary injunction requiring that Salvadoran refugees receive notice of their rights in English and Spanish.). "There is nothing in Rule 23 to suggest that the notice requirements can be tailored to fit the pocketbooks of particular plaintiffs." *Eisen*, 417 U.S. at 176. Under *Phillips Petroleum Co. v. Shutts*, protections to absentee class members include constitutionally adequate notice, a right to opt out, and, at all times, adequate representation by the named plaintiff. 472 U.S. 797, 811-12 (1985).

1   institutional investors contacted by Israeli Class counsel received it. This Court <u>must</u> insist on the

2   creation of a detailed evidentiary record establishing <u>exactly</u> who was notified by the (required)

3   <u>mailed</u> Notice, specifically addressing what was mailed to the TASE Purchasers.[38]   The

4   supplemental declarations submitted by the Gilardi firm set out, in <u>excruciating detail,</u> what would

5   be done to notify class members by mail. If those steps were taken regarding the TASE Purchasers,

6   there must be documents evidencing the mailed Notice to TASE Purchasers. However, the Gilardi

7   Final Approval Declaration does not even contain the word "Israel." Sylvester Decl., Dkt # 326.[39]

8   **C.   <u>Even If It Was Mailed, The English Language Printed Notice and the Settlement
        Website Are Defective For Not Being In Hebrew</u>**

9

10      The need to consider the foreign language/currency issues should have been obvious to

11   counsel. The MANUAL FOR COMPLEX LITIGATION, fourth edition, § 21.31, states that counsel should

12   discuss with the court whether publication of notice in a foreign language is appropriate.[40]

13

---

14   [38]   There was a Summary Notice published in "*Globes*" <u>in Hebrew</u>! Sylvester Decl., Ex. D., at ¶ 15.
     *Globes* is a financial paper in Israel with a circulation of about 100,000, .05% of Israelis. It was
15   <u>never</u> revealed to the Court that *Globes* was an <u>Israeli</u> paper, or that published notice would be
     translated into <u>Hebrew</u>! Of course not. Any "<u>focus</u>" on Israel was the last thing the performers
16   wanted. Even if that notice was perfect, it solves nothing. Individual mailed notice was ordered and
     required. The *Globes* notice was just a superficial summary notice, published in an obscure paper
17   that was written in terrible Hebrew. It appears they simply used "Google" or MS Word was their
     translator! Gil Ron Decl., ¶32

18   [39]   The TASE Objectors requested that the Gilardi firm provide them specific information about the
     mailing to TASE purchasers. Lead Counsel rejected the request, so we cannot provide more detail.
19   Declaration of Jeffrey R. Krinsk in Support of Objection o David Stern And The Putative Tel Aviv
     Stock Exchange Purchasers To Proposed Class Action Settlement, Ex. A and B.

20   [40]   The Federal Judicial Center has also published a set of guidelines applicable to class action notice
     and claims process which suggested that a judge should "[c]onsider the demographics of the class to
21   determine whether notice is necessary in Spanish or another language." Federal Judicial Center,
     JUDGES CLASS ACTION NOTICE AND CLAIMS PROCESS CHECKLIST & PLAIN LANGUAGE GUIDE, p. 4
22   (2010); *see also Kaufman v. Am. Exp. Travel Related Servs., Inc.*, 283 F.R.D. 404, 408 (N.D. Ill.
     2012) (citing the JUDGES CLASS ACTION NOTICE AND CLAIMS PROCESS CHECKLIST & PLAIN
23   LANGUAGE GUIDE). Courts have approved and often directed class notices to be in foreign
     languages. *See e.g., Smith v. DaimlerChrysler Services North America, LLC*, No. Civ.A.00-CV-
24   6003, 2005 WL 2739213, at *3 (D.N.J. Oct. 24, 2005) (approving class settlement with notice
     published in Spanish); *In re Assicurazioni Generali S.p.A. Holocaust Ins. Litig.,* M.D.L. No. 1374,
25   2007 WL 3129894 (S.D.N.Y., Oct. 26, 2007) (approving class notice and claim form requiring
     administrator to mail the class notice and claim form <u>translated into appropriate languages for</u>
26   <u>foreign class members</u>); *In re Western Union Money Transfer Litig.,* No. 01 Civ. 0335(CPS), 2004
     WL 3709932, at *5 (E.D.N.Y. Oct. 19, 2004) (where settlement class included  foreign class
27   members, individual notice must be sent to all class members identifiable and requiring publication
     notice including, *inter alia,* "<u>media outreach in the form of a press release, video news release, and</u>
28

