ROBBINS GELLER RUDMAN
   & DOWD LLP
CHRISTOPHER P. SEEFER (201197)
CHRISTOPHER M. WOOD (254908)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 415/288-4545
415/288-4534 (fax)
chriss@rgrdlaw.com
cwood@rgrdlaw.com
       – and –
PATRICK J. COUGHLIN (111070)
RANDI D. BANDMAN (145212)
FRANCIS A. DIGIACCO (265625)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
patc@rgrdlaw.com
randib@rgrdlaw.com
fdigiacco@rgrdlaw.com

Lead Counsel for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re VERIFONE HOLDINGS, INC. SECURITIES LITIGATION | ) ) ) Master File No. 3:07-cv-06140-EMC |
| | ) CLASS ACTION |
| This Document Relates To: | ) ) LEAD PLAINTIFF'S RESPONSE TO THE OBJECTIONS OF JEFF M. BROWN |
|     ALL ACTIONS. | ) ) DATE: February 14, 2014 TIME: 3:00 p.m. CTRM: The Honorable Edward M. Chen |

905715_1

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ...........................................................................................................1

II.   ARGUMENT ................................................................................................................3

    A.   Brown Has Not Established Standing to Object .......................................................3

    B.   The Notice Approved by the Court Was More than Adequate to Meet Rule
        23's Standards ..........................................................................................................6

    C.   The Requested Fees Are Reasonable and Below the Ninth Circuit
        Benchmark ..............................................................................................................9

        1.   The Requested Fees Are Proper Under the PSLRA and Are
            Appropriately Calculated as a Percentage of the Gross Settlement............9

        2.   The Requested Attorneys' Fees Are Presumptively Reasonable
            Because the Fee Was Agreed to by Lead Plaintiff and Lead
            Counsel .....................................................................................................10

        3.   The Requested Fees Are Appropriate Given the Result Achieved
            and the Significant Risks Involved in Prosecuting the Case......................10

        4.   The SEC Did Much More to Hurt Lead Plaintiff's Case than to
            Help It ......................................................................................................11

        5.   The Hourly Rates, Expenses and Lodestar Are Reasonable....................13

        6.   By All Objective Measures, Class Counsel Achieved an Excellent
            Result .......................................................................................................15

    D.   The Timing of Payment of Attorneys' Fees Is Entirely Proper .............................16

III.  CONCLUSION............................................................................................................17

1

**TABLE OF AUTHORITIES**

2

**Page**

3

**CASES**

4

5    *Barnes v. FleetBoston Fin. Corp.*,
        No. 01-10395-NG, 2006 U.S. Dist. LEXIS 71072
6        (D. Mass. Aug. 22, 2006)....................................................................................2

7    *City of Roseville Emps. Ret. Sys. v. Orloff Fam Tr. UAD 12/31/01*,
        484 F. App'x 138 (9th Cir. 2012) ....................................................................13

8
     *Dennis v. Kellogg Co.*,
9        No. 09-CV-1786-L, 2013 U.S. Dist. LEXIS 163118
        (S.D. Cal. Nov. 14, 2013) ..................................................................................5
10

11   *Feder v. Elec. Data Sys. Corp.*,
        248 F. App'x 579 (5th Cir. 2007) ......................................................................4

12
     *Goldberger v. Integrated Res., Inc.*,
13       209 F.3d 43 (2d Cir. 2000)..........................................................................13, 14

14   *Heekin v. Anthem, Inc.*,
        No. 1:05-cv-01908-TWP-TAB, 2013 U.S. Dist. LEXIS 26700
15       (S.D. Ind. Feb. 27, 2013) ...................................................................................5

16   *In re AT&T Corp. Sec. Litig.*,
        455 F.3d 160 (3d Cir. 2006)..............................................................................10
17

18   *In re Bluetooth Headset Prods. Liab. Litig.*,
        654 F.3d 935 (9th Cir. 2011) ............................................................................14
19
     *In re Cathode Ray Tube Antitrust Litig.*,
20       281 F.R.D. 531 (N.D. Cal. 2012).......................................................................6

21   *In re Cendant Corp. Litig.*,
        264 F.3d 201 (3d Cir. 2001)..............................................................................10
22

23   *In re Flag Telecom Holdings*,
        No. 02-CV-3400 (CM) (PED), 2010 U.S. Dist. LEXIS 119702
24       (S.D.N.Y. Nov. 8, 2010) ....................................................................................9

25   *In re Hydroxycut Mktg. & Sales Practices Litig.*,
        No. 09md2087 BTM (KSC), 2013 U.S. Dist. LEXIS 133413
26       (S.D. Cal. Sept. 17, 2013) ..............................................................................3, 5

27

28

Page

*In re Hydroxycut Mktg. & Sales Practices Litig.*,
  No. 09md2087 BTM (KSC), 2013 U.S. Dist. LEXIS 61674
  (S.D. Cal. Apr. 29, 2013) ..................................................................................6

*In re Initial Pub. Offering Sec. Litig.*,
  No. 21 MC 92 (SAS), 2011 U.S. Dist. LEXIS 103698
  (S.D.N.Y. Aug. 25, 2011) ..................................................................................4

*In re Law Office of Jonathan E. Fortman, LLC*,
  No. 4:13MC00042 AGF, 2013 U.S. Dist. LEXIS 13903
  (E.D. Mo. Feb. 1, 2013) ....................................................................................4

*In re Netflix Privacy Litig.*,
  No. 5:11-cv-00379-EJD, 2013 U.S. Dist. LEXIS 168298
  (N.D. Cal. Nov. 25, 2013) ..................................................................................6

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
  148 F.3d 283 (3d Cir. 1998).............................................................................15

*In re Rite Aid Corp. Sec Litig.*,
  396 F.3d 294 (3d Cir. 2005).............................................................................14

*In re TFT-LCD Flat Panel Antitrust Litig.*,
  289 F.R.D. 548 (N.D. Cal. 2013) .......................................................................5

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  No. M 07-1827 SI, 2013 U.S. Dist. LEXIS 49885
  (N.D. Cal. Apr. 1, 2013) ..................................................................................13

*In re Uponor, Inc.*,
  No. 11-MD-2247 ADM/JJK, 2012 U.S. Dist. LEXIS 130140
  (D. Minn. Sept. 11, 2012) ..................................................................................5

*In re Verifone Holdings Sec. Litig.*,
  No. C 07-6140 MHP, 2011 U.S. Dist. LEXIS 24964
  (N.D. Cal. Mar. 7, 2011),
  *aff'd in part and rev'd in part*,
  704 F.3d 694 (9th Cir. 2012) ......................................................................11, 12

*Knisley v. Network Assocs.*,
  312 F.3d 1123 (9th Cir. 2002) ...........................................................................4

*Palmer v. Nigaglioni*,
  508 F. App'x 658 (9th Cir. 2013) ......................................................................9

**Page**

*Powers v. Eichen*,
229 F.3d 1249 (9th Cir. 2000) ...............................................................................9