---
23

1    The class now includes thousands of additional, and often unsophisticated, individual

2    investors living in a foreign country who purchased VeriFone stock on a foreign stock exchange, in a

3    country where the language is Hebrew which is read backwards from English, *i.e.*, right to left, and

4    where commercial transactions, including stock trading, take place in local currency, not dollars.

5    This renders the English language Notice by which the TASE Purchasers were to make important

6    decisions regarding their legal rights in a financial case a confusing welter of complex legal and

7    financial information in a language not easily understood.[41]

8    For any settlement of this case as presently constituted to pass "muster", there must be a

9    Notice to the TASE Purchasers in Hebrew using Israeli currency presenting in clear and easily

10   understood language – the information necessary for them to make an "intelligent" decision with

11   respect to the proposed Settlement, including whether to opt out or further object to the allocation

12   and attorneys' fees provisions.[42]

13   **VI.   THE TASE OBJECTORS RESPECTFULLY REQUEST: (I) THE COURT DELAY, OR DENY,
     FINAL APPROVAL WITHOUT PREJUDICE; (II) DESIGNATE A SUBCLASS OF THE TASE
14   PURCHASER MEMBERS OF THE CLASS WITH SEPARATE REPRESENTATION; AND (III)
     DIRECT THE PARTIES TO PROMPTLY RENEGOTIATE, IF THEY CAN, A PROPOSED
15   SETTLEMENT THAT CAN – AFTER "HEIGHTENED REVIEW" – SATISFY RULE 23**

16   The TASE Objectors are not professional objectors carping about minutia to extort a fee. The

17   TASE class action was an important case for Israeli citizens – where <u>their</u> laws provide them

18   enhanced <u>strict liability</u> causes against the defendant, where scienter need not be proved and where

19   the fraud on the market theory is <u>not</u> under imminent threat. They are not seeking a fee to just "get

20   out of the way"[43] – just one more collusive accommodation the defendants and USLP's need to

21   _____

     radio news release, to be translated into various foreign languages and distributed internationally").

22   [41]   Moreover, the settlement website (<u>www.verifonesettlement.com</u>) including all documents,
23   notices, instructions, and claim forms are entirely in English.

24   [42]   If modification of the settlement <u>or</u> an enhanced, more robust notice program is called for, the
     USLP and defendants have only themselves to blame. The USLP should be ordered to pay for all
25   costs associated with a new notice, claims solicitation and administration program and <u>not be
     reimbursed for it from the settlement fund</u>. Its overreaching and inadequate representation caused
26   the necessity of further notice. The class members should not be made to pay for the mistakes of
     and breaches of duty by the USLP. *Amchem* and *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156 (1974)
27   are clear that required notice may not be relaxed based on the high cost needed to fulfill due process
     concerns.

28   [43]   The correspondence between the US and Israeli Class counsel in their unsuccessful efforts to

_____
OBJECTION OF DAVID STERN AND THE PUTATIVE CLASS OF TEL AVIV STOCK EXCHANGE
PURCHASERS TO PROPOSED SETTLEMENT AND MEMORANDUM IN SUPPORT THEREOF

accomplish to achieve their synergetic goals of a big "payday" and "global peace." The TASE class representative and his counsel are willing to <u>immediately</u> make the effort to try to salvage the Settlement so it can again be considered for Preliminary and, perhaps some day, Final Approval.[44] The Court's heightened scrutiny and fiduciary obligations do not obligate it to spend time trying to revise a faulty settlement – at least where there is so much complex revision necessary. Counsel expert in these specialized matters must undertake this task. Revision here is an obligation of the lawyers for the settling parties, including Israeli counsel.