*Van Vranken v. Atl. Richfield Co.*,
901 F. Supp. 294 (N.D. Cal. 1995) .................................................................15, 16

*Whitmore v. Arkansas*,
495 U.S. 149 (1990)...............................................................................................6


**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
§78u-4(a)(6) ........................................................................................................14

Federal Rules of Civil Procedure
Rule 23 ..............................................................................................................3, 6
Rule 23(e)(5) .........................................................................................................3


**LEGISLATIVE HISTORY**

Private Securities Litigation Reform Act of 1995
Pub. L. No. 104-67, 109 Stat. 737 (1995).................................................9, 10, 14


**SECONDARY AUTHORITIES**

Chris Guthrie, Jeffrey J. Rachlinski & Andrew J. Wistrich,
*Inside the Judicial Mind*, 86 Cornell L. Rev. 777, 803 (2001) ...............................11

Dr. Renzo Comolli, Sukaina Klein, Dr. Ronald I. Miller, and Svetlana Starykh,
*Recent Trends in Securities Class Action Litigation: 2012 Full-Year Review*
(NERA Jan. 29, 2013)..............................................................................................16

Jeffrey J. Rachlinski, *A Positive Psychological Theory of Judging in Hindsight*,
65 U. Chi. L. Rev. 571 (1998) ................................................................................11

*Manual for Complex Litigation*,
§14.121, Federal Judicial Center (4th ed. 2004)...................................................14

1    Lead Plaintiff National Elevator Industry Pension Fund ("Lead Plaintiff") respectfully

2  submits this memorandum in further support of the Motion for Award of Attorneys' Fees and

3  Expenses (Dkt. No. 322), and in opposition to the Objections of Jeff M. Brown to Proposed

4  Settlement ("Brown Obj.") (Dkt. No. 334).

5  **I.      INTRODUCTION**

6    In accordance with the Court's October 16, 2013 Order, a Notice of Proposed Settlement of

7  Class Action (the "Notice") has been mailed to over 102,000 potential Class Members, posted on the

8  Internet, and a summary notice was published in *Investor's Business Daily*, on *Business Wire*, and

9  translated into Hebrew and published in Israel.  The Notice advised that lead counsel would seek

10  attorneys' fees not to exceed 20% of the settlement fund and expenses not to exceed $360,000.  Dkt.

11  No. 320-1.

12    The response from the Class has been overwhelmingly positive.  Not a single institutional

13  investor objected to any portion of the settlement or opted out.  Indeed, only two objections were

14  submitted in this matter – a stunningly low number for an action of this magnitude and the ultimate

15  affirmation of the excellent result achieved for the Class and the reasonableness of the settlement

16  agreement in its entirety.

17    This brief deals with the objection filed by Jeff M. Brown ("Brown"), a Boca Raton attorney

18  represented by Joseph Darrell Palmer ("Palmer"), a serial objector who has been admonished,

19  sanctioned or held in contempt by numerous courts for making frivolous objections.  Moreover,

20  Palmer is currently facing disciplinary charges by the State Bar of California for misrepresenting to

21  various courts that he has never been the subject of disciplinary actions when, in fact, he was

22  suspended from the bar following a felony conviction in Colorado.  *See In the Matter of Joseph*

23  *Darrell Palmer*, No. 125147, Case No. 12-O-16924 (State Bar Court, Los Angeles) (Exhibit A). [1]

24    In his objection, Brown claims to be a Class Member but failed to supply the evidence

25  required by this Court establishing his standing to object.  Indeed, when lead counsel served Brown

26  with a deposition subpoena to try to learn more about his standing and the basis of his objection, his

27  _____

[1]  All exhibit references are to the Declaration of Christopher M. Wood in Support of Lead
28  Plaintiff's Response to the Objections of Jeff M. Brown, filed herewith.

LEAD PLAINTIFF'S RESPONSE TO THE OBJECTIONS OF JEFF M. BROWN -
3:07-cv-06140-EMC                                                                                    - 1 -

1    counsel flatly and improperly refused to allow the deposition.  Brown's counsel threatened lead

2    counsel with sanctions for attempting to notice the deposition, promised to appeal any adverse ruling

3    against his client, and refused to substantively respond to lead counsel's attempts to meet and confer

4    – perplexing behavior from someone claiming to be a Class Member with a legitimate interest in

5    ensuring his objection is considered.  Ex. B.

6         Brown's objection should be either stricken for failure to establish his standing or overruled

7    in its entirety.  Even if Brown could establish his standing to object, which he has not so much as

8    attempted to do, the objections made on his behalf by Palmer border, if not squarely cross, the

9    boundaries of frivolity.  Brown's objection smacks of a desperate and vexatious attempt to extort

10   attorneys' fees from lead counsel, who have been litigating this action vigorously for over six years,

11   and does nothing to aid the Court in its evaluation of the proposed settlement.

12        For example, Brown flatly misrepresents the operation of the online calculator suggested by

13   this Court and available to Class Members, contending it requires Class Members to release their

14   claims to get an estimate of their recovery when it does not.  Brown also claims that evaluating

15   attorneys' fees as a percentage of the gross settlement fund is improper, ignoring controlling and

16   unambiguous Ninth Circuit authority rejecting this same contention as long as 13 years ago and as

17   recently as three years ago.  Brown claims that lead counsel's requested fees are exorbitant without

18   ever acknowledging or addressing the fact that the 20% fee requested is well below the Ninth

19   Circuit's 25% benchmark and is eminently reasonable in light of the excellent results achieved on

20   behalf of the Class.  Brown's other objections are also baseless.

21        These type of objections add nothing to the Court's consideration of the fairness, adequacy or

22   reasonableness of proposed settlement.  As the Court in *Barnes v. FleetBoston Fin. Corp.*, No. 01-

23   10395-NG, 2006 U.S. Dist. LEXIS 71072 (D. Mass. Aug. 22, 2006), aptly held:

24        [P]rofessional objectors can levy what is effectively a tax on class action settlements,
         a tax that has no benefit to anyone other than to the objectors.  Literally nothing is
25        gained from the cost: Settlements are not restructured and the class, on whose behalf
         the appeal is purportedly raised, gains nothing.

26   *Id*. at *3-*4.

27

28

LEAD PLAINTIFF'S RESPONSE TO THE OBJECTIONS OF JEFF M. BROWN -
3:07-cv-06140-EMC                                                                        - 2 -

1    Accordingly, Brown's objection should be rejected by this Court, and the settlement and

2    request for fees and expenses should be approved.