The Court's powers here are all but plenary. *See* Rule 23(c)(1)(C). Stern requests the Court: (i) defer or deny without prejudice, Final Approval; (ii) designate a subclass of TASE purchasers and order the separate representation (counsel for the putative Israeli Class) necessary to provide that group the unconflicted representation they are entitled to;[45] (iii) direct the parties to begin immediate negotiations to address the defects in the Settlement to see if it can be revised to comply with Rule 23; and (iv) present a revised settlement to the Court (if they can) within fifteen (15) days. Of course, complex issues will still have to be reviewed with "heightened scrutiny" by the Court, but at least in a revised settlement – the key allocation issues, notice issues, fee payment issues (and no doubt others) – will be the result of the needed, but to date missing, adversarial process.

Respectfully submitted,

Dated: December 30, 2013                FINKELSTEIN & KRINSK LLP

By: ___/s/ Jeffrey R. Krinsk_____
JEFFREY R. KRINSK
MARK L. KNUTSON
Attorneys for Objectors

---

resolve this matter show that Israel counsel are vigorous advocates for the TASE class, not "stick-up artists" as USLP has characterized them. Seefer Decl., Exs. F-I.

[44] Israeli counsel notes that Israeli ethical rules require any such later settlement and/or fee award would have to also be approved by the Israeli courts.

[45] *In re Austrian & German-Bank Holocaust Litig.*, 317 F.3d 91, 104 (2nd Cir. 2003) ("In some circumstances, a court itself might well have an obligation on its own motion, especially when called upon to approve a class action settlement, to designate a subclass and assure proper representation for the subclass, or <u>to take appropriate steps to lessen if not eliminate the potential for a conflict among class members</u>.")

25

**CERTIFICATE OF SERVICE**

I hereby certify that on December 30, 2013, I authorized the electronic filing of the foregoing **OBJECTION OF DAVID STERN AND THE PUTATIVE CLASS OF TEL AVIV STOCK EXCHANGE PURCHASERS TO PROPOSED CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT THEREOF** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on December 30, 2013.

FINKELSTEIN & KRINSK LLP

 /s/ Jeffrey R. Krinsk
JEFFREY R. KRINSK
MARK L. KNUTSON
FINKELSTEIN & KRINSK LLP
501 W. Broadway, STE 1250
San Diego, CA 92101
Telephone:     (619) 218-1333
Fax:             (619) 238-5425

Attorneys for Objectors

OBJECTION OF DAVID STERN AND THE PUTATIVE CLASS OF TEL AVIV STOCK EXCHANGE PURCHASERS TO PROPOSED SETTLEMENT AND MEMORANDUM IN SUPPORT THEREOF

1

**Mailing Information for a Case 3:07-cv-6140-EMC**

2

**Electronic Mail Notice List**

3

The following are those who are currently on the list to receive e-mail notices for this case.

4

Christopher P. Seefer
chriss@rgrdlaw.com

5

Daniel C. Girard
dcg@girardgibbs.com mce@girardgibbs.com

Christopher M. Wood
cwood@rgrdlaw.com

6

Nathaniel Lyon Green
greenn@sullcrom.com

7

Patrick J. Coughlin
patc@rgrdlaw.com

Eli Greenstein
egreenstein@ktmc.com

8

Randi D. Bandman
randib@rgrdlaw.com

9

Stanley M. Grossman
smgrossman@pomlaw.com

10

Francis A. Digiacco
fdigiacco@rgrdlaw.com

Sverker Kristoffer Hogberg
carrjo@sullcrom.com
hogbergs@sullcrom.com

11

Steve W. Berman
steve@hbsslaw.com
robert@hbsslaw.com
heatherw@hbsslaw.com

12

Lewis S. Kahn
lewis.kshn@kgscounsel.com

13

Reed R. Kathrein
reed@hbsslaw.com peterb@hbsslaw.com
pashad@hbsslaw.com
sf_filings@hbsslaw.com

14

Francis A. Bottini , Jr
fbottini@bottinilaw.com
sammirati@bottinilaw.com

15

16

Jiyoun Chung
jiyoun.chung@shearman.com

Nicole Catherine Lavallee
nlavallee@bermsndevalerio.com
ysoboleva@bermandevalerio.com