3    **II.    ARGUMENT**

4         **A.    Brown Has Not Established Standing to Object**

5         Rule 23(e)(5) of the Federal Rules of Civil Procedure provides that "[a]ny *class member* may

6    object" to a proposed settlement.  Fed. R. Civ. P. 23(e)(5).[2]  However, "'non-class members have no

7    standing to object,'" and the "party seeking to invoke the Court's jurisdiction – in this case, the

8    Objectors – has the burden of establishing standing."  *In re Hydroxycut Mktg. & Sales Practices*

9    *Litig.*, No. 09md2087 BTM (KSC), 2013 U.S. Dist. LEXIS 133413, at *61 (S.D. Cal. Sept. 17,

10   2013).  Accordingly, the Notice ordered by the Court instructed that an objection must include "the

11   number of shares of VeriFone Publicly Traded Securities purchased between August 31, 2006 and

12   April 1, 2008, inclusive," and that any "objection must be mailed or delivered such that it is received

13   by the following no later than December 30, 2013."  Dkt. 320-1 at 17.

14        Brown failed to timely provide the required evidence of Class membership, and the claims

15   administrator has not received any claim from Brown to date, although the deadline for submitting

16   claims has not passed.  Rather, Brown only states: "Objector represents to the court he is a Class

17   Member, qualified to make a claim."  Brown Obj. at 1.  That is insufficient because the Notice

18   specifically required that any objector set forth the number of VeriFone Holdings, Inc. ("VeriFone")

19   securities purchased during the Class Period so standing to object could be determined.  The Court's

20   October 16, 2013 Order could not have been more clear:

21        Any Member of the Class who does not make his, her, or its objection in the manner
          provided shall be deemed to have waived such objection and shall forever be
22        foreclosed from making any objection to the fairness or adequacy of the proposed
          settlement . . . or to the award of attorneys' fees . . . ."
23

24   Dkt. No. 320, ¶12.[3]

---

25   [2]    Citations and footnotes omitted and all emphasis is added unless otherwise noted.

26   [3]    There should be no concern that Brown did not understand the Court's requirements.  Brown is a
     founding partner at the Boca Raton, Florida litigation firm Lavalle, Brown & Ronan, P.A. and
27   recently filed an almost identical objection in *In re Sanofi-Aventis Sec. Litig.*, No. 1:07-CV-10279-
     GBD (S.D.N.Y.) (Dkt. No. 273).  As noted above, his attorney, Palmer, is a serial objector who is
28   well versed in the requirements of Rule 23.

LEAD PLAINTIFF'S RESPONSE TO THE OBJECTIONS OF JEFF M. BROWN -
3:07-cv-06140-EMC                                                                    - 3 -

1    There is ample precedent that bare assertions of class membership, like Brown's here, do not

2    establish standing. *See, e.g.*, *Knisley v. Network Assocs.*, 312 F.3d 1123, 1128 (9th Cir. 2002) ("lack

3    of standing should be apparent" for an objector who failed to submit proof of claim); *Feder v. Elec.*

4    *Data Sys. Corp.*, 248 F. App'x 579, 581 (5th Cir. 2007) ("Allowing someone to object to settlement

5    in a class action based on this sort of weak, unsubstantiated evidence would inject a great deal of

6    unjustified uncertainty into the settlement process."); *In re Initial Pub. Offering Sec. Litig.*, No.

7    21 MC 92 (SAS), 2011 U.S. Dist. LEXIS 103698, at *8-*9 (S.D.N.Y. Aug. 25, 2011) (finding

8    unsigned, unsworn, unauthenticated tax form to be insufficient to establish class membership).

9    Because Brown has not timely established his standing as a member of the Class, his objection

10   should be rejected.

11   Moreover, Brown's failure to submit evidence of his standing should be of serious concern to

12   the Court here because his attorney, Palmer, has a long and documented history of filing frivolous

13   and vexatious objections on behalf of individuals who turn out ***not to be class members*** or to not

14   know anything about the objections purportedly filed on their behalf.[4] *See In re Law Office of*

15   *Jonathan E. Fortman, LLC*, No. 4:13MC00042 AGF, 2013 U.S. Dist. LEXIS 13903, at *3 (E.D. Mo.

16   Feb. 1, 2013) ("[W]hen assessing the merits of an objection to a class action settlement, courts

17   consider the background and intent of objectors and their counsel, particularly when indicative of a

18   motive other than putting the interest of the class members first.").

19   For example, in *In re Deepwater Horizon – Appeals of the Medical Benefits Class Action*

20   *Settlement*, No. 13-30221 (5th Cir.), three appellant-objectors, formerly represented by Palmer, filed

21   a motion to dismiss their appeal on November 22, 2013, after learning that they were not in fact class

22   members. Ex. C. In their motion to dismiss, the appellant-objectors claimed that Palmer and his co-

23   counsel, Ted Frank ("Frank"), took "unauthorized and unapproved actions . . . during the course of

24   their former representation," including failure to "inform the Appellants of most, if not all,

25

26   [4]   Palmer's years of frivolous objections may soon be coming to an end. On December 6, 2013, the
     State Bar of California filed disciplinary charges against Palmer for filing false declarations with
     numerous courts that failed to disclose his 2002 suspension from the bar following a felony

27   conviction in Colorado. *See In the Matter of Joseph Darrell Palmer*, No. 125147, 12-O-16924
     (State Bar Court, Los Angeles) (Ex. A).

28

LEAD PLAINTIFF'S RESPONSE TO THE OBJECTIONS OF JEFF M. BROWN -
3:07-cv-06140-EMC                                                          - 4 -

1    significant developments and actions." *Id*. at 12-13.  Palmer and Frank also failed to "apprise

2    Appellants of ***multiple factual inaccuracies*** contained in written and verbal submissions of

3    counsel." *Id.* at 13.

4         In *Hydroxycut*, 2013 U.S. Dist. LEXIS 133413, at *63-*67, before withdrawing as counsel,

5    Palmer represented an objector who was a friend and employee of Palmer, had objected to other

6    class-action settlements, and even recruited objectors in a case involving H&R Block by posting

7    messages on Facebook that there was "easy money to be made here in a class action lawsuit if

8    anyone can get me a name!!" *Id.* at *66.  The court found the objector's claim that she was a class

9    member not credible and strongly suggested that she had perjured herself in testimony to the court.

10   *Id*. at *64.  The court ultimately found that Palmer's objection "was not made in good faith" and that

11   Palmer and his co-counsel had attempted "to pressure the parties to give him $400,000 as payment to

12   withdraw the objections and go away" and used "the threat of questionable litigation to tie up the

13   settlement unless the payment was made." *Id.* at *68, *71.

14        Unfortunately, there are many more examples of Palmer's similar and quite shocking

15   conduct.  *In re Uponor, Inc.*, No. 11-MD-2247 ADM/JJK, 2012 U.S. Dist. LEXIS 130140, at *8-*9

16   (D. Minn. Sept. 11, 2012) (requiring a cost bond to pursue an appeal in a case where Palmer ghost

17   wrote objections filed by his family members, who professed to be *pro per* and were not even class

18   members, and finding that "the Palmer Objectors have evidenced bad faith and vexatious conduct"

19   and their actions "appear little more than dilatory tactics of questionable motivation"); *In re TFT-*

20   *LCD Flat Panel Antitrust Litig*., 289 F.R.D. 548, 553-54 (N.D. Cal. 2013) (finding Palmer in

21   contempt of court for failing to comply with a court order to produce his clients – Palmer's wife and

22   aunt – for deposition and awarding sanctions; finding Palmer's assertions to the court during hearing

23   "disingenuous"); *Dennis v. Kellogg Co.*, No. 09-CV-1786-L (WMc), 2013 U.S. Dist. LEXIS

24   163118, *11-*12 n.2 (S.D. Cal. Nov. 14, 2013) ("Darrell Palmer has been widely and repeatedly

25   criticized as a serial, professional, or otherwise vexatious objector"); *Heekin v. Anthem, Inc*., No.