17

Brendan P. Cullen
cullenb@sullcrom.com carrjo@sullcrom.coms
emanagingclerk@sullcrom.com
greenn@sullcrom.com
carrejoa@sullcrom.com
McCauleyr@sullcrom.com

18

Jonathan Krasne Levine
jkl@girardgibbs.com anw@girardgibbs.com

19

20

Jeremy A Lieberman
jaliebermsn@pomlaw.com

21

Timothy Alan DeLange
kelly.mcdaniel@blbglaw.com
timothyd@blbglaw.com

Mark Cotton Molumphy
mmolumphy@cpmlegal.com
rbarghi@cpmlegal.com
obacigalupi@cpmlegal.com
jacosta@cpmlegal.com

22

23

Francis Anthony DiGiacco
fdigiscco@rgrdlaw.com

24

Jordan Eth
jeth@mofocomjrahmsn@mofo.com

Alan Roth Plutzik
aplutzik@brsmsonplutzik.com

25

26

Linda M. Fong
lfong@kaplanfox.com

Juden Justice Reed
plee@schubert-reed.com akeng@schubert-reed.com rschubert@schubert-reed.com

27

Robert C. Schubert
rschubert@schubertlawfirm.com

28

OBJECTION OF DAVID STERN AND THE PUTATIVE CLASS OF TEL AVIV STOCK EXCHANGE
PURCHASERS TO PROPOSED SETTLEMENT AND MEMORANDUM IN SUPPORT THEREOF

Christopher Paul Seefer
chriss@rgrdlaw.com khuang@rgrdlaw.com
ptiffith@rgrdlaw.com e_file_sd@rgrdlaw.com
e_file_sf@rgrdlaw.com

Aaron M. Sheanin
asheanin@pswlaw.com ybeny@pswlaw.com

Arthur L. Shingler, III
ashingler@scott-scott.com
efile@scott-scott.com

Michael Howard Steinberg
steinbergm@sullcrom.com
elsono@sullcrom.com
s&cmanagingclerk@sullcrom.com

Joel B. Strauss
jstrauss@kaplanfox.com

Sean Travis Strauss
sstrauss@truckerhuss.com
mbresso@truckerhuss.com
cdyke@truckerhuss.com
ssimon@truckerhuss.com

Sanford Svetcov
sandys@rgrdlaw.com efile_sd@rgrdlaw.com
e_filesf@rgrdlaw.com

Joseph J. Tabacco , Jr
jtabacco@bermandevalerio.com
ysoboleva@bermandevalerio.com

David Conrad Walton
davew@rgrdlaw.com

**Manual Notice List**

The following is the list of attorneys who are not on the list to receive e-mail notices for this case:

Jeffrey P. Campisi
Kaplan, Fox & Kilsheimer, LLP
805 Third Avenue, 14th Floor
New York, NY 10022

Karen Hanson Riebel
khriebel@locklaw.com brgilles@locklaw.com

Darren Jay Robbins
e_file_sd@rgrdlaw.com

Patrick David Robbins
probbins@shearman.com
rcheatham@shearman.com

Dana Anthony Rodriguez
drodriguez@mofo.com lyan@mofo.com

Eran Rubinstein
erubinstein@chitwoodlaw.com

Robert Andrew Sacks
sacksr@sullcrom.com
s&cmanagingclerk@sullcrom.com

Shawn A. Williams
shawnw@rgrdlaw.com khuang@rgrdlaw.com
e_file_sd@rgrdlaw.com
e_file_sf@rgrdlaw.com

Steven Noel Williams
silliams@cpmlegal.com
jverducci@cpmlegal.com jlein@cpmlegal.com
azapala@cpmlegal.com
pmenzel@cpmlegal.com gkim@cpmlegal.com
bdoe@cpmlegal.com

Christopher Martin Wood
cwood@rgrdlaw.com

OBJECTION OF DAVID STERN AND THE PUTATIVE CLASS OF TEL AVIV STOCK EXCHANGE PURCHASERS TO PROPOSED SETTLEMENT AND MEMORANDUM IN SUPPORT THEREOF