26   1:05-cv-01908-TWP-TAB, 2013 U.S. Dist. LEXIS 26700, at *9 (S.D. Ind. Feb. 27, 2013) (finding

27   "bad faith and vexatious conduct on the part of . . . attorney Darrell Palmer" and noting his

28   reputation as "a serial objector").

LEAD PLAINTIFF'S RESPONSE TO THE OBJECTIONS OF JEFF M. BROWN -
3:07-cv-06140-EMC                                                                          - 5 -

1  Here, lead counsel served a deposition subpoena on Brown in order to question him about his

2  standing, the basis of his objection and his relationship with his counsel, as has been allowed by

3  numerous courts in this District.  *In re Cathode Ray Tube Antitrust Litig.*, 281 F.R.D. 531, 533 (N.D.

4  Cal. 2012); *In re Netflix Privacy Litig.*, No. 5:11-cv-00379-EJD, 2013 U.S. Dist. LEXIS 168298, at

5  *6 (N.D. Cal. Nov. 25, 2013); *In re Hydroxycut Mktg. & Sales Practices Litig.*, No. 09md2087 BTM

6  (KSC), 2013 U.S. Dist. LEXIS 61674, at *67 (S.D. Cal. Apr. 29, 2013).  True to form, Palmer

7  refused to allow his client to appear for deposition and, when informed by lead counsel that his

8  refusal was improper, simply responded, "Nice letter – see you at oral argument."  Ex. B.

9  Because Brown has utterly failed to "clearly and specifically set forth facts sufficient to"

10  establish that he has standing to object, the Court ***must*** strike his objection, as it is "powerless to

11  create its own jurisdiction by embellishing otherwise deficient allegations of standing." *Whitmore v.*

12  *Arkansas*, 495 U.S. 149, 155-56 (1990).

13  **B.    The Notice Approved by the Court Was More than Adequate to Meet**
       **Rule 23's Standards**

14

15  The standards for notice in the Ninth Circuit are set forth in details in Lead Plaintiff's

16  Response to the Objections of David Stern ("Stern Response"), filed herewith.  As discussed therein,

17  the Notice provided in this action was more than sufficient to comply with Rule 23.  Stern Response

18  at 21-24.  Brown's specific objections are specious and should be rejected.

19  First, Brown claims that notice was insufficient because he only received a reminder postcard

20  notification on December 23, 2013, and not the copy of the Notice and the Proof of Claim and

21  Release Form (Dkt. No. 320-2) that was previously mailed to identifiable Class Members.  Brown

22  Obj. at 4.  Brown's claim that he did not receive a copy of the Notice and Proof of Claim and

23  Release Form is not credible, as it was mailed to him on November 18, 2013, after he was identified

24  as a potential Class Member by his broker.  *See* Declaration of Carole K. Sylvester Re Status of

25  Notification Efforts (filed herewith), ¶12.  Further, as set forth in this Court's order preliminarily

26  approving settlement and providing for notice, the reminder notice was only sent to Class Members

27  who had not responded to the mailed notice.  Dkt. No. 320 at ¶6(d).  The fact that Brown received a

28  copy of the Court-ordered reminder notice postcard, and therefore had actual notice of the

settlement, including the due date for claims and the settlement website where additional information was available, is evidence of the fulsome notice program in this case and is proof of the adequacy, rather than the lack, of notice.

Second, Brown contends that the settlement calculator available on the claims administrator's website is a "a cleverly designed deceptive device aimed at securing releases from unsuspecting Class Members" and suggests that use of the calculator requires Class Members to release their claims against defendants. Brown Obj. at 4-5. This assertion is patently false. The Gilardi website clearly states that potential Class Members can "request a calculation of your estimated recovery" separately from filing a claim without agreeing to any release. When a person clicks the "Request a Claim Calculation" option, the following page appears, on which it is stated that a calculation will require the person to provide basic identification information and all relevant transaction information:



**Request a Claim Calculation**

You may request a calculation of your estimated recovery by clicking here. The calculation will require you to provide basic identification information and all of your relevant transaction information. You will have an option to file a claim using that information if you decide to do so.

In most cases, within twenty-four (24) hours, you will be sent an email providing your estimated recovery from the Net Settlement Fund based on the transactions provided on your online calculation request. The amount provided in the email is not a guarantee of an actual recovery amount. It is an estimate based solely on the transactions you provide.

After checking "here" to proceed to the next page and request a calculation, the following page appears, on which it is stated that class members are permitted to: (i) request estimates of their claims calculations; or (ii) file an actual claim. It is clearly stated that class members are only agreeing to a release if they submit a claim, not if they request an estimate of their claim:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15

**DISCLAIMER AND CONDITIONS OF USE**

Gilardi & Co., LLC ("Gilardi") maintains this website for the public's convenience at the direction of the United States District Court, Northern District of California. Pursuant to the Court's Order, Class Members in this matter are permitted to request estimates of their claim calculations or file claims using the online, interactive claim form provided at this website. If you elect to submit your claim online, please take note of the following important information:

A. By submitting an online Proof of Claim and Release ("Proof of Claim"), you are agreeing to submit to the jurisdiction of the United States District Court, Northern District of California.

B. Your submission will constitute a release of your claims against the settling Defendants, their Related Parties and all other Released Parties as defined by the Stipulation of Settlement. Before you submit your Proof of Claim form, you will be required to review and agree to the terms of this release, just as you would if you submitted a paper Proof of Claim.

C. To submit an online Proof of Claim, you will be required to certify, under penalty of perjury, that all of the information included with your Proof of Claim form is accurate and that it is complete. Failure to provide the required certification may result in rejection of your Proof of Claim.

D. Your Proof of Claim must be accompanied by proof of any and all transactions identified in your claim form. Failure to provide the required proof may result in rejection of your claim or a delay in its processing. Pursuant to the Court's Order, the Claims Administrator may require additional information or proof from you at any time.

Please review carefully all of the information in the documents in the Notice and Proof of Claim packet you received in the mail. You may also review these important documents here. Do not submit an online Proof of Claim until and unless you have reviewed the Court-approved documents and agree to the terms and conditions contained in those documents.

☐ I agree to the conditions of use.          [ Start ]

16    Thus, contrary to Brown's contention, the "Disclaimer and Conditions of Use" do not require

17  potential class members to give up *any rights or provide any releases whatsoever* in order to request

18  a calculation of their potential recovery. Rather, in language that Brown intentionally omitted from

19  his objection, the conditions of use remind potential class members that "*[i]f you elect to submit*

20  *your claim online*, please take note of the following important information," including the fact that

21  submission of a claim subjects class members to the jurisdiction of the court and constitutes a release

22  of a class member's claims. Because the website allows potential class members to convert their

23  estimate into a claim to streamline the claims process and minimize the burden on class members,

24  this clear language reminding class members of the effect of submitting a claim is both prudent and

25  entirely appropriate.

26
27
28

LEAD PLAINTIFF'S RESPONSE TO THE OBJECTIONS OF JEFF M. BROWN -
3:07-cv-06140-EMC                                                                    - 8 -

C.     **The Requested Fees Are Reasonable and Below the Ninth Circuit Benchmark**

1.     **The Requested Fees Are Proper Under the PSLRA and Are Appropriately Calculated as a Percentage of the Gross Settlement**

Brown argues that attorneys' fees can only be calculated after expenses have been deducted – that the percentage of fees should be based on the net recovery, rather than the gross recovery – and that any other method of calculating fees violates the Private Securities Litigation Reform Act of 1995 ("PSLRA").  Brown Obj. at 5.  This contention was expressly rejected by the Ninth Circuit in identical circumstances over 13 years ago.  *Powers v. Eichen*, 229 F.3d 1249, 1258 (9th Cir. 2000).

In *Powers*, an objector to a class action settlement contended that "the district court erred by awarding attorneys' fees calculated on a percentage of the gross recovery rather than a percentage of the recovery minus expenses."  *Id.*  The Ninth Circuit disagreed, holding that the PSLRA "does not mandate a particular approach to determining fees. . . .  It simply requires that the fees and expenses ultimately awarded be reasonable in relation to what the plaintiffs recovered."  *Id.*  "[T]he choice of whether to base an attorneys' fee award on either net or gross recovery should not make a difference so long as the end result is reasonable."  *Id.*  The Ninth Circuit's holding in *Powers* remains black-letter law to this day.  *Palmer v. Nigaglioni*, 508 F. App'x 658 (9th Cir. 2013) (holding that the "district court did not abuse its discretion in approving an attorney's fees award in the sum of 28% of the ***gross*** common fund recovery") (citing *Powers*, 229 F.3d at 1258).  Brown's objection on this basis, and his failure to bring *Powers* to the Court's attention, is inexplicable.

In any event, the fee requested by lead counsel is reasonable in relation to the recovery, whether it is calculated on the gross amount of the settlement ($95 million) or net of expenses ($94.7 million) because, either way, it is significantly ***less*** than the 25% benchmark in this Circuit.  Dkt. No. 322 at 8, 16-17.  Lead counsel's fee request, 20% of the gross settlement fund, represents 20.06% of the net settlement fund; and courts routinely award fees of 25% or more in similar common-fund cases and routinely calculate fees based on a percentage of the total gross recovery.  *Id.*; *see also In re Flag Telecom Holdings*, No. 02-CV-3400 (CM) (PED), 2010 U.S. Dist. LEXIS 119702, at *66-*67 (S.D.N.Y. Nov. 8, 2010) ("Courts in this District and throughout the nation . . . have not

1    hesitated to award 30% of the 'gross' recovery, or more, in complicated securities fraud cases such

2    as this."); *In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 172 n.8 (3d Cir. 2006) (rejecting objection

3    that attorneys' fees must be calculated based on net settlement amount and noting "[e]xpenses are

4    generally considered and reimbursed separately from attorneys' fees").

**2.     The Requested Attorneys' Fees Are Presumptively Reasonable
Because the Fee Was Agreed to by Lead Plaintiff and Lead
Counsel**

7    As set forth in Lead Plaintiff's Motion for Award of Attorneys' Fees and Expenses, "'courts

8    should afford a presumption of reasonableness to fee requests submitted pursuant to an agreement

9    between a properly-selected lead plaintiff and properly-selected lead counsel.'"  Dkt. No. 322 at 6

10   (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 220 (3d Cir. 2001)).  Brown acknowledges that

11   negotiated fee agreements are afforded a presumption of reasonableness but contends the

12   presumption matters little in the face of a misleading and excessive claim.  Brown Obj. at 6.  As

13   explained below, none of Brown's contentions regarding the requested fee justify departure from this

14   presumption, particularly not where the fee agreement results in a fee that is ***lower*** than the

15   benchmark fee in the Ninth Circuit.

**3.     The Requested Fees Are Appropriate Given the Result
Achieved and the Significant Risks Involved in Prosecuting the
Case**

18   While completely ignoring the extensive discussions of the results achieved and the specific

19   risks involved in prosecuting this action (Dkt. No. 309 at 14-22; Dkt. No. 323 at ¶¶88-107), Brown

20   contends that there was, in fact, little risk in prosecuting the action because "the vast majority of

21   PSLRA cases that are certified as class actions and not dismissed on motions to dismiss or summary

22   judgment are terminated by settlement."  Brown Obj. at 7.

23   As an initial matter, Brown's contention is irrelevant because ***no class*** had been certified in

24   this action when the parties agreed to settle the case, and Lead Plaintiff had not prevailed on

25   summary judgment.  Particularly in light of the potential for changing law with respect to class

26   certification, it was anything but certain that Lead Plaintiff would prevail past the summary

27   judgment stage.  Dkt. No. 323 at ¶¶88-107.

28

1    Brown's contention also suffers from both hindsight bias and, remarkably, foresight bias.

2    When lead counsel began prosecuting this action, there was no guarantee that a successful settlement

3    would be reached; yet lead counsel expended significant time, effort and out-of-pocket expenses

4    pursuing the Class' claims. Dkt. No. 322 at 10-12. Indeed, the action was dismissed with prejudice

5    by the District Court, as are one-third to one-half of all modern-day securities class actions, prior to

6    lead counsel's appeal and reversal of the District Court's order.

7        Further, after a successful result, there will always be Monday-morning quarterbacks like

8    Brown suggesting that the risk of no recovery was low from the start and a smaller-percentage

9    attorneys' fee is fair. The Court should not be persuaded to use such hindsight bias to determine a

10   fair and reasonable fee. "Learning how the story ends makes the outcome seem inevitable and

11   predictable, thereby distorting our perception of what could have been predicted." Jeffrey J.

12   Rachlinski, *A Positive Psychological Theory of Judging in Hindsight*, 65 U. Chi. L. Rev. 571, 571

13   (1998). To prove this theory, over 100 federal magistrate judges were given a statement describing a

14   case in which a prisoner appealed after being sanctioned by a trial judge for filing a frivolous

15   complaint. The judges were given one of three different outcomes and then asked to identify the

16   result that was most likely to occur. To no one's surprise, the judges' estimates of the most likely

17   outcome depended on what they were told about the actual outcome. "[T]he judges exhibited a

18   predictable hindsight bias." Chris Guthrie, Jeffrey J. Rachlinski & Andrew J. Wistrich, *Inside the*

19   *Judicial Mind*, 86 Cornell L. Rev. 777, 803 (2001).

20   **4.    The SEC Did Much More to Hurt Lead Plaintiff's Case than to**
         **Help It**
21

22       Brown next complains that lead counsel did not expend substantial efforts in this action

23   because "much of the hard investigative work was done by the S.E.C." Brown Obj. at 7. Once

24   again, Brown's objection is not grounded in reality. As set forth in the opening brief, the U.S.

25   Securities and Exchange Commission's ("SEC") failure to bring ***any*** fraud charges against ***anyone***

26   at VeriFone was a justification used to ***dismiss*** the action by the District Court; and defendants

27   repeatedly cited the SEC's conclusions as evidence supporting dismissal. Dkt. No. 321 at 13; *In re*

28   *Verifone Holdings Sec. Litig.*, No. C 07-6140 MHP, 2011 U.S. Dist. LEXIS 24964, at *29 (N.D. Cal.

1    Mar. 7, 2011) ("the SEC's decision not to plead scienter hurts plaintiffs' ability to plead a strong

2    inference of scienter in this private action"), *aff'd in part and rev'd in part*, 704 F.3d 694 (9th Cir.

3    2012).  In fact, lead counsel was so incensed by the SEC's actions that Lead Counsel publicly called

4    out the SEC's regional chief at the time, Marc Fagel, for his inaction in VeriFone, calling him

5    "irresponsible" and questioning the agency's commitment to investor protection.  Patrick Coughlin,

6    "The New SEC: Is It An Improvement?," *The Daily Journal* (Sept. 21, 2009) (Ex. D).  These are

7    hardly the actions of counsel expecting a free ride from government regulators in proving their

8    claims.

9         Far from assisting plaintiffs in alleging their securities fraud claims, Lead Counsel's success

10   was achieved *in spite* of the SEC's discretionary determination not to bring any fraud charges

11   against defendants, which almost gutted the entire action.  Shortly after the SEC announced its

12   settlement with VeriFone in September 2009, the parties participated in a mediation.  Defendants

13   believed the settlement value of the case was extremely low given the SEC's failure to sue VeriFone

14   for fraud after conducting an exhaustive investigation, and the parties were unable to resolve the

15   case.  Dkt. No. 323 at ¶¶41-43.  Lead Plaintiff believed the case could have been settled for a portion

16   of the approximately $40 million of then-existing directors' and officers' liability insurance but was

17   unwilling to settle the case for such an amount and instead chose to continue litigating the case.  *Id*.

18   at ¶43.

19        On March 8, 2011, this Court issued an order dismissing the case with prejudice and noted

20   the SEC's failure to bring fraud charges against the defendants as one of the facts supporting the

21   dismissal.  Dkt. No. 275; *Verifone*, 2011 U.S. Dist. LEXIS 24964, at *28-*29; Dkt. No. 323 at ¶53.

22   Lead Plaintiff and lead counsel successfully appealed the District Court's dismissal of this case, and

23   defendants again argued in their appellate briefs that the SEC's failure to bring fraud charges against

24   them supported affirmance of the dismissal.  Dkt. No. 323 at ¶56.

25        After successfully appealing the District Court's dismissal of the case, Lead Plaintiff and lead

26   counsel served document requests on defendants and various third parties.  Dkt. No. 323 at ¶¶62-72.

27   Lead Plaintiff and lead counsel received and reviewed well over 300,000 pages of documents,

28   including the documents VeriFone provided to the SEC and other documents.  *Id.* at ¶73.  Many of

1   those documents were used as evidence during the March 26, 2013 mediation. *Id*. at ¶¶74-79.  Lead

2   Plaintiff and lead counsel believed the evidence was sufficient to prove defendants knowingly or

3   recklessly made materially false and misleading statements.   Although Lead Plaintiff and lead

4   counsel believed the evidence supported their claims, they also understood that some of the

5   evidence, especially defendant Paul Periolat's apparent acceptance of responsibility and lack of a

6   clear line from him establishing knowledge of the other defendants,  could be cited by defendants in

7   support of their assertions that they did not knowingly or recklessly make materially false and

8   misleading statements. *Id*. at ¶¶81-107.

9          In short, Brown's contention that lead counsel did not expend substantial efforts because

10   much of the investigative work was done by the SEC is wrong and ignores that lead counsel

11   expended substantial effort to show that the evidence was sufficient to prove defendants knowingly

12   or recklessly made materially false and misleading statements despite the SEC's failure to bring

13   fraud charges against defendants.

14          Brown's claim that Class counsel did not expend adequate efforts on behalf of the Class to

15   justify the requested fee is a routine objection made by his counsel and is just as routinely rejected.

16   *City of Roseville Emps. Ret. Sys. v. Orloff Fam Tr. UAD 12/31/01*, 484 F. App'x 138, 141 (9th Cir.

17   2012) (rejecting Palmer's contention that the district court awarded an excessive 25% fee because

18   plaintiffs could simply "ride the Government's coattails to victory"); *In re TFT-LCD (Flat Panel)*

19   *Antitrust Litig*., No. M 07-1827 SI, 2013 U.S. Dist. LEXIS 49885, 74 (N.D. Cal. Apr. 1, 2013)

20   (rejecting Palmer's contention that a 28.6% fee was inappropriate in an antitrust case where

21   "defendants' liability had effectively been established").

22          This said, it clearly misses the point here.  Counsel for the Class far exceeded the SEC's

23   efforts and the results speak for themselves.  The SEC recovered a $25,000 penalty while counsel for

24   the Class recovered $95 million. *See Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 55 (2d Cir.

25   2000) ("the quality of representation is best measured by the results").

26          **5.     The Hourly Rates, Expenses and Lodestar Are Reasonable**

27          Brown's contention that Class counsel's hourly billing and lodestar calculations are excessive

28   do not withstand scrutiny.  Brown Obj. at 7-8.  As an initial matter, Brown's fixation with the

LEAD PLAINTIFF'S RESPONSE TO THE OBJECTIONS OF JEFF M. BROWN -
3:07-cv-06140-EMC                                                                    - 13 -

1    lodestar submission is unwarranted.  While lodestar data can certainly be considered, district courts

2    in this Circuit have almost uniformly shifted to the percentage method in awarding fees in common-

3    fund representative actions; and here, the percentage sought is lower than the Ninth Circuit

4    benchmark.  Dkt. No. 322 at 5-6.  That is consistent with the PSLRA, which states that "[t]otal

5    attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a

6    reasonable *percentage* of the" settlement.  15 U.S.C. §78u-4(a)(6) (emphasis added).  Brown simply

7    ignores that lead counsel is not asking to be compensated based on their lodestar; it is merely to

8    serve as a cross-check.[5]  Dkt. No. 322 at 18-19.

9           Indeed, the reason that courts and commentators have routinely encouraged a percentage fee

10   in common-fund cases is precisely to avoid the burdens and perverse incentives that can be

11   associated with lodestar calculations.  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942

12   (9th Cir. 2011) ("Because the benefit to the class is easily quantified in common-fund settlements,

13   we have allowed courts to award attorneys a percentage of the common fund in lieu of the often

14   more time-consuming task of calculating the lodestar."); *Manual for Complex Litigation*, §14.121,

15   Federal Judicial Center (4th ed. 2004) ("In practice, the lodestar method is difficult to apply, time-

16   consuming to administer, inconsistent in result, . . . capable of manipulation . . . [and] creates

17   inherent incentive to prolong the litigation.").

18          Nevertheless, turning to the lodestar data, Brown notes the hourly rates used by lead counsel

19   but fails to identify any of Class counsel's hourly rates that are inconsistent with standard rates

20   charged in this market.  Similarly, there is nothing improper about the amount of time devoted to this

21   litigation by lead counsel's partners.  If anything, one would think that Brown would be glad to see

22   that some of lead counsel's most senior partners and attorneys, including some of the most

23   experienced and respected securities litigators in this Circuit, devoted huge amounts of their time,

24   skill and attention to securing the result achieved here.

25   _____
     [5]    In contrast to the use of the lodestar method as a primary tool for setting a fee award, the lodestar
26   cross-check is performed with a less exhaustive cataloguing and review of counsel's hours.  *See In re
     Rite Aid Corp. Sec Litig.*, 396 F.3d 294, 306 (3d Cir. 2005) ("The lodestar cross-check calculation
27   need entail neither mathematical precision nor bean-counting."); *Goldberger*, 209 F.3d at 50 ("Of
     course, where [the lodestar method is] used as a mere cross-check, the hours documented by counsel
28   need not be exhaustively scrutinized . . . .").

LEAD PLAINTIFF'S RESPONSE TO THE OBJECTIONS OF JEFF M. BROWN -
3:07-cv-06140-EMC                                                                    - 14 -

1    Brown also criticizes lead counsel for the work of Cody LeJeune, claiming that he made an

2    appearance after the settlement agreement had already been agreed to.  Brown Obj. at 8.[6]  The timing

3    of Mr. LeJeune's notice of appearance is not surprising, as Mr. LeJeune currently works in lead

4    counsel's settlement department, where he focuses on obtaining court approval of settlements in

5    securities fraud class action cases.  Accordingly, Mr. LeJeune routinely begins to work on cases at

6    the time of settlement, having submitted *pro hac vice* applications at or around the time of settlement

7    in at least eight cases in the last two years.[7]

8    Nor is lead counsel's lodestar multiplier unreasonable.  The multiplier requested here, 4.3, is

9    not unreasonable in light of the results achieved and this Circuit's precedent.  Dkt. No. 322 at 18-19;

10   *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 341 (3d Cir. 1998)

11   ("'multiples ranging from one to four are frequently awarded in common fund cases when the

12   lodestar method is applied'") (quoting 3 Newberg §14.03 at 14-5); *Van Vranken v. Atl. Richfield Co.*,

13   901 F. Supp. 294, 298 (N.D. Cal. 1995) ("Multipliers in the 3-4 range are common in lodestar

14   awards for lengthy and complex class action litigation.").

15   **6.    By All Objective Measures, Class Counsel Achieved an**
     **Excellent Result**

16

17   Brown claims that the result achieved by lead counsel "seems woefully inadequate."  Brown

18   Obj. at 9.  Yet Brown ignores, and makes no effort whatsoever to address, the detailed explanation

19   provided to the Court that sets forth the specific risks of this litigation, including the serious risk of

20   non-payment if a judgment was entered, as well as the benefit of achieving a more immediate and

21   certain recovery for the Class.  *See* Dkt. No. 309 at 14-22; Dkt. No. 323 at ¶¶88-107.

22   ───────────────
     [6]   On January 15, 2014, lead counsel received a refund of $305 relating to a fee to admit Mr.
23   Lejeune to this Court.  Therefore, lead counsel reduced the amount of expenses requested to be
     reimbursed from $278,994.44 to $278,689.44.

24   [7]   *In re MBIA Inc. Sec. Litig.*, No. 05-CV-03514 (LLS) (S.D.N.Y. Dec. 10, 2012), Dkt. No. 127;
     *City of Roseville Employees' Ret. Sys. v. Energysolutions, Inc.*, No. 1:09-cv-08633-JGK (S.D.N.Y.
25   Dec. 19, 2012), Dkt. No. 96; *Plumbers & Pipefitters Local Union No. 630 Pension-Annuity Trust
     Fund v. Northwest Pipe Co.*, No. 3:09-cv-05724-RBL (W.D. Wash. Dec. 17, 2012), Dkt. No. 90; *In
26   re Constar Int'l Inc. Sec. Litig.*, No. 03cv05020 (E.D. Pa. Dec. 19, 2012). Dkt. No. 329; *Luman v.
     Anderson*, No. 4:08-cv-00514-C-W-HFS (W.D. Mo. Feb. 22, 2013), Dkt. No. 146; *Plumbers' Union
27   Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*, No. 08-cv-10446 (D. Mass. July 23,
     2013), Dkt. No. 186; *Wong v. Accretive Health, Inc.*, No. 1:12-cv-03102 (N.D. Ill.  Sept. 30, 2013),
28   Dkt. No. 68; *Buettgen v. Harless*, No. 3:09-cv-00791-K (N.D. Tex. Oct. 22, 2013), Dkt. No. 241.

1    Moreover, Brown ignores the fact that by any objective measure, the settlement achieved is

2  exceptional.  Assuming lead counsel were able to prevail on every claim asserted, the $95 million

3  settlement represents approximately 10.4%-16.4% of the Class' maximum estimated damages after

4  trial.  Dkt. No. 322 at 9.  This rate of recovery is many times larger than the median settlement value

5  of actions with damages of between $500 million and $4.9 billion in 2012 (1.1%-1.4%).[8]  *Id*.  In

6  addition, according to the National Economics Research Associates ("NERA"), which tracks and

7  reports on securities class actions, including securities settlements, over the period 1996-2012, the

8  average settlement was between $8 and $42 million;[9] and the median settlement for the same time

9  period was between $3.7 million and $12 million.  NERA 2012 Review at 26 (Figure 24) and 28

10  (Figure 26), *available at* http://www.nera.com/67_7992.htm.

11        **D.      The Timing of Payment of Attorneys' Fees Is Entirely Proper**

12        As set forth in Lead Plaintiffs' Response to the Objections of David Stern, the timing of the

13  payment of attorneys' fees is a standard term approved by courts all over the country and is entirely

14  proper.  Stern Response at 19-21.

15

16

17

18

19

20

21

22

---

23  [8]    *See* Cornerstone Research Report, entitled *Securities Class Action Settlements: 2012 Review & Analysis*, at 8 (Figure 8).  For a more detailed explanation of the damages in this litigation, the Court

24  is respectfully referred to Lead Plaintiff's Response to the Court's September 5, 2013 Order Re Supplemental Briefing at 9-13 (Dkt. No. 309).

25  [9]    "The average calculation excludes settlements above $1 billion, settlements in IPO laddering

26  cases, and settlements in merger objection cases.  The settlements over $1 billion have a large impact on averages, while the IPO laddering cases and merger objection cases are atypical; inclusion of any

27  of these may obscure trends in more usual cases."  Dr. Renzo Comolli, Sukaina Klein, Dr. Ronald I. Miller, and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2012 Full-Year*

28  *Review* at 26 (NERA Jan. 29, 2013) ("NERA 2012 Review").

III.    **CONCLUSION**

For the foregoing reasons, lead counsel respectfully submits that Brown's objection should be stricken for failure to establish his standing or, in the alternative, overruled.

DATED:  January 16, 2014

ROBBINS GELLER RUDMAN
   & DOWD LLP
CHRISTOPHER P. SEEFER
CHRISTOPHER M. WOOD

s/ Christopher M. Wood
CHRISTOPHER M. WOOD

Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)

ROBBINS GELLER RUDMAN
   & DOWD LLP
PATRICK J. COUGHLIN
RANDI D. BANDMAN
FRANCIS A. DIGIACCO
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

Lead Counsel for Plaintiffs

LEAD PLAINTIFF'S RESPONSE TO THE OBJECTIONS OF JEFF M. BROWN -
3:07-cv-06140-EMC                                                                          - 17 -

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 16, 2014, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on January 16, 2014.

s/ Christopher M. Wood
CHRISTOPHER M. WOOD

ROBBINS GELLER RUDMAN
   & DOWD LLP
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
E-mail: cwood@rgrdlaw.com

CAND-ECF-

## Mailing Information for a Case 3:07-cv-06140-EMC Eichenholtz v. Verifone Holdings, Inc. et al

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Steve W. Berman**
  steve@hbsslaw.com,robert@hbsslaw.com,heatherw@hbsslaw.com

- **Francis A. Bottini , Jr**
  fbottini@bottinilaw.com,sammirati@bottinilaw.com

- **Jeffrey Philip Campisi**
  jcampisi@kaplanfox.com

- **Jiyoun Chung**
  jiyoun.chung@shearman.com

- **Brendan P. Cullen**
  cullenb@sullcrom.com,carrjo@sullcrom.com,s&cmanagingclerk@sullcrom.com,greenn@sullcrom.com,carrejoa@sullcrom.com,McCauleyr@sullcrom.com

- **Timothy Alan DeLange**
  kelly.mcdaniel@blbglaw.com,timothyd@blbglaw.com

- **Francis Anthony DiGiacco**
  fdigiacco@rgrdlaw.com

- **Jordan Eth**
  jeth@mofo.com,jrahman@mofo.com

- **Howard David Finkelstein**
  hdf@classactionlaw.com

- **Linda M. Fong**
  lfong@kaplanfox.com

- **Daniel C. Girard**
  dcg@girardgibbs.com,mce@girardgibbs.com

- **Nathaniel Lyon Green**
  greenn@sullcrom.com

- **Eli Greenstein**
  egreenstein@ktmc.com

- **Stanley M. Grossman**
  smgrossman@pomlaw.com

- **Sverker Kristoffer Hogberg**
  carrjo@sullcrom.com,hogbergs@sullcrom.com

- **Lewis S. Kahn**
  lewis.kahn@kgscounsel.com

- **Reed R. Kathrein**
  reed@hbsslaw.com,peterb@hbsslaw.com,pashad@hbsslaw.com,sf_filings@hbsslaw.com

- **Mark L. Knutson**
  mlk@classactionlaw.com,ajd@classactionlaw.com

- **Jeffrey R. Krinsk**
  jrk@classactionlaw.com,trk@classactionlaw.com,mlk@classactionlaw.com,llg@classactionlaw.com,fk@classactionlaw.com

- **Nicole Catherine Lavallee**
  nlavallee@bermandevalerio.com,ysoboleva@bermandevalerio.com

- **Jonathan Krasne Levine**
  jkl@girardgibbs.com,amv@girardgibbs.com

- **Jeremy A Lieberman**
  jalieberman@pomlaw.com

- **Mark Cotton Molumphy**
  mmolumphy@cpmlegal.com,rbarghi@cpmlegal.com,obacigalupi@cpmlegal.com,jacosta@cpmlegal.com

- **Joseph Darrell Palmer**
  darrell.palmer@palmerlegalteam.com,maria.carapia@palmerlegalteam.com

- **Alan Roth Plutzik**
  aplutzik@bramsonplutzik.com

- **Juden Justice Reed**
  plee@schubert-reed.com,akeng@schubert-reed.com,rschubert@schubert-reed.com

- **Karen Hanson Riebel**
  khriebel@locklaw.com,brgilles@locklaw.com

- **Darren Jay Robbins**
  e_file_sd@rgrdlaw.com

- **Patrick David Robbins**
  probbins@shearman.com,rcheatham@shearman.com

- **Dana Anthony Rodriguez**
  drodriguez@mofo.com,lyan@mofo.com

- **Eran Rubinstein**
  erubinstein@chitwoodlaw.com

- **Robert Andrew Sacks**
  sacksr@sullcrom.com,s&cmanagingclerk@sullcrom.com

- **Robert C. Schubert**
  rschubert@schubertlawfirm.com

- **Christopher Paul Seefer**
  chriss@rgrdlaw.com,khuang@rgrdlaw.com,ptiffith@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **Aaron M. Sheanin**
  asheanin@pswlaw.com,yberry@pswlaw.com

- **Arthur L. Shingler , III**
  ashingler@scott-scott.com,efile@scott-scott.com

- **Michael Howard Steinberg**
  steinbergm@sullcrom.com,elsono@sullcrom.com,s&cmanagingclerk@sullcrom.com

- **David Stern**
  jrk@classactionlaw.com

- **Joel B. Strauss**
  jstrauss@kaplanfox.com

- **Sean Travis Strauss**
  sstrauss@truckerhuss.com,mbresso@truckerhuss.com,cdyke@truckerhuss.com,ssimon@truckerhuss.com

- **Sanford Svetcov**
  sandys@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **Joseph J. Tabacco , Jr**
  jtabacco@bermandevalerio.com,ysoboleva@bermandevalerio.com

- **David Conrad Walton**
  davew@rgrdlaw.com

- **Shawn A. Williams**
  shawnw@rgrdlaw.com,khuang@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **Steven Noel Williams**
  swilliams@cpmlegal.com,jverducci@cpmlegal.com,jlein@cpmlegal.com,azapala@cpmlegal.com,pmenzel@cpmlegal.com,gkim@cpmlegal.com,bdoe@cpmlegal.com

- **Christopher Martin Wood**
  cwood@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)